John Mejia (Bar No. 13965)
Leah Farrell (Bar No. 13696)
American Civil Liberties Union of Utah
355 North 300 West
Salt Lake City, UT 84103
T: (801) 521-9862
jmejia@acluutah.org
lfarrell@acluutah.org

M. Laughlin McDonald*
American Civil Liberties Union Foundation
2700 International Tower
229 Peachtree Street, NE
Atlanta, GA 30303
T: (404) 500-1235
lmcdonald@aclu.org

Ezra D. Rosenberg*
M. Eileen O'Connor*
Arusha Gordon*
Lawyers' Committee for Civil Rights Under
Law
1401 New York Ave., Suite 400
Washington, D.C. 20005
T: (202) 662-8600
erosenberg@lawyerscommittee.org
eoconnor@lawyerscommittee.org
agordon@lawyerscommittee.org

Maya Kane*
10 Town Square, #52
Durango, Colorado  81301
T: (970) 946-5419
mayakanelaw@gmail.com

William A. Rudnick*
DLA Piper LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, IL 60601
T: (312) 368-4000
william.rudnick@dlapiper.com

Raymond M. Williams*
DLA Piper LLP (US)
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, PA 19103
T: (215) 656-3300
raymond.williams@dlapiper.com

*Pro hac vice motion to follow

**ATTORNEYS FOR PLAINTIFFS**

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH**
**CENTRAL DIVISION**

NAVAJO NATION HUMAN RIGHTS
COMMISSION; PEGGY PHILLIPS; MARK
MARYBOY; WILFRED JONES; TERRY
WHITEHAT; BETTY BILLIE FARLEY;
WILLIE SKOW; and MABEL SKOW,

Case No. 2:16-cv-00154 JNP

Plaintiffs,

v.

**COMPLAINT FOR**
**DECLARATORY AND**
**INJUNCTIVE RELIEF**

SAN JUAN COUNTY; JOHN DAVID
NIELSON, in his official capacity as San Juan
County Clerk; and PHIL LYMAN, BRUCE
ADAMS, and REBECCA BENALLY, in their
official capacities as San Juan County
Commissioners,

**(Three-judge-court requested)**

Defendants.

## INTRODUCTION

1.      This case arises from the 2014 decision of county officials of San Juan County,

Utah, to close polling places and move to a mail-only voting system to the detriment of Navajo

residents and in violation of Section 203 of the Voting Rights Act, 52 U.S.C. § 10503 ("Section

203"); Section 2 of the Voting Rights Act, 52 U.S.C. § 10301 ("Section 2"); and the Fourteenth

Amendment to the United States Constitution.

2.      The closure of polling places within or accessible to the Navajo Nation

Reservation together with the adoption of mail-only voting unreasonably hindered the ability of

Navajo citizens in San Juan County to participate effectively in the political process on equal

terms with white voters in the 2014 general election, and unless enjoined by this Court, these practices will continue to do so in the 2016 election cycle and beyond.

3.      The Navajo Nation is a federally recognized sovereign nation.  Members of the Navajo Nation are considered American Indian for purposes of coverage under the Voting Rights Act.

4.      Navajo is a traditionally unwritten language.  The mail-only system as implemented by San Juan County fails to provide adequate oral assistance to limited English-proficient Native American voters, and therefore violates Section 203 of the Voting Rights Act.

5.      In the particular circumstances that prevail in San Juan County, the mail-only system results in Navajo citizens having less opportunity than white residents of the County to vote and have their vote counted.

6.      The mail-only election system relies upon postal service that is unreliable, not easily accessible, and has limited delivery in the rural portions of San Juan County where many Navajo voters reside, placing a disproportionately severe burden on the Navajo population to receive ballots by mail, or to return them in time to be counted.

