Jesse C. Trentadue (#4961)
Carl F. Huefner (#1566)
Britton R. Butterfield (#13158)
**SUITTER AXLAND, PLLC**
8 East Broadway, Suite 200
Salt Lake City, UT  84111
Telephone: (801) 532-7300
Facsimile: (801) 532-7355
E-Mail: jesse32@sautah.com
E-Mail: chuefner@sautah.com
E-Mail: bbutterfield@sautah.com

*Attorneys for Defendants*

---

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

---

|  |  |
|---|---|
| NAVAJO NATION HUMAN RIGHTS COMMISSION; PEGGY PHILLIPS; MARK MARYBOY; WILFRED JONES; TERRY WHITEHAT; BETTY BILLIE FARLEY; WILLIE SKOW; and MABEL SKOW,<br><br>Plaintiffs,<br><br>v.<br><br>SAN JUAN COUNTY; JOHN DAVID NIELSON, in his official capacity as San Juan County Clerk; and PHIL LYMAN, BRUCE ADAMS, and REBECCA BENALLY, in their official capacities as San Juan County Commissioners,<br><br>Defendants. | **DEFENDANTS' COUNTERCLAIM FOR DECLARATORY and OTHER RELIEF**<br><br>Case No. 2:16-cv-00154 JNP<br><br>Judge Jill N. Parrish<br><br>Magistrate Judge Brooke C. Wells<br><br>**TRIAL BY JURY DEMANDED** |

SAN JUAN COUNTY; JOHN DAVID          :
NIELSON; PHIL LYMAN, BRUCE           :
ADAMS; and REBECCA BENALLY           :
                                     :
          Counterclaim Plaintiffs,   :
                                     :
v.                                   :
                                     :
NAVAJO NATION HUMAN RIGHTS           :
COMMISSION; PEGGY PHILLIPS; MARK     :
MARYBOY; WILFRED JONES; TERRY        :
WHITEHAT; BETTY BILLIE FARLEY;       :
WILLIE SKOW; and MABEL SKOW,         :
                                     :
          Counterclaim Defendants.   :
                                     :

COMES NOW Defendants San Juan County, Utah; John David Nielson; Phil Lyman; Bruce Adams; and Rebecca Benally (collectively, "Counterclaim Plaintiffs") pursuant to *Federal Rules of Civil Procedure* 13, 19, 20, 57 and 28 U.S.C. §§ 2201 and 2202 and assert the following *Counterclaims* against the Navajo Nation Human Rights Commission, Peggy Philips, Mark Maryboy, Wilfred Jones, Terry Whitehat, Betty Billie Farley, Willie Skow and Mabel Skow (collectively "Counterclaim Defendants").

## JURISDICTION AND VENUE

1.      This case arises under the *Constitution* and laws of the United States.  This Court has subject-matter jurisdiction over these *Counterclaim*s pursuant to 28 U.S.C §§ 1331 and 1343, as well as 52 U.S.C. §§10301, 10308(f) and 10503.

2.      The Court also enjoys pendent and/or ancillary jurisdiction over these

*Counterclaims* pursuant to *Federal Rule of Civil Procedure* 13.

3.      Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) because a substantial part of the events or omissions giving rise to Counterclaim Plaintiffs' claims occurred, and are occurring, in this District.

## PARTES

4.      San Juan County, Utah is a political subdivision of the State of Utah.

5.      Counterclaim Plaintiff Rebecca Benally is a San Juan County Commissioner who resides in San Juan County, Utah.  Counterclaim Plaintiff Benally is suing in her official capacity on behalf of San Juan County and its registered voters.  Counterclaim Plaintiff Benally is also suing in her individual capacity.

6.      As a San Juan County Commissioner, Counterclaim Plaintiff Rebecca Benally is one of  the three executive officers for San Juan County, Utah.

7.      Counterclaim Plaintiff Rebecca Benally is also a member of the Navajo Nation.

8.      Counterclaim Plaintiff Rebecca Benally is the first female member of the Navajo Nation to be elected to the office of County Commissioner.

9.      Counterclaim Plaintiff Bruce Adams is a San Juan County Commissioner who resides in San Juan County, Utah.  Counterclaim Plaintiff Adams is suing in his official capacity on behalf of San Juan County and its registered voters.

