John Mejia (Bar No. 13965)
Leah Farrell (Bar No. 13696)
American Civil Liberties Union of Utah
355 North 300 West
Salt Lake City, UT 84103
T: (801) 521-9862
jmejia@acluutah.org
lfarrell@acluutah.org

M. Laughlin McDonald*
American Civil Liberties Union Foundation
2700 International Tower
229 Peachtree Street, NE
Atlanta, GA 30303
T: (404) 500-1235
lmcdonald@aclu.org

Ezra D. Rosenberg*
M. Eileen O'Connor*
Arusha Gordon*
Lawyers' Committee for Civil Rights Under Law
1401 New York Ave., Suite 400
Washington, D.C. 20005
T: (202) 662-8600
erosenberg@lawyerscommittee.org
eoconnor@lawyerscommitee.org
agordon@lawyerscommittee.org

Maya Kane*
10 Town Square, #52
Durango, Colorado  81301
T: (970) 946-5419
mayakanelaw@gmail.com

William A. Rudnick*
DLA Piper LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, IL 60601
T: (312) 368-4000
william.rudnick@dlapiper.com

Raymond M. Williams*
DLA Piper LLP (US)
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, PA 19103
T: (215) 656-3300
raymond.williams@dlapiper.com

*Admitted pro hac vice

**ATTORNEYS FOR PLAINTIFFS**

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| NAVAJO NATION HUMAN RIGHTS COMMISSION; PEGGY PHILLIPS; MARK MARYBOY; WILFRED JONES; TERRY WHITEHAT; BETTY BILLIE FARLEY; WILLIE SKOW; and MABEL SKOW, <br><br> Plaintiffs, <br><br> v. <br><br> SAN JUAN COUNTY; JOHN DAVID NIELSON, in his official capacity as San Juan County Clerk; and PHIL LYMAN, BRUCE ADAMS, and REBECCA BENALLY, in their official capacities as San Juan County Commissioners, <br><br> Defendants. | Case No. 2:16-cv-00154 JNP <br><br><br> **PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS CLAIMS OF NAVAJO NATION HUMAN RIGHTS COMMISSION** |

Plaintiffs Navajo Nation Human Rights Commission, Peggy Phillips, Mark Maryboy, Wilfred Jones, Terry Whitehat, Betty Billie Farley, Willie Skow, and Mabel Skow ("Plaintiffs") respectfully submit this memorandum of law in opposition to Defendants' Motion to Dismiss Claims of Plaintiff Navajo Human Rights Commission (Defs.' Mot. Dismiss, ECF No. 46). As demonstrated below, Defendants' motion is without merit and should be denied in its entirety.

**I.     INTRODUCTION**

As set forth in Plaintiffs' Complaint (ECF No. 2), Defendants violated Section 203 of the Voting Rights Act ("Section 203"), Section 2 of the Voting Rights Act ("Section 2"), and the Fourteenth Amendment to the United States Constitution by closing polling places accessible to the Navajo Nation Reservation and adopting mail-only voting. Compl. ¶ 1, ECF No. 2. As a

result of the changes in voting procedures, Plaintiff Navajo Nation Human Rights Commission ("Commission") has devoted significant resources to gaining information about the changes and educating Navajo citizens about the mail-only ballot system, pursuant to the organization's mission of protecting and promoting the rights of citizens of the Navajo Nation.  Compl. ¶ 13, ECF No. 2.  Defendants' allegation that the Commission lacks standing because it has not sustained a "personal injury" suggests Defendants have a fundamental misunderstanding of one of the constitutional requirements for standing.  Defendants' Motion to Dismiss ignores the well-settled principle that an organization can satisfy the standing requirement of suffering an injury if the organization itself has suffered an injury, as is the case here.  *Havens Realty Corp. v. Coleman,* 455 U.S. 363, 378-79 (1982).  Additionally, Defendants' allegation that the Commission lacks the "capacity" to sue is hollow, as Defendants offer no authority to suggest that the Commission lacks the capacity to sue Defendants.

For these reasons, the Commission satisfies the requirements for standing and capacity.  Accordingly, the motion should be dismissed.

## II.   ARGUMENT

### A. The Commission Has Suffered an Injury in Fact

Defendants' claim that the Commission lacks standing to sue is without merit.  Article III of the Constitution limits the federal judiciary to hearing and deciding "cases" and "controversies."  U.S. Const. Art. III, § 2.  Central to the "case or controversy" requirement is the doctrine of standing.  "To establish Article III standing, a plaintiff must show (1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision."  *Susan B. Anthony List v. Driehaus*, 134 S. Ct. 2334, 2341, 189 L.Ed.2d 246, 255 (2014) (internal quotation marks and

brackets omitted); *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992). The only basis upon which Defendants challenge the Commission's standing to bring suit is the injury-in-fact requirement, which the Commission easily satisfies.

