John Mejia (Bar No. 13965)
Leah Farrell (Bar No. 13696)
American Civil Liberties Union of Utah
355 North 300 West
Salt Lake City, UT 84103
T: (801) 521-9862
jmejia@acluutah.org
lfarrell@acluutah.org

M. Laughlin McDonald*
American Civil Liberties Union Foundation
2700 International Tower
229 Peachtree Street, NE
Atlanta, GA 30303
T: (404) 500-1235
lmcdonald@aclu.org

Ezra D. Rosenberg*
M. Eileen O'Connor*
Arusha Gordon*
Lawyers' Committee for Civil Rights Under
Law
1401 New York Ave., Suite 400
Washington, D.C. 20005
T: (202) 662-8600
erosenberg@lawyerscommittee.org
eoconnor@lawyerscommittee.org
agordon@lawyerscommittee.org

Maya Kane*
10 Town Square, #52
Durango, Colorado  81301
T: (970) 946-5419
mayakanelaw@gmail.com

William A. Rudnick*
DLA Piper LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, IL 60601
T: (312) 368-4000
william.rudnick@dlapiper.com

Raymond M. Williams*
DLA Piper LLP (US)
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, PA 19103
T: (215) 656-3300
raymond.williams@dlapiper.com

*Admitted *pro hac vice*

**ATTORNEYS FOR PLAINTIFFS**

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
CENTRAL DIVISION**

NAVAJO NATION HUMAN RIGHTS
COMMISSION; PEGGY PHILLIPS; MARK
MARYBOY; WILFRED JONES; TERRY
WHITEHAT; BETTY BILLIE FARLEY;
WILLIE SKOW; and MABEL SKOW,

                     Plaintiffs,

v.

SAN JUAN COUNTY; JOHN DAVID
NIELSON, in his official capacity as San Juan
County Clerk; and PHIL LYMAN, BRUCE
ADAMS, and REBECCA BENALLY, in their
official capacities as San Juan County
Commissioners,

                     Defendants.

Case No. 2:16-cv-00154 JNP

**MOTION TO DISMISS
COUNTERCLAIMS WITH
PREJUDICE**

---

## INTRODUCTION

Plaintiffs and Counterclaim Defendants Navajo Nation Human Rights Commission,

Peggy Phillips, Mark Maryboy, Wilfred Jones, Terry Whitehat, Betty Billie Farley, Willie Skow,

and Mabel Skow ("Counterclaim Defendants") move to dismiss, pursuant to Federal Rule of

Civil Procedure 12(b) and Local Rule 7-1, all four counterclaims brought by Defendants and

Counterclaim Plaintiffs San Juan County, John David Neilson, Phil Lyman, Bruce Adams, and

Rebecca Benally ("Counterclaim Plaintiffs") for the following reasons:

- Counterclaim Plaintiffs do not have standing to assert the First Claim.

- The Second Claim is not a claim at all; it is a defense.

- Counterclaim Plaintiff Benally is not allowed to bring the Third and Fourth Claims because she was not a party to the underlying action in her individual capacity and, moreover, she failed to allege facts to support the requisite element of each.

As detailed more fully below, these critical omissions are fatal to all of the Counterclaim Plaintiffs' allegations and mandate dismissal of the counterclaims with prejudice.

## STATEMENT OF FACTS

### A.  Complaint for Declaratory and Injunctive Relief

On February 25, 2016, Counterclaim Defendants filed a complaint for declaratory and injunctive relief to remedy Counterclaim Plaintiffs' ongoing violations of the Voting Rights Act ("VRA") and Fourteenth Amendment of the United States Constitution ("Complaint").  *See* Complaint for Declaratory and Injunctive Relief, ECF No. 2.  Counterclaim Defendants sued Counterclaim Plaintiffs Neilson, Lyman, Adams, and Benally in their official capacities only. *See id.*

In 2014, the County switched to a mail-only system for its elections.  *Id.* ¶ 28.  Under the mail-only election system, the only location to vote in-person in San Juan County, even on Election Day, is in the County seat of Monticello.[1]  *Id.* ¶ 7.  To reach Monticello, Navajo residents of San Juan County are required to travel, on average, more than twice as far to vote in person in comparison to white residents of San Juan County.  *Id.*  The significantly greater

