Jesse C. Trentadue (#4961)
Carl F. Huefner (#1566)
Britton R. Butterfield (#13158)
**SUITTER AXLAND, PLLC**
8 East Broadway, Suite 200
Salt Lake City, UT  84111
Telephone: (801) 532-7300
Facsimile: (801) 532-7355
E-Mail: jesse32@sautah.com
E-Mail: chuefner@sautah.com
E-Mail: bbutterfield@sautah.com

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| NAVAJO NATION HUMAN RIGHTS COMMISSION; PEGGY PHILLIPS; MARK MARYBOY; WILFRED JONES; TERRY WHITEHAT; BETTY BILLIE FARLEY; WILLIE SKOW; and MABEL SKOW, | **DEFENDANTS' AMENDED COUNTERCLAIM FOR DECLARATORY and OTHER RELIEF** |
| Plaintiffs, | |
| v. | Case No. 2:16-cv-00154 JNP |
| | Judge Jill N. Parrish |
| SAN JUAN COUNTY; JOHN DAVID NIELSON, in his official capacity as San Juan County Clerk; and PHIL LYMAN, BRUCE ADAMS, and REBECCA BENALLY, in their official capacities as San Juan County Commissioners, | Magistrate Judge Brooke C. Wells |
| | **TRIAL BY JURY DEMANDED** |
| Defendants. | |

| | |
|---|---|
| SAN JUAN COUNTY; JOHN DAVID NIELSON; PHIL LYMAN, BRUCE ADAMS; and REBECCA BENALLY | : |
| | : |
| | : |
| | : |
| Counterclaim Plaintiffs, | : |
| | : |
| v. | : |
| | : |
| NAVAJO NATION HUMAN RIGHTS COMMISSION; PEGGY PHILLIPS; MARK MARYBOY; WILFRED JONES; TERRY WHITEHAT; BETTY BILLIE FARLEY; WILLIE SKOW; and MABEL SKOW, | : |
| | : |
| | : |
| | : |
| | : |
| | : |
| Counterclaim Defendants. | : |
| | : |

COMES NOW San Juan County, Utah; John David Nielson; Phil Lyman; Bruce Adams; and Rebecca Benally (collectively, "Counterclaim Plaintiffs") pursuant to *Federal Rules of Civil Procedure* 13, 15(a), 19, 20, 57 and 28 U.S.C. §§ 2201 and 2202 and assert the following *Amended Counterclaims* against the Navajo Nation Human Rights Commission, Peggy Philips, Mark Maryboy, Wilfred Jones, Terry Whitehat, Betty Billie Farley, Willie Skow and Mabel Skow (collectively "Counterclaim Defendants").

2

## JURISDICTION AND VENUE

1.      This case arises under the *Constitution* and laws of the United States. This Court has subject-matter jurisdiction over these *Counterclaim*s pursuant to 28 U.S.C §§ 1331 and 1343,  as well as 52 U.S.C. §10308(f).

2.      The Court also enjoys pendent and/or ancillary jurisdiction over these *Counterclaims* pursuant to *Federal Rule of Civil Procedure* 13.

3.      Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) because a substantial part of the events or omissions giving rise to Counterclaim Plaintiffs' claims occurred, and are occurring, in this District.

## PARTES

4.      San Juan County, Utah is a political subdivision of the State of Utah.

5.      Counterclaim Plaintiff Rebecca Benally is a San Juan County Commissioner who resides in San Juan County, Utah.  Counterclaim Plaintiff Benally is suing in her official capacity on behalf of San Juan County and its registered voters.  Counterclaim Plaintiff Benally is also suing in her individual capacity.

6.      As a San Juan County Commissioner, Counterclaim Plaintiff Rebecca

3

Benally is one of  the three executive officers for San Juan County, Utah.

7.    Counterclaim Plaintiff Rebecca Benally is also a member of the Navajo Nation.

8.    Counterclaim Plaintiff Rebecca Benally is the first female member of the Navajo Nation to be elected to the office of County Commissioner.

9.    Counterclaim Plaintiff Bruce Adams is a San Juan County Commissioner who  resides in San Juan County, Utah.  Counterclaim Plaintiff Adams is suing in his official capacity on behalf of San Juan County and its registered voters.

10.    As a San Juan County Commissioner, Counterclaim Plaintiff Adams is one of the three executive officers for San Juan County, Utah.

11.    Counterclaim Plaintiff Phil Lyman is a San Juan County Commissioner who resides in San Juan County, Utah. Counterclaim Plaintiff Lyman is suing in his official capacity on behalf of San Juan County and its registered voters.

12.    As a San Juan County Commissioner, Counterclaim Plaintiff Lyman is one of the three executive officers for San Juan County, Utah.

13.     Counterclaim Plaintiff John David Nielson is the San Juan County

Clerk-Auditor who  resides in San Juan County, Utah.

