IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| NAVAJO NATION HUMAN RIGHTS COMMISSION, et al., <br><br> Plaintiffs, <br><br> v. <br><br> SAN JUAN COUNTY; JOHN DAVID NIELSON, et al., <br><br> Defendants. | MEMORANDUM DECISION AND ORDER GRANTING MOTION TO EXPEDITE DISCOVERY <br><br><br> Case No. 2:16-cv-00154 JNP <br><br> District Judge Jill Parrish <br><br> Magistrate Judge Brooke Wells |

Plaintiffs Navajo Nation Human Rights Commission, Peggy Phillips, Mark Markboy, Wilfred Jones, Terry Whitehat, Betty Billie Farley, Willie Skow, and Mabel Skow (collectively Plaintiffs), move the court under Rules 26 and 34 of the Federal Rules of Civil Procedure,[1] for an Order allowing Plaintiffs to conduct certain limited discovery on an expedited basis.[2] After careful consideration of the record and the briefs, the court has determined that oral argument is unnecessary and decides this case based upon the parties' submissions.[3] As set forth below the court GRANTS the motion with additional requirements.

BACKGROUND

This case concerns voting rights in San Juan County, Utah. San Juan County "is one of the largest counties in the United States" consisting of approximately 8,000 square miles, making

---

[1] Fed. R. Civ. P. 26; Fed. R. Civ. P. 34.

[2] Docket no. 54. The court

[3] DUCivR. 7-1(f).

it roughly twice the size of Connecticut.[4]  This creates some challenges in administering certain public services such as voting.

Plaintiffs filed a complaint for declaratory and injunctive relief seeking *inter alia*, to enjoin Defendants San Juan County, the county clerk and three county commissioners in their official capacities, from alleged ongoing violations of the Voting Rights Act and the United States Constitution.  Plaintiffs are specifically seeking a "ruling form this court that San Juan County's vote-by-mail procedures violate Section 2 and 203 of the Voting Rights Act, as well as the Fourteenth Amendment of the United States Constitution."[5]  Plaintiffs "intend to file a motion for preliminary injunction prior to the June 28, 2016 primary elections."[6]  The intent of that motion, according to Plaintiffs, is to request that the court order Defendants "open polling locations equally accessible to both Navajo and white voters, and requiring that Defendants provide language assistance to limited English-proficient Navajo speakers."[7]  Plaintiffs argue such a motion is necessary because in 2014 Defendants moved to a mail-only voting system that allegedly illegally discriminates against Navajos.

In 2015 the United States Department of Justice (DOJ) spent "almost a week reviewing the County's vote-by-mail procedures for compliance with both the Voting Rights Act and the Fourteenth Amendment, and expressed no concerns."[8]  Defendants point out the positive impact the vote-by-mail system has had in San Juan County.  For example, during the 2014 elections voter participation in precincts with a heavy concentration of Navajo voters went from 25% during the 2012 elections, which used only in-person voting at polls, to 54% with a vote-by-mail

---

[4] Op. p. 3, docket no. 65.

[5] Op. p. 4, docket no. 65.

[6] Mtn. p. 2, docket no. 54.

[7] *Id.* at p. 3.

[8] Op. p. 5.

system. Despite these positives, Defendants note that during the 2016 election cycle some additional measures will be taken. These include: (1) the opening of three additional polling locations all located on the Navajo Reservation to ensure that no voter in the County is more than a one-hour drive from an in-person voting location; (2) the availability of Navajo-language voting assistance at each of the polling locations; (3) a Navajo-language explanation of the vote-by-mail system, including a translation of the ballot, on the County's elections page as well as at each polling location; (4) the attendance at Navajo Chapter meetings by Mr. Edward Tapaha, the County's Navajo Liason/Elections Coordinator, who will explain in the Navajo language the voting system and answer any questions; and (5) Navajo-language radio announcements about the election, the vote-by-mail process and in-person voting locations.

In support of Defendants' factual background and the new measures that will be taken during the 2016 voting cycle, Defendants provide a signed declaration from Mr. John David Nielson who is the San Juan County Clerk/Auditor.[9] Plaintiffs contest Mr. Nielson's declaration asserting it is filled with inaccuracies and seek to test Defendants' assertions regarding the plans for the 2016 voting cycle.

## DISCUSSION

Plaintiffs seek expedited discovery in support of a putative motion for preliminary injunction that will likely be filed in the near future. Plaintiffs argue that they have tried to obtain evidence documenting Defendants' decisions and procedures for the 2016 elections, but have not received anything substantive. Moreover, time is of the essence here because it concerns the June 28, 2016 primary elections as well as the later general election. Plaintiffs seek expedited discovery on the following:

---

[9] Docket no. 62.

