IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
CENTRAL DIVISION

| | |
|---|---|
| NAVAJO NATION HUMAN RIGHTS COMMISSION; PEGGY PHILLIPS; MARK MARYBOY; WILFRED JONES; TERRY WHITEHAT; BETTY BILLIE FARLEY; WILLIE SKOW; and MABEL SKOW, | |
| | Case No. 2:16-cv-00154 JNP |
| Plaintiffs, | |
| v. | MOTION TO DISMISS AMENDED COUNTERCLAIMS WITH PREJUDICE |
| SAN JUAN COUNTY; JOHN DAVID NIELSON, in his official capacity as San Juan County Clerk; and PHIL LYMAN, BRUCE ADAMS, and REBECCA BENALLY, in their official capacities as San Juan County Commissioners, | |
| Defendants. | |

## INTRODUCTION

Plaintiffs[1] Navajo Nation Human Rights Commission, Peggy Phillips, Mark Maryboy, Wilfred Jones, Terry Whitehat, Betty Billie Farley, Willie Skow, and Mabel Skow move to dismiss, pursuant to Federal Rule of Civil Procedure 12(b) and Local Rule 7-1, all five amended counterclaims brought by Defendants San Juan County, John David Nielson, Phil Lyman, Bruce Adams, and Rebecca Benally for the following reasons:

- Defendants do not have standing to assert the First Claim.

- The Second Claim is not a claim at all; it is a defense.

---

[1] For clarity and ease of reading, Plaintiffs and Counterclaim Defendants Navajo Nation Human Rights Commission, Peggy Phillips, Mark Maryboy, Wilfred Jones, Terry Whitehat, Betty Billie Farley, Willie Skow, and Mabel Skow are referred to as "Plaintiffs" throughout. Similarly, Defendants and Counterclaim Plaintiffs San Juan County, John David Nielson, Phil Lyman, Bruce Adams, and Rebecca Benally are referred to as "Defendants" throughout.

- Defendant Benally is not allowed to bring the Third, Fourth, and Fifth Claims because she was not a party to the underlying action in her individual capacity and, moreover, she failed to allege facts to support the requisite elements of each.

As detailed more fully below, these critical omissions are fatal to all of the Defendants' allegations and mandate dismissal of the counterclaims with prejudice.

## STATEMENT OF FACTS

### A.  Complaint for Declaratory and Injunctive Relief

On February 25, 2016, Plaintiffs filed a complaint for declaratory and injunctive relief to remedy Defendants' ongoing violations of the Voting Rights Act ("VRA") and Fourteenth Amendment of the United States Constitution ("Complaint").  *See* Complaint for Declaratory and Injunctive Relief, ECF No. 2.  Plaintiffs sued Defendants San Juan County, county clerk Nielson and county commissioners Lyman, Adams, and Benally in their official capacities only. *See id.*

In 2014, the County switched to a mail-only system for its elections.  *Id.* ¶ 28.  Under the mail-only election system, the only location to vote in-person in San Juan County, even on Election Day, was in the County seat of Monticello.[2] *Id.* ¶ 7.  To reach Monticello, Navajo residents of San Juan County are required to travel, on average, more than twice as far to vote in person in comparison to white residents of San Juan County.  *Id.*  The significantly greater average distance required for Navajo residents in San Juan County to reach the county seat of Monticello interacts with socioeconomic factors, including high rates of poverty and less access to reliable public and private transportation, and the history of racial discrimination and hostility

---

[2] Plaintiffs acknowledge that, after Plaintiffs filed the underlying action, likely in response to the action Defendants opened three additional polling places in Navajo-majority precincts in the County for the June 28 primary, likely in response to Plaintiffs' action.  Answer ¶ 1, ECF No. 41; Counterclaim ¶¶ 46-47, ECF No. 40.  Plaintiffs continue to have concerns about whether the County is in full compliance with their obligations under the VRA and the Fourteenth Amendment and that Defendants may switch to mail-only voting again in the future.

toward Navajo residents, to place a severe burden upon Navajo residents who wish to vote in person. *Id.* This burden falls substantially less heavily on white residents of San Juan County. *Id.* Defendants' closure of polling places unreasonably hinders the ability of Navajo residents in San Juan County to participate effectively in the political process on equal terms with white residents. *Id.* ¶ 2.

Furthermore, Navajo is traditionally an unwritten language. *Id.* ¶ 4. By closing polling places, Defendants fail to provide adequate oral assistance to limited English-proficient Navajo voters and thus the current electoral scheme violates Section 203 of the Voting Rights Act, 52 U.S.C. § 10503. *Id.* ¶ 4.

Prior to filing the Complaint, several organizations corresponded with the County regarding the mail-only elections, requesting that polling places be reopened. *See id.* ¶¶ 59, 61-65. The last correspondence by the County Clerk prior to filing the Complaint of which Plaintiffs are aware was dated October 1, 2015, and in it, the clerk explained that that County was not planning to reopen polling places at that time. *Id.* ¶ 63.

In light of these violations, Plaintiffs seek, among other things, the following remedies in their Complaint:

> (1) Judgment declaring that Defendants' closure of polling places and maintenance of a mail-only voting system in San Juan County violates Section 203 of the Voting Rights Act, Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, and the fundamental right to vote as protected by the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution; and

(2) Injunctive relief mandating that Defendants reopen polling sites equally
accessible to Navajo voters as to white voters and full compliance with the
County's obligations under Section 203 of the Voting Rights Act to provide full
translation, interpretation and assistance services to Navajo speaking voters for
the 2016 state and county elections and for all future elections.

