Jesse C. Trentadue (#4961)
Carl F. Huefner (#1566)
Britton R. Butterfield (#13158)
**Suitter Axland, PLLC**
8 East Broadway, Suite 200
Salt Lake City, UT  84111
Telephone: (801) 532-7300
Facsimile: (801) 532-7355
E-Mail: jesse32@sautah.com
E-Mail: chuefner@sautah.com
E-Mail: bbutterfield@sautah.com

*Attorneys for Defendants/Counterclaim Plaintiffs*

---

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

---

|  |  |  |
|---|---|---|
| NAVAJO NATION HUMAN RIGHTS COMMISSION; PEGGY PHILLIPS; MARK MARYBOY; WILFRED JONES; TERRY WHITEHAT; BETTY BILLIE FARLEY; WILLIE SKOW; and MABEL SKOW, | : : : : : : : | **COUNTERCLAIM PLAINTIFFS' OPPOSITION TO MOTION TO DISMISS AMENDED COUNTERCLAIMS** |
| Plaintiffs, | : : | |
| v. | : : : | |
| SAN JUAN COUNTY; JOHN DAVID NIELSON, in his official capacity as San Juan County Clerk; and PHIL LYMAN, BRUCE ADAMS, and REBECCA BENALLY, in their official capacities as San Juan County Commissioners, | : : : : : : | Case No. 2:16-cv-00154 JNP  Judge Jill N. Parrish  Magistrate Judge Brooke C. Wells |
| Defendants. | : : | |

| | |
|---|---|
| SAN JUAN COUNTY; JOHN DAVID NIELSON; PHIL LYMAN, BRUCE ADAMS; and REBECCA BENALLY | : : : : |
| Counterclaim Plaintiffs, | : : |
| v. | : : |
| NAVAJO NATION HUMAN RIGHTS COMMISSION; PEGGY PHILLIPS; MARK MARYBOY; WILFRED JONES; TERRY WHITEHAT; BETTY BILLIE FARLEY; WILLIE SKOW; and MABEL SKOW, | : : : : : : |
| Counterclaim Defendants. | : : |

Counterclaim Defendants Navajo Nation Human Rights Commission, Peggy Phillips, Mark Maryboy, Wilfred Jones, Terry Whitehat, Betty Billie Farley, Willie Skow, and Mabel Skow have moved to dismiss the *Counterclaims* filed by Counterclaim Plaintiffs San Juan County, John David Nielson, Phil Lyman, Bruce Adams, and Rebecca Benally.  Counterclaim Plaintiffs now submit the *Memorandum* in opposition to Counterclaim Defendants' *Motion to Dismiss.*[1]

## **INTRODUCTION**

Counterclaim Plaintiffs have asserted five claims for declaratory and other relief.[2] They seek a declaratory judgment that San Juan County's vote-by-mail procedures fully

---

[1] Dkt. 93.

[2] *See Amended Counterclaim*, Dkt.74.

2

comply with both the *Voting Rights Act* and the *Fourteenth Amendment* of the United States Constitution.  They further seek a finding by the Court that the *Underlying Action* is without merit and was not brought in good faith.  Counterclaim Plaintiffs also seek attorney fees pursuant to 42 U.S.C. § 1988, 52 U.S.C. § 103310(e), and Utah Code § 78B-5-825.  Counterclaim Plaintiff Rebecca Benally asserts claims of civil conspiracy, civil rights, and abuse of process.

Counterclaim Defendants argue that Counterclaim Plaintiffs lack standing to request declaratory relief and that the request is a defense, not a claim.  Counterclaim Defendants similarly argue that Counterclaim Plaintiffs' request for a finding that the *Underlying Action* is without merit and was not brought in good faith should be dismissed because it is a defense, and not a claim.  They further argue that attorney fees under the statutes listed previously are improper.  Counterclaim Defendants finally argue that Counterclaim Plaintiff Benally's claims should be dismissed because Benally brought them in her individual capacity and the claims lack merit.

## BACKGROUND

In 2014, San Juan County implemented a vote-by-mail system.  During the 2014 primary election, for example, the number of Navajo voters more that doubled in the County.  Election records show that voter participation in precincts with a heavy concentration of Navajo voters went from 25% in 2012 to approximately 54% in 2014.

