John Mejia (Bar No. 13965)
Leah Farrell (Bar No. 13696)
American Civil Liberties Union of Utah
355 North 300 West
Salt Lake City, UT 84103
T: (801) 521-9862
jmejia@acluutah.org
lfarrell@acluutah.org

M. Laughlin McDonald*
American Civil Liberties Union Foundation
2700 International Tower
229 Peachtree Street, NE
Atlanta, GA 30303
T: (404) 500-1235
lmcdonald@aclu.org

Ezra D. Rosenberg*
Arusha Gordon*
Lawyers' Committee for Civil Rights Under Law
1401 New York Ave., Suite 400
Washington, D.C. 20005
T: (202) 662-8600
erosenberg@lawyerscommittee.org
agordon@lawyerscommittee.org

Maya Kane*
10 Town Square, #52
Durango, Colorado  81301
T: (970) 946-5419
mayakanelaw@gmail.com

William A. Rudnick*
DLA Piper LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, IL 60601
T: (312) 368-4000
william.rudnick@dlapiper.com

Raymond M. Williams*
DLA Piper LLP (US)
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, PA 19103
T: (215) 656-3300
raymond.williams@dlapiper.com

*Admitted pro hac vice

**ATTORNEYS FOR PLAINTIFFS**

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH
## CENTRAL DIVISION

NAVAJO NATION HUMAN RIGHTS
COMMISSION; PEGGY PHILLIPS; MARK
MARYBOY; WILFRED JONES; TERRY
WHITEHAT; BETTY BILLIE FARLEY;
WILLIE SKOW; and MABEL SKOW,

                Plaintiffs,

v.

SAN JUAN COUNTY; JOHN DAVID
NIELSON, in his official capacity as San Juan
County Clerk; and PHIL LYMAN, BRUCE
ADAMS, and REBECCA BENALLY, in their
official capacities as San Juan County
Commissioners,

                Defendants.

Case No. 2:16-cv-00154 JNP

**PLAINTIFFS' REPLY TO
DEFENDANTS' OPPOSITION
TO PLAINTIFF'S MOTION TO
DISMISS AMENDED
COUNTERCLAIMS WITH
PREJUDICE**

## INTRODUCTION

In their Motion to Dismiss Amended Counterclaims ("Motion to Dismiss" or "MTD")

(ECF No. 93), Plaintiffs[1] demonstrated that the Defendants' Amended Counterclaims should be

dismissed for various reasons, including lack of standing and failure to state any claim upon

which relief can be granted. Defendants' response to the motion fails to establish their standing,

and likewise does not explain away the deficiencies of their claims. Federal Rule of Civil

Procedure 12(b) and Local Rule 7-1 mandate the dismissal of all counterclaims with prejudice.

---

[1] For clarity and ease of reading, Plaintiffs and Counterclaim Defendants Navajo Nation Human Rights
Commission, Peggy Phillips, Mark Maryboy, Wilfred Jones, Terry Whitehat, Betty Billie Farley, Willie Skow, and
Mabel Skow are referred to collectively as "Plaintiffs" throughout. Similarly, Defendants and Counterclaim
Plaintiffs San Juan County, John David Nielson, Phil Lyman, Bruce Adams, and Rebecca Benally are referred to
collectively as "Defendants" throughout.

## ARGUMENT

**I.      Defendants Lack Standing to Bring Their First Counterclaim for Declaratory Relief**

As stated in the Motion to Dismiss, the First Counterclaim (for "declaratory relief")

should be dismissed because, among other things, Defendants lack standing to obtain a

declaration against Plaintiffs under both the Fourteenth Amendment and the Voting Rights Act.

In short, these authorities extend rights and protections to voters against governments and their

officials, and not the other way around.  In a fruitless attempt to respond to Plaintiffs' arguments

and divine a basis for standing, Defendants declare their purported counterclaim "compulsory,"

which is irrelevant, even if true.  They then make two incorrect conclusions from that analysis.