7.      Under the mail-only election system, the only location to vote in person in the entire County (whether in person on Election Day or submitting an absentee ballot in person) is in the County seat of Monticello.  In order to reach Monticello, Navajo residents of San Juan County are required to travel, on average, more than twice as far to vote in person in comparison to white residents of San Juan County.  The significantly greater average distance required for Navajo residents in San Juan County to reach the county seat of Monticello, in the context of socioeconomic factors including disparate rates of poverty and access to reliable public and private transportation, together with the history of racial discrimination and hostility toward

Native Americans, place a severe burden upon Navajo residents to vote in person; this burden falls substantially less heavily on white residents of San Juan County.

8.      The disproportionate severe burdens that the mail-only system imposes on Navajo residents of San Juan County violate Section 2 of the Voting Rights Act and the Fourteenth Amendment of the United States Constitution.

9.      For these reasons, and as alleged in detail below, Plaintiffs respectfully ask this Court to award declaratory and injunctive relief, costs and reasonable attorneys' fees, and such additional relief as may be appropriate to remedy the ongoing violation of the Voting Rights Act and the Constitution.

## JURISDICTION AND VENUE

10.     This case arises under the Constitution and laws of the United States.  This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343; 52 U.S.C. §§ 10301, 10308(f), and 10503; and 42 U.S.C. § 1983.  This Court has jurisdiction to grant both declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202.

11.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred, and are occurring, in this District.

12.     Pursuant to 52 U.S.C. § 10501 and 52 U.S.C. § 10504, a three judge court is required to hear and determine claims under Section 203 of the Voting Rights Act.

## PARTIES

13.     Plaintiff NAVAJO NATION HUMAN RIGHTS COMMISSION is an office within the legislative branch of the Navajo Nation and operates as a clearinghouse to administratively address discriminatory actions against citizens of the Navajo Nation.  The

NAVAJO NATION HUMAN RIGHTS COMMISSION also represents the Navajo people in redistricting activities occurring in Arizona, New Mexico, and Utah.  On September 4, 2015, the NAVAJO NATION HUMAN RIGHTS COMMISSION passed a resolution opposing San Juan County's decision to switch to a mail-only electoral system.  San Juan County's decision to switch to a mail-only system is causing and will continue to cause the NAVAJO NATION HUMAN RIGHTS COMMISSION to divert a portion of its resources to educating Navajo voters about the mail-only system.  In 2015 alone, the NAVAJO NATION HUMAN RIGHTS COMMISSION organized and staffed over 16 meetings across the Navajo portion of San Juan County to meet with Navajo citizens and collect facts about the mail-only system.  Staff of the NAVAJO NATION HUMAN RIGHTS COMMISSION have had to travel hundreds of miles to meet with Navajo residents of San Juan County concerning the mail-only system.  As a result, the NAVAJO NATION HUMAN RIGHTS COMMISSION is limited, and will continue to be limited, to devoting fewer resources to its other organizational activities.

14.     Plaintiff PEGGY PHILLIPS is an adult citizen, a member of the Navajo Nation and a resident of Oljato, San Juan County, Utah.  Plaintiff PHILLIPS is registered to vote in San Juan County.  She is not comfortable voting in English.  She needs assistance from a translator to vote as there are usually words on the ballot she does not understand.  Because of this, she prefers to vote in person.  Plaintiff PHILLIPS did not receive her ballot in the mail for the 2014 election and was unable to vote.  While she has access to a car, she would have to travel approximately four hours round trip to vote in person in Monticello.

15.     Plaintiff MARK MARYBOY is an adult citizen, a member of the Navajo Nation and a resident of Montezuma Creek, San Juan County, Utah.  Plaintiff MARYBOY is registered to vote in San Juan County.  He prefers to vote in person as he has for many years.  Plaintiff

MARYBOY was able to vote by mail in 2014, but has concerns about how the vote was conducted.  He was present when the County Clerk's Navajo liaison came to a Navajo Chapter meeting to discuss the switch to mail-only voting in 2014 but, while he understood the conversation, he believes many people were confused by the discussion.  While he has access to a car, he would have to travel approximately two hours round trip to vote in person in Monticello.