10.      As a San Juan County Commissioner, Counterclaim Plaintiff Adams is one of the three executive officers for San Juan County, Utah.

11.      Counterclaim Plaintiff Phil Lyman is a San Juan County Commissioner who

resides in San Juan County, Utah. Counterclaim Plaintiff Lyman is suing in his official capacity on behalf of San Juan County and its registered voters.

12.     As a San Juan County Commissioner, Counterclaim Plaintiff Lyman is one of the three executive officers for San Juan County, Utah.

13.     Counterclaim Plaintiff John David Nielson is the San Juan County Clerk-Auditor who  resides in San Juan County, Utah.  Counterclaim Plaintiff Nielson is suing in his official capacity on behalf of San Juan County and its registered voters.

14.     As the San Juan County Clerk-Auditor, Counterclaim Plaintiff Nielson oversees and administers elections within San Juan County, Utah.

15.     Counterclaim Defendant Navajo Nation Human Rights Commission is an office within the legislative branch of the Navajo Nation.

16.     Counterclaim Defendant Peggy Phillips is a member of the Navajo Nation and a resident of San Juan County, Utah.

17.     Counterclaim Defendant Mark Maryboy is a member of the Navajo Nation and a resident of San Juan County, Utah.

18.     Counterclaim Defendant Mark Maryboy is also a former San Juan County Commissioner.

19.     Counterclaim Defendant Mark Maryboy's brother, Kenneth Maryboy, is also a former San Juan County Commissioner.

20.     Counterclaim Defendant Wilfred Jones is a member of the Navajo Nation and a resident of San Juan County, Utah.

4

21.     Counterclaim Defendant Terry Whitehat is a member of the Navajo Nation and a resident of San Juan County, Utah.

22.     Counterclaim Defendant Betty Billie Farley is a member of the Navajo Nation and a resident of San Juan County, Utah.

23.     Counterclaim Defendant Willie Skow is a member of the Navajo Nation and a resident of San Juan County, Utah.

24.     Counterclaim Defendant Mabel Skow is a member of the Navajo Nation and a resident of San Juan County, Utah.

## DEMOGRAPHICS OF SAN JUAN COUNTY

25.     San Juan County is one of the largest counties in the United States.

26.     San Juan County is approximately 8,000 square miles in size.

27.     San Juan County is almost twice the size as the State of Connecticut.

28.     It takes approximately five hours to drive from Navajo Mountain in the southern part of San Juan County to Spanish Valley in the North, a distance of about 249 miles.

29.     Vast regions of San Juan County are uninhabited.

30.     Approximately 25% of the County's residents have a physical address; whereas the remainder use a Post Office Box for their address.

31.     According to the 2010 Census, the total population of San Juan County is just 14,746 people.

32.     According to the 2010 Census, the population of San Juan County is almost equally divided between American Indian and non- American Indian residents with American

5

Indians comprising approximately 50.39% of the total population.

33.     According to the 2010 Census, the total voting-age population of San Juan County is just approximately 9,729 people.

34.     According to the 2010 Census, the voting-age population of San Juan County is almost equally divided between American Indian and non-American Indian residents with American Indians comprising approximately 49.40% of the total population.

## NATURE OF THE CASE

35.     Counterclaim Defendants commenced an action against Counterclaim Plaintiffs in the United States District Court for the District of Utah for declaratory and injunctive relief which is captioned *Navajo Nation Human Right Commission et. al. v. San Juan County, et. al.*, Case No. 2:16CV00154 (hereinafter referred to as the "*Underlying Case*").

36.     In the *Underlying Case*, Counterclaim Defendants are challenging the legality of San Juan County's 2014 vote-by-mail procedure.

37.     In the *Underlying Case*, Counterclaim Defendants seek a ruling from this Court that San Juan County's vote-by-mail procedures violate Section 2 and 203 of the *Voting Rights Act*,[1] as well as the *Fourteenth Amendment* to the United States *Constitution*.

38.     In the *Underlying Case*, Counterclaim Defendants also seek a order from this Court requiring San Juan County to do away with voting by mail and to re-open polling locations.

---

[1]  52 U.S.C. §§ 10301 and 10503.