Courts have repeatedly recognized an organization's right to sue based on injuries the organization has suffered. "An organization has standing on its own behalf if it meets the standing requirements that apply to individuals." *Colorado Taxpayers Union, Inc. v. Romer*, 963 F.2d 1394, 1396 (10th Cir. 1992) (citing *Havens,* 455 U.S. at 378-79). An organization can demonstrate an injury "if defendant's illegal acts impair its ability to engage in its projects by forcing the organization to divert resources to counteract those illegal acts." *Common Cause of Colorado v. Buescher*, 750 F. Supp. 2d 1259, 1269 (D. Colo. 2010) (holding that a voter education organization has a standing to challenge a voter registration law) (quotation marks omitted); *see also Havens,* 455 U.S. at 379 (holding that an organization promoting equal access to housing through counselling and referral services has standing to sue the owners of an apartment complex who engaged in racially discriminatory practices); *Association of Data Processing Serv. Orgs., Inc. v. Camp,* 397 U.S. 150, 152 (1970) (holding that the organization's injury-in-fact could be "economic or otherwise"). An organization may also demonstrate standing "when a defendant's conduct makes it difficult or impossible for the organization to fulfill one of its essential purposes or goals." *Common Cause of Colorado,* 750 F. Supp. 2d at 1269.

The Commission has standing to sue based on injuries the organization has suffered. Defendants' claim that the Commission has not "allege[d] a personal and particularized injury" is incorrect; the Commission's basis for standing is established in the Complaint. The Commission has suffered an injury-in-fact because it has devoted significant resources to

3

counteract the harmful impact of the mail-only system and will continue to devote significant resources to counteract Defendants' actions if the Plaintiffs' requested relief is not granted.  As stated in the Complaint, the Commission has expended resources to educate Navajo voters about the mail-only system.  Compl. ¶ 13, ECF No. 2.  In 2015 alone, the Commission organized and staffed over 16 meetings across the Navajo portion of San Juan County to meet with Navajo citizens and collect facts about the mail-only system.  *Id*.  Staff of the Commission have had to travel hundreds of miles to meet with Navajo residents of San Juan County concerning the Defendants' actions*. Id*.  This expenditure of staff hours and financial resources represents a real and concrete injury suffered by the Commission.  *See*, *e.g.*, *Havens,* 455 U.S. at 379 (holding that an organizational plaintiff's claim in a complaint that the organization had to "devote significant resources to identify and counteract" defendant's practices was sufficient to demonstrate a "concrete and demonstrable injury").  As a result of its expenditure of staff hours and financial resources to address the mail-only system, the Commission is limited, and will continue to be limited, to devoting fewer resources to its other organizational activities.  Additionally, the Commission's work educating voters and collecting facts about the impact of the mail-only system falls squarely within the organization's mission to address discriminatory actions against Navajo Nation citizens.  Compl. ¶ 13, ECF No. 2.

**B.  The Commission Is Not Suing to Enforce the Rights of Others.**

Defendants' claim that the Commission lacks standing because "[t]he Commission cannot sue to enforce the rights of others" reveals their fundamental misunderstanding of Plaintiffs' claim.  Plaintiffs have not claimed that the Commission represents the members of the Navajo Nation or any other individuals; rather, the Commission has standing to sue on its own behalf based on the injury suffered by the organization due to Defendants' change in voting

4

procedures. Compl. ¶ 5, ECF No. 2; *see Havens,* 455 U.S. 363 (holding that an organization can have standing "in its own right" if it satisfies standing requirements applied to individuals).

## C. The Commission Is Not a "Non-Jural Entity."

Defendants state that "[t]he Commission is a non-jural entity because it is not a separate legal entity." Defs.' Mot. Dismiss 4, ECF Doc. No. 46. However, Defendants' claim that the Commission lacks the capacity to sue is without merit.

Federal Rule of Civil Procedure 17 states that, for all parties other than individuals or corporations, the capacity "to sue or be sued" is determined "by the law of the state where the court is located." Fed. R. Civ. P. 17(b)(3). However, if the entity is "a partnership or other unincorporated association with no such capacity under that state's law" that entity "may sue… to enforce a substantive right existing under the United States Constitution or laws." Fed. R. Civ. P. 17(b)(3)(A).

The Commission has capacity to sue under both Fed. R. Civ. P. 17(b)(3), as doing so is permitted by state law, and under subsection 17(b)(3)(A), as it is suing to enforce a substantive constitutional right. First, "the law of the state where the court is located" – Utah – is clear that organizations, such as the Commission, have capacity to sue. The relevant state law here, Utah Rule of Civil Procedure 17, states: "When two or more persons associated in any business either as a… partnership or other association, not a corporation, transact such business under a common name… they may sue or be sued by such common name." Utah R. Civ. P. 17(d). "'Business' is defined as 'a particular occupation or employment habitually engaged in for livelihood or gain'" which "'[b]y extension'" includes "'transactions or matters of a noncommercial nature.'" *Weber*

*Cnty. v. Ogden Trece*, 321 P.3d 1067, 1075 (Utah 2013) (quoting Black's Law Dictionary 226 (9th ed. 2009)).