---

[1] Counterclaim Defendants acknowledge that Counterclaim Plaintiffs claim in their Answer and Counterclaim to have opened three additional polling places in Navajo precincts in the County.  Answer ¶ 1, ECF No. 41; Counterclaim ¶¶ 46-47, ECF No. 40.  However, no documents to support this assertion were attached to Counterclaim Plaintiffs' filings and Counterclaim Defendants have been unable to find record of any decision confirming that three additional polling sites will be opened in publicly available County materials.  Counterclaim Defendants requested Counterclaim Plaintiffs provide documentary evidence but have not received any in response.  As such, Counterclaim Defendants filed a motion to expedite discovery in order to obtain any evidence supporting Counterclaim Plaintiffs' claims.  *See* Mot. to Expedite Disc., ECF No. 54.

average distance required for Navajo residents in San Juan County to reach the county seat of

Monticello, interacts with socioeconomic factors, including high rates of poverty and less access

to reliable public and private transportation, and the history of racial discrimination and hostility

toward Navajo, to place a severe burden upon Navajo residents who wish to vote in person. *Id*.

This burden falls substantially less heavily on white residents of San Juan County. *Id*. As

explained in the Complaint, Counterclaim Plaintiffs' adoption of the mail-only system

unreasonably hinders the ability of Navajo residents in San Juan County to participate effectively

in the political process on equal terms with white residents. *Id*. ¶ 2. Furthermore, because

Navajo is a traditionally unwritten language and the mail-only system implemented by

Counterclaim Plaintiffs fails to provide adequate oral assistance to limited English-proficient

Navajo voters, the current electoral scheme violates Section 203 of the Voting Rights Act, 52

U.S.C. § 10503. *Id*. ¶ 4.

Prior to filing the Complaint, several organizations corresponded with the County

regarding the mail-only elections. *See id*. ¶¶ 59, 61-65. The last correspondence by the County

Clerk prior to filing the Complaint of which Counterclaim Defendants are aware was dated

October 1, 2015, and in it, the clerk explained that that County was not planning to reopen

polling places at that time. *Id*. ¶¶ 63.

In light of these violations, Counterclaim Defendants seek, among other things, the

following remedies in their Complaint:

> (1) Judgment declaring that Counterclaim Plaintiffs' closure of polling places and
>
> maintenance of a mail-only voting system in San Juan County violates Section
>
> 203 of the Voting Rights Act, Section 2 of the Voting Rights Act, 52 U.S.C.
>
> § 10301, and the fundamental right to vote as protected by the due process and

equal protection clauses of the Fourteenth Amendment to the United States

Constitution; and

(2) Injunctive relief mandating that Counterclaim Plaintiffs reopen polling sites

equally accessible to Navajo voters as to white voters and full compliance with

the County's obligations under Section 203 of the Voting Rights Act to provide

full translation, interpretation and assistance services to Navajo speaking voters

for the 2016 state and county primary elections and for all future elections.

*Id.* at Prayer for Relief.

**B.  Counterclaim for Declaratory and Other Relief**

On March 31, 2016, Counterclaim Plaintiffs filed an unverified Counterclaim for

Declaratory and Other Relief ("Counterclaim").  *See* Counterclaim, ECF No. 40.  In the

Counterclaim, Counterclaim Plaintiffs allege, *inter alia*, that San Juan County "has adopted and

is in the process of implementing additional vote-by-mail procedures for the 2016 and future

election cycles;" that "in-person voting or polls will be available at four locations with[]in San

Juan County," three of which are within the Navajo Reservation, such that "every resident of San

Juan County will be within a one hour drive of a polling location;" and that "for the 2016 and

future election cycles, Navajo language assistance will be available at all four polling locations."

*Id*. ¶¶ 45-49.  Counterclaim Plaintiffs allege these measures "were adopted and/or approved prior

to Counterclaim Defendants['] commencement of the *Underlying Action*."  *Id*. ¶ 51 (emphasis in

original).

Further, Counterclaim Plaintiffs allege Counterclaim Defendants brought the underlying

action in bad faith because, in part, they voted by mail in the past.  *Id*. ¶¶ 61-92.  Finally,

Counterclaim Plaintiffs allege Counterclaim Defendants have engaged in a conspiracy, and filed

the underlying lawsuit in furtherance of said conspiracy, in an effort to control the election of the County Commissioner from District Three, a position currently held by Counterclaim Plaintiff Benally. *Id.* ¶¶ 93-109.