14.     As the San Juan County Clerk, I was responsible for overseeing

elections within the County and performing the election functions specifically

assigned to county clerks under UCA §§ 20A-1-101 *et seq*.  As Clerk-Auditor,

Counterclaim Plaintiff Nielson's duties included, among other duties, publishing

the notice of elections, providing  ballots, supervision of the polls on election day,

setting up and taking down of the polls, counting the votes and reporting the

results to the State of Utah Lieutenant Governors Office of Elections.

Counterclaim Plaintiff Nielson is suing in his official capacity on behalf of San

Juan County and its registered voters.

15.     Counterclaim Defendant Navajo Nation Human Rights Commission

is an office within the legislative branch of the Navajo Nation.

16.     Counterclaim Defendant Peggy Phillips is a member of the Navajo

Nation and a resident of San Juan County, Utah.

17.     Counterclaim Defendant Mark Maryboy is a member of the Navajo

Nation and a resident of San Juan County, Utah.

5

18.     Counterclaim Defendant Mark Maryboy is also a former San Juan County Commissioner.

19.     Counterclaim Defendant Mark Maryboy's brother, Kenneth Maryboy, is also a former San Juan County Commissioner.

20.     Counterclaim Defendant Wilfred Jones is a member of the Navajo Nation and a resident of San Juan County, Utah.

21.     Counterclaim Defendant Terry Whitehat is a member of the Navajo Nation and a resident of San Juan County, Utah.

22.     Counterclaim Defendant Betty Billie Farley is a member of the Navajo Nation and a resident of San Juan County, Utah.

23.     Counterclaim Defendant Willie Skow is a member of the Navajo Nation and a resident of San Juan County, Utah.

24.     Counterclaim Defendant Mabel Skow is a member of the Navajo Nation and a resident of San Juan County, Utah.

## DEMOGRAPHICS OF SAN JUAN COUNTY

25.     San Juan County is one of the largest counties in the United States.

26.     San Juan County is approximately 8,000 square miles in size.

27.     San Juan County is almost twice the size as the State of Connecticut.

28.     It takes approximately five hours to drive from Navajo Mountain in the southern part of San Juan County to Spanish Valley in the North, a distance of about 249 miles.

29.     Vast regions of San Juan County are uninhabited.

30.     Approximately 25% of the County's residents have a physical address; whereas the remainder use a Post Office Box for their address.

31.     According to the 2010 Census, the total population of San Juan County is just 14,746 people.

32.     According to the 2010 Census, the population of San Juan County is almost equally divided between American Indian and non- American Indian residents with American Indians comprising approximately 50.39% of the total population.

33.     According to the 2010 Census, the total voting-age population of San Juan County is just approximately 9,729 people.

34.     According to the 2010 Census, the voting-age population of San Juan County is almost equally divided between American Indian and non-American

7

Indian residents with American Indians comprising approximately 49.40% of the total voting-age population.

## SAN JUAN COUNTY'S VOTE-BY-MAIL PROCEDURES

35.    For elections held in 2014, San Juan County determined, pursuant to UCA § 20A-3-302, to implement a vote-by-mail system whereby all registered voters received absentee ballots which could be mailed to the County Clerk's Office in Monticello and, for those wishing to cast a ballot in-person, the County Clerk's office in Monticello, Utah was a polling place open on election day.

36.    Prior to implementing the vote-by-mail procedures in 2014, San Juan County officials met with officials of the Navajo Election Administration to explain the vote-by-mail process and procedures.  The Navajo Election Administration approved of the County's vote-by-mail procedures for the 2014 election.

37.    In connection with the implementation of the vote-by-mail system, San Juan County sent its Navajo Liaison/Elections Coordinator, Mr. Edward Tapaha who is also a member of the Navajo Nation, to each of the Navajo chapter meetings to explain the vote-by-mail system and answer questions.  In addition,

the County maintained a telephone line manned by Mr. Tapaha to answer any questions that might arise in connection with the election.

38.     For elections held in 2016 (for which there will be a county-wide primary election in addition to the general election), San Juan County determined that, in addition to the County Clerk's office in Monticello, there will be three additional polling places open on election day to accommodate those voters who wish to cast their ballot in-person.

39.     The locations of the three additional polling locations, all of which are located on the Navajo Reservation, are as follows:

> Navajo Mountain Chapter House
> Navajo Route 16, mile marker 36.15
> Navajo Mountain, Utah
>
> Oljato Senior Center
> County Road 422, 15 miles north of Gouldings' Store
> Oljato, Utah
>
> Montezuma Creek Fire Station
> 15 South Texaco Road
> Montezuma Creek, Utah 84543.

40.     These three locations were selected so as to ensure that no voter in the County is more than a one-hour drive away from an in-person voting location.

41.     For the 2016 election cycle, a San Juan County election official able to provide Navajo-language voting assistance will be available at each of the polling locations.