(1) Documents relating to Defendants' claim that "[f]or the 2016 and future election cycles in-person voting or polls will be available at four locations within San Juan County: Monticello, Montezuma Creek, Oljato and Navajo Mountain, Utah";

(2) Documents relating to Defendants' claim that "for the 2016 and future election cycles, Navajo language assistance will be available at all four polling places" and detailing the dates and hours the polling places will be open, the exact location of the polling places, the number of staff and voting machines at each location, the number of Navajo interpreters at each location, and the County's plans for recruiting and training interpreters and other polling place staff;

(3) The County's plans to "provid[e] Navajo language ballots in audio form at the four polling places within San Juan County and on the County's website";

(4) The County's plans for educating the public about the new polling places, including the dates and frequency of any announcements made on local radio and any visits by the County Clerk's staff to chapter houses to explain the change; and

(5) Deposition testimony from a person most knowledgeable regarding Defendants' decision to make available, for 2016 and future elections cycles, four polling locations in San Juan County and Defendants' plans to provide Navajo language assistance at those locations.[10]

In opposition, Defendants argue that Plaintiffs have not made the necessary showing for expedited discovery. Defendants further assert that the information sought by Plaintiffs has already been provided via e-mail, in Defendants' Answer and Counterclaim and in the Declaration of Mr. Nielson.

Generally a party "may not seek discovery from any source" prior to a Rule 26(f) discovery conference.[11] Rule 26(d) of the Federal Rules of Civil Procedure, however, grants the trial court discretion to modify the normal time limitations that apply under the discovery rules where good cause is shown.[12] "[A] party seeking expedited discovery in advance of a Rule 26(f) conference has the burden of showing good cause for the requested departure from usual

---

[10] Mtn. p. 4.

[11] Fed. R. Civ. P. 26(d).

[12] *Id.*

discovery procedures."[13] The good cause standard may be met when a party seeks a preliminary injunction[14] or in cases where a party has asserted claims of infringement or unfair competition.[15] Expedited discovery is also often very critical in cases involving unknown defendants.[16]

As noted in a case from this district, *Sara Lee Corp. v. Sycamore Family Bakery Inc.*,[17] Rule 34 of the Federal Rules permits the court to grant a party access to tangible items, documents, and electronically stored information that is relevant to an action. Thus, it appears the procedural rules allow the court to "grant discovery based upon good cause shown without an actual pending motion for preliminary injunction."[18] Whether or not there is a pending motion for preliminary injunction however is not dispositive because in every case, the court has discretion in the interests of justice, to prevent excessive or burdensome discovery.[19] Moreover, courts often consider other factors besides whether there is a pending motion for preliminary injunction. For example, under the resonableness test courts have also considered the breadth of the discovery requests, the purpose for the requesting expedited discovery, the burden on the

---

[13] *Qwest Comms. Int'l, Inc. v. WorldQuest Networks, Inc.*, 213 F.R.D. 418, 419 (D.Colo. 2003).

[14] *See, e.g., Ellsworth Associates, Inc. v. United States*, 917 F.Supp. 841, 844 (D.D.C.1996); *Revlon Consumer Products Corp. v. Jennifer Leather Broadway, Inc.*, 858 F.Supp. 1268, 1269 (S.D.N.Y.1994).

[15] *Energetics Systems Corp. v. Advanced Cerametrics, Inc.*, 1996 WL 130991, *2 (E.D.Pa.1996).

[16] *See, e.g., Quad Int'l, Inc. v. Does 1-6*, 2013 WL 142865 (E.D.Cal. 2013); *Diabolic Video Prods., Inc. v. Does 1-2099*, 2011 WL 3100404 (N.D. Cal. 2011) ; *1524948 Alberta Ltd. v. John Doe 1-50,* 2010 WL 3743907 D.Utah 2010).

[17] 2009 WL 1765294 (D.Utah 2009).

[18] *Id.* at *1.

[19] Fed. R. Civ. P. 26(b)(2). *See also Mack v. Great Atlantic and Pacific Tea Co., Inc.*, 871 F.2d 179, 187 (1st Cir.1989) (noting the trial court's power to deal with the problem of over-discovery); *Otis Clapp & Son, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 743 (7th Cir.1985) (recognizing that district court judges are given broad discretion to supervise the discovery process, and their decisions are subject to review only for abuse of discretion).

defendants to comply with the requests and how far in advance of the typical discovery process the requests are made.[20]

Here, Plaintiffs argue good cause exists because "Defendants allege that they have adopted and will be implementing measures for the 2016 and future election cycles that go to the heart of the remedies sought by Plaintiffs in the Complaint."[21] The court has carefully considered the allegations in Plaintiffs' Complaint as well as the factors considered in other cases and finds that Plaintiffs have established good cause for expedited discovery in advance of a Rule 26(f) conference. But, this does not end the inquiry based upon the particular facts of this case.