*Id.* at Prayer for Relief.

## B. <u>Amended Counterclaim for Declaratory and Other Relief</u>

On May 30, 2016, Defendants filed an Amended Counterclaim for Declaratory and Other
Relief ("Amended Counterclaim").  *See* Amended Counterclaim, ECF No. 74.  They allege, *inter
alia*, that for both the 2016 County-wide primary election and the general election there "will be
three additional polling places open on election day [in the Navajo-majority precincts] to
accommodate those voters who wish to cast their ballot in-person" such that "no voter in the
County is more than a one-hour drive away from an in-person voting location."  Amended
Counterclaim ¶¶ 38, 40.  Moreover, they allege that for both elections, there will be a Navajo-
language audio translation "of the ballot itself . . . available at each in-person voting location"
and Navajo language radio announcements about election procedures on two radio stations prior
to the elections.  *Id.* ¶¶ 42, 43.

Further, Defendants allege Plaintiffs brought the underlying action in bad faith because,
in part, they voted by mail in certain past elections (including in 2014, when the only option to
vote was by mail!).  *Id*. ¶¶ 78-111.  Finally, Defendants allege Plaintiffs have engaged in a
conspiracy, and filed the underlying lawsuit in furtherance of said conspiracy, in an effort to
control the election of the County Commissioner from District Three, a position currently held
by Defendant Benally.  *Id*. ¶¶ 114-125, 140-153.

Defendants assert the following claims for relief:

(1) First Claim for Declaratory Relief, brought by all Defendants, seeking a declaration from this Court that San Juan County's vote-by-mail procedures fully comply with both the Voting Rights Act and the Fourteenth Amendment of the United States Constitution, along with an award of attorneys' fees pursuant to 42 U.S.C. § 1988 and 52 U.S.C. § 10310(e);

(2) Second Claim for Declaratory Relief, brought by all Defendants, seeking a finding by the Court that the underlying action is without merit and was not brought in good faith, along with a finding that they are entitled to an award of attorneys' fees pursuant to Utah Code § 78B-5-825;

(3) Third Claim for Civil Conspiracy Rights, brought by Defendant Benally seeking punitive damages for Ms. Benally based on Plaintiffs' alleged conspiracy to undermine Ms. Benally's support among Navajo voters and deprive Navajo voters who "are not able to vote in-person" of the equal protection of the law by filing this lawsuit;

(4) Fourth Claim for Civil Rights, brought by Defendant Benally, under 42 U.S.C. §§ 1981 and 1985(3) and 52 U.S.C. § 10307(b), based on Plaintiffs' alleged conspiracy to undermine Ms. Benally's support among Navajo voters and deprive Navajo voters who "are to [sic] able to vote in-person" of the equal protection of the law by filing this lawsuit. The claim also seeks punitive damages and an award of attorneys' fees pursuant to 42 U.S.C. § 1988 and 52 U.S.C. § 10310(e); and

(5) Fifth Claim for Abuse of Process, brought by Defendant Benally, based on Plaintiffs' allegedly using the underlying action to allow Counterclaim Defendant Maryboy, Kenneth Maryboy, and Manual Morgan to reassume control of the election of a County Commissioner from District Three by suppressing the vote of her supporters, along with punitive damages.

*See id.* ¶¶ 126-158. Defendant Benally generally asserts that she is suing in both her official and individual capacities, but she does not specify which counterclaims she is attempting to bring in which capacity. *See id.* ¶ 5.

## GOVERNING STANDARDS

"[A] counterclaim differs from an answer or affirmative defense. A counterclaim is used when seeking affirmative relief, while an answer or affirmative defense seeks to defeat a plaintiff's claim." *See Phila. Indem. Ins. Co. v. Chi. Title Ins. Co.*, 771 F.3d 391, 401 (7th Cir. 2014); *see also First Nat'l Bank v. R & L Wood Products, Inc.*, No. 89-6445, 1990 U.S. App. LEXIS 19147, at *8 (6th Cir. Oct. 25, 1990) (unpublished) (distinguishing an affirmative defense from a counterclaim as a response that only "rais[es] a defense, and fails to allege a claim against the plaintiff"); *VP Props. & Devs., LLLP v. Seneca Specialty Ins. Co.*, No. 15-11591, 2016 U.S. App. LEXIS 4614, at *10 (11th Cir. Mar. 14, 2016) (unpublished) (finding that a claim was an affirmative defense, not a counterclaim, because it did not set forth any legal theory of recovery), *F.D.I.C. v. F.S.S.S.*, 829 F. Supp. 317, 322 n.11 (D. Alaska 1993) ("Counterclaims are separate claims independent of the plaintiff's underlying claim."), Fed. R. Civ. P. 13(c) ("A counterclaim need not diminish or defeat the recovery sought by the opposing party.").

Dismissal pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure is appropriate "if the [claim] fails to state a claim upon which relief can be granted, assuming all

well-pleaded factual allegations are true." *Moss v. Kopp*, 505 F. Supp. 2d 1120, 1123 (D. Utah 2007) (citing *Sutton v. Utah State Sch. For Deaf & Blind*, 173 F.3d 1226, 1236 (10th Cir. 1999), *aff'd*, 559 F.3d 1155 (10th Cir. 2009). "[A] court should consider only the well-pleaded allegations, and not allow conclusory assertions to satisfy the plaintiff's burden." *Moss*, 505 F. Supp. 2d at 1123 (citing *Elliott Indus. Ltd. P'ship v. BP Am. Prod. Co.*, 407 F.3d 1091, 1107 (10th Cir. 2005) (stating that "[a] motion to dismiss for failure to state a claim 'admits all well-pleaded facts in the complaint as distinguished from conclusory allegations.'")).