Despite the high voter participation in 2014, some voters in San Juan County

expressed concerns about the vote-by-mail system.  The County began considering

possible changes in October 2015, prompted by those concerns and an investigation by

the United States Department of Justice (DOJ).  The DOJ did not give any indication that

the 2014 vote-by-mail system failed to meet standards set by the *Voting Rights Act*, but

did state it would continue to watch how the vote-by-mail affected County residents and

specifically Navajo voters.  By late January or early February of 2016–only three months

later–the County had decided to open three additional polling locations, all located within

the Navajo Reservation.  The new polling locations were finalized on or before February

16, 2016, when the County prepared a press release that was then sent to local

newspapers.

      In addition to the new polling locations for the 2016 general election, the County

decided to provide Navajo-language voting assistance at each location.  The County also

decided to provide have a link to a Navajo-language audio explanation of the vote-by-

mail system and a translation of the ballot on the "Elections" page of the County's

website.  As in past election years, Edward Tapaha, the County's Navajo Liaison and

Elections Coordinator, will attend meetings of the Navajo Chapters to explain in the

voting system and answer any questions in the Navajo language.  The County will also

place Navajo-language radio announcements about the election and the both voting by-

mail and in-person on two Navajo language radio stations, KNDN and KTTN.

In addition to higher voter participation, the vote-by-mail system in 2014 allowed voters to vote away from candidates' campaign efforts.  Prior to Counterclaim Plaintiff Benally's election, the County Commissioner from District Three had been Counterclaim Defendant Mark Maryboy, his brother Kenneth Maryboy, or their friend Manual Morgan. The Maryboys, Morgan, and their agents controlled the elections by being present in close proximity to polling locations on election day, distributing food and other items to induce Navajo voters to vote for them, and visiting senior centers on the Reservation to tell elderly Navajo voters that they would lose services unless they voted for the Maryboys or Morgan.

## ARGUMENT: A REQUEST FOR DECLARATORY RELIEF IS AN APPROPRIATE COUNTERCLAIM

Counterclaim Defendants argue that Counterclaim Plaintiffs' first claim for declaratory relief is not a claim, but a defense to the *Underlying Lawsuit*.  Counterclaim Defendants assert that by describing how voting will be organized for 2016 and future elections–including continuing to allow vote-by-mail voting, opening three additional polling locations, and providing Navajo language assistance at polling places and online–Counterclaim Plaintiffs are "only attempting to create a factual dispute, which is a defense, not a counterclaim."  Counterclaim Defendants further argue that Counterclaim Plaintiffs lack standing to bring a claim for declaratory relief.  Finally, Counterclaim Defendants argue that attorney fees are not proper under 42 U.S.C. § 1988 and 52 U.S.C.

5

§ 10310(e).

There are two types of counterclaims: compulsory and permissive.[3]  Compulsory counterclaims "arise[] out of the transaction or occurrence that is the subject matter of the opposing party's claim."[4]  The Tenth Circuit has adopted four factors to determine whether a counterclaim "arises out of the same transaction or occurrence" as the opposing party's claim.[5]  A counterclaim is compulsory if: (1) the issues of fact and law raised by the claim and counterclaim are largely the same; (2) res judicata would bar a subsequent suit on defendant's claim absent the compulsory counterclaim rule; (3) substantially the same evidence supports or refutes plaintiff's claims as well as defendant's counterclaim; and (4) there is a logical relation between the claim and the counterclaim.[6]  "The 'logical relation' test is the most controlling."[7]

Counterclaim Plaintiffs' counterclaim for declaratory relief arises out of the County's vote-by-mail system, the same transaction or occurrence at the heart of Counterclaim Defendants' claims.  The issues of fact and law raised by the claim and

---

[3] *Fed. R. Civ. P.* 13.

[4] *Id.*

[5] *Fox v. Maulding*, 112 F.3d 453, 457 (10th Cir. 1997).