First, Defendants contend that if they obtain a declaration against the Plaintiffs on the

validity of Defendants' planned elections procedures, it will "shut the door on future challenges"

to those procedures.  *See* Counterclaim Plaintiffs' Opposition to Motion to Dismiss Amended

Counterclaims (ECF No. 99) ("Opp. Br.") at 7.  Defendants offer no support for this wrongful

assertion.  Courts determine *res judicata* by establishing that there is a substantial identity of

issues and of parties from case to case, not on the mere basis of whose prior claim or

counterclaim prevailed.  *See*, *e.g.*, *United States v. Power Eng'r Co.,* 303 F.3d 1232, 1240 (10th

Cir. 2002) (declining to apply *res judicata* because no privity between parties).  More important,

even assuming *arguendo* that Defendants are correct, they cite no authority for the proposition

that possible *res judicata* against future potential litigants can confer standing now.  If this rule

were taken to its logical end, anyone who did not want to be sued would have standing.  In this

light, the Tenth Circuit's rule that hypothetical future lawsuits do not suffice as an "actual or

imminent injury" necessary for standing makes sense.  *Smith v. United States Court of Appeals*,

484 F.3d 1281, 1285 (10th Cir. 2007) (quoting *Nova Health Sys. v. Gandy*, 416 F.3d 1149, 1155

(10th Cir. 2005)) ("an injury in fact must be actual or imminent, not conjectural or hypothetical. Allegations of possible future injury do not satisfy the requirements of Art[icle] III . . . [a]n Article III injury must be more than a possibility.")

In Defendants' second argument, they appear to be claiming that if their counterclaim is labeled compulsory, that designation confers standing, citing *Pipeliners Local Union No. 798, Okl. v. Ellerd*, 503 F.2d 1193, 1198 (10th Cir. 1974). Defendants are wrong. *Pipeliners* answered whether a court has ancillary jurisdiction over a compulsory counterclaim over which it would have lacked jurisdiction had the counterclaim been brought in a separate action. *See id.* *Pipeliners* did not address whether ancillary jurisdiction can confer standing where there is none. The answer to that question is no. *See*, *e.g.*, *Brentwood Nursing & Rehab. Ctr., Inc. v. Janes*, No. 88 C 9649, 1989 WL 153393, at *3 (N.D. Ill. Nov. 14, 1989) ("[A]ncillary jurisdiction cannot give the court power to hear a claim which the plaintiff has no standing to raise.")

Likewise, Defendants do not gain standing through their promise to no longer conduct elections exclusively by mail, or by their desire to have the Court approve their asserted future election plans. Even assuming *arguendo* they had standing for a declaration, Defendants ask for an advisory opinion, which is not permitted. In essence, with their First Counterclaim, Defendants ask the Court, "if we run elections as we promise to in the future, will that satisfy our constitutional and statutory obligations?" That question does not resolve an actual "case or controversy," but provides legal guidance about the legality of future hypothetical actions by Defendants. However, "Article III… confines [courts] to resolving 'real and substantial controvers[ies] admitting of specific relief through a decree of a conclusive character, *as distinguished from an opinion advising what the law would be upon a hypothetical state of facts*.'" *Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990) (citations omitted, emphasis

added).  In contrast, Plaintiffs ask for a declaration about a practice the Defendants implemented during the last election cycle:  mail-only voting.

Finally, Defendants cannot gain standing through their request for attorneys' fees, both because a fee request does not create standing and because those fees are not available to them in any event.  Rather than address *Shelby County, Alabama v. Lynch*, 799 F.3d 1173, 1181 (D.C. Cir. 2015, *cert. denied*, 136 S. Ct. 981, 194 L. Ed.) (declining to award attorneys' fees to a county in a Voting Rights Act case), Defendants cite to *Lefemine v. Wideman*, 133 S.Ct. 9, 11 (2012), an inapposite decision which does not address the question of whether prevailing counties in voting rights cases may be awarded statutory fees.  *Lefemine*, 133 S.Ct. at 11.

II.     **Defendants' Second Claim for Declaratory Relief and Request for Fees Under State Law is Not a Claim**

Defendants' Second Counterclaim, which seeks a declaration that they are entitled to attorneys' fees under a Utah state statute based on their allegations that the "*Underlying Action* is without merit and was not brought in good faith," likewise fails for various reasons.

First, as explained above, statutory attorneys' fees are not available to prevailing governments in federal cases to enforce voting rights, as such awards do not advance the purpose of the statute.  *See Shelby Cnty.*, 799 F.3d at 1181.  Defendants cite no precedent allowing a government to use a state statute to circumvent a federal fee shifting statute, especially when the statute is a protection of a fundamental right.