16.     Plaintiff WILFRED JONES is an adult citizen, a member of the Navajo Nation and a resident of Red Mesa, San Juan County, Utah.  Plaintiff JONES is registered to vote in San Juan County.  Plaintiff JONES was able to vote by mail in 2014, but is more comfortable voting in person because he is assured his vote is counted.  He only checks his mail once per week.  The road to the post office, which includes a portion which is unpaved, can get very muddy and be in a bad condition when it rains.  While he has access to a car, he would have to travel over two hours round trip to vote in person in Monticello.

17.     Plaintiff TERRY WHITEHAT is an adult citizen, a member of the Navajo Nation and a resident of Navajo Mountain, San Juan County, Utah.  Plaintiff WHITEHAT is registered to vote in San Juan County.  He did not receive notice of the switch to mail only voting in 2014 and was surprised to receive a ballot in the mail.  Plaintiff WHITEHAT was able to vote by mail in 2014, but prefers to vote in person.  While he has access to a car, he would have to travel over ten hours round trip to vote in person in Monticello.  Plaintiff WHITEHAT considers San Juan County his home and has a house in the County, but currently works in Arizona.  As a result, he only gets his mail approximately every two weeks.

18.     Plaintiff BETTY BILLIE FARLEY is an adult citizen, a member of the Navajo Nation and a resident of Red Mesa, San Juan County, Utah.  Plaintiff FARLEY is registered to

vote in San Juan County.  She is not comfortable voting in English.  She requires assistance from a translator when voting.  She received notice of the switch to mail only voting in 2014 through a letter in mail, which her son explained to her.  Plaintiff FARLEY was able to vote by mail but prefers voting in person because she is unable to read the mail ballot.  She does not have access to transportation and only checks her mail every two weeks to one month.  If she were able to find transportation, she would have to travel over four hours round trip to vote in person in Monticello.

19.     Plaintiff WILLIE SKOW is an adult citizen, a member of the Navajo Nation and a resident of Mexican Water, San Juan County, Utah.  Plaintiff W. SKOW is registered to vote in San Juan County.  He is not comfortable voting in English.  He requires assistance from a translator when voting.  Plaintiff W. SKOW received notice of the switch to mail-only voting in 2014 when his son found W. SKOW's ballot in the mail.  He was able to vote by mail in 2014 although he prefers to vote in person.  He relies on his children to transport him where necessary and to get and sort his mail.  He would have to travel over two hours round trip to vote in person in Monticello.

20.     Plaintiff MABEL SKOW is an adult citizen, a member of the Navajo Nation and a resident of Mexican Water, San Juan County, Utah.  Plaintiff M. SKOW is registered to vote in San Juan County.  She is not comfortable voting in English.  She requires assistance from a translator when voting.  Plaintiff M. SKOW received notice of the switch to mail-only voting in 2014 when she received her ballot in the mail.  Her children, who sort her mail, found her ballot and helped her vote.  She relies on her children to pick up her mail and transport her where necessary.  She would have to travel over two hours round trip to vote in person in Monticello.

21.     Defendant SAN JUAN COUNTY is a political subdivision created and functioning pursuant to Utah statutes and governing the geographical area known as San Juan County, State of Utah.  It maintains a website for voter services.  The website, including downloadable voter registration and absentee ballot request forms, is in English only.

22.     Defendant JOHN DAVID NIELSON is the San Juan County Clerk and is sued in his official capacity.  As County Clerk, his duties include, but are not limited to, administering the Utah State election code and ensuring that elections within San Juan County are conducted in a fair and lawful manner.  Because of his duties, he bears responsibility for implementing and maintaining the mail-only system and failing to reopen in-person polling places in San Juan County.

23.     Defendant PHIL LYMAN is a San Juan County Commissioner and is sued in his official capacity.  As County Commissioner, his duties include, but are not limited to, directing and organizing the management of the County; exercising supervisory control over all departments of County government; exercising administrative control over all funds; supervising and directing centralized budgeting and other service functions of the County; and developing systems and procedures, not inconsistent with statute, for planning, programming, budgeting, and accounting for all activities of the County.  Because of his duties, he bears responsibility for maintaining the mail-only system and failing to reopen in-person polling places in San Juan County.