39.     Counterclaim Defendants, however, commenced the *Underlying Case* in bad faith insofar as they are challenging the legality of the County's use of vote-by-mail based upon procedures employed in the 2014 election cycle rather than the current procedures.

40.     None of the Counterclaim Defendants have ever provided any suggestions to the County about ways in which the County's election process, including the mail-in-ballot system, could be modified to increase Navajo voter participation or to better provide information and assistance to Navajo voters who are not proficient in English, but rather have only demanded that polling places be re-opened.

41.     In October of 2015, representatives of the United States Department of Justice met with San Juan County and State of Utah officials to review the County's vote-by-mail procedures.

42.     The United States Department of Justice had requested that meeting on behalf of the Navajo Nation.

43.     At that meeting, the United States Department of Justice  was acting as the agent for  and representative of the Navajo Nation.

44.     During that meeting, the parties discussed the implementation of additional procedures for the conduct of vote-by-mail in future San Juan County elections.

45.     As a result of those discussions, San Juan County has adopted and is in the process of implementing additional vote-by-mail procedures for the 2016 and future election cycles.

46.     For the 2016 and future election cycles in-person voting or polls will be available

at four locations with in San Juan County: Monticello, Montezuma Creek, Oljato and Navajo Mountain, Utah.

47.     The Montezuma Creek, Oljato and Navajo Mountain polls are all within the Navajo Reservation.

48.     For the 2016 and future election cycles, every resident of San Juan County will be within a one hour drive of a polling location.

49.     Navajo is traditionally an unwritten language, consequently for the 2016 and future election cycles, Navajo language assistance will be available at all four polling locations.

50.     For the 2016 and future election cycles, the County is already committed to provide Navajo-language ballots in audio form at all four polling locations, including making the audio Navajo ballot available at a link on the County's website, and provide a telephone number that Navajo voters can call for Navajo-language assistance.

51.     In addition to the foregoing measures, which were adopted and/or approved prior to Counterclaim Defendants commencement of the *Underlying Action*,  Edward Tapaha, the County's Navajo- Liaison and Election Coordinator, will attend pre-election meetings of all Utah Navajo Nation Chapters to explain, in the Navajo language, the vote-by-mail process, including the ballots.

52.     In addition to the foregoing measures, prior to the 2016 election cycle San Juan County will make the extensive use of paid Navajo-language announcements on two Navajo language radio stations (KNDN and KTTN) to explain in the Navajo language the vote-by-mail process and ballot, which the County had also done for the 2014 election cycle.

8

53.     The procedures that San Juan County has adopted and will implement for the 2016 and future election cycles fully complies with the requirements of both the *Voting Rights Act*, and the *Fourteenth Amendment* to the United States *Constitution*.

54.     As agent for and representative of the Navajo Nation, he Department of Justice has expressed no concerns to San Juan County or any County official about the procedures that the County has implemented for the 2016 and future election cycles and is conspicuous by its absence as a plaintiff in the *Underlying Case*.

55.     Furthermore, the results from the 2014 election showed a substantial increase in voter turn out as a result of allowing voters the option of voting by mail, especially among Navajo voters.

56.     In fact, during the 2014 election the number of Navajo voting actually doubled compared to previous elections without the vote-by-mail option.

57.     This significant increase in voter participation occurred despite the fact that the 2014 election was not a national election which tends to produce a higher number of voters.

58.     The increased voter participation among Navajo voters is attributable in part to the fact that the mail-in-ballot process allows voters who work away from their homes on the Navajo Reservation or who are away at college or in the military, to participate in elections without having to appear at a polling place or make advance application for an absentee ballot.

59.     The increased voter participation among Navajo voters is also attributable to the fact that the mail-in-ballot process allows elderly voters who have no means of transportation to a polling location to vote from their homes by use of the mail-in-ballot.

9

60.     There are benefits to a vote-by-mail system over an in-person voting system, including, among others: (a) providing voters the opportunity to consider their election decisions over a longer period of time,; (b) accommodating the needs of voters who regularly work outside of the immediate area of their residence, are at school or in the military, without their having to apply personally for an absentee ballot which may be particularly of benefit to a significant number of Navajo voters who work away from their homes due to the limited availability of jobs in San Juan County; (c)  allowing voters make to their ballot decisions away from candidates campaign efforts in close proximity to polling places; and (d) allowing limited-English proficiency voters to seek assistance from family members or other trusted acquaintances if they so choose rather than having to rely on interpreters provided by the County.