In *Graham v. Davis County Solid Waste Management & Energy Recovery Special Service District*, the Court of Appeals of Utah found that the plaintiff organization – "an unincorporated, voluntary environmental watch-dog association" – fell "within the purview of the 'other association' language of [Utah] Rule 17(d)." 979 P.2d 363, 368 (Utah Ct. App. 1999). The court noted that by "acting under a common name for several years in monitoring and working to improve air quality in Davis County," the organization "was likely engaged in transacting business." *Id*. Here, the Commission is "acting under a common name" (i.e., the Navajo Nation Human Rights Commission) to "conduct business" by "monitoring and working to improve" San Juan County's election system.[1] The Commission therefore falls within the purview of Utah Rule 17(d) and has the capacity to sue.

Furthermore, even if Utah law did not recognize the capacity of the Commission to sue, the organization could still sue under Fed. R. Civ. P. 17(b)(3)(A) as the Commission is suing to "enforce a substantive right existing under the United States Constitution or laws [the right to equal voting opportunities]." Fed. R. Civ. P. 17(b)(3)(A).

---

[1] To support their assertion that the Commission does not have the "authority to maintain this action," Defendants cite two Arizona cases and one Michigan case. Defs.' Mot. Dismiss 5, n.11, ECF No. 46. However, all three cases hold that the determination regarding capacity to sue is dependent upon the respective state law. Defendants cite an Arizona case, *United States v. Maricopa County,* as authority in spite of the court stating that "State law generally determines a party's capacity to be sued." 915 F. Supp. 2d 1073, 1077 (D. Ariz. 2012) (citing Fed.R.Civ.P. 17(b)(3)). In *Maricopa County*, the court based its designation of a sheriff's department as a non-jural entity on Arizona law requiring explicit statutory authority for a governmental entity to have capacity to sue or be sued. *Id*. Similarly, in *Braillard v. Maricopa County,* another Arizona case, the court determined that the sheriff's office was not a separate legal entity with the capacity to sue or be sued because no "Arizona statute confers such power on [the sheriff's office] as a separate legal entity." 232 P.3d 1263, 1269 (Ariz. Ct. App. 2010). In *Vine v. County of Ingham,* the court relied on Michigan law to determine that the sheriff is a "constitutional officer," and the sheriff's department is immune from suit because it "does not exist" under the law. 884 F. Supp. 1153, 1158 (W.D. Mich. 1995). As the cases cited by Defendants suggest, courts look to state law to determine whether a governmental entity has the capacity to sue. Absent a statute explicitly limiting the Commission's ability to sue or be sued, which is not found in the Navajo Nation Code, the Commission has the capacity to sue.

Alternatively, if the Court looks to Navajo Nation law, rather than Utah state law, the Commission would still have the authority to bring a suit. Nothing in the Navajo Nation Code prohibits the Navajo Nation Human Rights Commission from bringing suit. Navajo Nation Code recognizes the capacity of "standing committees, commissions, and boards of the Navajo Council, [and] offices and programs of the Legislative Branch" to serve as parties in litigation. 2. N.N.C. § 1964. As a commission established in the Legislative Branch, the Commission has the capacity to sue under Navajo Nation law. 2. N.N.C. § 920. Furthermore, the Office of the Legislative Counsel of the Navajo Nation, which has the authority to provide legal advice and representation to the entities within the Legislative Branch, has recognized the capacity of the Commission to bring the current suit. 2. N.N.C. § 1964; *see Declaration of Levon Henry in Support of Plaintiffs' Opposition to Defendants' Motion to Dismiss the Claims of the Navajo Nation Human Rights Commission*, attached hereto as Ex. 1.

### III.   CONCLUSION

Defendants' motion to dismiss the Commission as a plaintiff should be denied because (1) the Commission has suffered a concrete injury as a result of Defendants' actions; (2) the Commission is not suing on behalf of others and courts have routinely recognized an organization's right to sue on its own behalf; and (3) Defendants offered no evidence suggesting that the Commission lacks the capacity to sue.

Respectfully submitted, this 6th day of May 2016.

BY:

s/John Mejia

John Mejia (Bar No. 13965)
Leah Farrell (Bar No. 13696)
American Civil Liberties Union of Utah
355 North 300 West
Salt Lake City, UT 84103
T: (801) 521-9862
jmejia@acluutah.org
lfarrell@acluutah.org

M. Laughlin McDonald*
American Civil Liberties Union Foundation
2700 International Tower
229 Peachtree Street, NE
Atlanta, GA 30303
T: (404) 500-1235
lmcdonald@aclu.org

Ezra D. Rosenberg*
M. Eileen O'Connor*
Arusha Gordon*
Lawyers' Committee for Civil Rights Under Law
1401 New York Ave., Suite 400
Washington, D.C. 20005
T: (202) 662-8600
erosenberg@lawyerscommittee.org
eoconnor@lawyerscommittee.org
agordon@lawyerscommittee.org

Maya Kane*
10 Town Square, #52
Durango, Colorado 81301
T: (970) 946-5419
mayakanelaw@gmail.com

William A. Rudnick*
DLA Piper LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, IL 60601
T: (312) 368-4000
william.rudnick@dlapiper.com

8

Raymond M. Williams*
DLA Piper LLP (US)
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, PA 19103
T: (215) 656-3300
raymond.williams@dlapiper.com

*Admitted pro hac vice

9