Counterclaim Plaintiffs assert the following claims for relief:

(1) First Claim for Declaratory Relief, brought by all Counterclaim Plaintiffs, seeking a declaration from this Court that San Juan County's vote-by-mail procedures fully comply with both the Voting Rights Act and the Fourteenth Amendment of the United States Constitution, along with an award of attorneys' fees pursuant to 42 U.S.C. § 1988 and 52 U.S.C. § 10310(e);

(2) Second Claim for Declaratory Relief, seeking a finding by the Court that the underlying action is without merit and was not brought in good faith, along with a finding that they are entitled to an award of attorneys' fees pursuant to Utah Code § 78B-5-825;

(3) Third Claim for Civil Rights violations, brought by Counterclaim Plaintiff Benally, under 42 U.S.C. §§ 1981 and 1985(3) and 52 U.S.C. § 10307(b), based on Counterclaim Defendants' alleged conspiracy to undermine Ms. Benally's support among Navajo voters and to seek support for Kenneth Maryboy, Counterclaim Defendant Maryboy's brother, along with punitive damages and an award of attorneys' fees pursuant to 42 U.S.C. § 1988 and 52 U.S.C. § 10310(e); and

(4) Fourth Claim for Abuse of Process, brought by Counterclaim Plaintiff Benally, based on Counterclaim Defendants' allegedly using the underlying action to allow Counterclaim Defendant Maryboy, Kenneth Maryboy, and Manual

Morgan to reassume control of the election of a County Commissioner from

District Three by suppressing the vote of her supporters, along with punitive

damages.

*See id*. ¶¶ 110-129.  Counterclaim Plaintiff Benally generally asserts that she is suing in in both

her official and individual capacities, but she does not specify which counterclaims she is

attempting to bring in which capacity.  *See id*. ¶ 5.

## GOVERNING STANDARDS

 "Counterclaims are separate claims independent of the plaintiff's underlying claim."

*F.D.I.C. v. F.S.S.S.*, 829 F. Supp. 317, 322 n.11 (D. Alaska 1993) (distinguishing counterclaims

from affirmative defenses, which "challenge the underlying liability"); *see* Fed. R. Civ. P. 13(c)

("A counterclaim need not diminish or defeat the recovery sought by the opposing party.").

Dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is

appropriate "if the [claim] fails to state a claim upon which relief can be granted, assuming all

well-pleaded factual allegations are true."  *Moss v. Kopp*, 505 F. Supp. 2d 1120, 1123 (D. Utah

2007) (citing *Sutton v. Utah State Sch. For Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999)),

*aff'd*, 559 F.3d 1155 (10th Cir. 2009).  "[A] court should consider only the well-pleaded

allegations, and not allow conclusory assertions to satisfy the plaintiff's burden."  *Moss*, 505 F.

Supp. 2d at 1123 (citing *Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1107

(10th Cir. 2005) (stating that "[a] motion to dismiss for failure to state a claim 'admits all well-

pleaded facts in the complaint as distinguished from conclusory allegations.'")).

"To survive a motion to dismiss, a [claim] must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (internal quotation marks omitted).  "A claim has facial plausibility when

the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions are not accepted as true; instead, they must be supported by facts. *Id.* at 678-79.

The standard of review for a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) based on the face of the complaint is the same as the standard under Fed. R. Civ. P. 12(b)(6). "The Supreme Court has directed that '[f]or purposes of ruling on a motion to dismiss for want of standing ... courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *Brown v. Herbert*, 850 F. Supp. 2d 1240, 1244 (D. Utah 2012) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

## ARGUMENT

As detailed below, this Court should dismiss all four counterclaims because none meet the standards necessary to survive a motion to dismiss.

**I.    The Counterclaim Plaintiffs' First Claim Is Not a Claim and, Even if It Were, They Do Not Have Standing to Assert the Claim.**

In their First Claim, Counterclaim Plaintiffs "seek a declaration from this Court that San Juan County's vote-by-mail procedures as described herein above fully comply with both the *Voting Rights Act* and the *Fourteenth Amendment* of the United States *Constitution*." Counterclaim ¶ 112, ECF No. 40. The Court should dismiss this claim for two reasons. First, this "claim" is only a defense to the underlying lawsuit. That is, Counterclaim Plaintiffs have alleged new facts about their stated intention to move away from mail-only voting—including opening three additional polling places and providing Navajo language assistance at all four polling places for the 2016 and future elections—and seek a judgment based on those untested

allegations.  Counterclaim Plaintiffs are thus only attempting to create a factual dispute, which is a defense, not a counterclaim.