42.     In addition, San Juan County will have a link on the Elections page of its website by which voters may access a Navajo-language audio explanation of the vote-by-mail system, including a translation of the ballot itself, which will also be available at each in-person voting location.   The website also identifies Mr. Edward Tapaha as the County's Navajo Liaison/Elections Coordinator and gives his telephone number and extension.

43.     As in prior election years, during the 2016 election cycle San Juan County will have Mr. Edward Tapaha attend meetings of each of the Navajo Chapters to explain in the Navajo language the voting system and answer any questions about the election process.  Also as in prior years, during the 2016 election cycle the County is placing Navajo-language radio announcements about the election, vote-by-mail process and in-person voting locations on two Navajo language radio stations, KNDN and KTTN.

44.     San Juan County's decision to change the mail-in-voting system to

better accommodate voters who would prefer to vote in-person was made before the County was served with this lawsuit.  In fact, by late January or early February of 2016 the County had already made the decision to open three additional polling locations within the Navajo Reservation.

45.     San Juan County began considering possible changes after receiving comments and concern from County voters about the mail-in-voting system, as well as the investigation conducted by attorneys from the United States Department of Justice(" DOJ"), which included a visit to San Juan County from at least October 21 through October 29, 2015.

46.     In the course of meetings with County officials in October, 2015, the DOJ attorneys did not indicate that the County's vote-by-mail system as implemented for the 2014 elections (and the 2015 municipal elections) was contrary to law or failed to meet the County's obligation to provide bilingual voting assistance to Navajo voters, but indicated that it would continue watching the way in which the mail-in-voting system affected County residents and particularly its Navajo citizens.

47.     The DOJ's investigation of San Juan County's vote-by-mail system

11

was initiated at the request of the Navajo Nation Human Rights Commission.

48.     The DOJ did not, however, either in the course of its investigation or since, notify the San Juan County that it was required to abandon or modify its vote-by-mail procedures.

49.     Nevertheless, on October 29, 2015, the day that the DOJ met with County officials in Monticello, San Juan County began to consider making changes to improve the vote-by-mail system to add in-person polling places on the Navajo Reservation.

50.     The final decision as to the locations of the three additional polling places was made on or before February 16, 2016.  Thereafter, the San Juan County Clerk sent a press release to the local newspapers about the 2016 elections, including the County's decision to open additional in-person polling locations.

51.     The County Clerk sent that press release via email to *The San Juan Record* and *The Navajo Times* on March 9, 2016.   However, that press release had been prepared by the San Juan County Attorney approximately a week earlier.

## RESULT OF THE COUNTY IMPLEMENTING VOTE-BY-MAIL

52.    The election records maintained by the San Juan County Clerk's Office show that the 2014 election, in which vote-by-mail was implemented, resulted in a substantial increase in voter turn out as a result of allowing voters the option of voting by mail, especially among Navajo voters.

53.    In fact, during the 2014 election, the number of Navajo voters more than doubled compared to previous elections without the vote-by-mail option.

54.    The election records maintained by the San Juan County Clerk's Office, for example, show that during the 2014 election voter participation in precincts with a heavy concentration of Navajo voters went from 25% during the 2012 election using only in-person voting at polls to 54% with vote-by-mail in 2014.

55.    This significant increase in voter participation occurred despite the fact that the 2014 election was not a national election which tends to produce a higher number of voters.

56.    The increased voter participation among Navajo voters was attributable in part to the fact that the mail-in-ballot process allows voters who

13

work away from their homes on the Navajo Reservation or who are away at college or in the military, to participate in elections without having to appear at a polling place or make advance application for an absentee ballot.

57.    The increased voter participation among Navajo voters was also attributable to the fact that the mail-in-ballot process allows elderly voters who have no means of transportation to a polling location to vote from their homes by use of the mail-in-ballot.

58.    There are benefits to a vote-by-mail system over an in-person voting system, including, among others: (a) providing voters the opportunity to consider their election decisions over a longer period of time; (b) accommodating the needs of voters who regularly work outside of the immediate area of their residence, are at school or in the military, without their having to apply personally for an absentee ballot which may be particularly of benefit to a significant number of Navajo voters who work away from their homes due to the limited availability of jobs in San Juan County; (c) allowing voters to make their ballot decisions away from candidate's campaign efforts in close proximity to polling places; and (d) allowing limited-English proficiency voters to seek assistance from family

14

members or other trusted acquaintances if they so choose rather than having to rely on interpreters provided by the County.

59.    San Juan County is comprised of three County Commission Districts, with the voters in each District electing a County Commissioner.

60.    San Juan County Commission District Three is home to a majority of the County's Navajo voters.

61.    The election records maintained by the San Juan County Clerk's Office show that, historically, Mark Maryboy, his brother Kenneth Maryboy and/or their political ally, Manual Morgan, have been the only persons elected as the County Commissioner from District Three.