Defendants have provided what they deem to be adequate responses to Plaintiffs questions concerning election procedures via e-mail, in their Answer and Counterclaim and in the Declaration of Mr. Nielson. In considering those responses the court believes they implicate the principles of proportionality and cost-shifting that has become more prevalent in the recent amendments to the Rules. Rule 26(b)(1) as recently amended provides:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.[22]

---

[20] *See In re Fannie Mae Derivative Litig.*, 227 F.R.D. 142, 143 (D.D.C. 2005); *Sunflower Electric Power Corp. v. Kathleen Sebelius, et al.*, 2009 WL 774340 (D.Kan. 2009).

[21] Mtn. p. 11.

[22] Fed. R. Civ. P. 26(b)(1).

Now considerations of both relevance and proportionality govern the scope of discovery.[23] Relevance is "construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on" any party's claim or defense.[24] And information "need not be admissible in evidence to be discoverable."[25] But, the amendment deleted the "reasonably calculated to lead to the discovery of admissible evidence" phrase because it was often misused to define the scope of discovery and had the potential to "swallow any other limitation."[26]

Proportionality considerations are not new as they have been part of the Federal Rules since 1983.[27] The 1983 Committee Note stated that the new provisions were added "to deal with the problem of over-discovery" and to help prevent redundant or disproportionate discovery by giving courts authority to reduce amounts of discovery.[28] There is no distinctive difference with the rule change in the parties' responsibilities when a discovery dispute now arises.[29] When the discovery sought appears relevant, the party resisting discovery has the burden to establish the lack of relevancy by demonstrating the requested discovery (1) does not come within the scope of relevancy as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevancy that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure. In contrast, when the relevancy of the discovery request is not readily apparent

---

[23] *See id.* advisory committee's note to 2015 amendment ("Information is discoverable under revised Rule 26(b)(1) if it is relevant to any party's claim or defense and is proportional to the needs of the case.").

[24] O*ppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

[25] Fed. R. Civ. P. 26(b)(1).

[26] *See id.* advisory committee's note to 2015 amendment.

[27] *Id.*

[28] *Id.*

[29] *Id.*

on its face, the party seeking the discovery has the burden to show the relevancy of the request. And relevancy determinations are generally made on a case-by-case basis.[30]

In the instant dispute the parties make no mention of proportionality in their briefing on the motion. Under the amended rule and the aforementioned principles, however, the court has an obligation to limit the frequency or extent of discovery if it determines that: (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in this action; or (iii) the proposed discovery is outside the scope permitted by the rule.[31]

Here each of the requests seeks essentially duplicative discovery from Defendants that is available from other sources such as in e-mail responses or via the Declaration of Mr. Nielson. As such, based on principles of proportionality and the general principles behind the power of a court to shift discovery costs under Rule 26(b)(2),[32] the court will order that Plaintiffs pay for any expedited discovery they seek in this motion. This will better balance the competing interests of the parties, address concerns about the impact and role of discovery on the civil justice system and more closely approach the intent of the Federal Discovery Rules as manifested by recent amendments.

---

[30] *Brecek & Young Advisors, Inc. v. Lloyds of London Syndicate 2003*, 2010 WL 4340457 *3 (D.Kan. 2010).

[31] Fed. R. Civ. P. 26(b)(2)(C).

[32] *For e.g., see Thornton v. Morgan Stanley Smith Barney, LLC*, 2013 WL 1890706 *1 (N.D. Oklahoma 2013) (nothing the authority of a court to condition the discovery of certain items by "requiring the party seeking the discovery to pay some or all of the costs."); *Fiber Optic Designs, Inc. v. New England Pottery, LLC*, 262 F.R.D. 586, 587 (D. Colo. 2009) (noting the "role and impact of discovery on the civil justice system" and how cost-shifting may help the complex problem); *Semsroth v. City of Wichita*, 239 F.R.D. 630, 637-38 (D.Kansas 2006) (setting forth factors to use when considering cost-shifting in the electronic discovery context); *Bills v. Kennecott Corp.*, 108 F.R.D. 459, 462 (D.Utah 1985) (noting how cost-shifting may evntually become obsolete with advancements in computer technology).

ORDER

For good cause shown the court GRANTS Plaintiffs' Motion for Expedited Discovery. The court FURTHER ORDERS that the cost of the expedited discovery sought in this motion is to be borne by Plaintiffs.

IT IS SO ORDERED.

DATED this 31 May 2016.

_____
Brooke C. Wells
United States Magistrate Judge