"To survive a motion to dismiss, a [claim] must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions are not accepted as true; instead, they must be supported by facts. *Id.* at 678-79.

The standard of review for a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) based on the face of the complaint is the same as the standard under Fed. R. Civ. P. 12(b)(6). "The Supreme Court has directed that '[f]or purposes of ruling on a motion to dismiss for want of standing ... courts must accept as true all material allegations of the complaint, and must construe the complaint in favor of the complaining party.'" *Brown v. Herbert*, 850 F. Supp. 2d 1240, 1244 (D. Utah 2012) (quoting *Warth v. Seldin*, 422 U.S. 490, 501 (1975)).

## ARGUMENT

As detailed below, this Court should dismiss all five counterclaims because none meet the standards necessary to survive a motion to dismiss.

I.    **The Defendants' First Claim Is Not a Claim and, Even if It Were, They Do Not Have Standing to Assert the Claim.**

In their First Claim, Defendants "seek a declaration from this Court that San Juan County's vote-by-mail procedures as described herein above fully comply with both the *Voting Rights Act* and the *Fourteenth Amendment* of the United States *Constitution*." Amended Counterclaim ¶ 133, ECF No. 74 (emphasis in original). The Court should dismiss this claim for two reasons. First, this "claim" is only a defense to the underlying lawsuit. That is, Defendants have alleged new facts about their stated intention to move away from mail-only voting—including opening three additional polling places and providing Navajo language assistance at all four polling places for the 2016 and future elections—and seek a judgment based on those untested allegations. Defendants are thus only attempting to create a factual dispute, which is a defense, not a counterclaim. Moreover, it is facially frivolous. In essence, Defendants claim that someone else might sue them in the future if this Court does not rule on Plaintiffs' claims. Defendants will get the relief from this supposed injury by adjudication of Plaintiffs' claims, not by being allowed to file an extraneous counterclaim that simply asserts the opposite of what Plaintiffs claim.

Similarly, Defendants' claim for attorneys' fees in the Amended Counterclaim must be dismissed, because there is no statutory basis for Defendants to obtain attorneys' fees, based on a claim for declaratory relief. Defendants cannot be deemed "prevailing parties" for purposes of the VRA, as their cause would "not advance any of the purposes that Congress meant to promote by making fees available." *Shelby Cnty., Ala. v. Lynch*, 799 F.3d 1173, 1181 (D.C. Cir. 2015), *cert. denied,* 136 S. Ct. 981, 194 L. Ed. 2d 4 (2016).

Second, the Defendants lack standing to bring the First Claim. "[A] demand for declaratory relief does not by itself confer standing." *Russell v. Fin. Capital Equities*, 158 Fed.

Appx. 953, 955-56 (10th Cir. 2005) (unpublished opinion).  The "irreducible constitutional minimum of standing contains three elements."  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560.  "First, the plaintiff must have suffered an 'injury in fact'…. Second, there must be a causal connection between the injury and the conduct complained of…. Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'"  *Id.* at 560-61 (internal citations omitted).  Further, "[a]n injury-in-fact is an invasion of a *legally protected interest*' that is (a) concrete and particularized and (b) actual or imminent."  *Utah Animal Rights Coal. v. Salt Lake City Corp.*, 371 F.3d 1248, 1255 (10th Cir. 2004) (emphasis added).

Here, Defendants have no injury, and therefore no standing, to bring the first claim because (1) neither the VRA nor the Fourteenth Amendment, the authorities alleged in the First Claim, confer any legal protections on counties or their officials acting in their official capacities that Defendants allege were violated by Plaintiffs; (2) Defendants' request for a declaratory judgment does not independently create standing; and (3) Defendants' claim for attorneys' fees does not suffice as an injury.

Although Defendants reference the VRA and the Fourteenth Amendment as the basis for their First Claim, they fail to explain the nature of their threatened "legally protected interest" which is supposedly protected under the VRA and Fourteenth Amendment.  *Utah Animal Rights Coal.*, 371 F.3d at 1255.  To advance that claim in this Court, they need a congressionally created right of action, and they have none.

In general, the VRA creates a cause of action only for members of those classes of persons protected by the statute (i.e., racial, ethnic, and language minorities).  *See* 52 U.S.C. § 10302; *Thornburg v. Gingles*, 478 U.S. 30, 43 (U.S. 1986) ("Subsection 2(a) [of the Voting

Rights Act] prohibits all States and political subdivisions from imposing *any* voting qualifications or prerequisites to voting, or any standards, practices, or procedures which result in the denial or abridgment of the right to vote of any citizen who is a member of a *protected class of racial and language minorities*.") (emphasis added).  The one exception is Section 14(b), which provides that certain challenges to the enforceability of specific provisions of the VRA may be brought only in the United States District Court for the District of Columbia.  *See* 52 U.S.C. § 10310(b).  Here, the Defendants do not seek a declaration that any portion of the VRA is unenforceable and they have not brought their claim in the United States District Court for the District of Columbia.  Rather, they seek a declaration that their actions do not violate the VRA and filed their countersuit in the District Court of Utah.  There is no provision in the VRA that allows Defendants to bring, or the Court to hear, this claim.