[6] *Id.*

[7] *Adamson v. Dataco Derex, Inc.*, 178 F.R.D. 562, 564 (D. Kan. 1998) (quoting *Pipeliners Local Union No. 798, Tulsa, Okl. v. Ellerd*, 503 F.2d 1193, 1199 (10th Cir. 1974)).

counterclaim are largely the same.  Both parties seek a declaration regarding the County's vote-by-mail system compliance with the *Voting Rights Act* and the *Fourteenth Amendment*.  Without this counterclaim seeking a declaration as to the lawfulness of the vote-by-mail procedures, a ruling in favor of Counterclaim Defendants would not have a preclusive effect upon future challenges to the vote-by-mail procedures.  Counterclaim Defendants could and would find new plaintiffs and reassert those claims; where if Counterclaim Defendants prevail and the Court declares the vote-by-mail procedures to be lawful, that will shut the door on future challenges.[8]

In addition, the counterclaim drives its jurisdiction from the Counterclaim Defendants' claims.[9]  The same evidence supports or refutes Counterclaim Defendants' claims, as well as Counterclaim Plaintiffs' counterclaims.  Both parties rely on the voting procedures of San Juan County.  And there is a logical relation between the claim and the

---

[8] *See Medmarc Cas. Ins. Co. v. Pineiro & Byrd PLLC*, 783 F. Supp. 2d 1214, 1216 (S.D. Fla. 2011) ("To determine whether the declaratory judgment serves a useful purpose [and should therefore be considered by the court], courts should consider whether resolution of plaintiff's claim, along with the affirmative defenses asserted by defendants, would resolve all questions raised by the counterclaim. In this case, the counterclaim does serve a useful purpose in that it seeks different relief from [defendant's] defenses and [plaintiff's] amended complaint. If [plaintiff] prevailed, not all issues raised by the counterclaim would be resolved.").

[9] A compulsory counterclaim, "being ancillary to the claim, derives its jurisdiction from the same source."  *Pipeliners Local Union No. 798, Tulsa, Okl. v. Ellerd*, 503 F.2d 1193, 1198 (10th Cir. 1974) (citation and internal quotation marks omitted). "A federal district court may assert jurisdiction of a claim which is a continuation of, or incidental and ancillary to, a principal claim over which it has jurisdiction, even though it might not have jurisdiction of the ancillary proceedings if it were an independent and original action or pleading." *Id.*

counterclaim.  Both claim and counterclaim ask the Court to determine whether the County's voting procedures comply with the *Voting Rights Act* and the *Fourteenth Amendment*.  Both ask the Court to consider whether the County has sufficiently provided for Navajo-language voters.

Because Counterclaim Plaintiffs have brought an appropriate counterclaim, they have standing.  Counterclaim Defendants argue that "'a demand for declaratory relief does not by itself confer standing.'"[10]  This is true.  A party seeking relief under the Declaratory Judgment Act "must still present an 'actual controversy.'"[11]  The Supreme Court stated that, in order to be ripe for adjudication, "it must be a real and substantial controversy admitting of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."[12]

Counterclaim Defendants argue that there is no actual controversy–they contend that "future litigation seeking changes to [Counterclaim Plaintiffs'] unconstitutional voting procedures is at most a possibility."[13] But Counterclaim Defendants' original claim

---

[10] Dkt. 93, page 8 (quoting *Russell v. Fin. Capital Equities*, 158 Fed. Appx. 953, 955 (10th Cir. 2005) (unpublished opinion)).

[11] *Russell*, 158 Fed. Appx. at 956 (quoting 28 U.S.C. § 2201).

[12] *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 241 (1937).

[13] Dkt. 93, page 11.

shows that there clearly is an actual controversy and not simply a hypothetical state of facts.  The County continues to allow for voting-by-mail and will continue to do so. Counterclaim Defendants have not limited their claim to the County's vote-by-mail procedures in 2014, but have asked the Court to consider that "these practices will continue . . . in the 2016 election cycle and beyond."[14]  Counterclaim Plaintiffs have established voting procedures for 2016 that are more inclusive of Navajo voters—even though there is evidence that the 2014 vote-by-mail procedures made voting more accessible to Navajo voters in San Juan County.

Finally, Counterclaim Defendants argue that attorney fees are not proper under 42 U.S.C. § 1988 and 52 U.S.C. § 10310(e).  They argue that Counterclaim Plaintiffs "cannot be deemed 'prevailing parties' for purposes of the [Voting Rights Act]."[15]  The Supreme Court has held that a party prevails "when actual relief on the merits of [their] claim materially alters the legal relationship between the parties by modifying the [opposing party's] behavior in a way that directly benefits the [prevailing party]."[16]  The Supreme Court has further held that "an injunction or declaratory judgment, like a

---

[14] Dkt. 2, page 3, 21.

[15] Dkt. 93, page 8.