Second, the "declaration" Defendants seek is actually a procedural request under a state statute, which does not apply in this federal case.  The cases Defendants rely upon make this point clear.  Under Utah Code § 78B-5-825(1), a "court shall award reasonable attorney fees to a prevailing party if the court determines that the action or defense to the action was without merit and not brought or asserted in good faith."  Defendants acknowledge that the Tenth

Circuit has ruled that "[s]ubstantive fees are… 'tied to the outcome of the litigation,' whereas procedural fees are generally based on a litigants' 'bad faith conduct in litigation.'" *Scottsdale Ins. Co. v. Tolliver*, 636 F.3d 1273, 1279 (10th Cir. 2011). *Tolliver* upheld a fee award, in the context of a diversity case, under a state fee-shifting statute that did not require a showing of bad faith and did not conflict with FRCP 68. *See id.* at 1279-1281. In *In re Johnson*, 485 B.R. 642, 649 (D. Colo. 2013), on the other hand, a party asked the federal bankruptcy court to apply Colo. Rev. Stat. § 13–17–102. That state statute allows attorneys' fees when an attorney "brought… a civil action… that the court determines lacked substantial justification." Colo. Rev. Stat. § 13–17–102. Citing *Tolliver*, the *Johnson* court declined to award fees under the state statute, ruling that the state statute was procedural and thus preempted because it conflicted with Fed. R. Bankr. P. 9011, as both the statute and the rule were aimed at preventing the same misconduct by the same parties, and because the bankruptcy rule provided a safe harbor not contained in the state statute. *See In re Johnson*, 485 B.R. at 649. The federal district court in *Kazazian v. Emergency Service Physicians, P.C.*, 300 F.R.D. 672, 676-77 (D. Colo. 2014), likewise found that FRCP 11 preempted Colo. Rev. Stat. § 13-17-102 because Rule 11 was aimed at the same misconduct and provided extra protections for federal litigants not found in the state statute, and declined to grant fees under the state statute.

Like Colo. Rev. Stat. § 13–17–102, Utah Code § 78B-5-825(1) requires a court to "determine" that an action is meritless and was brought in bad faith before awarding attorneys' fees. Defendants argue that Utah Code § 78B-5-825(1) is substantive because it requires a showing that the case was meritless. But this argument begs the question: how would a court know to award attorneys' fees to punish "bad faith" in bringing a case, which *Tolliver* has established is a procedural function, if the court does not know whether the case lacked merit?

6

As with the federal courts in Colorado, the Court should reject Defendants' specious argument

that a procedural request to punish bad faith can be characterized as substantive because it also

requires the court to find the action is without merit.

Notably, in each of the three District of Utah cases Defendants cite to discussing §

78B-5-825, the courts addressed *motions* made by a party, not stand-alone "counterclaims" for

fees. *See VR Acquisitions LLC v. Wasatch Cty.*, No. 2:15-Cv-18-DAK, 2016 WL 715738, at *1;

*Water Servs. v. Zoeller Co.*, 2013 WL 5964457, at *7 (D. Utah Nov. 7, 2013); *Wade v. Gaither*,

No. 08-CV-641-WFD-DN, 2011 WL 2946378, at *5 (D. Utah July 20, 2011). None of these

cases touch on the propriety of allowing a stand-alone claim based on the statute and none

address the question of whether the statute is procedural or substantive.

**III.    The Third, Fourth, and Fifth Counterclaims Asserted by Ms. Benally Must Fail as She Does Not Have Capacity to Sue and Fails to Allege Sufficient Facts to Support Her Claims**

   **A.    Ms. Benally Does Not Have Capacity to Bring Her Counterclaims in Either Her Individual or Official Capacities**

In response to the Motion to Dismiss, Ms. Benally asserts that she brought her

counterclaims "in both her official and individual capacity." Opp. Br. at 13-14. This response

fails for the following reasons: (1) the counterclaims Ms. Benally brings in her name cannot be

plausibly read to be brought in her official capacity, and (2) to the extent that Ms. Benally

attempts to bring the claims in her individual capacity, the consensus rule is that a defendant may

counterclaim only in the capacity in which he or she has been sued. Here, Plaintiffs sued Ms.