24.     Defendant BRUCE ADAMS is a San Juan County Commissioner and is sued in his official capacity.  As County Commissioner, his duties include, but are not limited to, directing and organizing the management of the County; exercising supervisory control over all departments of County government; exercising administrative control over all funds; supervising

and directing centralized budgeting and other service functions of the County; and developing systems and procedures, not inconsistent with statute, for planning, programming, budgeting, and accounting for all activities of the County.  Because of his duties, he bears responsibility for maintaining the mail-only system and failing to reopen in-person polling places in San Juan County.

25.     Defendant REBECCA BENALLY is a San Juan County Commissioner and is sued in her official capacity.  As County Commissioner, her duties include, but are not limited to, directing and organizing the management of the County; exercising supervisory control over all departments of County government; exercising administrative control over all funds; supervising and directing centralized budgeting and other service functions of the County; and developing systems and procedures, not inconsistent with statute, for planning, programming, budgeting, and accounting for all activities of the County.  Because of her duties, she bears responsibility for maintaining the mail-only system and failing to reopen in-person polling places in San Juan County.

## FACTUAL ALLEGATIONS

### Availability of In-Person Voting in San Juan County

26.     Approximately one-half the residents of San Juan County are American Indian; the vast majority of American Indians in the County are citizens of the Navajo Nation.  As of the 2010 Census, the total population of San Juan County was 14,746, of which 50 percent were American Indian or Alaska Native (alone) and 45 percent were white (alone).  As of 2010, the voting age population was 9,729, of which 49 percent were American Indian or Alaska Native (alone) and 46 percent were white (alone).

27.     San Juan County is residentially segregated.  The majority of Navajo residents live in the southern portion of the County.  The majority of white residents live in the northern portion of the County.  The County seat, Monticello, is located in the northern portion of the County and is 84 percent white.

28.     In 2014, San Juan County closed all polling places and switched to a mail-only voting system.  The only way for a voter either to vote in person on Election Day or to vote by in-person absentee ballot in 2014 was, and currently is, to go to the County Clerk's office in Monticello.

29.     Monticello is not on the Navajo Nation Reservation.

30.     The location for in-person Election Day and in-person absentee voting in Monticello is, on average, significantly closer to and more convenient for the white population of San Juan County than for the Navajo population of San Juan County.

31.     There is a significant disparity between the average time it takes for white residents of San Juan County to reach the County seat and the average time it takes for Navajo residents to reach the County seat.  On average, it takes Navajo residents over two hours round trip to travel to the County seat, while it takes white residents, on average, under an hour round trip to travel to the County seat.  This means that Navajo residents must travel, on average, more than twice as long as white residents in order to reach the location for in-person voting on Election Day and in-person absentee voting in Monticello.

32.     The number of miles a Navajo resident must travel to the County seat is, on average, over 120 miles round trip.  The average round trip for white residents is approximately 50 miles.  Residents of Navajo Mountain who live in the southwest of the County, like Plaintiff

WHITEHAT, face a significantly longer than average round trip drive to Monticello, which in some cases takes between nine and ten hours.

33.     The challenge of getting to Monticello is exacerbated for a significant number of Navajo residents who lack access to reliable transportation and must contend with poor road conditions.

34.     There is no reliable public transportation for Navajo residents in San Juan County to travel to Monticello.  While the Navajo Transit System operates some bus routes, these buses do not travel to Monticello.

35.     A substantial portion of the Navajo population lacks access to reliable private transportation.  According to the 2009-2013 American Community Survey estimates, less than one percent of white households in San Juan County have no vehicle, while one in ten American Indian households are without a vehicle.