## BAD FAITH

61.     In the *Underlying Action*, Counterclaim Defendant Phillips alleges that she did not receive her ballot in the 2014 election and was unable to vote.

62.     But in truth and fact, Counterclaim Defendant Philips voted by mail-in-ballot in both the 2014 general and 2015 municipal elections.

63.     In the *Underlying Action*, Counterclaim Defendant Phillips alleges that she would have to travel approximately four hours round trip to a polling location in order to vote in-person.

64.     But in truth and fact, Counterclaim Defendant Philips lives within a one-hour drive of a polling location where she can vote in-person.

65.     In the *Underlying Action*, Counterclaim Defendant Phillips alleges that she is not comfortable voting in English.

10

66.     But in truth and fact, prior to the County going to a vote-by-mail election system Counterclaim Defendant Philips has acted as a Navajo interpreter for in-person voting as well as an election judge for which services she was paid by San Juan County.

67.     In the *Underlying Action*, Counterclaim Defendant Maryboy alleges that he prefers to vote in person rather than vote-by-mail.

68.     But in truth and fact, Counterclaim Defendant Maryboy voted by mail in the 2014 general election.

69.     In the *Underlying Action*, Counterclaim Defendant Maryboy alleges that he would have to travel approximately two hours round trip to a polling location in order to vote in-person.

70.     But in truth and fact Counterclaim Defendant Maryboy lives within a one-hour drive of a polling location where he can vote in-person.

71.     In the *Underlying Action*, Counterclaim Defendant Jones alleges that he prefers to vote in person rather than vote-by-mail.

72.     But in truth and fact, Counterclaim Defendant Jones voted by mail in both the 2014 primary and general elections.

73.     In the *Underlying Action*, Counterclaim Defendant Jones alleges that he has difficulty getting to the post office mail his ballot because the roads are muddy when it rains. Counterclaim Defendant Jones prefers to vote in person rather than vote-by-mail.

74.     But in truth and fact, Counterclaim Defendant Jones lives less than one-quarter from the paved road and has not alleged that it is difficult for him to otherwise go to the post office to pick up his mail.

11

75.     In the *Underlying Action*, Counterclaim Defendant Jones alleges that he would have to travel over two hours round trip to a polling location in order to vote in-person.

76.     But in truth and fact, Counterclaim Defendant Jones lives within a one-hour drive of a polling location where he can vote in-person.

77.     In the *Underlying Action*, Counterclaim Defendant Whitehat alleges that he prefers to vote in person rather than vote-by-mail.

78.     But in truth and fact, Counterclaim Defendant Whitehat voted by mail in the 2012 primary and general elections as well as the 2014 general election.

79.     Prior to the 2014 election, Counterclaim Defendant Whitehat even signed an *Affidavit* stating that because he was employed outside of San Juan County he preferred to vote by absentee ballot in future elections.

80.     Also in truth and fact, Counterclaim Defendant Whitehat did vote-by-mail by use of an absentee ballot in 2012.

81.     In the *Underlying Action*, Counterclaim Defendant Farley  alleges that she would have to travel approximately four hours round trip to a polling location in order to vote in-person.

82.     But in truth and fact, Counterclaim Defendant Farley lives within a one-hour drive of a polling location where she can vote in-person.

83.     In the *Underlying Action*, Counterclaim Defendant Farley alleges that she prefers to vote in person rather than vote-by-mail.

84.     But in truth and fact, Counterclaim Defendant Farley voted by mail in both the 2014 primary and general elections.

12

85.     In the *Underlying Action*, Counterclaim Defendant Willie Skow alleges that he prefers to vote in person rather than vote-by-mail.

86.     But in truth and fact, Counterclaim Defendant Willie Skow voted by mail in both the 2014 primary and general elections.

87.     In the *Underlying Action*, Counterclaim Defendant Willie Skow alleges that he would have to travel approximately two hours round trip to a polling location in order to vote in-person.