Second, the Counterclaim Plaintiffs lack standing to bring the First Claim.  "[A] demand for declaratory relief does not by itself confer standing." *Russell v. Fin. Capital Equities*, 158 Fed. Appx. 953, 955-56 (10th Cir. 2005) (unpublished opinion).  Standing to sue is an essential part of the case or controversy requirement in Article III.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992); *Utah Animal Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1255 (10th Cir. 2004), and "Art. III standing requires an injury with a nexus to the substantive character of the statute or regulation at issue." *Diamond v. Charles*, 476 U.S. 54, 70 (1986).

The "irreducible constitutional minimum of standing contains three elements." *Lujan*, 504 U.S. at 560.  "First, the plaintiff must have suffered an 'injury in fact'…. Second, there must be a causal connection between the injury and the conduct complained of…. Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* at 560-61 (internal citations omitted).  Further, "[a]n injury-in-fact is an invasion of a *legally protected interest*' that is (a) concrete and particularized and (b) actual or imminent." *Utah Animal Rights Coalition*, 371 F.3d at 1255 (emphasis added).

Here, the Counterclaim Plaintiffs do not have standing because they have failed to allege the requisite injury-in-fact.  Specifically, neither the VRA nor the Fourteenth Amendment, the authorities alleged in the First Claim, confer any legal protections on counties or their officials acting in their official capacities that Counterclaim Defendants allege were violated by Counterclaim Defendants.  In general, the VRA creates a cause of action only for members of those classes of persons protected by the statute (i.e., racial, ethnic, and language minorities). The one exception is Section 14(b), which provides that certain challenges to the enforceability

of specific provisions of the VRA may be brought only in the United States District Court for the District of Columbia.  *See* 52 U.S.C. § 10310(b)**.**  Here, the Counterclaim Plaintiffs do not seek a declaration that any portion of the VRA is unenforceable.  Rather, they seek a declaration that their actions do not violate the VRA.  There is no provision in the VRA that allows Counterclaim Plaintiffs to bring, or the Court to hear, this claim.

Although Counterclaim Plaintiffs reference the VRA and the Fourteenth Amendment as the basis for their First Claim, they fail to explain the nature of their threatened "legally protected interest" which is supposedly protected under the VRA and Fourteenth Amendment.  Obviously, they are not alleging that their right to vote is being abridged or denied.  *See* 52 U.S.C. § 10301(a) (prohibiting voting procedures "which result[] in a denial or abridgement of the right of any citizen of the United States to vote on account of race or color"); U.S. Const. amend. XIV, § 1 (prohibiting states from depriving "any person" of life, liberty or property without due process or from denying "any person" equal protection).  All they are claiming is that the law, as Counterclaim Defendants plead it in the Complaint, does not apply to them.  To advance that claim in this Court, they need a congressionally created right of action, and they have none.

Finally, Counterclaim Plaintiffs' claim for attorneys' fees does not suffice as an injury. *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998) ("[A] plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost of bringing suit.  The litigation must give the plaintiff some other benefit besides reimbursement of costs that are a byproduct of the litigation itself."); *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 480 (1990) (an "interest in attorney's fees is, of course, insufficient to create an Article III case or controversy where none exists on the merits of the underlying claim").  Nor, based on their Counterclaims as pleaded, could Counterclaim Plaintiffs be deemed "prevailing parties" for purposes of the statute,

as their cause would "not advance any of the purposes that Congress meant to promote by making fees available." *Shelby Cty., Ala. v. Lynch*, 799 F.3d 1173, 1181 (D.C. Cir. 2015), *cert. denied,* 136 S. Ct. 981, 194 L. Ed. 2d 4 (2016).

Therefore, this Court should dismiss Counterclaim Plaintiffs' First Claim.

## II.     The Counterclaim Plaintiffs' Second Claim Is Not a Claim for Relief.

In their Second Claim, Counterclaim Plaintiffs seek a declaration that the "*Underlying Action* is without merit and was not brought in good faith." Counterclaim ¶ 115 (emphasis in original). They further seek an award of attorneys' fees pursuant to Utah Code § 78B-5-82(1), a "miscellaneous" subsection of Utah's Judicial Code on "Procedure and Evidence," which allows courts to "award reasonable attorney fees to a prevailing party if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith." Both Counterclaim Plaintiffs' argument that the underlying action is without merit and their argument that it was not brought in good faith fail.