62.    Prior to vote-by-mail, Counterclaim Defendants Mark Maryboy, his brother Kenneth Maryboy and their political ally Manual Morgan controlled the election of the Commissioner from District Three.

63.    Counterclaim Defendants Mark Maryboy, his brother Kenneth Maryboy, their political ally Manual Morgan, and/or their agents did so by, among other things, being present at polling locations on election day either in-person or through their agents, illegally distributing food and other items (*i.e.*, enticements)

to induce Navajo voters to vote for them.

64.    Counterclaim Defendants Mark Maryboy, his brother Kenneth Maryboy, their political ally Manual Morgan, and/or their agents also did so by, among other things, visiting Senior Centers and telling elderly Navajo voters that they would lose of services (*i.e.*, intimidation) unless they voted for them.

65.    The actions of Counterclaim Defendants Mark Maryboy, his brother Kenneth Maryboy, their political ally Manual Morgan and/or their agents as described in paragraphs 64 and 65 above were in violation of UCA §§ 20A-1-60, 20A-1-609, 20A-3-501 and 20A-3-502.

66.    In 2014, however, Rebecca Benally was elected to the office of County Commissioner from District Three.

67.    Mark Maryboy, his brother Kenneth Maryboy and/or Manual Morgan are members of the Navajo Nation and so, too, is Commissioner Benally.

68.    During the 2014 election in which vote-by-mail was first implemented, the election records maintained by the San Juan County Clerk's Office show that Commissioner Benally defeated both Kenneth Maryboy and Manual Morgan in the Commission District Three race.

16

69.     Commissioner Benally was able to defeat Kenneth Maryboy and Manual Morgan in the 2014 election because of the increased voter participation resulting from the County's vote-by-mail procedures.

70.     Commissioner Benally was able to defeat Kenneth Maryboy and Manual Morgan in the 2014 election because voters could case their ballots free of the enticements and/or intimidation directed at them by Mark Maryboy, Kenneth Maryboy, Manual Morgan and/or their agents, and because vote-by-mail resulted in a significant increase in voter participation over previous elections with in-person voting.

## NATURE OF THE UNDERLYING CASE

71.     Counterclaim Defendants commenced an action against Counterclaim Plaintiffs in the United States District Court for the District of Utah for declaratory and injunctive relief which is captioned *Navajo Nation Human Right Commission et. al. v. San Juan County, et. al.*, Case No. 2:16CV00154 (hereinafter referred to as the "*Underlying Case*").

72.     In the *Underlying Case*, Counterclaim Defendants are challenging the legality of San Juan County's 2014 vote-by-mail procedure.

17

73.     In the *Underlying Case*, Counterclaim Defendants seek a ruling from this Court that San Juan County's vote-by-mail procedures violate Section 2 and 203 of the *Voting Rights Act*,[1] as well as the *Fourteenth Amendment* to the United States *Constitution*.

74.     In the *Underlying Case*, Counterclaim Defendants also seek a order from this Court essentially requiring San Juan County to do away with vote-by-mail and to re-open polling locations.  In the *Underlying Case*, Counterclaim Defendants also seek a preliminary injunction essentially prohibit San Juan County from allowing voters, including members of the Navajo Nation, from voting-by-mail during the 2016 election cycle.

75.     Counterclaim Defendants, however, commenced the *Underlying Case* in bad faith insofar as they are challenging the legality of the County's use of vote-by-mail based upon procedures employed in the 2014 election cycle rather than the current procedures.

76.     Counterclaim Defendants also commenced the *Underlying Case* in bad faith insofar as they never provided any suggestions to the County about

---

[1] 52 U.S.C. §§ 10301 and 10503.

18

ways in which the County's election process, including the mail-in-ballot system, could be modified to increase Navajo voter participation or to better provide information and assistance to Navajo voters who are not proficient in English, but rather have only demanded that polling places be re-opened.

77.   Counterclaim Defendants likewise commenced the *Underlying Case* in bad faith insofar as, at the request of the Navajo Human Rights Commission, the DOJ examined the County's vote-by-mail procedures and did not express any objections or concerns with those procedures and the Navajo Election Administration reviewed and approved of those procedures.

78.   In the *Underlying Action*, Counterclaim Defendant Phillips alleges that she did not  receive her ballot in the 2014 election and was unable to vote.

79.   But in truth and fact, Counterclaim Defendant Philips voted by mail-in-ballot in both the 2014 general and 2015 municipal elections.

80.   In the *Underlying Action*, Counterclaim Defendant Phillips alleges that she would have to travel approximately four hours round trip to a polling location in order to vote in-person.

81.   But in truth and fact, Counterclaim Defendant Philips lives within a

one-hour drive of a polling location where she can vote in-person.

82.    In the *Underlying Action*, Counterclaim Defendant Phillips alleges that she is not comfortable voting in English.