Defendants' request for a declaratory judgment does not independently create standing. Standing in the underlying matter is required for a court to issue a declaratory judgment.  *See Jordan v. Sosa*, 654 F.3d 1012, 1025 (10th Cir. 2011) ("[W]hat makes a declaratory judgment action a proper judicial resolution of a case or controversy rather than an advisory opinion is the settling of some dispute").  In the words of the Tenth Circuit, "a demand for declaratory relief does not by itself confer standing."  *Russell v. Fin. Capital Equities*, 158 F. App'x 953, 955 (10th Cir. 2005) (unpublished opinion).  Therefore, Defendants request for a declaratory judgment under 28 USC § 2201 does not cure their lack of standing under either the VRA or the Fourteenth Amendment.

Defendants' allegation that "unless the Court rules on the legality of San Juan County's vote-by-mail procedures, the County will remain exposed to future challenges to those procedures by other plaintiffs" is also not an injury for the purposes of standing.  Amended

Counterclaim ¶ 134, ECF No. 74.  Simply put, this "harm" is too speculative to merit

consideration by this Court.  The Tenth Circuit has held that "an injury in fact must be actual or

imminent, not conjectural or hypothetical. Allegations of possible future injury do not satisfy the

requirements of Article III . . .  [a]n Article III injury must be more than a possibility."  *Smith v.*

*United States Court of Appeals*, 484 F.3d 1281, 1285 (10th Cir. 2007) (quoting *Nova Health Sys.*

*v. Gandy*, 416 F.3d 1149, 1155 (10th Cir. 2005)).  Currently, future litigation seeking changes to

Defendants unconstitutional voting procedures is at most a possibility.  Moreover, Defendants

have not cited any authority that recognizes this kind of "harm" as one that is sufficient to

convey standing.  Nor would one expect to find any such authority: followed to its logical end,

Defendants' position is that anyone has standing to bring any suit, since any party can reasonably

claim that they wish to avoid future litigation.

Finally, Defendants' claim in the First Amended Counterclaim for attorneys' fees does

not suffice as an injury.  *See Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 107 (1998)

("[A] plaintiff cannot achieve standing to litigate a substantive issue by bringing suit for the cost

of bringing suit.  The litigation must give the plaintiff some other benefit besides reimbursement

of costs that are a byproduct of the litigation itself."); *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472,

480 (1990) (an "interest in attorney's fees is, of course, insufficient to create an Article III case

or controversy where none exists on the merits of the underlying claim").

Therefore, this Court should dismiss Defendants' First Claim.

## II.  The Defendants' Second Claim Is Not a Claim for Relief.

In their Second Claim, Defendants seek a declaration that the "*Underlying Action* is

without merit and was not brought in good faith."  Amended Counterclaim ¶ 137, ECF No. 74

(emphasis in original).  They further seek an award of attorneys' fees pursuant to Utah Code §

78B-5-825, a "miscellaneous" subsection of Utah's Judicial Code on "Procedure and Evidence," which allows state courts to "award reasonable attorney fees to a prevailing party if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith."

The Court should dismiss this for several reasons.  First, Defendants' assertion that the underlying action is "without merit" is a defense, not a counterclaim.  Counterclaims are "separate claims independent of the plaintiff's underlying claim."  *F.D.I.C.*, 829 F. Supp. at 322 n.11 (distinguishing counterclaims from affirmative defenses, which "challenge the underlying liability"); *see* Fed. R. Civ. P. 13(c) ("A counterclaim need not diminish or defeat the recovery sought by the opposing party.").  Defendants' assertion is not a separate claim independent of Plaintiffs' underlying claim, and therefore is not an appropriate allegation for a counterclaim. *F.D.I.C.*, 829 F. Supp. at 322 n.11.  Defendants are free to proceed by way of motion to dismiss or motion for summary judgment, if appropriate; but they are not free to assert an affirmative claim on this basis.

Moreover, a counterclaim is not the correct context for Defendants' allegation that the underlying action was "not brought in good faith."  Amended Counterclaim ¶ 137, ECF No. 74. The purported declaration Defendants seek in the Second Claim is in reality a fruitless attempt to use a statute detailing Utah state court procedure as a vehicle to seek attorney fees in this federal question action.  There is no basis on which Utah Code § 78B-5-825, the cited state statute on court procedure for seeking attorney fees, applies in this action.  Federal courts "are not free to fashion drastic new rules with respect to the allowance of attorneys' fees to the prevailing party in federal litigation . . ." *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 269 (1975).

Therefore, this Court should dismiss Defendants' Second Claim.

### III.   The Third, Fourth and Fifth Claims Are Improperly Brought by Defendant Benally in her "Individual Capacity" and Lack Merit.

While Defendant Benally does not specify in which capacity she attempts to plead her Third, Fourth, and Fifth Claims, none of the claims have a plausible connection to her official duties as a San Juan County Commissioner.  Although these claims plead no cognizable (or recognizable) legal theory, the underlying facts all center around a supposed conspiracy to damage Defendant Benally politically.  None of these facts have anything to do with any official activity or duty she undertakes as a Commissioner.  The conclusory, implausible, and factually inaccurate allegation in the Third and Fourth Claims that a return to in-person voting would somehow mean that people could not also vote by mail does not alter this analysis.  Thus, the Third, Fourth, and Fifth Claims can only plausibly be read as being brought by Defendant Benally in her individual capacity.