[16] *Lefemine v. Wideman*, 133 S. Ct. 9, 11 (2012) (quoting *Farrar v. Hobby*, 506 U.S. 103, 111-112 (1992)).

damages award, will usually satisfy that test."[17]

## ARGUMENT: A COUNTERCLAIM REQUESTING FINDING THAT ACTION WAS WITHOUT MERIT AND BROUGHT IN BAD FAITH IS APPROPRIATE

Counterclaim Plaintiffs seek a declaration by the Court that the *Underlying Action* is without merit and was not brought in good faith.[18]  By this *Counterclaim*, Counterclaim Plaintiffs ask that the Court find that they are entitled to an award of attorney fees pursuant to Utah Code section 78B-5-825.[19]  Counterclaim Defendants argue that this "is a defense, not a counterclaim."[20]  They further argue that Counterclaim Plaintiffs are using "a statute detailing Utah state court procedure as a vehicle to seek attorney fees in this federal question action."[21]

*Erie R. Co. v. Tompkins* is the seminal case concerning the applicability of state law in federal court.[22]  Although *Erie* is often interpreted to hold that "in diversity cases, federal courts apply state substantive law and federal procedural law,"[23] "the Erie doctrine applies, whatever the ground for federal jurisdiction, to any issue or claim which has its

---

[17] *Id.*

[18] Dkt. 74, page 30

[19] *Id.*

[20] Dkt. 93, page 12

[21] *Id.*

[22] 304 U.S. 64 (1938).

[23] *In re Johnson*, 485 B.R. 642, 645 (D. Colo. 2013).

source in state law."[24]  The Tenth Circuit examines whether a statute is procedural or

substantive.[25]  If the statute is procedural, federal law applies, but if it is substantive, then

the court applies state law.[26]  The Tenth Circuit has noted that, "[s]ubstantive fees are

those which are tied to the outcome of the litigation, whereas procedural fees are

generally based on a litigant's bad faith conduct in litigation."[27]

Attorney fees awarded under Utah Code section 78B-5-825 are both substantive

and procedural.  The statute provides that "the court shall award reasonable attorney fees

to a prevailing party if the court determines [*i.e.*, finds] that the action or defense to the

action was without merit and not brought or asserted in good faith."[28]  In order to award

attorney fees, "three requirements must be met: '(1) the party must prevail, (2) the claim

asserted by the opposing party must be without merit, and (3) the claim must not be

brought or asserted in good faith.'"[29]  This means the court must rule on the merits of the

case–a substantive determination tied to the outcome of the litigation–in addition to

---

[24] *Id.* (quoting *Maternally Yours Inc. v. Your Maternity Shop Inc.*, 234 F.2d 538, 541 n.1 (2d Cir. 1956)).

[25] *Scottsdate Ins. Co. v. Tolliver*, 636 F.3d 1273, 1279 (10th Cir. 2011).

[26] *Id.*

[27] *Id.*

[28] Utah Code Ann. § 78B-5-825.

[29] *VR Acquisitions LLC v. Wasatch Cty.*, 2016 WL 715738, at *1 (D. Utah Feb. 22, 2016) (quoting *Gallegos v. Lloyd*, 178 P.3d 922, 925 (Utah Ct. App. 2008)).

finding bad faith. It is therefore appropriate for this Court to consider claims made under Utah Code section 78B-5-825, as it has in the past.[30]

Furthermore, Counterclaim Defendant's *Underlying Action* was without merit and made in bad faith. "A claim is without merit if it is frivolous, is of little weight or importance having no basis in law or fact, or clearly lacks a legal basis for recovery."[31] "In order for there to be bad faith one must lack an honest belief in the propriety of the activities in question, must have an intent to take unconscionable advantage of others, or have knowledge of the fact that the activities in question will hinder, delay, or defraud others."[32]

Counterclaim Defendants brought a claim without merit, based on the voting system in place in 2014. They claimed that "these practices will continue . . . in the 2016 election cycle and beyond." They neglect to acknowledge that participation from Navajo voters improved significantly in the 2014 election; that there was a polling location and Navajo-language assistance available in 2014; that none of Counterclaim Defendants were prevented from voting in the 2014 election; and that changes have already been made to the County's voting procedures for 2016 and beyond, including additional polling

---

[30] *See, e.g.*, *VR Acquisitions LLC*, 2016 WL 715738, at *1; *Water Servs. v. Zoeller Co.*, 2013 WL 5964457, at *7 (D. Utah Nov. 7, 2013); *Wade v. Gaither*, 2012 WL 2946378, at *5 (D. Utah July 20, 2011).