Benally in her official capacity only, and there is no good reason to allow her to countersue in her personal capacity.[2]

First, contrary to Defendants' assertions, Ms. Benally's counterclaims will not benefit her in both her individual and official capacities because she expressly seeks to advance her personal interests in the Counterclaims. In this regard, it is telling that neither of her fellow co-Defendant commissioners nor San Juan County purport to join her counterclaims. Ms. Benally asserts that she brought her counterclaims "to prevent Plaintiff Maryboy and others from improperly influencing the Navajo voters in San Juan County, and to preserve the right of all County voters to mail-in-ballots." Opp. Br. at 13. Yet Ms. Benally's characterization of her counterclaims is contradicted by the Third, Fourth, and Fifth counterclaims of the Amended Counterclaims themselves. Those claims allege that Plaintiffs' actions were "carried out with malice and the intent to harm *Counterclaim Plaintiff Benally*" and that she is therefore seeking compensation for her alleged injuries. Defendants' Amended Counterclaim for Declaratory and Other Relief (ECF No. 74) ("Am. Countercl.") ¶¶ 145, 152, 158; Prayer [for Relief] ¶ 3. These claims can plausibly be read only as being brought in Ms. Benally's individual capacity. To that end, this is not a case where an official body has filed an action that it is empowered to bring. Rather, this is a case where a single member of an official body has filed an action, claiming that she is doing so in her official, as well as individual, capacity, without any statutory or official authorization to do so.

---

[2] Furthermore, even if Ms. Benally could sue as an individual, she lacks standing to do so. Her counterclaims fail to include any specific factual allegations concerning a concrete injury-in-fact (i.e. she asserts no specific harm, instead generally claiming that she was "harmed and damaged" by Plaintiffs' alleged actions). Furthermore, Ms. Benally concludes that she was "harmed and damaged" "as a natural, direct and proximate cause" of Plaintiffs' actions, but does not plead facts sufficient to establish the causal requirement for standing. Am. Countercl. ¶¶ 144, 151, 157. Finally, redressability fails as Ms. Benally does not specify her actual injury or explain what a decision in her favor would address. *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).

Ms. Benally provides no basis for her authority to sue as a single member of the Board of Commissioners in her "official capacity," and Plaintiffs are aware of no authority that would permit her to do so. Moreover, to the extent Ms. Benally asserts that Plaintiffs engaged in a conspiracy to deprive her of rights by seeking to open additional polling places, her personal interests are in direct conflict with the County and other Defendants, who have allegedly decided to permanently open additional polling places.

Second, allowing Ms. Benally to assert counterclaims in her individual capacity will not advance principles of equity and judicial economy, as Defendants assert. Opp. Br. at 14. To the contrary, addressing Ms. Benally's individual capacity claims, which are grounded in personal grievances, would confuse the issues. Moreover, addressing such claims would require the parties and the Court to expend unnecessary resources – including depositions, discovery, and motion practice – and would continue to drag out the issues the Court is being asked to consider in the underlying litigation. *Faunus Grp. Int'l, Inc. v. Ramsoondar*, No. 13-CV-6927, 2015 WL 4557132, at *5 (S.D.N.Y. July 22, 2015) (noting some courts have exercised "a certain amount of discretion to decline to hear the counterclaim if it would unduly complicate the litigation").

Ms. Benally should not be permitted to assert her counterclaims in her individual capacity while defending herself in another legal capacity. *See Favors v. Cuomo*, No. 11-cv-5632, 2013 WL 5818773, at *5 (E.D.N.Y. Oct. 29, 2013) (dismissing counterclaims where the interests of defendants in their official and individual capacities were not aligned).

Additionally, Ms. Benally confuses the issue by incorrectly asserting the principle of *jus tertii*. That principle does not give her standing to assert counterclaims on behalf of third parties in her individual capacity. Initially, federal courts generally disfavor *jus tertii* standing:

> Federal courts must hesitate before resolving a controversy, even one within their constitutional power to resolve, on the basis of the rights of third persons not parties to the litigation. The reasons are two. First, the courts should not adjudicate such rights unnecessarily, and it may be that in fact the holders of those rights either do not wish to assert them, or will be able to enjoy them regardless of whether the in-court litigant is successful or not… Second, third parties themselves usually will be the best proponents of their own rights. The courts depend on effective advocacy, and therefore should prefer to construe legal rights only when the most effective advocates of those rights are before them. The holders of the rights may have a like preference, to the extent they will be bound by the courts' decisions under the doctrine of *stare decisis*…. These two considerations underlie the Court's general rule: 'Ordinarily, one may not claim standing in this Court to vindicate the constitutional rights of some third party.'