36.     Additionally, the poverty rates for American Indians in San Juan County are much higher than for the white residents of the County.  While only 11.2 percent of whites in the County live below the poverty level, 42.3 percent of American Indians live below the poverty line.  Nearly one-third of American Indian households in San Juan County live off an annual income of less than $10,000.

37.     The trip to Monticello for Navajo voters is further complicated by the geography and poor road conditions of the County.  For many southern parts of the County, the only way to reach Monticello is on a two lane road, further increasing drive times.

38.     There are a number of benefits to voting in person on Election Day or by in-person absentee ballot, including fulfilling one's personal preference for casting a ballot in person, the ability to troubleshoot and fix potential problems, and the opportunity to get in-

person translation and other assistance.  The assurance that one's ballot is received and counted is another benefit to in-person voting.  Voting in-person is the preferred method for many Navajo voters given that they do not access their mail regularly and the mail system is not always reliable.

39.     Under the current mail-only system, it is easier for white voters to resolve problems during the election process than for Navajo voters.  For instance, it is more convenient on average for a white voter to travel to Monticello to obtain a replacement ballot, more likely that a white voter will receive a replacement ballot in the mail in time to return it, and easier on average for a white voter to provide proof of voter identification in Monticello if required to vote by provisional ballot.

40.     Upon information and belief, the County Clerk's office did not provide adequate public outreach to Navajo voters regarding the switch to a mail-only ballot system in 2014.

41.     Plaintiffs WHITEHAT, W. SKOW, M. SKOW, and, upon information and belief, many other Navajo residents did not know about the switch to a mail-only voting system until they received their ballots in the mail in 2014, while others were unaware of the change altogether.

### Failure to Comply with Section 203 Requirements

42.     San Juan County is covered by Section 203 of the Voting Rights Act, 52 U.S.C. § 10503 for the Navajo language based on the most recent determination made by the Census Bureau which is authorized to make this determination consistent with the statutory requirements for coverage.  76 Fed. Reg. 63,302 (Oct. 13, 2011).

43.     Navajo is a traditionally unwritten language.

44.     The Bureau of the Census has reported, with respect to its October 13, 2011 Determinations Under Section 203, that San Juan County had 9,655 citizens of voting age, of whom approximately 7.7 percent were limited-English proficient American Indian (Navajo) voting age citizens.  For purposes of Section 203 determinations, the Bureau of the Census considers citizens who do not speak English very well to be limited-English proficient.

45.     Although Utah offers voter registration online, the website and online voter registration portal are available in English only.  The San Juan County website includes a downloadable mail-in registration form and absentee ballot application, but both of these forms are available in English only.  The entire elections page for San Juan County is in English only. It does not provide any information about Navajo language assistance and no Navajo audio translations are available.

46.     The only Navajo language assistance that San Juan County offered in the 2014 election was to include a phone number for the Navajo liaison for the County Clerk's office on election materials. However, these materials were in English only.  This is inadequate for providing effective oral assistance in mail-only elections.

47.     All of the mail-in ballots and accompanying materials provided for the 2014 election were in English only.  Upon information and belief, there will be no material difference between the conduct of the 2014 mail-only election and mail-only elections in 2106 and beyond.

**Postal Service Issues in San Juan County**

48.     The postal system in rural parts of the County can be unreliable and not easily accessible, making it difficult for rural Navajo voters to receive and return their ballots on time.

49.     During the 2014 election, ballots were mailed on October 10, giving voters just three weeks to receive their ballots, complete them, get language assistance from a family member or friend, if necessary, and return the ballots.

50.     Because many Navajo voters live in remote areas and may make the trip to the post office, which could be hours away, only once a month, three weeks is too short a time to assure that Navajo voters will receive and be able to return their ballots by the deadline, especially given that many Navajo voters may need to get assistance translating the ballot and voting.

51.     Mail sent from some rural locations in San Juan County, in which there is a mail drop box but no official mail-processing center, is not date stamped until it reaches a mail-processing center in Arizona.

52.     Delays in date stamping create significant uncertainty and risk that rural voters will not have sufficient time to return their ballots compared to voters in more urbanized parts of the County.