88.     But in truth and fact, Counterclaim Defendant Willie Skow lives within a one-our drive of a polling location where he can vote in-person.

89.     In the *Underlying Action*, Counterclaim Defendant Mabel Skow alleges that she prefers to vote in person rather than vote-by-mail.

90.     But in truth and fact, Counterclaim Defendant Mabel Skow voted by mail in the 2014 primary and general elections as well as the 2015 municipal election.

91.     In the *Underlying Action*, Counterclaim Defendant Mabel Skow alleges that she would have to travel approximately two hours round trip to a polling location in order to vote in-person.

92.     But in truth and fact, Counterclaim Defendant Mabel Skow lives within a one-our drive of a polling location where she can vote in-person.

## CONSPIRATORS

93.     San Juan County is comprised of three County Commission Districts, with the voters in each District electing a County Commission.

13

94.     San Juan County Commission District Three is home to a majority of the County's Navajo voters.

95.     Historically, Counterclaim Defendants Mark Maryboy, his brother Kenneth Maryboy and their political ally Manual Morgan have controlled the election of the County Commissioner from District Three.

96.     Counterclaim Defendants Mark Maryboy, his brother Kenneth Maryboy and their political ally Manual Morgan did so by, among other things, being present at polling locations on election day distributing food and other items as enticement to voters to vote for them.

97.     In 2014, Counterclaim Plaintiff Benally was elected to the office of County Commissioner from District Three.

98.     Prior to the election of Counterclaim Plaintiff Benally as the County Commissioner from District Three, that office had always been held by Counterclaim Defendant Mark Maryboy, his brother Kenneth Maryboy and/or Manual Morgan.

99.     However, during the 2014 election Commissioner Benally was able to defeat Kenneth Maryboy and Manual Morgan as a direct result of the increased voter participation due to mail-in-ballots.

100.     Thereafter, upon information and belief, Counterclaim Defendant Mark Maryboy, his brother Kenneth Maryboy and Manual Morgan met and agreed between and among themselves to challenge the County's use of vote-by-mail.

101.     They did so for the express purpose of controlling the election of the County Commissioner from District Three by denying Navajo voters the right to vote-by-mail thereby

14

reducing the number of voters in future elections for the office of County Commissioner from District Three.

102.    Upon information and belief, this conspiracy was formed in the Spring of 2015.

103.    Leonard Gorman ("Gorman") is Executive Director of the Navajo Human Rights Commission.

104.    In the Summer of 2015, Gorman joined in and became part of this conspiracy by agreeing to have the Navajo Human Rights Commission fund the *Underlying Action* for the purpose of suppressing the participation of many Navajo voters by interfering with and/or otherwise depriving them of their right and ability to vote-by-mail.

105.    Thereafter, Counterclaim Defendant Mark Maryboy, Kenneth Maryboy, Manual Morgan and Leonard Gorman set about fabricating a sham lawsuit to challenge San Juan County's use of vote-by-mail.

106.    Counterclaim Defendant Mark Maryboy, Kenneth Maryboy, Manual Morgan and Leonard Gorman were aided and abetted in this scheme by the Navajo Human Rights Commission as well as Counterclaim Defendants Phillips, Jones, Whitehat, Farley, Willie Skow and Mabel Skow all of whom agreed to take part in that conspiracy which was intended to hinder the ability of Navajo citizens to fully participate in the election process.

107.    The overt acts committed by Counterclaim Defendant Mark Maryboy, Counterclaim Defendant Phillips, Counterclaim Defendant Jones, Counterclaim Defendant Whitehat, Counterclaim Defendant Farley, Counterclaim Defendant Willie Skow, Counterclaim Defendant and Mabel Skow, Manual Morgan, Leonard Gorman, and the Navajo Human Rights

15

Commission in furtherance of this conspiracy consisted of, among other things, fabricating

claims against Counterclaim Plaintiffs which resulted in their bring of the *Underlying Action*.

108.    This conspiracy and overt acts committed in furtherance thereof were intended to

deny Navajo voters both the equal protection of the laws and/or the equal privileges and

immunities of the laws in violation of 42 U.S.C. §§ 1981 and 1985(3), to unreasonably hinder the

ability of Navajo citizens in San Juan County to participate in the political process, and to insure

the election of Counterclaim Defendant Mark Maryboy, Kenneth Maryboy and/or Manual

Morgan to the office of County Commissioner for District Three.