First, Counterclaim Plaintiffs allege that the underlying action was brought "without merit." The argument that the underlying action is without merit is, at best, a defense, not a counterclaim. Counterclaims are "separate claims independent of the plaintiff's underlying claim." *F.D.I.C.*, 829 F. Supp. at 322 (distinguishing counterclaims from affirmative defenses, which "challenge the underlying liability"); *see* Fed. R. Civ. P. 13(c) ("A counterclaim need not diminish or defeat the recovery sought by the opposing party."). An assertion that the "*Underlying Action* is without merit and was not brought in good faith," Counterclaim ¶ 115 (emphasis in original), is not a "separate claim[] independent of plaintiff's underlying claim," and therefore is not an appropriate allegation for a counterclaim. *F.D.I.C.*, 829 F. Supp. at 322 n.11. Counterclaim Plaintiffs are free to proceed by way of motion to dismiss or motion for

summary judgment, if appropriate; but they are not free to assert an affirmative claim on this basis.

Second, Counterclaim Plaintiffs allege that the underlying action was "not brought in good faith."  Counterclaim ¶ 115.  Again, a counterclaim is not the correct vehicle for this type of allegation.  The purported declaration sought by the Second Claim is in reality a fruitless attempt to use a statute detailing Utah state court procedure as a vehicle to seek attorney fees in this federal question action.  Yet no party, in the claims or counterclaims, has asserted any Utah state law cause of action—all claims are federal—and this Court is not sitting in diversity.  There is no basis, then, on which the cited Utah state statute on court procedure to seek attorney fees applies in this action.  Counterclaim Plaintiffs cite no authority in which a federal court has allowed a party to use state procedural law to supersede federal procedural law by labeling the procedural request as one for a declaration in a federal question case.

### III.   The Third and Fourth Claims Are Improperly Brought by Counterclaim Plaintiff Benally in her "Individual Capacity" and Lack Merit.

While Counterclaim Plaintiff Benally does not specify in which capacity she attempts to plead her Third and Fourth Claims, neither of those claims have a plausible connection to her official duties as a San Juan County Commissioner.  While these claims plead no cognizable (or recognizable) legal theory, the underlying facts all center around a supposed conspiracy to damage Counterclaim Plaintiff Benally politically.  None of these facts have anything to do with any official activity or duty she undertakes as a Commissioner.  Thus, the Third and Fourth Claims can only plausibly be read as being brought in her individual capacity.

Those counterclaims must be dismissed because Counterclaim Defendants only sued Counterclaim Plaintiff Benally in her official capacity.  Even taking her allegations as true, Counterclaim Plaintiff Benally asserts accusations related solely to her political positioning

which have no bearing on the deprivation of rights at issue and attempts to do so in a separate capacity from the one in which she is a party in the underlying action.[2]

Only a party to a lawsuit is allowed to bring a counterclaim. *See Banco Nacional de Cuba v. Chase Manhattan Bank*, 658 F.2d 875, 886 (2d Cir. 1981) (explaining "the traditional view is that a defendant may counterclaim only in the capacity in which he has been sued"). In this case, Counterclaim Plaintiff Benally is not a party to the underlying action in her individual capacity, only her official capacity, and is being sued for only equitable relief. As a legal matter, suing her for equitable relief in the underlying action in her official capacity is the same as suing San Juan County, as Counterclaim Plaintiffs are aware.[3] *See Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 544-45, n.6 (1986) (explaining suing an official in her official capacity is the same as suing the governmental entity she represents, and that official and personal capacities are "two different legal personages"). Accordingly, Counterclaim Plaintiff Benally is not a party to the underlying action in her official capacity and is not allowed to counterclaim in that capacity. Courts in similar situations have found that parties sued in separate capacities are not allowed to bring counterclaims. *See*, *e.g.*, *Banco Nacional de Cuba*, 658 F.2d at 885-86 (precluding defendant from asserting counterclaims in its capacity as trustee where defendant was not sued in such capacity); *Durham v. Bunn*, 85 F. Supp. 530, 530 (E.D. Pa. 1949) (precluding defendant, sued in his personal capacity, from bringing counterclaim in his representative capacity on behalf of the City of Philadelphia).