83.    But in truth and fact, prior to the County going to a vote-by-mail election system Counterclaim Defendant Philips has acted as a Navajo interpreter for in-person voting as well as an election judge for which services she was paid by San Juan County.

84.    In the *Underlying Action*, Counterclaim Defendant Maryboy alleges that he prefers to vote in-person rather than vote-by-mail.

85.    But in truth and fact, Counterclaim Defendant Maryboy voted by mail in the 2014 general election.

86.    In the *Underlying Action*, Counterclaim Defendant Maryboy alleges that he would have to travel approximately two hours round trip to a polling location in order to vote in-person.

87.    But in truth and fact Counterclaim Defendant Maryboy lives within a one-hour drive of a polling location where he can vote in-person.

88.    In the *Underlying Action*, Counterclaim Defendant Jones alleges that

he prefers to vote in-person rather than vote-by-mail.

89.    But in truth and fact, Counterclaim Defendant Jones voted by mail in both the 2014 primary and general elections.

90.    In the *Underlying Action*, Counterclaim Defendant Jones alleges that he has difficulty getting to the post office in order to mail his ballot because the roads are muddy when it rains.

91.    But in truth and fact, Counterclaim Defendant Jones lives less than one-quarter from the paved road and has not alleged that it is difficult for him to otherwise go to the post office to pick up his mail.

92.    In the *Underlying Action*, Counterclaim Defendant Jones alleges that he would have to travel over two hours round trip to a polling location in order to vote in-person.

93.    But in truth and fact, Counterclaim Defendant Jones lives within a one-hour drive of a polling location where he can vote in-person.

94.    In the *Underlying Action*, Counterclaim Defendant Jones prefers to vote in-person rather than vote-by-mail.

95.    But in truth and fact, Counterclaim Defendant Jones voted by mail in

both the 2014 primary and general elections.

96.     In the *Underlying Action*, Counterclaim Defendant Whitehat alleges that he prefers to vote in-person rather than vote-by-mail.

97.     But in truth and fact, Counterclaim Defendant Whitehat voted by mail in the 2012 primary and general elections as well as the 2014 general election.

98.     Prior to the 2014 election, Counterclaim Defendant Whitehat even signed an *Affidavit* stating that because he was employed outside of San Juan County he preferred to vote by absentee ballot in future elections.

99.     Also in truth and fact, Counterclaim Defendant Whitehat did vote-by-mail by use of an absentee ballot in 2012.

100.    In the *Underlying Action*, Counterclaim Defendant Farley  alleges that she would have to travel approximately four hours round trip to a polling location in order to vote in-person.

101.    But in truth and fact, Counterclaim Defendant Farley lives within a one-hour drive of a polling location where she can vote in-person.

102.    In the *Underlying Action*, Counterclaim Defendant Farley alleges that she prefers to vote in-person rather than vote-by-mail.

103.   But in truth and fact, Counterclaim Defendant Farley voted by mail in both the 2014 primary and general elections.

104.   In the *Underlying Action*, Counterclaim Defendant Willie Skow alleges that he prefers to vote in-person rather than vote-by-mail.

105.   But in truth and fact, Counterclaim Defendant Willie Skow voted by mail in both the 2014 primary and general elections.

106.   In the *Underlying Action*, Counterclaim Defendant Willie Skow alleges that he would have to travel approximately two hours round trip to a polling location in order to vote in-person.

107.   But in truth and fact, Counterclaim Defendant Willie Skow lives within a one-our drive of a polling location where he can vote in-person.

108.   In the *Underlying Action*, Counterclaim Defendant Mabel Skow alleges that she prefers to vote in-person rather than vote-by-mail.

109.   But in truth and fact, Counterclaim Defendant Mabel Skow voted by mail in the 2014 primary and general elections as well as the 2015 municipal election.

110.   In the *Underlying Action*, Counterclaim Defendant Mabel Skow

alleges that she would have to travel approximately two hours round trip to a polling location in order to vote in-person.

111.   But in truth and fact, Counterclaim Defendant Mabel Skow lives within a one-our drive of a polling location where she can vote in-person.

112.   Counterclaim Defendants were aware that the claims being asserted by them in the *Underlying Action* for false, frivolous, baseless and/or otherwise without merit.

113.   Counterclaim Defendants were also aware that the claims being asserted by them in the *Underlying Action* were for an unlawful and illegal purpose that being to reduce the participation of Navajo voters in elections for the position of County Commissioner from Commission District Three by doing away with vote-be-mail and to acquire votes for Mark Maryboy, Kenneth Maryboy and/or Manual Morgan in future elections through the offering of enticements to and/or the intimidation of  Navajo voters to obtain their votes.

## CONSPIRATORS

114.   Following the election of Rebecca Benally to the position of San Juan  County Commissioner frm Commission District Three, Counterclaim

24

Defendant Mark Maryboy, his brother Kenneth Maryboy and Manual Morgan met and agreed between and among themselves to challenge the County's use of vote-by-mail.