These counterclaims must be dismissed because Plaintiffs only sued Defendant Benally in her official capacity.  Even taking her allegations as true, Defendant Benally asserts accusations related solely to her political positioning which have no bearing on the deprivation of rights at issue and attempts to do so in a separate capacity from the one in which she is a party in the underlying action.[3]

Only a party to a lawsuit is allowed to bring a counterclaim.  *See Banco Nacional de Cuba v. Chase Manhattan Bank*, 658 F.2d 875, 886 (2d Cir. 1981) (explaining "the traditional view is that a defendant may counterclaim only in the capacity in which he has been sued").  In

---

[3] Further, it is unclear whether the conflict of interest between Defendant Benally and the parties named as defendants in the underlying action is waivable, despite their representation by the same counsel.  That is, to the extent that Defendant Benally asserts that seeking to open additional polling places is part of a conspiracy to deprive her of rights, her personal interests are in direct conflict with the underlying action of Defendants, who have alleged that they intend to open additional polling places.

this case, Defendant Benally is not a party to the underlying action in her individual capacity, only her official capacity, and is being sued for only equitable relief in the underlying action.  As a legal matter, suing her for equitable relief in the underlying action in her official capacity is the same as suing San Juan County.  *See Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 544-45 n.6 (1986) (explaining suing an official in her official capacity is the same as suing the governmental entity she represents, and that official and personal capacities are "two different legal personages").  Courts in similar situations have found that parties sued in separate capacities are not allowed to bring counterclaims.  *See*, *e.g.*, *Banco Nacional de Cuba*, 658 F.2d at 885-86 (precluding defendant from asserting counterclaims in its capacity as trustee where defendant was not sued in such capacity); *Durham v. Bunn*, 85 F. Supp. 530, 531 (E.D. Pa. 1949) (precluding defendant, sued in his personal capacity, from bringing counterclaim in his representative capacity on behalf of the City of Philadelphia).

Should the Court decide to evaluate whether the Third, Fourth and Fifth Claims state a claim for relief, however, this Court should dismiss the claims for the reasons below.

## A. Defendant Benally's Third Claim Fails to State a Claim for which Relief can be Granted.

In Defendant Benally's Third Claim, it appears that she is alleging that Plaintiffs have committed the tort of Civil Conspiracy.  The Utah Supreme Court has stated that the elements of a Civil Conspiracy claim are: "(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof."  *See Pohl, Inc. of Am. v. Webelhuth*, 201 P.3d 944, 954-55 (Utah 2008).

First, the Third Claim is based on a misleading, incorrect, and implausible interpretation of the intent behind the allegations of Plaintiffs' Complaint.  In their Amended Counterclaim,

Defendants ask the Court to read the Complaint, which challenges a vote by mail *only* system, as seeking to "requir[e] San Juan County to do away with vote-by mail and to re-open polling locations."  Amended Counterclaim ¶ 74, ECF No. 74.  The invented object and agreement of the supposed conspiracy are the same: to totally eliminate vote by mail in San Juan County.  *Id.* ¶ 141.  This assertion is not a factual allegation that the court must take as true, but a legal conclusion about what the court should take the Complaint to mean, which the Court need not accept.  *See Iqbal*, 556 U.S. at 678-79; *see also Navajo Nation v. San Juan Cnty.*, No. 2:12-CV-00039-RJS-DPB, 2016 WL 697120, at *12, 13-14 (D. Utah Feb. 19, 2016) (Judge Shelby reasoning various times that the court reads documents to understand their meaning, and does not simply accept the County's interpretation of what the County believes the document means.)

Completely eliminating vote by mail is not the object, implicit or express, of the underlying action.  The complaint in the underlying action is limited to remediating the statutory and constitutional violations arising from the *exclusive* use of vote by mail for elections in San Juan County, and does not allege or imply that vote by mail in addition to reopening polling places is problematic in any way.  The object of the underlying action is to ensure equal opportunities and access to voting for all voters in San Juan County regardless of race, and eliminating vote by mail is not a plausible implied goal of such a suit.  It certainly is not a goal stated in the relief expressly sought, either.  Furthermore, it is not plausible to conclude that by asking for polling places to be reopened, it follows that there must be no voting by mail at all.  In at least one county in Utah, Salt Lake County, elections are conducted with both mail-in voting and at vote in person options.  *See* http://www.slcgov.com/elections (last visited July 14, 2016).

Because Defendants have asserted a fictional object and agreement based on an implausible allegation about the object of the underlying action, they have failed to successfully allege the second and third elements of their conspiracy.

Moreover, Defendant Benally does not plead any "unlawful, overt acts" taking place after the election of Defendant Benally to the position of District Commissioner.  Furthermore, Defendants have failed to allege any facts that plausibly support a conclusion that Defendant Benally has suffered any damages as a result of the alleged conspiracy.  Rather, they offer a blanket statement that "Defendant Benally has been harmed."  Amended Counterclaim ¶ 144, ECF No. 74.  As Defendants have not successfully pled facts plausibly supporting all the required elements of the tort of Civil Conspiracy, the Third Claim should be dismissed under Rule 12(b) for failure to state a claim.

Defendant Benally has also failed to plead the necessary elements of a Conspiracy to Interfere with Civil Rights under 42 U.S.C. § 1985(3).  As is discussed in more detail in Subsections B and C, below, the elements of a claim under 42 U.S.C. § 1985(3) are (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom.  *See Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993).  Additionally, the plaintiff must plausibly allege that a class-based or racially discriminatory motive lurks behind the conspiratorial activities.  *See id*.