[31] *Water Servs. v. Zoeller Co.*, 2013 WL 5964457, at *7 (D. Utah Nov. 7, 2013).

[32] *Id.*

locations within the Navajo reservation, Navajo-language assistance at the polling locations, and online assistance for those voters who choose to use the vote-by-mail system.  By ignoring these facts and continuing in the *Underlying Action*, Counterclaim Defendants clearly brought these claims in bad faith and Counterclaim Plaintiffs are entitled to a finding to that effect.

### ARGUMENT: BENALLY BROUGHT COUNTERCLAIMS IN BOTH HER OFFICIAL AND INDIVIDUAL CAPACITIES

Counterclaim Plaintiff Rebecca Benally brought civil conspiracy, civil rights, and abuse of process counterclaims.[33]  Counterclaim Defendants argue that these counterclaims were improperly brought by Benally in her individual capacity and that "none of the claims have a plausible connection to her official duties as a San Juan County Commissioner."  Counterclaim Defendants frame these claims as "a supposed conspiracy to damage [Counterclaim Plaintiff] Benally politically."  Benally's counterclaims do present a political conspiracy, they were not pled solely on behalf of Benally or her political aspirations.  They were presented to the Court to prevent Counterclaim Defendant Mark Maryboy and others from improperly influencing the Navajo voters in San Juan County, and to preserve the right of all County voters to mail-in-ballots.

Counterclaim Plaintiff Benally properly brought these counterclaims in both her

---

[33] Dkt. 74, pages 30-35.

official and individual capacity.  Although "the traditional view is that a defendant may counterclaim only in the capacity in which he has been sued," "[i]n some instances the courts have looked beyond the capacities of the parties in order to determine who were the real parties in interest and have allowed a counterclaim where closely similar interests were involved."[34]  This approach has yielded an important and recognized exception to the traditional view: "a defendant may be permitted to assert a counterclaim in a different capacity from the one in which the defendant was sued if doing so advances principles of equity and judicial economy."[35]  Furthermore, "a counterclaim in a different capacity may be permitted if . . . the counterclaim would benefit both capacities of the defendant asserting the claim."[36]  The counterclaims brought by Benally will benefit her both in her individual and official capacities.  They will also advance principles of justice, equity and judicial economy.  There is likewise the issue of Benally's standing under the *jus tertii doctrine*.

There are essentially two types *jus tertii* standing, and both exist in this case.[37]

---

[34] *Banco Nacional de Cuba v. Chase Manhattan Bank*, 658 F.2d 875, 885-86 (2d Cir. 1981).

[35] *Faunus Group Int'l, Inc. v. Ramsoondar*, 2015 WL 4557132, at *4 (S.D.N.Y. July 22, 2015) (citations and internal quotation marks omitted).

[36] *Id.*

[37]  *Planned Parenthood Association of Cincinnati, Inc. v. The City of Cincinnati et. al.*, 822 F.2d 13901394 (6th Cir. 1987).

The first type of *jus tertii* standing is when defendant's activities and/or actions regulate or infringe upon the rights of the plaintiff and, as result, also violate the rights of third parties.[38]  By law, San Juan County and its Commissioners are charged with protecting the health, safety and well-being of the County's citizens.[39]  In these types of cases, the plaintiffs "have uniformly been permitted to assert the rights of affected third parties."[40]

The second type of standing under the *jus tertii doctrine* exists when the party asserting the right has a close relationship with the person who possesses the right and there is a hindrance or inability of the possessor of the right to pursue vindication of his or her rights.[41]  It is admittedly more difficult to obtain the second type of *jus tertii* standing because the plaintiff must meet two additional requirements: (1) the plaintiff's relationship with the third-party whose right he or she seeks to assert is such that "the enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue;"[42] and the third party is not as able to assert the allegedly affected right on his or

---

[38]  *Id.*

[39]  *See Utah Code* §17-53-223; *Redwood Gym v. Salt Lake County Commission*, 624 P.2d 1138, 1142 (Utah 1981).

[40]  *Id.*

[41]  *Id.  See also, Aid for Women v. Foulston*, 441 F.3d 1101, 1111 (10th Cir. 2006).

[42]  *Singleton v. Wulff*, 428 U.S. 106, 114 (1976).

her own behalf.[43]  Both factors exist in this instance.