*Singleton v. Wulff*, 428 U.S. 106, 113-14 (1976) (citations omitted).

Neither type of *jus tertii* standing described in Defendants' opposition and the cases cited therein applies to Ms. Benally in her individual capacity. As Defendants describe it, a plaintiff has standing to assert the rights of a third party under the first type of *jus tertii* when "a defendant's activities and/or actions regulate or infringe upon the rights of the plaintiff and, as a result also violate the rights of third parties" and cite to *Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati,* 822 F.2d 1390 (1987). Opp. Br. 15. However, Defendants conveniently leave out key language from *Planned Parenthood*, which describes this first type of *jus tertii* as intending to give standing to litigants "challeng[ing] *statutes which regulate their activity* and, as a result, violate the rights of third parties." *Planned Parenthood Ass'n of Cincinnati, Inc. v. City of Cincinnati*, 822 F.2d 1390, 1394 (6th Cir. 1987) (emphasis added); *See also Craig v. Boren,* 429 U.S. 190, 194–97, 97 (1976); *Eisenstadt v. Baird,* 405 U.S. 438, 443–46 (1972). Ms. Benally is not challenging a statute or any other regulatory action and therefore does not have standing to assert her claims on behalf of third parties under this first type of *jus tertii*.

The second type of *jus tertii*, "involve[s] litigants seeking to assert solely the rights of third parties as being impinged by a statute." *Planned Parenthood Ass'n of Cincinnati*, 822 F.2d 1390.[3]  In considering whether a party has standing to bring suit on behalf of third parties, the Court has looked primarily to two factual elements: (1) "the relationship of the litigant to the person whose right he seeks to assert" and (2) "the ability of the third party to assert his own right." *Singleton*, 428 U.S. at 114, 116.  In determining whether a party satisfies the first factor, a court will consider "[i]f the enjoyment of the right is inextricably bound up with the activity the litigant wishes to pursue" and whether "the relationship between the litigant and the third party may be such that the former is fully, or very nearly, as effective a proponent of the right as the latter." *Singleton*, 428 U.S. at 114. 115. Here, the rights of third party Navajo voters to equal access to the ballot box is far from "inextricably bound" to Ms. Benally's claims for punitive damages (the only requested relief for the Third, Fourth, and Fifth counterclaims asserted by Ms. Benally), which is aimed at "punish[ing] and/or mak[ing] an example of Counterclaim Defendants."  Am. Countercl. ¶¶ 145, 152, 158. Whether or not Ms. Benally is successful in asserting the Third, Fourth, or Fifth counterclaims for punitive damages has no bearing on whether Navajo voters have equal opportunity to vote.

Furthermore, the relationship between Ms. Benally and the unnamed third Navajo voters on which she now asserts standing completely fails to satisfy the second requirement for *jus tertii* standing. Courts have recognized the right of a litigant to bring a suit on behalf of a third party when the litigant is "intimately involved" in the decision to assert a constitutional right (as with

---

[3] Again, it appears that courts have largely considered this second type of *jus tertii* standing when a statute or regulatory action is challenged, which is not the case in Defendants' Amended Counterclaim.

doctors and their patients), *Singleton*, 428 U.S. at 117, when there is a "professional relationship," *Griswold v. Connecticut*, 381 U.S. 479, 481 (1965), where there is an employee-employer relationship, *Pierce v. Society of the Sisters of the Holy Names of jesus and Mary*, 268 U.S. 510 (1925), or where a school asserts the rights of pupils and their parents, *Barrows v. Jackson*, 346 U.S. 249 (1953). None of these circumstances are present here, where Benally maintains no actual or perceived relationship with the unidentified third parties voters she claims to represent.

In addition to the above, Ms. Benally's counterclaims also fail for the reasons detailed below.