53.     The Utah election code considers a ballot returned by mail valid only if it is clearly postmarked before Election Day, or otherwise clearly marked by the post office as received by the post office before Election Day, and received in the office of the election officer before noon on the day of the official canvass.

54.     Additionally, upon information and belief, many of the ballots sent to Navajo residents living in remote areas who lacked traditional street addresses were returned by the post office as undeliverable in 2014.

55.     Upon information and belief, the County knowingly sent ballots to bad addresses for approximately 8 percent (or about 500) voters in the County and was aware that most of those ballots would be returned as undeliverable.

56.     The County does not have effective processes for ensuring that it has the correct mailing addresses for voters or that ballots are received by rural voters with non-traditional addresses.

### Opposition to the Mail-Only Voting System

57.     In May 2014, the Navajo Nation passed a number of resolutions opposing the switch to mail-only elections in San Juan County.

58.     Also in May 2014, the Navajo Nation's Oljato Chapter and the Navajo Board of Election Supervisors passed resolutions opposing the decision by San Juan County to conduct mail-only elections.

59.     On September 1, 2015, representatives of the Navajo Nation attended a County Commission meeting and shortly thereafter sent a letter communicating their opposition to mail-only elections and requesting polling places be re-opened.

60.     At the September 1, 2014 meeting, the County Commission represented that the County Clerk's office had conducted an empirical study showing the impact of the mail-only system on voters.  The study provided to the Navajo Nation did not contain any data but only included newspaper articles discussing mail-only election systems.

61.     In a September 4, 2015 letter to the County Clerk's office, the Navajo Nation reiterated its request that in-person voting be reinstated.  The letter noted that, under the mail-only ballot system, the County cannot fulfill its obligations under Section 203 of the Voting Rights Act to provide language assistance to Navajo voters.  The letter also requested that the

County take action and fully reinstate all polling places on the Navajo Nation by September 30, 2015.

62.     On September 14, 2015, the Lawyers' Committee for Civil Rights Under Law and the American Civil Liberties Union sent a letter to the County Clerk's office in support of the Navajo Nation's request to repeal the mail-only system and reinstate polling places.  The letter was hand delivered by a representative of the Navajo Nation during the County Commission's September 15, 2015 meeting.

63.     The County Clerk responded on October 1, 2015 stating that he would not be reopening polling places at that point and that he needed to give the issue more "time and consideration."

64.     On October 12, 2015, the Navajo Nation sent another letter to the County Clerk seeking clarification as to whether the Clerk would continue use of mail-only elections.

65.     The Navajo Nation has not received a response to its September 4 and October 1, 2015 letters to date.

66.     The issue of mail-only voting was again discussed at the February 16, 2016 County Commission meeting.  According to press reports, at that meeting, one of the commissioners shared that the State Director of Elections advised him that the state recommendation was that the County move away from using mail-only elections.  Despite this advice from the State Director of Elections, the County has still not committed to ending use of a mail-only ballot system.

**History of Racial Discrimination in San Juan County**

67.     In addition to the depressed socioeconomic status of Native Americans in San

Juan County discussed above, there is a long history of racial discrimination against Native

Americans in Utah, including discrimination in voting.

68.     Although the Indian Citizenship Act was passed in 1924 giving full rights of

citizenship to Native Americans, Indians living on a reservation were not considered residents of

Utah until 1956.

69.     Although San Juan previously had at-large county commission elections, the

current three-district board was created by a 1984 consent decree after the U.S. Department of

Justice sued the County.  Currently, one of the three commissioners is Navajo.

Officials in San Juan County have attempted to design districts so as to reduce the impact of

Native American votes by failing to provide equal representation for the Native American

population.  *See Navajo Nation, et al. v. San Juan County, et al.*, Case No. 2:12-cv-00039-DS

(D. Utah).  The District of Utah has found that the San Juan school board election districts and

county commission districts are unconstitutional under the equal protection clause.  *Navajo

Nation v. San Juan Cty.,* No. 2:12-cv-00039RJSDPB, 2016 WL 697120, at *16 (D. Utah Feb. 19,

2016).