109.    This conspiracy and overt acts committed in furtherance thereof were also in

violation of 52 U.S.C. § 10307(b).

### FIRST CLAIM FOR DECLARATORY RELIEF
**(By Counterclaim Plaintiffs Against All Counterclaim Defendants)**

110.    Counterclaim Plaintiffs re-allege and incorporate by reference each and every

allegation contained in Paragraph 1 though 109 above as if set forth fully herein.

111.    An existing and actual controversy within the Court's jurisdiction exists between

Counterclaim Plaintiffs and Counterclaim Defendants concerning the legality of San Juan

County's vote-by-mail procedures.

112.    By this *Counterclaim*, Counterclaim Plaintiffs seek a declaration from this Court

that San Juan County's vote-by-mail procedures as described herein above fully comply with

both the *Voting Rights Act* and the *Fourteenth Amendment* of the United States *Constitution*.

113.    In addition, Counterclaim Plaintiffs also seek an award of their attorneys' fees

pursuant to 42 U.S.C. § 1988 and 52 U.S.C. §10310(e).

## SECOND CLAIM FOR DECLARATORY RELIEF
### (By Counterclaim Plaintiffs Against All Counterclaim Defendants)

114.    Counterclaim Plaintiffs re-allege and incorporate by reference each and every allegation contained in Paragraph 1 though 113 above as if set forth fully herein.

115.    By this *Counterclaim*, Counterclaim Plaintiffs seek a finding by the Court that the *Underlying Action* is without merit and was not brought in good faith.

116.    By this *Counterclaim*, Counterclaim Plaintiffs seek a finding by the Court that they are entitled to an award of their attorneys' fees pursuant to Utah Code § 78B-5-825.

## THIRD  CLAIM  FOR CIVIL RIGHTS
### (By Counterclaim Plaintiff Benally Against All Counterclaim Defendants)

117.    Counterclaim Plaintiff Benally re-alleges and incorporate by reference each and every allegation contained in Paragraph 1 though 116 above as if set forth fully herein.

118.    Even before the filing of the *Underlying Case*, Counterclaim Defendants have engaged in an effort to undermine Counterclaim Plaintiff Benally's support among Navajo voters and seeking support for Kenneth Maryboy as a replacement for Counterclaim Plaintiff Benally based on spurious allegations that she would have to step down as a result of the anticipated filing of the *Underlying Case.*

119.    Counterclaim Defendant Mark Maryboy has engaged in an email campaign of harassment and belittlement of Counterclaim Plaintiff Benally, which emails have been copies to others.

120.    As alleged herein above, the actions of Counterclaim Defendants and Gorman

were and are in violation of 42 U.S.C. §§ 1981 and 1985(3) as well as 52 U.S.C. § § 10307(b).

121.    As described herein above, Counterclaim Defendants' actions and those of their co-conspirator Gorman were intended to injure and have injured Counterclaim Plaintiff Benally.

122.    As a natural, direct and proximate cause of Counterclaim Defendants' actions and those of their co-conspirator Gorman, Counterclaim Plaintiff Benally has been harmed and damaged in an amount to be proven at trial.

123.    As described herein above, Counterclaim Defendants actions and those of their co-conspirator Gorman towards Counterclaim Plaintiff Benally having been otherwise committed and/or carried out with malice and the intent to harm Counterclaim Plaintiff Benally, she is entitled to an ward of punitive damages in an amount sufficient to punish and/or to make an example of Counterclaim Defendants.

124.    Counterclaim Plaintiff Benally is entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988 and 52 U.S.C. §10310(e).

### FOURTH  CLAIM  FOR ABUSE OF PROCESS
**(By Counterclaim Plaintiff Benally Against All Counterclaim Defendants)**

125.    Counterclaim Plaintiff Benally re-alleges and incorporates by reference each and every allegation contained in Paragraph 1 though 124 above as if set forth fully herein.