---

[2] Further, it is unclear whether the conflict of interest between Counterclaim Plaintiff Benally and the parties named as Defendants in the underlying action is waivable, despite their representation by the same counsel. That is, to the extent that Counterclaim Plaintiff Benally asserts that seeking to open additional polling places is part of a conspiracy to deprive her of rights, her personal interests are in direct conflict with the underlying action of Defendants, who have alleged that they intend to open additional polling places.

[3] *See* Mot. to Dismiss Claims of Pl. Mark Maryboy 4-6, ECF No. 43, extensively discussing *Bender v. Williamsport Area School Dist.*, 475 U.S. 534 (1986).

Should the Court decide to evaluate whether the Third and Fourth Claims state a claim for relief, however, this Court should dismiss the claims for the reasons below.

### A.   Counterclaim Plaintiff Benally's Third Claim Fails to Allege the Requisite Elements for a Civil Rights Violation Under Each Statute.

In the Third Claim, Counterclaim Plaintiff Benally alleges that Counterclaim Defendants' actions violated "42 U.S.C. §§ 1981 and 1985(3) as well as 52 U.S.C. § § 10307(b)." Counterclaim ¶ 120.  This Court should dismiss the Third Claim for failure to state a claim because Counterclaim Plaintiff Benally does not allege facts sufficient to establish that Counterclaim Defendants violated her civil rights under any of the three statutes relied upon. Fed. R. Civ. P. 12(b)(6).

### 1.   42 U.S.C. § 1981

In short, 42 U.S.C. § 1981 guarantees all persons equal rights to "make and enforce contracts."  *See* 42 U.S.C. § 1981(a); *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987) (stating § 1981 "forbid[s] all 'racial' discrimination in the making of private as well as public contracts").  "[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).

When asserting a claim under § 1981, the plaintiff "must initially identify an impaired 'contractual relationship' … under which the plaintiff has rights."  *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 470 (2006).  Further, the plaintiff "must identify injuries flowing from a racially motivated breach" of their contractual relationship.  *Id*. at 480; *see also Weseman v. Meeker Cnty.*, 659 F. Supp. 1571, 1575 (D. Minn. 1987) (failure to allege "discrimination based on race, alienage, ancestry, or ethnic characteristics" means that plaintiff's claim must fail).

Counterclaim Plaintiff Benally has failed to allege either requisite component of a § 1981 claim. She has not identified an impaired contractual relationship or asserted that her alleged injuries flow from a racially motivated breach of such contractual relationship. Given that she has not pleaded any facts that would support a 42 U.S.C. § 1981 claim, this Court should dismiss her claim under Federal Rule of Civil Procedure 12(b)(6).

### 2.      42 U.S.C. § 1985(3)

The elements of a claim under 42 U.S.C. § 1985(3) are (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom. *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993). To prevail on a claim under § 1985(3), the plaintiff must prove a discriminatory motive; in other words, a plaintiff must establish that a class-based or racially discriminatory motive lurks behind the conspiratorial activities. *See Tilton*, 6 F.3d at 686 ("[Section] 1985(3) does not 'apply to all tortious, conspiratorial interferences with the rights of others,' but rather, only to conspiracies motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'")

Counterclaim Plaintiff Benally fails to allege a discriminatory motive behind Counterclaim Defendants' purported conspiracy. Therefore, this Court should dismiss Counterclaim Plaintiff Benally's 42 U.S.C. § 1985(3) claim under Federal Rule of Civil Procedure 12(b)(6).

### 3.      52 U.S.C. § 10307(b)

Commonly known as Section 11(b) of the Voting Rights Act, 52 U.S.C. § 10307(b) prohibits actions that, *inter alia*, "intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote." 52 U.S.C. § 10307(b) (formerly codified at 42 U.S.C. § 1973i). In order to succeed on a claim under Section 11(b), a plaintiff

must: (1) establish either an act to intimidate or an attempt to intimidate and (2) show that "the act was done with the specific intent to intimidate or attempt to intimidate." *Parson v. Alcorn*, No. 3:16-cv-00013-MHL, 2016 WL 206466, at *12 (E.D. Va. Jan. 15, 2016) (citing *Olagues v. Russoniello*, 770 F.2d 791, 804 (9th Cir. 1985) (noting that even assuming that plaintiffs' evidence showed that voters were intimidated when officials searched voting records, plaintiffs could not succeed for failure to show that the officials intended to intimidate) (citing *United States v. McLeod*, 385 F.2d 734, 740-41 (5th Cir. 1967)).