115.   They illegally and unlawfully did so in order to continue to control the election of the County Commissioner from Commission District Three by restricting voting to in-person whereby voter participation would be reduced thereby making it difficult for any one other than themselves to be elected to that position.

116.   Counterclaim Defendant Mark Maryboy, his brother Kenneth Maryboy and Manual Morgan  also illegally and unlawfully did so in order to continue to control the election of the County Commissioner from Commission District Three by restricting voting to in-person whereby they or their agents could be present at polling locations on election days to acquire votes by distributing enticements to and/or intimidating Navajo voters thereby making it difficult for any one other than themselves to be elected to that position.

117.   This conspiracy was formed in the Spring of 2015.

118.   Leonard Gorman ("Gorman") is Executive Director of the Navajo

Human Rights Commission.

119.   In the Summer of 2015, Gorman joined in and became part of this conspiracy by agreeing to have the Navajo Human Rights Commission fund the *Underlying Action* for the purpose of suppressing the participation of many Navajo voters by interfering with and/or otherwise depriving them of their right and ability to vote-by-mail.

120.   The actions of Gorman and the Navajo Human Rights Commission in this mater were and continue to be illegal and unlawful in violation of UCA §§ 20A-1-601, 20A-1-609, 20A-1-610, 20A-3-501 and 20A-3-502.

121.   Thereafter, Counterclaim Defendant Mark Maryboy, Kenneth Maryboy, Manual  Morgan and Gorman set about fabricating a sham lawsuit to challenge San Juan County's use of vote-by-mail.

122.   Counterclaim Defendant Mark Maryboy, Kenneth Maryboy, Manual Morgan and Gorman were aided and abetted in this scheme by the Navajo Human Rights Commission as well as Counterclaim Defendants Phillips, Jones, Whitehat, Farley, Willie Skow and Mabel Skow all of whom agreed to take part in that conspiracy which was intended to hinder the ability of Navajo citizens to fully

participate in the election process all in violation of UCA §§ 20A-1-601, 20A-1-609, 20A-1-610, 20A-3-501 and 20A-3-502.

123.   The overt acts committed by Counterclaim Defendant Mark Maryboy, Counterclaim Defendant Phillips, Counterclaim Defendant Jones, Counterclaim Defendant Whitehat, Counterclaim Defendant Farley, Counterclaim Defendant Willie Skow, Counterclaim Defendant and Mabel Skow, Manual Morgan, Leonard Gorman, and the Navajo Human Rights Commission in furtherance of this conspiracy consisted of, among other things, fabricating claims against Counterclaim Plaintiffs which resulted in their bring of the *Underlying Action*.

124.   This conspiracy and overt acts committed in furtherance thereof were intended to deny Navajo voters and Commissioner Benally both the equal protection of the laws and/or the equal privileges and immunities of the laws in violation of 42 U.S.C. §§ 1981 and 1985(3), to unreasonably hinder the ability of Navajo citizens in San Juan County, including Rebecca Benally, to participate in the political process; and to insure the election of Counterclaim Defendant Mark Maryboy, Kenneth Maryboy and/or Manual Morgan to the office of County Commissioner for District Three by allowing them to garner votes through

27

enticements and/or intimidation at polling locations on election day.

125.   This conspiracy and overt acts committed in furtherance thereof were also in violation of 52 U.S.C. §§ 10307(b) and 10308(c).

### FIRST CLAIM FOR DECLARATORY RELIEF
### (By Counterclaim Plaintiffs Against All Counterclaim Defendants)

126.   Counterclaim Plaintiffs re-allege and incorporate by reference each and every allegation contained in Paragraph 1 though 125 above as if set forth fully herein.

127.   An existing and actual controversy within the Court's jurisdiction exists between Counterclaim Plaintiffs and Counterclaim Defendants concerning the legality of San Juan County's vote-by-mail procedures.

128.   This existing and actual controversy arises out of and involves the claims being asserted by Counterclaim Defendants in the *Underlying Action*.

129.   Pursuant to UCA §§17-53-201(2), 17-53-301, and 17-53-302, Counterclaim Plaintiffs Adams, Benally and Lyman are authorized to bring this claim for declaratory relief on behalf of themselves and San Juan County.

130.   Pursuant to UCA §§ 20A-1-101 *et seq*., Counterclaim Plaintiff

Nielson is authorized to bring this claim for declaratory relief on behalf of himself and San Juan County.

131.   There is no constitutional right to vote in-person.  Neither does the *Voting Rights Act* create such a right.

132.   Nevertheless, with the *Underlying Action* Counterclaim Defendants are attempting to do away with San Juan County's vote-by-mail procedures by obtaining an Order from this Court requiring the County to reopen polling locations for in-person voting.

133.   However, pursuant to 28 U.S.C. §§ 2201 and 2202,  Counterclaim Plaintiffs seek a declaration from this Court that San Juan County's vote-by-mail procedures as described herein above fully comply with both the *Voting Rights Act* and the *Fourteenth Amendment* of the United States *Constitution*.