Defendant Benally has failed to plead facts that would establish that the purported conspiracy aimed to deprive her of equal protection or equal privileges and immunities, that the purported conspiracy was driven by a class-based or racially discriminatory motive, or that she has suffered an injury or deprivation as a result of the purported conspiracy.  Rather, as explained

further below, she simply states those legal conclusions without any allegations from which the Court could find those conclusions to be plausible, which does not effectively state a claim.

### B. Defendant Benally's Fourth Claim Fails to Allege the Requisite Elements for a Civil Rights Violation Under Each Statute.

In the Fourth Claim, Defendant Benally alleges that Plaintiffs' actions violated "42 U.S.C. §§ 1981 and 1985(3) as well as 52 U.S.C. § § 10307(b)."  Amended Counterclaim ¶ 149, ECF No. 74.  This Court should dismiss the Fourth Claim for failure to state a claim because Defendant Benally does not allege facts sufficient to establish that Plaintiffs violated her civil rights under any of the three statutes relied upon.  Fed. R. Civ. P. 12(b)(6).

### 1. 42 U.S.C. § 1981

In short, 42 U.S.C. § 1981 guarantees all persons equal rights to "make and enforce contracts."  *See* 42 U.S.C. § 1981(a); *Saint Francis Coll. v. Al-Khazraji*, 481 U.S. 604, 609 (1987) (stating § 1981 "forbid[s] all 'racial' discrimination in the making of private as well as public contracts").  "[T]he term 'make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship."  42 U.S.C. § 1981(b).

When asserting a claim under § 1981, the plaintiff "must initially identify an impaired 'contractual relationship' … under which the plaintiff has rights."  *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 470 (2006).  Further, the plaintiff "must identify injuries flowing from a racially motivated breach" of their contractual relationship.  *Id*. at 480; *see also Weseman v. Meeker Cnty.*, 659 F. Supp. 1571, 1575 (D. Minn. 1987) (failure to allege "discrimination based on race, alienage, ancestry, or ethnic characteristics" means that plaintiff's claim must fail).

Defendant Benally has failed to allege either requisite component of a § 1981 claim.  She has not identified an impaired contractual relationship or asserted that her alleged injuries flow

from a racially motivated breach of such contractual relationship. Given that she has not pleaded any facts that would support a 42 U.S.C. § 1981 claim, this Court should dismiss her claim under Federal Rule of Civil Procedure 12(b)(6).

### 2.      42 U.S.C. § 1985(3)

The elements of a claim under 42 U.S.C. § 1985(3) are (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom. *Tilton*, 6 F.3d at 686. To prevail on a claim under § 1985(3), the plaintiff must prove a discriminatory motive; in other words, a plaintiff must establish that a class-based or racially discriminatory motive lurks behind the conspiratorial activities. *See id.* ("[Section] 1985(3) does not 'apply to all tortious, conspiratorial interferences with the rights of others,' but rather, only to conspiracies motivated by 'some racial, or perhaps otherwise class-based, invidiously discriminatory animus.'").

Defendant Benally fails to sufficiently allege a discriminatory motive behind Plaintiffs' purported conspiracy or that "an injury" resulted due to the alleged conspiracy. The conclusory statements that "Plaintiff Benally has been harmed" and that the alleged conspiracy was "motivated by racial animus," Amended Counterclaim ¶¶ 147, 151, ECF No. 74, are unsupported by any facts pleaded in the Amended Counterclaim. Moreover, Defendant Benally's alleged deprivation of rights is that she would like this Court to interpret the underlying action as seeking to eliminate any form of vote by mail in San Juan County. *See id.* ¶ 148. As explained above, this legal conclusion is an implausible one, as the underlying action is centered on protecting equal access to voting for Navajo voters in San Juan County and does not expressly or impliedly complain about non-exclusive use of vote by mail.

As previously discussed, "[t]o survive a motion to dismiss, a [claim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Legal conclusions are not accepted as true; instead, they must be supported by facts. *Id.* at 678-79. Defendant Benally has failed to meet the pleading standard under *Iqbal* and, therefore, this Court should dismiss Defendant Benally's 42 U.S.C. § 1985(3) claim under Federal Rule of Civil Procedure 12(b)(6).

### 3.    52 U.S.C. § 10307(b)

Commonly known as Section 11(b) of the VRA, 52 U.S.C. § 10307(b) prohibits actions that, *inter alia*, "intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote." 52 U.S.C. § 10307(b) (formerly codified at 42 U.S.C. § 1973i). To succeed on a claim under Section 11(b), a plaintiff must: (1) establish either an act to intimidate or an attempt to intimidate and (2) show that "the act was done with the specific intent to intimidate or attempt to intimidate." *Parson v. Alcorn*, No. 3:16-cv-00013-MHL, 2016 WL 206466, at *12 (E.D. Va. Jan. 15, 2016) (citing *Olagues v. Russoniello*, 770 F.2d 791, 804 (9th Cir. 1985) (noting that even assuming that plaintiffs' evidence showed that voters were intimidated when officials searched voting records, plaintiffs could not succeed for failure to show that the officials intended to intimidate) (citing *United States v. McLeod*, 385 F.2d 734, 740-41 (5th Cir. 1967)).