As noted, both San Juan County and Commissioner Benally have the duty to provide for the safety, health and well-being of its citizens meets the first requirement for standing under the second genre of *jus tertii* standing.  The second or hindrance factor is established by the fact that many citizens have no knowledge that their rights have been and/or are being violated by the Counterclaim Defendants and many, like the elderly for whom the ability to vote-by-mail is particularly important, are not only vulnerable but also lack the means or ability to take action to defend their rights.

## ARGUMENT: BENALLY HAS STATED<br>A CLAIM FOR CIVIL CONSPIRACY

The elements of civil conspiracy are "(1) a combination of two or more persons, (2) an object to be accomplished, (3) a meeting of the minds on the object or course of action, (4) one or more unlawful, overt acts, and (5) damages as a proximate result thereof."[44]  "While it is not necessary to provide direct evidence of a formal agreement in order to demonstrate a meeting of the minds, there must be substantial proof of circumstances from which it reasonably follows, or at least may be reasonably inferred,

---

[43] *Id.* at 115-116.

[44] *World Wide Ass'n of Specialty Programs v. Pure, Inc.*, 450 F.3d 1132, 1141 (10th Cir. 2006). *See also Pohl, Inc. of Am. v. Webelhuth*, 201 P.3d 944, 954-55 (Utah 2008).

that the conspiracy existed."[45]  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim plausible on its face.  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[46]

Counterclaim Plaintiff Benally alleged sufficient factual matter which, if accepted as true, stated a claim of civil conspiracy.  She asserted that Mark Maryboy, Kenneth Maryboy, Manual Morgan, and Leonard Gorman agreed to challenge San Juan County's vote-by-mail system in order to restrict voting to in-person voting.  They agreed to this so that they could continue to control the election of the County Commissioner from District Three by being present at polling locations on election days to acquire votes by distributing enticements and/or intimidating Navajo voters.

## ARGUMENT: BENALLY HAS PLED CLAIMS UNDER 42 U.S.C. §§ 1981 and 1985

Counterclaim Plaintiff Benally asserts that Counterclaim Defendants violated 42 U.S.C. §§ 1981 and 1985.[47]  Counterclaim Defendants argue that 42 U.S.C. § 1981 requires Benally to allege "an impaired contractual relationship or . . . that her alleged

---

[45]*World Wide Ass'n of Specialty Programs*, 450 F.3d at 1141 (citation and internal quotation marks omitted).

[46] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[47] Dkt. 74, page 33.

injuries flow from a racially motivated breach of such contractual relationship."[48]

Counterclaim Defendants read § 1981 to mean "that the *only* function of § 1981 is to protect the creation and enforcement of contracts.  But this is not what the statute says."[49]  Section 1981 provides that all person within the United States have the right "to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property."[50]  It was "designed to remove obstacles to the full participation of [minorities] in the legal system."[51]  "The law is designed, in contemporary language, to forbid disparate treatment."[52]

Counterclaim Plaintiff Benally alleges that by bringing an action to eliminate the vote-by-mail process in San Juan County, Counterclaim Defendants are exposing Navajo voters to disparate treatment.  The vote-by-mail process allowed for an increase in Navajo voter participation in 2014; eliminating the process would only serve Counterclaim Defendants by allowing them to continue to influence Navajo voters by requiring them to

---

[48] Dkt. 93, page 17-18.

[49] *Palmer v. Bd. of Educ. of Cmty. Unit Sch. Dist. 201*, 46 F.3d 682, 686–87 (7th Cir. 1995).

[50] 42 U.S.C. § 1981(a).

[51] *Palmer*, 46 F.3d at 687.

[52] *Id.*

appear in person at the polling locations, providing opportunities for Maryboy and his agents to influence their votes.

Counterclaim Defendants further contend that Counterclaim Plaintiff Benally "fails to sufficiently allege a discriminatory motive behind [Counterclaim Defendants'] purported conspiracy or that an 'injury' resulted due to the alleged conspiracy" under 42 U.S.C. § 1985(3).[53] "The essential elements of a § 1985(3) claim are: (1) conspiracy, (2) to deprive plaintiff of equal protection or equal privileges and immunities, (3) an act in furtherance of the conspiracy, and (4) an injury or deprivation resulting therefrom."[54]  The conspiracy must be one motivated by "some racial, or perhaps otherwise class-based, invidiously discriminatory animus."[55]

Counterclaim Plaintiff Benally sufficiently alleged a conspiracy motivated by racial or class-based animus.  She asserted that Counterclaim Defendants "agreed and conspired among themselves for the express purpose of depriving [her] and other members of the Navajo Nation" of the opportunity and ability to vote by mail, and thus "of the equal protection of the laws and/or equal privileges and immunities under the

---

[53] Dkt. 93, page 18.