### B. The Third, Fourth, and Fifth Counterclaims Asserted by Ms. Benally Fail to Allege Facts Plausibly Supporting the Causes of Action

#### 1. Ms. Benally's Third Claim for Civil Conspiracy Claim Must Be Dismissed as the Facts Alleged do Not Plausibly Support Her Claim

As Plaintiffs explained in their Motion to Dismiss, Ms. Benally's Civil Conspiracy claim must be dismissed under Rule 12(b)(6) because she pled no facts supporting the elements of her purported claim. Instead, she relies on her legal conclusion that Plaintiffs formed an illegal agreement, which pleading is insufficient under well-settled precedent. MTD at 14-16. Ms. Benally responds only by first declaring she has "alleged sufficient factual matter which, if accepted, as true, state[s] a claim for civil conspiracy," and then re-stating, as support, her bald theory that Plaintiffs have established a conspiracy against her, why, and how they might carry it out. Opp. Br. at 17.[4] This contention, however, fails to address two core problems with Ms.

_____

[4] Perhaps recognizing her pleading deficiencies, Ms. Benally failed to address Plaintiffs' arguments concerning her Counterclaim's lack of specific facts as to Plaintiffs' "unlawful, overt acts" or her damages. MTD at 16.

Benally's pleading. First, the Court need not (and indeed *should not*) accept as true an allegation

of a conspiracy that is unsupported by specific facts, *see Ashcroft v. Iqbal*, 556 U.S. 662, 679-80

(2009). In addition to other requirements, a state civil conspiracy claim requires "one or more

unlawful, overt acts" and "damages as a proximate result thereof." *Pohl, Inc. of Am. v.*

*Webelhuh*, 201 P.3d 944, 954-55 (Utah 2008). Here, Ms. Benally makes general assertions

regarding acts perpetrated by Mark Maryboy and others at polling places prior to 2014. Apart

from simply labeling such actions illegal, however, Ms. Benally fails to plead any specific facts

to support an allegation that these actions were carried out in an illegal manner. For instance,

Ms. Benally claims that Maryboy and others "illegally distribut[ed] food and other items (*i.e.*

*enticements*) to induce Navajo voters to vote for them," Am. Countercl. ¶ 63, yet, apart from

simply asserting that this distribution of food was an illegal "enticement," Ms. Benally does

not plead any facts about the distribution of food or other unnamed items that would plausibly

lead to the conclusion that Plaintiffs broke any law or impermissibly pressured voters. Similarly,

she claims that Maryboy and others "visit[ed] Senior Centers and t[old] elderly Navajo voters

they would lose of [sic] services (*i.e. intimidation*) unless they voted for them." Am. Countercl.

¶ 64. Again, other than simply asserting that these actions were "intimidation," Ms. Benally fails

to plead any facts indicating that these alleged visits or conversations were anything more than

actions taken in the course of regular, legal campaign activities (such as persuading voters that if

you vote for the opposition candidate you may risk x, y, or z changes in policy). More important,

Ms. Benally fails to allege *any* facts satisfying the last requirement for pleading a state civil

conspiracy: namely, that she was damaged by the conspiracy. Ms. Benally's counterclaim

includes no statements, supported or otherwise, that Ms. Benally (or any Navajo voter for that

matter) was damaged in any way as a result of the alleged conspiracy.

Finally, Ms. Benally's conspiracy theory requires an implausible reading of Plaintiffs' Complaint. *See* MTD at 14-16. Because this Court need not accept as true Ms. Benally's primary averments as to an alleged conspiracy, her Third Claim must be dismissed with prejudice.

### 2. Ms. Benally's Fourth Claim Must Be Dismissed for Failure to Allege Sufficient Facts to Support Her Civil Rights Claims under 42 U.S.C. § 1981, 42 U.S.C. § 1985(3), and 52 U.S.C. § 10307(b).

#### a) 42 U.S.C. § 1981

42 U.S.C. § 1981(a) is intended to protect a person's right to "make and enforce contracts." *See* 42 U.S.C. § 1981(a); *Saint Francis College v. Al-Khazraji*, 481 U.S. 604, 609 (1987). Asserting a claim under § 1981 requires two elements: (1) a showing of an impaired contractual relationship and (2) injuries caused by a racially-motivated breach of that contractual relationship. *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 470-80 (2006). Here, Ms. Benally failed to plead any facts supporting either element. Indeed, Ms. Benally' factual allegations in support of this claim are irrelevant because she does not mention any contractual relationship between herself and Plaintiffs. *See* Opp. Br. 18-19. In fact, she does not use the word "contract" at all.