**FIRST CLAIM FOR RELIEF**
**(52 U.S.C. § 10503 – Violation of Section 203 of the Voting Rights Act)**
**(By Plaintiffs PHILLIPS, FARLEY, W. SKOW, and M. SKOW against all Defendants)**

70.     Plaintiffs re-allege and incorporate by reference each and every allegation

contained in Paragraphs 1 through 70 above as if set forth fully herein.

71.     Section 203 of the Voting Rights Act, 52 U.S.C. § 10503, provides, in relevant

part, that if a covered state or political subdivision "provides [ ] registration or voting notices,

forms, instructions, assistance, or other materials or information relating to the electoral process, including ballots" that it

> provide them in the language of the applicable minority group as well as in the English language: *Provided,* That where the language of the applicable minority group is oral or unwritten or in the case of Alaskan natives and American Indians, if the predominant language is historically unwritten, the State or political subdivision is only required to furnish oral instructions, assistance, or other information relating to registration and voting.

52 U.S.C.A. § 10503.

72.     Defendants' failure to provide limited-English proficient Navajo speaking voters in San Juan County with effective language election assistance and information, as described above, constitutes a violation of Section 203 of the Voting Rights Act.

73.     The fact that Navajo is an unwritten language does not alleviate San Juan of its obligations under Section 203.  Rather, Section 203 requires jurisdictions with unwritten languages to furnish oral instructions, assistance, or other information relating to registration and voting in the relevant language.  52 U.S.C.A. § 10503.  According to Department of Justice guidelines, states and political subdivisions covered by Section 203 of the Voting Rights Act, 52 U.S.C. § 10503, must ensure that the language assistance offered is given "to the extent needed to enable members of the applicable language minority group to *participate effectively* in the electoral process."  28 C.F.R. § 55.20 (emphasis added).

74.     Unless enjoined and monitored by this Court, Defendants will continue to violate Section 203 of the Voting Rights Act by failing to provide the limited-English proficient Navajo speaking voters in San Juan County with the language election information and assistance necessary for their effective participation in the electoral process.

**SECOND CLAIM FOR RELIEF**
**(52 U.S.C. § 10301 – Violation of Section 2 of the Voting Rights Act)**
**(All Plaintiffs Against All Defendants)**

75.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in Paragraphs 1 through 75 above as if set forth fully herein.

76.     Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, protects Plaintiffs from denial or abridgment of the right to vote on account of race, color, or membership in a language minority group.  Section 2 provides, in relevant part:

> (a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgment of the right of any citizen of the United State to vote on account of race or color, or [membership in a language minority group].
> (b) A violation of subsection (a) of this section is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) of this section in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

52 U.S.C. § 10301.

77.     Native Americans are recognized as a language minority group under the Voting Rights Act.

78.     The County's use of mail-only elections creates burdens to voting that bear substantially more heavily on Navajo voters than upon white voters.

79.     The County's use of mail-only elections interacts with social and historical conditions to leave Navajo citizens with less opportunity than white voters to cast effective ballots and to have them counted.

80.     The County has failed to present a non-tenuous rationale for its decision to adopt mail-only elections.

81.     The use of mail-in elections, in the context of the differences in accessibility and socioeconomic conditions, leave Navajo residents with less opportunity to vote than white residents.

82.     Based upon the totality of the circumstances, the acts and/or omissions of Defendants have resulted in the denial or abridgment and will continue to result in the denial or abridgment, of the rights of the Plaintiffs to have an equal opportunity to participate in the electoral process and elect representatives of their choice in violation of Section 2 of the Voting Rights Act.

83.     Plaintiffs will continue to suffer the violation of their rights as alleged in the Complaint absent relief granted by the Court.