126.    Counterclaim Defendants' false, baseless, unfounded and otherwise outrageous lawsuit against Counterclaim Plaintiff is an abuse of process in that the *Underlying Action* was commenced and is being continued for the improper, unlawful and ulterior purpose of allowing Counterclaim Defendant Maryboy, Kenneth Maryboy and Manual Morgan to reassume control of

the election of a County Commissioner from District Three by suppressing the vote of her supporters.

127.    As described herein above, Counterclaim Defendants' actions and those of Gorman were intended to injure and have injured Counterclaim Plaintiff Benally.

128.    As a natural, direct and proximate cause of Counterclaim Defendants' actions and those of Gorman Counterclaim Plaintiff Benally has been harmed and damaged in an amount to be proven at trial.

129.    As described herein above, Counterclaim Defendants actions and those of Gorman towards Counterclaim Plaintiff Benally having been otherwise committed and/or carried out with malice and the intent to harm Counterclaim Plaintiff Benally, she is entitled to an award of punitive damages in an amount sufficient to punish and/or to make an example of Counterclaim Defendants.

## JURY  DEMAND

Counterclaim Plaintiffs hereby demand trial by jury.

## PRAYER

WHEREFORE, Counterclaim Plaintiffs pray for *Judgment* against the Counterclaim Defendants as follows:

1.    For a declaration under 28 U.S.C. §§ 2201 and 2202 that San Juan County's vote-by-mail procedure does not violate either the provisions of the *Voting Rights Act* or the United States *Constitution*, and that the County is legally authorized to conduct future elections using its vote-by-mail procedures.

19

2.     For a declaration under 28 U.S.C. §§ 2201 and 2202 that the *Underlying Action* is without merit and was not brought in good faith so as to entitle Counterclaim Plaintiffs to an award of attorneys' fees pursuant to *Utah Code* § 78B-5-825.

3.     For an award of compensatory and punitive damages to Counterclaim Plaintiff Benally in amounts to be determined at trial.

4.     For an award of attorneys' fees to Counter Defendants pursuant to *Utah Code* § 78B-5-825. 42 U.S.C. § 1988 and/or 52 U.S.C. §10310(e).

5.     For such other and further relief as the Court deems just and merited.

DATED this 31st day of March, 2016.

SUITTER AXLAND, PLLC

 /s/ jesse c. trentadue
Jesse C. Trentadue
Carl F. Huefner
Britton R. Butterfield
*Attorneys for Defendants*

*T:\7000\7788\1\COUNTERCLAIM.wpd*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 31st day of March, 2016, I electronically filed the foregoing document with the U.S. District Court for the District of Utah.  Notice will automatically be electronically mailed to the following individual(s) who are registered with the U.S. District Court CM/ECF System:

John Mejia (Bar No. 13965)
Leah Farrell (Bar No. 13696)
American Civil Liberties Union of Utah
355 North 300 West
Salt Lake City, UT 84103
T: (801) 521-9862
jmejia@acluutah.org
lfarrell@acluutah.org
*Attorneys for Plaintiffs*

Ezra D. Rosenberg*
M. Eileen O'Connor*
Arusha Gordon*
Lawyers' Committee for Civil Rights Under Law
1401 New York Ave., Suite 400
Washington, D.C. 20005
T: (202) 662-8600
erosenberg@lawyerscommittee.org
eoconnor@lawyerscommitee.org
agordon@lawyerscommittee.org
*Attorneys for Plaintiffs*

M. Laughlin McDonald*
American Civil Liberties Union Foundation
2700 International Tower
229 Peachtree Street, NE
Atlanta, GA 30303
T: (404) 500-1235
lmcdonald@aclu.org
*Attorneys for Plaintiffs*

Maya Kane*
10 Town Square, #52
Durango, Colorado 81301
T: (970) 946-5419
mayakanelaw@gmail.com
*Attorneys for Plaintiffs*

William A. Rudnick*
DLA Piper LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, IL 60601
T: (312) 368-4000
william.rudnick@dlapiper.com
*Attorneys for Plaintiffs*

Raymond M. Williams*
DLA Piper LLP (US)
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, PA 19103
T: (215) 656-3300
raymond.williams@dlapiper.com
*Attorneys for Plaintiffs*

/s/ jesse c. trentadue