Counterclaim Plaintiff Benally has not alleged any intimidation, threat, or coercion concerning her ability to "vot[e] or attempt[ ] to vote" by any of the Counterclaim Defendants. 52 U.S.C. § 10307(b).  Therefore, this Court should dismiss Counterclaim Plaintiff Benally's 52 U.S.C. § 10307(b) claim under Federal Rule of Civil Procedure12(b)(6).

> **B.**    **Counterclaim Plaintiff Benally's Fourth Claim Fails to Allege the Requisite "Wilful Act" Element for Abuse of Process.**

In the Fourth Claim, Counterclaim Plaintiff Benally alleges that Counterclaim Defendants' underlying lawsuit "is an abuse of process … commenced and … continued for the improper, unlawful and ulterior purpose of allowing Counterclaim Defendant Maryboy, Kenneth Maryboy and Manual Morgan to reassume control of the election of a County Commissioner from District Three by suppressing the vote of her supporters."  Counterclaim ¶ 126.  This Court should dismiss this claim, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim because Ms. Benally does not allege facts concerning the requisite wilful act separate and apart from the legal process underlying the claim.

As confirmed by the Tenth Circuit citing the Utah Supreme Court, "[t]o establish a claim for abuse of process in Utah, the claimant must show (1) an ulterior purpose in bringing the suit, and (2) a wilful act in the use of the process not proper in the regular conduct of the

proceedings." *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1103 (10th Cir. 2009) (citing *Hatch v. Davis*, 147 P.3d 383, 389 (Utah 2006)).  To satisfy the "wilful act" element, "a party must point to conduct independent of the legal process itself that corroborates the alleged improper purpose." *Rusakiewicz*, 556 F.3d at 1103 (citing *Hatch*, 147 P.3d at 389).  Importantly, both the Tenth Circuit and the Utah Supreme Court have acknowledged that the wilful act requirement cannot "simply be reduced to the 'legal process that the tortfeasor pursues according to his ulterior motive.'" *Id.* at 1104 (internal citations omitted).  Said another way, "filing a lawsuit and performing ordinary acts in the regular course of the legal proceedings is not abuse of process even if the goals of the lawsuit are nefarious and improper." *Id.*  Therefore, "the 'wilful act' requirement requires objective proof of the improper purpose in the form of an independent act that 'corroborates the alleged improper purpose.'" *Id.* (internal citations omitted).

In *Rusakiewicz*, the Tenth Circuit affirmed the district court's dismissal of the abuse of process claim because the alleged wilful act involved settlement offers, which both courts regarded as "part of, not an act outside of, the regular conduct of legal process."  556. F.3d at 1104.  The Tenth Circuit relied heavily on *Hatch*, in which the Utah Supreme Court observed the following critical distinctions regarding the "wilful act" requirement:

> It is easy to slip into the conceptual trap of simply defining the "wilful act" as the legal process that the tortfeasor pursues according to his ulterior motive.  Such a definition would, however, render the "wilful act" requirement superfluous.  Under it, a party would only be required to link a bad motive to an event having the hallmarks of legal process to state a claim.

147 P.3d at 389.  Ultimately, the Utah Supreme Court affirmed reversal of the trial court's verdict against the counterclaim defendant for abuse of process because even though there was "no question" regarding the counterclaim defendant's "improper purpose" in instigating the

underlying lawsuit, the counterclaim plaintiff "alleged the existence of no act that met" the wilful act requirement.  147 P.3d at 389-90.