134.   Furthermore, unless the Court rules on the legality of San Juan County's vote-by-mail procedures, the County will remain exposed to future challenges to those procedures by other plaintiffs.

135.   In addition, Counterclaim Plaintiffs also seek an award of their attorneys' fees pursuant to 42 U.S.C. § 1988 and 52 U.S.C. §10310(e).

## SECOND CLAIM FOR DECLARATORY RELIEF
### (By Counterclaim Plaintiffs Against All Counterclaim Defendants)

136.   Counterclaim Plaintiffs re-allege and incorporate by reference each and every allegation contained in Paragraph 1 though 135 above as if set forth fully herein.

137.   By this *Counterclaim*, Counterclaim Plaintiffs seek a finding by the Court that the *Underlying Action* is without merit and was not brought in good faith.

138.   By this *Counterclaim*, Counterclaim Plaintiffs seek a finding by the Court that they are entitled to an award of their attorneys' fees pursuant to Utah Code § 78B-5-825.

## THIRD  CLAIM  FOR CIVIL CONSPIRACY RIGHTS
### (By Counterclaim Plaintiff Benally Against All Counterclaim Defendants)

139.   Counterclaim Plaintiff Benally re-alleges and incorporate by reference each and every allegation contained in Paragraph 1 though 138 above as if set forth fully herein.

140.   As described herein above, Counterclaim Defendants' actions and those of their co-conspirator Gorman were motivated by racial animus

directed at Counterclaim Plaintiff Benally and other members of the Navajo

Nation who, for any number of reasons, are not able to vote in-person at a polling

location.

141.   As described herein above, Counterclaim Defendants' actions and

their co-conspirator Gorman agreed and conspired between and among themselves

for the express purpose of depriving Counterclaim Plaintiff Benally and other

members of the Navajo Nation who, for any number of reasons are not able to vote

in-person at a polling location, of the equal protection of the laws and/or of equal

privileges and immunities under the law.

142.   As described herein above, Counterclaim Defendants' and  their co-

conspirator Gorman have committed numerous overt acts in furtherance of this

conspiracy including, but not limited to, bringing and/or funding this

manufactured sham lawsuit.

143.   As described herein above, Counterclaim Defendants' actions

and those of their co-conspirator Gorman were intended to injure and have injured

Counterclaim Plaintiff Benally.

144.   As a natural, direct and proximate cause of Counterclaim Defendants'

actions and those of their co-conspirator Gorman, Counterclaim Plaintiff Benally has been harmed and damaged in an amount to be proven at trial.

145.   As described herein above, Counterclaim Defendants actions and those of their co-conspirator Gorman towards Counterclaim Plaintiff Benally having been otherwise committed and/or carried out with malice and the intent to harm Counterclaim Plaintiff Benally, she is entitled to an ward of punitive damages in an amount sufficient to punish and/or to make an example of Counterclaim Defendants.

## FOURTH   CLAIM  FOR CIVIL RIGHTS
**(By Counterclaim Plaintiff Benally Against All Counterclaim Defendants)**

146.   Counterclaim Plaintiff Benally re-alleges and incorporate by reference each and every allegation contained in Paragraph 1 though 145 above as if set forth fully herein.

147.   As described herein above, Counterclaim Defendants' actions and those of their co-conspirator Gorman were motivated by racial animus directed at Counterclaim Plaintiff Benally and other members of the Navajo Nation who, for any number of reasons, are not able to vote in-person at a polling location.

148.   As described herein above, Counterclaim Defendants and their co-conspirator Gorman agreed and conspired between and among themselves for the express purpose of depriving Counterclaim Plaintiff Benally and other members of the Navajo Nation who, for any number of reasons are to able to vote in-person at a polling location, of the equal protection of the laws and/or of equal privileges and immunities under the law.

149.   As described herein above, Counterclaim Defendants' actions and those of their co-conspirator Gorman and are in violation of 42 U.S.C. §§ 1981 and 1985(3) as well as 52 U.S.C. § § 10307(b).

150.   As described herein above, Counterclaim Defendants' actions and those of their co-conspirator Gorman were intended to injure and have injured Counterclaim Plaintiff Benally.

151.   As a natural, direct and proximate cause of Counterclaim Defendants' actions and those of their co-conspirator Gorman, Counterclaim Plaintiff Benally has been harmed and damaged in an amount to be proven at trial.

152.   As described herein above, Counterclaim Defendants actions and those of their co-conspirator Gorman towards Counterclaim Plaintiff Benally

having been otherwise committed and/or carried out with malice and the intent to harm Counterclaim Plaintiff Benally, she is entitled to an ward of punitive damages in an amount sufficient to punish and/or to make an example of Counterclaim Defendants.