Defendant Benally has not alleged any intimidation, threat, or coercion concerning *her* ability to "vot[e] or attempt[ ] to vote." 52 U.S.C. § 10307(b). While the Counterclaim alleges that Plaintiff Maryboy, among others, "coerced" or "intimidated" unnamed voters by being

present at polling locations and visiting senior centers, the Counterclaim does not claim that *Ms. Benally* was intimidated by Mr. Maryboy's alleged actions, or that she was even present at the polling places or senior centers at the time Mr. Maryboy allegedly visited.  Amended Counterclaim ¶¶ 63-64, ECF No. 74.  While Mr. Maryboy denies that he coerced or intimidated anyone, even taking it as true that he did, Ms. Benally does not claim that he coerced or intimidated her personally, and she cannot claim standing based on alleged injury to others.[4] *See, e.g.*, *Lujan*, 504 U.S. at 563 ("[T]he 'injury in fact' test requires more than an injury to a cognizable interest. It requires that the party seeking review be himself among the injured."). Moreover, Defendant Benally has offered no allegation from which the Court could plausibly conclude that any of the Plaintiffs *intended* to intimidate, threaten, or coerce her (or anyone else for that matter).  *See Olagues*, 770 F.2d at 804.  Thus, under the pleading standards established by the U.S. Supreme Court in *Iqbal*, this Court should dismiss Defendant Benally's 52 U.S.C. § 10307(b) claim under Federal Rule of Civil Procedure 12(b)(6).

## C.  Defendant Benally's Fifth Claim Fails to Allege the Requisite "Wilful Act" Element for Abuse of Process.

In the Fifth Claim, Defendant Benally alleges that Plaintiffs' underlying lawsuit "is an abuse of process … commenced and … continued for the improper, unlawful and ulterior purpose of allowing Counterclaim Defendant Maryboy, Kenneth Maryboy and Manual Morgan to reassume control of the election of a County Commissioner from District Three by suppressing the vote of her supporters."  Amended Counterclaim ¶ 155, ECF No. 74.  This Court should dismiss this claim for failure to state a claim because Ms. Benally does not allege facts

---

[4] While Defendants allege that these actions were illegal and intimidating, they provide no plausible allegations supporting a conclusion that these actions were not simply the regular, legal acts of any political campaign trying to drum up support.

concerning the requisite wilful act separate and apart from the legal process underlying the claim.

As confirmed by the Tenth Circuit citing the Utah Supreme Court, "[t]o establish a claim for abuse of process in Utah, the claimant must show (1) an ulterior purpose in bringing the suit, and (2) a wilful act in the use of the process not proper in the regular conduct of the proceedings." *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1103 (10th Cir. 2009) (citing *Hatch v. Davis*, 147 P.3d 383, 389 (Utah 2006)).  To satisfy the "wilful act" element, "'a party must point to conduct independent of the legal process itself that corroborates the alleged improper purpose.'" *Rusakiewicz*, 556 F.3d at 1103 (quoting *Hatch*, 147 P.3d at 389).  Importantly, both the Tenth Circuit and the Utah Supreme Court have acknowledged that the wilful act requirement cannot "simply be reduced to the 'legal process that the tortfeasor pursues according to his ulterior motive.'"  *Id.* at 1104 (internal citations omitted).  Said another way, "filing a lawsuit and performing ordinary acts in the regular course of the legal proceedings is not abuse of process even if the goals of the lawsuit are nefarious and improper."  *Id.*  Therefore, "the 'wilful act' requirement requires objective proof of the improper purpose in the form of an independent act that 'corroborates the alleged improper purpose.'"  *Id.* (internal citations omitted).

In *Rusakiewicz*, the Tenth Circuit affirmed the district court's dismissal of the abuse of process claim because the alleged wilful act involved settlement offers, which both courts regarded as "part of, not an act outside of, the regular conduct of legal process."  556. F.3d at 1104.  The Tenth Circuit relied heavily on *Hatch*, in which the Utah Supreme Court observed the following critical distinctions regarding the "wilful act" requirement:

> It is easy to slip into the conceptual trap of simply defining the "wilful act" as the legal process that the tortfeasor pursues

21

> according to his ulterior motive.  Such a definition would, however, render the "wilful act" requirement superfluous.  Under it, a party would only be required to link a bad motive to an event having the hallmarks of legal process to state a claim.

147 P.3d at 389.  Ultimately, the Utah Supreme Court affirmed reversal of the trial court's verdict against the counterclaim defendant for abuse of process because even though there was "no question" regarding the counterclaim defendant's "improper purpose" in instigating the underlying lawsuit, the Defendant "alleged the existence of no act that met" the wilful act requirement.  147 P.3d at 389-90.

     While Plaintiffs deny any ulterior purpose in bringing the underlying action, even taking as true that there was such a motive, Defendant Benally's abuse of process claim must fail because she has not pleaded the wilful act element sufficiently.  Defendants allege that in response to Ms. Benally defeating Counterclaim Defendant Mark Maryboy for the District Three County Commissioner office, Mr. Maryboy, his brother Kenneth Maryboy, their political ally Manual Morgan, and eventually Leonard Gorman of the Navajo Nation Human Rights Commission ("NNHRC") formed a conspiracy in spring 2015 to initiate a "sham lawsuit to challenge San Juan County's use of vote-by-mail."  Amended Counterclaim ¶¶ 114-15, 117-21, ECF No. 74.  Additionally, Defendants allege that the NNHRC aided and abetted this scheme along with Plaintiffs Phillips, Jones, Whitehat, Farley, Willie Skow, and Mabel Skow by "agree[ing] to take part in that conspiracy."  *Id.* ¶ 122.  Defendants allege that "[t]he overt acts committed by Counterclaim Defendant[s] … in furtherance of this conspiracy consisted of, among other things, fabricating claims against Counterclaim Plaintiffs which resulted in their bring [sic] of the *Underlying Action.*"  *Id.* ¶ 123 (emphasis in original).  Thus, according to Defendant Benally's "Fifth Claim for Abuse of Process," the Plaintiffs initiated this lawsuit "for the improper, unlawful and ulterior purpose of allowing Counterclaim Defendant Maryboy,

Kenneth Maryboy and Manual Morgan to reassume control of the election of a County Commissioner from District Three by suppressing the vote of her supporters." *Id*. ¶ 155. To the contrary, Plaintiffs' purpose in bringing the underlying lawsuit was to remedy violations of the VRA and the U.S. Constitution.