[54] *Tilton v. Richardson*, 6 F.3d 683, 686 (10th Cir. 1993) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102-03 (1971)).

[55] *Griffin*, 403 U.S. at 101-02.

law."[56] Counterclaim Defendants argue that "the underlying action is centered on protecting equal access to voting for Navajo voters in San Juan County," but that is the very thing they seek to take away from Navajo voters by eliminating or curtailing the use of the vote-by-mail system in conjunction with in-person polling locations. This is the injury that has resulted from the conspiracy perpetuated by Counterclaim Defendants.

## ARGUMENT: BENALLY HAS PLED A COUNTERCLAIM UNDER 52 U.S.C. § 10307

Counterclaim Plaintiff Benally alleged under 52 U.S.C. § 10307(b) that Counterclaim Defendants intimidated, threatened, coerced, or attempted to intimidate, threaten, or coerce Navajo voters in San Juan County.[57]  Counterclaim Defendants argue that Benally must allege that *she* was intimidated, threatened, or coerced concerning *her* ability to vote.[58]  But Benally brought this counterclaim in both her individual and official capacities.  She specifically alleged her claims for herself and "other members of the Navajo Nation who, for any number of reasons, are not able to vote in-person at a polling

---

[56] Dkt. 74, page 32-33.

[57] 52 U.S.C. § 10307(b) ("No person, whether acting under color of law or otherwise, shall intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote, or intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for urging or aiding any person to vote or attempt to vote, or intimidate, threaten, or coerce any person for exercising any powers or duties under section 10302(a), 10305, 10306, or 10308(e) of this title or section 1973d or 1973g of Title 42.").

[58] Dkt. 93, page 19.

location."[59]   She also brings this counterclaim in her official capacity as a San Juan

County Commissioner.[60]

And while to ultimately succeed on her counterclaim, Benally will need to "show

both an act of intimidation or attempt to intimidate, and that the act was done with the

specific intent to intimidate or attempt to intimidate,"[61] to survive a motion to dismiss for

failure to state a claim, she needs only to provide "a short and plain statement of the claim

showing that the pleader is entitled to relief."[62]   Benally did this, giving Counterclaim

Defendants "fair notice of what [her] claim is and the grounds upon which it rests."[63]   She

alleged that Counterclaim Defendant Maryboy and others conspired to bring a sham

lawsuit, in an effort to restrict voting to in-person polling locations where they and their

agents could be present to acquire votes by distributing enticements and intimidating

Navajo voters.   She further alleged that Maryboy and others intimidated elderly Navajo

voters by telling them they would lose their services unless they voted for Maryboy, his

brother, and Morgan.[64]

---

[59] Dkt. 74, page 32.

[60] *Id*.

[61] *Parson v. Alcorn*, 2016 WL 206466, at *12 (E.D. Va. Jan. 15, 2016).

[62] Fed. R. Civ. P. 8(a)(2).

[63] *Conley v. Gibson*, 355 U.S. 41, 47 (1957).

[64] Dkt. 74, page 15-16.

## ARGUMENT: BENALLY HAS ALLEGED THE
## "WILFUL ACT" NECESSARY TO CLAIM ABUSE OF PROCESS

Counterclaim Plaintiff Benally asserts that Counterclaim Defendants' false, baseless, unfounded and otherwise outrageous lawsuit against Benally is an abuse of process.[65]  Counterclaim Defendants argue that Benally's counterclaim should be dismissed because she "does not allege facts concerning the requisite wilful act separate and apart from the legal process underlying the claim."[66]

Abuse of process "applies to 'one who uses a legal process . . . against another primarily to accomplish a purpose for which it is not designed.'"[67] "To establish a claim for abuse of process in Utah, the claimant must show (1) an ulterior purpose in bringing the suit, and (2) a wilful act in the use of the process not proper in the regular conduct of the proceedings."[68]  In order to establish a "wilful act," "a party must point to conduct independent of the legal process itself that corroborates the alleged improper purpose."[69] "The 'wilful act' element can be understood as an obligation imposed on the complaining party to allege that the tortfeasor has confirmed through his conduct his improper ulterior

---

[65] Dkt. 74, page 34.