Even assuming that Ms. Benally could plead a § 1981 when she had no contract that was impaired,[5] she pleads no facts supporting the second element of a § 1981 claim: that the impairment was racially motivated and that it caused an injury. Ms. Benally does not plead any

---

[5] The vast majority of § 1981 case law deals with contractual relationships. "Despite the broad list of rights enumerated in § 1981, Supreme Court dicta to the effect that § 1981 on its face 'relates primarily to racial discrimination in the making and enforcement of contracts' has affected dramatically the development of the statute." *See* Barry L. Refsin, *The Lost Clauses of Section 1981: A Source of Greater Protection After Patterson v. McLean Credit Union*, 138 U. of Penn. L. Rev., 1209, 1211

facts plausibly supporting the conclusion that Mr. Maryboy, Mr. Gorman or other members of the alleged "conspiracy" – all of whom are members of the Navajo Nation – acted with racial animus against their own people. Further, as discussed above, Ms. Benally did not plead any facts showing that she was injured by any of Plaintiffs' alleged actions. Thus, Ms. Benally's claim under § 1981 must fail as a matter of law. *See Wiseman v. Meeker County*, 659 F. Supp. 1571, 1575 (D. Minn. 1987) (failure to allege "discrimination based on race, alienage, ancestry, or ethnic characteristics" means that plaintiff's claim must fail).

### b) 42 U.S.C. § 1985(3)

The elements of a claim under 42 U.S.C. § 1985(3) are (1) a conspiracy; (2) to deprive plaintiff of equal protection or equal privileges and immunities; (3) an act in furtherance of the conspiracy; and (4) an injury or deprivation resulting therefrom. As established in the Motion to Dismiss, Ms. Benally did not plead facts plausibly supporting a conclusion that a conspiracy existed or that she was personally injured as a result. Ms. Benally's claim under § 1985(3) also fails because she relies on labels and conclusions, and these flaws are fatal to her claims. *See* Opp. Br. 19-20; *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) ("[T]he plaintiff must provide 'more than labels and conclusions, [or] a formulaic recitation of the elements of a cause of action."").

### c) 52 U.S.C. § 10307(b)

Under this statute, it is illegal to "intimidate, threaten, or coerce, or attempt to intimidate, threaten, or coerce any person for voting or attempting to vote." To succeed on a claim under § 10307(b), a plaintiff must: (1) establish either an act to intimidate or an attempt to intimidate and (2) show that "the act was done with the specific intent to intimidate or attempt to intimidate." *Parson v. Alcorn*, No. 3:16-cv-00013-MHL, 2016 WL 206466, at *12 (E.D. Va. Jan. 15, 2016)

(citing *Olagues v. Russoniello*, 770 F.2d 791, 804 (9th Cir. 1985). To be sure, Ms. Benally has

not alleged that Plaintiffs intimidated, threatened, or coerced her in such a way that it impacted

her ability to vote or attempt to vote. Furthermore, as discussed above, Ms. Benally does not

have standing to pursue this claim on the basis of alleged third-party injuries. The Amended

Counterclaim fails to include any facts asserting that Ms. Benally or any Navajo voter were

actually intimidated, threatened, coerced or otherwise suffered any kind of concrete injury due to

Plaintiffs' alleged actions.

> **3.** **Ms. Benally's Fifth Claim for "Abuse Of Process" Must Be Dismissed Because She Has Advanced No Well-Pled Facts Establishing An Essential Element Of Her Claim:  That Plaintiffs Committed Some "Willful Act" Independent Of The Legal Process**

A plaintiff can state a *prima facie* "abuse of process" claim only by establishing both

(1) defendant's "ulterior purpose in bringing [] suit" *and* (2) "a willful act in the use of the

process not proper in the regular conduct of the proceedings." *Rusakiewicz v. Lowe*, 556 F.3d

1095, 1103 (10th Cir. 2009)(citing *Hatch v. Davis*, 147 P.3d 383, 389 (Utah 2006)).  To establish

defendant's "willful act," plaintiff must plead some "objective proof" of an "independent act that

corroborates the alleged improper purpose." *Id.* (internal quotation marks omitted).  As Plaintiffs

explained in their Motion to Dismiss, Ms. Benally failed to allege in her any facts establishing an

independent act of Plaintiffs corroborating their alleged improper purpose.  MTD at 22-23.  Ms.