**THIRD CLAIM FOR RELIEF**
**(52 U.S.C. § 10303 – Violation of the Fundamental Right to Vote Protected by the Due Process and Equal Protection Clauses of the Fourteenth Amendment)**
**(All Plaintiffs Against All Defendants)**

84.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in Paragraphs 1 through 84 above as if set forth fully herein.

85.     San Juan County's mail-only system violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution because it mandates arbitrary and disparate treatment of voters, denies equal access to the right to vote to eligible citizens, and imposes *severe burdens* in time, inconvenience, expense, and access to the ballot upon voters who live in remote areas of the County and voters who require translation assistance from English to the Navajo language.

86.     The use of mail-only elections for San Juan County serves no compelling governmental interest and lacks substantial justification.

87.     The use of mail-only elections for San Juan County is not tailored to any compelling governmental interest.

88.     The San Juan County mail-only election system is unconstitutional because it imposes severe burdens as described above and is not narrowly tailored to a compelling, actual governmental interest in the least restrictive way.

89.     The burdens on the right to vote described above outweigh any interests or justifications that the County has advanced or can advance.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that the Court:

1.     Enter judgment in favor of Plaintiffs and against Defendants on the claims for relief as alleged in this Complaint;

2.     Enter judgment declaring that Defendants' closure of polling places and maintenance of a mail-only voting system in San Juan County (1) violates Section 203 of the Voting Rights Act, 52 U.S.C. § 10503; (2) violates Section 2 of the Voting Rights Act, 52 U.S.C. § 10301; and (3) violates the fundamental right to vote as protected by the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution;

3.     Grant Plaintiffs preliminary and/or permanent injunctive relief by ordering that Defendants (1) reopen polling sites equally accessible to Navajo voters as to white voters and (2) fully comply with their obligations under Section 203 of the Voting Rights Act, 52 U.S.C. § 10503, to provide full translation, interpretation and assistance services to Navajo speaking voters prior to the 2016 state and county primary elections and for all future elections;

4.     Order the County to provide audio translations in Navajo of the voter services website, the voter registration form, the ballots, and other voter information.

5.      Retain jurisdiction over Defendants for such period of time as may be appropriate

to ensure Defendants' compliance with relief ordered by this Court;

6.      Award Plaintiffs their reasonable attorneys' fees and costs pursuant to 42 U.S.C. §

1988 and 52 U.S.C. § 10310(e); and

7.      Grant Plaintiffs such other and further relief as may be just and equitable.

Dated this 25th day of February, 2016.

                         RESPECTFULLY SUBMITTED,


                         _____s/ John Mejia_____
                         John Mejia (Bar No. 13965)
                         Leah Farrell (Bar No. 13696)
                         American Civil Liberties Union of Utah
                         355 North 300 West
                         Salt Lake City, UT 84103
                         T: (801) 521-9862
                         jmejia@acluutah.org
                         lfarrell@acluutah.org

                         M. Laughlin McDonald*
                         American Civil Liberties Union Foundation
                         2700 International Tower
                         229 Peachtree Street, NE
                         Atlanta, GA 30303
                         T: (404) 500-1235
                         lmcdonald@aclu.org

                         Ezra D. Rosenberg*
                         M. Eileen O'Connor*
                         Arusha Gordon*
                         Lawyers' Committee for Civil Rights Under Law
                         1401 New York Ave., Suite 400
                         Washington, D.C. 20005
                         T: (202) 662-8600
                         erosenberg@lawyerscommittee.org
                         eoconnor@lawyerscommittee.org
                         agordon@lawyerscommittee.org

                         Maya Kane*

10 Town Square, #52
Durango, Colorado  81301
T: (970) 946-5419
mayakanelaw@gmail.com

William A. Rudnick*
DLA Piper LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, IL 60601
T: (312) 368-4000
william.rudnick@dlapiper.com

Raymond M. Williams*
DLA Piper LLP (US)
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, PA 19103
T: (215) 656-3300
raymond.williams@dlapiper.com

*Pro hac vice motion to follow