While Counterclaim Defendants deny any ulterior purpose in bringing the underlying action, even taking as true that there was such a motive, Counterclaim Plaintiff Benally's abuse of process claim must fail because she has not pleaded the wilful act element sufficiently. Counterclaim Plaintiffs allege that in response to Ms. Benally defeating Counterclaim Defendant Mark Maryboy for the District Three County Commissioner office, Mr. Maryboy, his brother Kenneth Maryboy, their political ally Manual Morgan, and eventually Leonard Gorman of the Navajo Nation Human Rights Commission ("NNHRC") formed a conspiracy in spring 2015 to initiate a "sham lawsuit to challenge San Juan County's use of vote-by-mail."  Counterclaim ¶¶ 95, 100-02, 105.  Additionally, Counterclaim Plaintiffs allege that the NNHRC aided and abetted this scheme along with Counterclaim Defendants Phillips, Jones, Whitehat, Farley, Willie Skow, and Mabel Skow by "agree[ing] to take part in that conspiracy."  *Id*. ¶ 106.  Counterclaim Plaintiffs allege that "[t]he overt acts committed by Counterclaim Defendant[s] … in furtherance of this conspiracy consisted of, among other things, fabricating claims against Counterclaim Plaintiffs which resulted in their bring [sic] of the *Underlying Action*."  *Id*. ¶ 107 (emphasis in original).  Thus, according to Counterclaim Plaintiff Benally's "Fourth Claim for Abuse of Process," the Counterclaim Defendants initiated this lawsuit "for the improper, unlawful and ulterior purpose of allowing Counterclaim Defendant Maryboy, Kenneth Maryboy and Manual Morgan to reassume control of the election of a County Commissioner from District Three by suppressing the vote of her supporters."  *Id*. ¶ 126.  To the contrary, Counterclaim Defendants' purpose in bringing the underlying lawsuit was to remedy violations of the VRA and the U.S. Constitution.

Counterclaim Plaintiff Benally alleges no facts to support her claim that the Maryboys, Mr. Morgan, and Mr. Gorman brought the underlying action as part of a conspiracy against her and fails to "point to conduct independent of the legal process itself that corroborates the alleged improper purpose." *Rusakiewicz*, 556 F.3d at 1103 (citing *Hatch v. Davis*, 147 at 389). Instead, Counterclaim Plaintiff Benally baldly asserts the underlying action and unspecified "overt acts" as support for her abuse of process claim, while qualifying these allegations with the hollow and transparent catch-all phrase "among other things." Counterclaim ¶¶ 107, 126. In doing so, Counterclaim Plaintiff Benally merely "link[s] a bad motive to an event having the hallmarks of legal process," *Hatch*, 147 P.3d at 389. Indeed, Counterclaim Plaintiff Benally seeks to ensnare this Court into the "conceptual trap of simply defining the 'wilful act' as the legal process that the [alleged] tortfeasor pursues according to [the] ulterior motive." *Hatch*, 147 P.3d at 389. Therefore, with the guidance of the Tenth Circuit in *Rusakiewicz* and the Utah Supreme Court in *Hatch*, this Court should seize on Counterclaim Plaintiff Benally's failure to allege a wilful act and dismiss the Fourth Claim.

## CONCLUSION

As demonstrated above, none of the Counterclaim Plaintiffs' claims can survive Counterclaim Defendants' motion to dismiss, and, as a result, this Court should dismiss all counterclaims with prejudice.

Dated this 9th day of May, 2016.

RESPECTFULLY SUBMITTED,

s/John Mejia
John Mejia (Bar No. 13965)
Leah Farrell (Bar No. 13696)
American Civil Liberties Union of Utah
355 North 300 West

Salt Lake City, UT 84103
T: (801) 521-9862
jmejia@acluutah.org
lfarrell@acluutah.org

M. Laughlin McDonald*
American Civil Liberties Union Foundation
2700 International Tower
229 Peachtree Street, NE
Atlanta, GA 30303
T: (404) 500-1235
lmcdonald@aclu.org

Ezra D. Rosenberg*
M. Eileen O'Connor*
Arusha Gordon*
Lawyers' Committee for Civil Rights Under Law
1401 New York Ave., Suite 400
Washington, D.C. 20005
T: (202) 662-8600
erosenberg@lawyerscommittee.org
eoconnor@lawyerscommitee.org
agordon@lawyerscommittee.org

Maya Kane*
10 Town Square, #52
Durango, Colorado 81301
T: (970) 946-5419
mayakanelaw@gmail.com

William A. Rudnick*
DLA Piper LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, IL 60601
T: (312) 368-4000
william.rudnick@dlapiper.com

Raymond M. Williams*
DLA Piper LLP (US)
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, PA 19103
T: (215) 656-3300
raymond.williams@dlapiper.com

*Admitted pro hac vice

**CERTIFICATE OF SERVICE**

I certify that on May 9, 2016, I served the foregoing Motion to Dismiss Counterclaims with Prejudice on Counterclaim Plaintiffs via the Court's CM/ECF system.


<u>s/John Mejia</u>