153.   Counterclaim Plaintiff Benally is entitled to an award of attorneys' fees pursuant to 42 U.S.C. § 1988 and 52 U.S.C. §10310(e).

## FIFTH  CLAIM  FOR ABUSE OF PROCESS
### (By Counterclaim Plaintiff Benally Against All Counterclaim Defendants)

154.   Counterclaim Plaintiff Benally re-alleges and incorporates by reference each and every allegation contained in Paragraph 1 though 153 above as if set forth fully herein.

155.   Counterclaim Defendants' false, baseless, unfounded and otherwise outrageous lawsuit against Counterclaim Plaintiff is an abuse of process in that the *Underlying Action* was commenced and is being continued for the improper, unlawful and ulterior purpose of allowing Counterclaim Defendant Maryboy, Kenneth Maryboy and Manual Morgan to reassume control of the election of a County Commissioner from District Three by suppressing the vote of her supporters.

156.   As described herein above, Counterclaim Defendants' actions and those of Gorman were intended to injure and have injured Counterclaim Plaintiff Benally.

157.   As a natural, direct and proximate cause of Counterclaim Defendants' actions and those of their co-conspirator Gorman, Counterclaim Plaintiff Benally has been harmed and damaged in an amount to be proven at trial.

158.   As described herein above, Counterclaim Defendants actions and those of their co-conspirator Gorman, towards Counterclaim Plaintiff Benally having been otherwise committed and/or carried out with malice and the intent to harm Counterclaim Plaintiff Benally, she is entitled to an award of punitive damages in an amount sufficient to punish and/or to make an example of Counterclaim Defendants.

## JURY  DEMAND

Counterclaim Plaintiffs hereby demand trial by jury.

## PRAYER

WHEREFORE, Counterclaim Plaintiffs pray for *Judgment* against the Counterclaim Defendants as follows:

1.      For a declaration under 28 U.S.C. §§ 2201 and 2202 that San Juan County's vote-by-mail procedures does not violate either the provisions of the *Voting Rights Act* or the United States *Constitution*, and that the County is legally authorized to conduct future elections using its vote-by-mail procedures.

2.      For a declaration under 28 U.S.C. §§ 2201 and 2202 that the *Underlying Action* is without merit and was not brought in good faith so as to entitle Counterclaim Plaintiffs to an award of attorneys' fees pursuant to *Utah Code* § 78B-5-825.

3.      For an award of compensatory and punitive damages to Counterclaim Plaintiff Benally in amounts to be determined at trial.

4.      For an award of attorneys' fees to Counterclaim Plaintiffs  pursuant to UCA § 78B-5-825, 42 U.S.C. § 1988 and/or 52 U.S.C. §10310(e).

5.      For such other and further relief as the Court deems just and merited

        DATED this 30th  day of May, 2016.

                                SUITTER AXLAND, PLLC

                                 /s/ jesse c. trentadue
                                Jesse C. Trentadue
                                Carl F. Huefner
                                Britton R. Butterfield
                                *Attorneys for Counterclaim Plaintiffs*

*T:\7000\7788\J\AMENDED COUNTERCLAIM.wpd*

## CERTIFICATE OF SERVICE

I hereby certify that on the 30th day of May, 2016, I electronically filed the foregoing document with the U.S. District Court for the District of Utah.  Notice will automatically be electronically mailed to the following individual(s) who are registered with the U.S. District Court CM/ECF System:

John Mejia (Bar No. 13965)
Leah Farrell (Bar No. 13696)
American Civil Liberties Union of Utah
355 North 300 West
Salt Lake City, UT 84103
T: (801) 521-9862
jmejia@acluutah.org
lfarrell@acluutah.org
*Attorneys for Plaintiffs*

Ezra D. Rosenberg*
M. Eileen O'Connor*
Arusha Gordon*
Lawyers' Committee for Civil Rights Under Law
1401 New York Ave., Suite 400
Washington, D.C. 20005
T: (202) 662-8600
erosenberg@lawyerscommittee.org
eoconnor@lawyerscommittee.org
agordon@lawyerscommittee.org
*Attorneys for Plaintiffs*

M. Laughlin McDonald*
American Civil Liberties Union Foundation
2700 International Tower
229 Peachtree Street, NE
Atlanta, GA 30303
T: (404) 500-1235
lmcdonald@aclu.org
*Attorneys for Plaintiffs*

Maya Kane*
10 Town Square, #52
Durango, Colorado 81301
T: (970) 946-5419
mayakanelaw@gmail.com
*Attorneys for Plaintiffs*

William A. Rudnick*
DLA Piper LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, IL 60601
T: (312) 368-4000
william.rudnick@dlapiper.com
*Attorneys for Plaintiffs*

Raymond M. Williams*
DLA Piper LLP (US)
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, PA 19103
T: (215) 656-3300
raymond.williams@dlapiper.com
*Attorneys for Plaintiffs*

/s/ jesse c. trentadue