Defendant Benally alleges no facts to support her claim that the Maryboys, Mr. Morgan, and Mr. Gorman brought the underlying action as part of a conspiracy against her following her election as County Commissioner. Furthermore, the Amended Counterclaim fails to "point to conduct independent of the legal process itself that corroborates the alleged improper purpose" of the claimed conspiracy. *Rusakiewicz*, 556 F.3d at 1103 (citing *Hatch*, 147 at 389). Instead, Defendant Benally baldly asserts the underlying action and unspecified "overt acts" as support for her abuse of process claim, while qualifying these allegations with the hollow and transparent catch-all phrase "among other things." Amended Counterclaim ¶ 123, ECF No. 74. In doing so, Defendant Benally merely "link[s] a bad motive to an event having the hallmarks of legal process," *Hatch*, 147 P.3d at 389. Indeed, Defendant Benally seeks to ensnare this Court into the "conceptual trap of simply defining the 'wilful act' as the legal process that the [alleged] tortfeasor pursues according to [the] ulterior motive." *Id*. Therefore, with the guidance of the Tenth Circuit in *Rusakiewicz* and the Utah Supreme Court in *Hatch*, this Court should seize on Defendant Benally's failure to allege a wilful act and dismiss the Fifth Claim.

## **CONCLUSION**

As demonstrated above, none of the Defendants' claims can survive Plaintiffs' motion to dismiss, and, as a result, this Court should dismiss all counterclaims with prejudice.

Dated this 15th day of July, 2016.

RESPECTFULLY SUBMITTED,

 */s/ Raymond M. Williams*
Raymond M. Williams*
DLA Piper LLP (US)
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, PA 19103
T: (215) 656-3300
raymond.williams@dlapiper.com

William A. Rudnick*
DLA Piper LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, IL 60601
T: (312) 368-4000
william.rudnick@dlapiper.com

John Mejia (Bar No. 13965)
Leah Farrell (Bar No. 13696)
American Civil Liberties Union of Utah
355 North 300 West
Salt Lake City, UT 84103
T: (801) 521-9862
jmejia@acluutah.org
lfarrell@acluutah.org

M. Laughlin McDonald*
American Civil Liberties Union Foundation
2700 International Tower
229 Peachtree Street, NE
Atlanta, GA 30303
T: (404) 500-1235
lmcdonald@aclu.org

Ezra D. Rosenberg*

M. Eileen O'Connor*
Arusha Gordon*
Lawyers' Committee for Civil Rights Under Law
1401 New York Ave., Suite 400
Washington, D.C. 20005
T: (202) 662-8600
erosenberg@lawyerscommittee.org
eoconnor@lawyerscommittee.org
agordon@lawyerscommittee.org

Maya Kane*
10 Town Square, #52
Durango, Colorado 81301
T: (970) 946-5419
mayakanelaw@gmail.com

*Admitted pro hac vice

# <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 15th day of July, 2016, I electronically filed the foregoing document with the U.S. District Court for the District of Utah. Notice will automatically be electronically mailed to the following individual(s) who are registered with the U.S. District Court CM/ECF System:

John Mejia (Bar No. 13965)
Leah Farrell (Bar No. 13696)
American Civil Liberties Union of Utah
355 North 300 West
Salt Lake City, UT 84103
T:(801)521-9862
jmejia@acluutah.org
lfarrell@acluutah.org
*Attorneys for Plaintiffs*

Ezra D. Rosenberg*
M. Eileen O'Connor*
Arusha Gordon*
Lawyers' Committee for Civil Rights Under Law
1401 New York Ave., Suite 400
Washington, D.C. 20005
T: (202) 662-8600
erosenberg@lawyerscommittee.org
eoconnor@lawyerscommittee.org
agordon@lawyerscommittee.org
*Attorneys for Plaintiffs*

M. Laughlin McDonald*
American Civil Liberties Union Foundation
2700 International Tower 229 Peachtree Street, NE
Atlanta, GA 30303
T: (404) 500-1235
lmcdonald@aclu.org
*Attorneys for Plaintiffs*

Maya Kane*
10 Town Square,
#52 Durango, Colorado 81301
T: (970) 946-5419
mayakanelaw@gmail.com
*Attorneys for Plaintiffs*

William A. Rudnick* DLA Piper LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, IL 60601
T:(312)368-4000
william.rudnick@dlapiper.com
*Attorneys for Plaintiffs*

Jesse C. Trentadue (#4961)
Carl F. Huefner (#1566)
Britton R. Butterfield (#13158)
**SUTTER AXLAND, PLLC**
8 East Broadway, Suite 200
Salt Lake City, UT 84111
Telephone: (801) 532-7300
*Attorneys for Defendants*

      */s/ Raymond M. Williams*