[66] Dkt. 93, page 21.

[67] *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1103 (10th Cir. 2009) (quoting *Anderson Dev. v. Tobias*, 116 P.3d 323, 340 (Utah 2005)).

[68] *Id.*

[69] *Id.* (quoting *Hatch v. Davis*, 147 P.3d 383, 389 (Utah 2006)).

motive for employing legal process against the plaintiff."[70]

Counterclaim Defendants have confirmed through their conduct their improper ulterior motives for employing legal process against Benally.  Counterclaim Defendants have intimidated and coerced Navajo voters to vote for Mark Maryboy, Kenneth Maryboy, or Manual Morgan.  Their "concern" with the vote-by-mail system was only raised after Benally was elected to the San Juan County Commission—the first time someone other than the Maryboys and Morgan had held that seat.  And they have persisted in this abuse of process by maintaining a lawsuit knowing that vote-by-mail actually facilitated participation by Navajo voters and that the vote-by-mail system they are reportedly concerned with has been augmented to account for their concerns. There will be additional polling locations to allow for in-person voting.  There will be a person on-site to assist Navajo-language voters.  There will be voting instructions online in the Navajo language.  There is no longer a need for Counterclaim Defendants to pursue this lawsuit, except to continue in their intimidation and suppression of Navajo voters.

---

[70] *Hatch*, 147 P.3d at 390.

DATED this 12th day of August, 2016.

SUITTER AXLAND, PLLC

/s/ Jesse C. Trentadue
Jesse C. Trentadue
Carl F. Huefner
Britton R. Butterfield
*Attorneys for Defendants/Counterclaim
Plaintiffs*

*T:\7000\7788\1\OPPOSITION TO MOTION TO DISMISS COUNTERCLAIM.wpd*

## CERTIFICATE OF SERVICE

I hereby certify that on the 12th day of August, 2016, I electronically filed the foregoing document with the U.S. District Court for the District of Utah.  Notice will automatically be electronically mailed to the following individual(s) who are registered with the U.S. District Court CM/ECF System:

| | |
|---|---|
| John Mejia (Bar No. 13965)<br>Leah Farrell (Bar No. 13696)<br>American Civil Liberties Union of Utah<br>355 North 300 West<br>Salt Lake City, UT 84103<br>T: (801) 521-9862<br>jmejia@acluutah.org<br>lfarrell@acluutah.org<br>*Attorneys for Plaintiffs* | Ezra D. Rosenberg*<br>M. Eileen O'Connor*<br>Arusha Gordon*<br>Lawyers' Committee for Civil Rights Under Law<br>l401 New York Ave., Suite 400<br>Washington, D.C. 20005<br>T: (202) 662-8600<br>erosenberg@lawyerscommittee.org<br>eoconnor@lawyerscommitee.org<br>agordon@lawyerscommittee.org<br>*Attorneys for Plaintiffs* |
| M. Laughlin McDonald*<br>American Civil Liberties Union Foundation<br>2700 International Tower<br>229 Peachtree Street, NE<br>Atlanta, GA 30303<br>T: (404) 500-1235<br>lmcdonald@aclu.org<br>*Attorneys for Plaintiffs* | Maya Kane*<br>10 Town Square, #52<br>Durango, Colorado 81301<br>T: (970) 946-5419<br>mayakanelaw@gmail.com<br>*Attorneys for Plaintiffs* |
| William A. Rudnick*<br>DLA Piper LLP (US)<br>203 North LaSalle Street, Suite 1900<br>Chicago, IL 60601<br>T: (312) 368-4000<br>william.rudnick@dlapiper.com<br>*Attorneys for Plaintiffs* | Raymond M. Williams*<br>DLA Piper LLP (US)<br>One Liberty Place<br>1650 Market Street, Suite 4900<br>Philadelphia, PA 19103<br>T: (215) 656-3300<br>raymond.williams@dlapiper.com<br>*Attorneys for Plaintiffs* |

| Patrick Castaneda<br>DLA Piper, LLC<br>One Liberty Place<br>1650 Market Street, Suite 4900<br>Philadelphia, PA 19103-7300<br>Telephone: 215-656-3378<br>patrick.castaneda@dlapiper.com | |
|---|---|

      /s/ jesse c. trentadue

*T:\7000\7788\1\OPPOSITION TO MOTION TO DISMISS COUNTERCLAIM.wpd*