Benally contends, in response, that Plaintiffs have "confirmed" their "improper ulterior motive"

by having "intimidated and coerced Navajo voters" and by persisting in maintaining a lawsuit

they know is a sham.  Opp. Br. at 23.

Ms. Benally's arguments must be rejected.  As an initial matter, it is well settled that

pleading the fact of maintaining a lawsuit cannot, as a matter of law, satisfy the fundamental

requirements to state an "abuse of process" claim.  *See Rusakiewicz*, 556 F.3d at 1103-04.  Thus,

even if Plaintiffs' motives are "ulterior" and "improper" (which they are not), simply having

filed the underlying lawsuit and then continuing to litigate it are not facts that can support an

abuse of process claim.  Ms. Benally's other argument is equally unavailing.  Circling back to

her baseless civil conspiracy theory, Ms. Benally claims that Plaintiffs have "confirmed" their

"improper ulterior motive" by intimidating and coercing (*i.e.*, threatening) Navajo voters into

voting for Plaintiffs instead of Ms. Benally.  Opp. Br. at 23; *see also* Am. Countercl. ¶¶ 63-65.

But, what Ms. Benally (almost misleadingly) does not account for in her Opposition Brief is

revealing:  the *only* alleged "independent act" is to have occurred at least 16 *months before*

Plaintiffs commenced their lawsuit.  Query how purported actions taken more than a year before

filing a lawsuit, *without any alleged conduct in the interim or arising post-filing*, reflects a

misuse of the instant legal process?  It does not, and Ms. Benally's overreaching in this regard

demonstrates how factually weak her abuse of process claim truly is.  In sum, Ms. Benally has

not sufficiently alleged that Plaintiffs committed some independent "willful act" that actually

corroborates her claim of improper purpose; therefore, her claim must be dismissed with

prejudice.

     Furthermore, contrary to Defendants' assertion that changes made to the voting system

after Plaintiffs' Complaint was filed means that "there is no longer a need for [Plaintiffs] to

pursue this lawsuit, except to continue in their intimidation and suppression of Navajo voters,"

the County's failure to fully comply with the Voting Rights Act during the recent June primaries,

and the ambiguity regarding how the County will implement the upcoming general elections,

continues to make Plaintiffs' underlying lawsuit necessary.  Finally, Defendants misleadingly

argue that Plaintiffs' "'concern' with the vote-by-mail system was only raised after Ms. Benally

was elected to the San Juan County Commission," as evidence of Plaintiffs' improper purpose,

yet they ignore the fact that Ms. Benally's election and the first use of the mail-only system

coincided – both occurred in the November 2014 general elections.  Opp. Br. at 23.

**CONCLUSION**

For the reasons set forth above and in Plaintiffs' Motion to Dismiss Amended Counterclaims,

Plaintiffs' motion should be granted.

Respectfully submitted, this 26th of August 2016.

BY:

s/John Mejia
John Mejia (Bar No. 13965)
Leah Farrell (Bar No. 13696)
American Civil Liberties Union of Utah
355 North 300 West
Salt Lake City, UT 84103
T: (801) 521-9862
jmejia@acluutah.org
lfarrell@acluutah.org

M. Laughlin McDonald*
American Civil Liberties Union Foundation
2700 International Tower
229 Peachtree Street, NE
Atlanta, GA 30303
T: (404) 500-1235
lmcdonald@aclu.org

Ezra D. Rosenberg*
Arusha Gordon*
Lawyers' Committee for Civil Rights Under Law
1401 New York Ave., Suite 400
Washington, D.C. 20005
T: (202) 662-8600
erosenberg@lawyerscommittee.org
agordon@lawyerscommittee.org

Maya Kane*
10 Town Square, #52
Durango, Colorado  81301
T: (970) 946-5419
mayakanelaw@gmail.com

William A. Rudnick*
DLA Piper LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, IL 60601
T: (312) 368-4000
william.rudnick@dlapiper.com

Raymond M. Williams*
DLA Piper LLP (US)
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, PA 19103
T: (215) 656-3300
raymond.williams@dlapiper.com

*Admitted pro hac vice

**CERTIFICATE OF SERVICE**

I certify that on August 26, 2016, I served the foregoing motion to all Defendants via the Court's CM/ECF system.


s/John Mejia