Jesse C. Trentadue (#4961)
Carl F. Huefner (#1566)
Britton R. Butterfield (#13158)
**SUITTER AXLAND, PLLC**
8 East Broadway, Suite 200
Salt Lake City, UT  84111
Telephone: (801) 532-7300
Facsimile: (801) 532-7355
E-Mail: jesse32@sautah.com
E-Mail: chuefner@sautah.com
E-Mail: bbutterfield@sautah.com

*Attorneys for Defendants*

---

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

---

| | |
|---|---|
| NAVAJO NATION HUMAN RIGHTS COMMISSION; PEGGY PHILLIPS; MARK MARYBOY; WILFRED JONES; TERRY WHITEHAT; BETTY BILLIE FARLEY; WILLIE SKOW; and MABEL SKOW,<br><br>Plaintiffs,<br><br>v.<br><br>SAN JUAN COUNTY; JOHN DAVID NIELSON, in his official capacity as San Juan County Clerk; and PHIL LYMAN, BRUCE ADAMS, and REBECCA BENALLY, in their official capacities as San Juan County Commissioners,<br><br>Defendants. | **SAN JUAN COUNTY DEFENDANTS' MOTION FOR SUMMARY JUDGMENT ON PLAINTIFFS' CLAIMS and MOTION FOR PARTIAL SUMMARY JUDGMENT ON COUNTERCLAIMS**<br><br>Case No. 2:16-cv-00154 JNP<br><br>Judge Jill N. Parrish<br><br>Magistrate Judge Brooke C. Wells<br><br>**Oral Argument is Requested** |

| | |
|---|---|
| SAN JUAN COUNTY; JOHN DAVID NIELSON; PHIL LYMAN, BRUCE ADAMS; and REBECCA BENALLY | : <br> : <br> : <br> : |
| Counterclaim Plaintiffs, | : <br> : |
| v. | : <br> : |
| NAVAJO NATION HUMAN RIGHTS COMMISSION; PEGGY PHILLIPS; MARK MARYBOY; WILFRED JONES; TERRY WHITEHAT; BETTY BILLIE FARLEY; WILLIE SKOW; and MABEL SKOW, | : <br> : <br> : <br> : <br> : <br> : |
| Counterclaim Defendants. | : <br> : |

Plaintiffs have brought this action to challenge San Juan County's 2014 vote-by-mail procedures. In their *Complaint*,[1] Plaintiffs allege that the 2014 vote-by-mail procedures violated Section 203 of the Voting Rights Act ("*VRA*") insofar as language assistance was supposedly not provided to Navajo voters;[2] Section 2 of the *VRA* insofar as voting by mail purportedly creates a burden to voting that bears substantially more heavily on Navajo voters than upon non-Indian voters;[3] and the *Fourteenth Amendment* insofar as the San Juan County Clerk/Auditor's 2014 voting procedures allegedly mandated arbitrary and disparate treatment of voters; denied equal access to the right to vote to eligible citizens; and imposed severe burdens in time, inconvenience, expense and access to ballots upon voters living in remote areas of the county,

---

[1] Dkt. 2.

[2] 52 U.S.C. §10503.

[3] 52 U.S.C. §10301.

especially Navajo voters.

Plaintiffs have named as defendants, San Juan County, Utah, the County Clerk/Auditor, John David Nielsen and the three County Commissioners, Bruce Adams, Rebecca Benally and Phil Lyman (collectively "San Juan County Defendants"). Nielson, Adams, Benally and Lyman are sued solely in their "official capacities." Furthermore, Benally was not a County Commissioner in 2014 when the Clerk/Auditor implemented the vote-by-mail procedures and, under Utah law, it is the Clerk/Auditor and not the County Commissioners who control elections, including setting voting procedures.

In their *Complaint*, Plaintiffs seek only declaratory and injunctive relief. Specifically, Plaintiffs are asking for the following relief: (1) an order declaring that the Clerk/Auditor's "closure of polling places and maintenance of a mail-only voting system" violates the *VRA* and *Fourteenth Amendment*;[4] (2) a permanent injunction requiring the Clerk/Auditor to "reopen polling sites equally accessible to Navajo voters as to white voters" and to "provide full translation, interpretation and assistance to Navajo speaking voters";[5] and (3) to "provide audio translations in Navajo of the County's voter services website, the voter registration form, the ballots, and other voter information."[6] Notwithstanding Plaintiffs' claims to the contrary, the Clerk/Auditor's election procedures fully comply with both the *VRA* and the *Fourteenth Amendment*. Furthermore, under these facts, Plaintiffs are also not entitled to the injunctive relief

---

[4] *Complaint*, p. 21, Dkt. 2.

[5] *Id.*

[6] *Id.*

they seek either because of their lack of an irreparable injury and/or mootness due to the fact that the election procedures that the  San Juan County Clerk/Auditor had implemented for county-wide elections already meet or even exceed the requirements of both the *VRA* and the *Fourteenth Amendment*.

Wherefore, pursuant to *Federal Rule of Civil Procedure* 56 San Juan County Defendants hereby move for summary judgment with respect to Plaintiffs' claims as set forth in their *Complaint.*  In addition, San Juan County Defendants move for partial summary judgment on their *First Counterclaim* which seeks a declaration that the Clerk/Auditor's 2016 vote-by-mail procedures do not violate either the *Constitution* or the *VRA* and, therefore, can be used by the Clerk/Auditor in conducting  future elections.[7]

### **INTRODUCTION**

The San Juan County Defendants' *Motion* is based upon the fact that, despite Plaintiffs' assertions to the contrary, the San Juan Clerk/Auditor's election procedures satisfy the requirements of both the *VRA*, including its language assistance requirements under Section 203, and the *Fourteenth Amendment*.  Furthermore, Plaintiffs' *Complaint* is grounded solely upon election procedures used during the 2014 election cycle, which the County Clerk/Auditor modified for the 2016 and future election cycles specifically to improve voting convenience for Navajo voters, including providing election-day Navajo-language assistance.[8]  Simply stated,

---

[7] *Amended Counterclaim,* Dkt. 74, ¶¶ 126-135.

[8] Notwithstanding these 2016 changes, San Juan County Defendants maintain that the 2014 procedures complied fully with all applicable legal requirements, and specifically do not concede that the changes were required by either the *VRA* and/or the *Constitution*.  Furthermore,

Plaintiffs' *Complaint* does not address the voting procedures currently used in San Juan County elections but even if it did, San Juan County Defendants would still be entitled to summary judgment because the Clerk/Auditor's election procedures go far beyond what is required by either the *VRA* or the *Fourteenth Amendment*.

For example, the County's Navajo liaison, Edward Tapaha, is a member of the Navajo Nation.  Prior to each election Mr. Tapaha visits Navajo Chapter Houses to explain the vote-by-mail procedures, including the ballot.  He does so in Navajo.  Prior to elections, the Clerk/Auditor also issues press releases announcing the polling locations for in-person voting, which are published in the *San Juan Record* and the *Navajo Times.*  In addition, prior to elections the Clerk/Auditor has announcements in the Navajo language explaining the voting procedures and ballots, which air on the two Navajo language radio stations.

Also, in addition to mail-in ballots the San Juan Clerk/Auditor has four polling locations for in-person voting, three of which are on the Navajo Reservation and within an average 15-mile travel distance to the nearest polling location for Navajo voters as compared to an average of 20 miles for non-Indian voters.  The Clerk/Auditor likewise has an audio recording on the County's website prior to each election,  and at each polling location on election day identifying the candidates, their political affiliation and the offices for which they were seeking to be elected. On election day, the Clerk/Auditor also has interpreters at each of the four polling locations to assist those voters who were not proficient in reading English with help in voting, registering,

---

the Clerk/Auditor decision was made prior to the filing of this lawsuit and, more importantly, Plaintiffs have no evidence to the contrary.

etc.

## **BACKGROUND**

It can be fairly said that with respect to the election procedures that were used in San Juan County's 2016 election cycle and which the Clerk/Auditor intends to use for future election cycles, Plaintiffs are attempting fabricate a violation of the *VRA* and/or *Fourteenth Amendment*. Furthermore, this statement is not hyperbole on the part of the San Juan County Defendants. To the contrary, the fabrication is clearly shown by the "evidence" proffered by Plaintiffs.

For example, in support of their emergency *Motion for Preliminary Injunction*, Plaintiffs filed an August 3, 2016 *Declaration* from Mr. Terry Whitehat in which he stated that: "From my home [in Navajo Mountain] it takes me five hours to drive to Monticello one way."[9] That assertion was confusing because during the 2016 June County-wide primary election there was a polling location at Navajo Mountain for in-person voting, and that is where Mr. Whitehat voted during the 2016 county-wide primary. It was apparent to San Juan County Defendants that this assertion about the five hour drive to Monticello, Utah and failure to disclose that Mr. Whitehat had voted in-person at Navajo Mountain where he lived was intended to mislead the Court into thinking that there were not polling locations in San Juan County for in-person voting other than at Monticello, Utah. And Mr. Whitehat confirmed the fact of this deception during his September 27, 2016, deposition:

> Q.    I am going to show you what I've marked as Exhibit 4, which is a
> declaration you filed in this case. The back page has your signature.
> And you say in there, 'From my home, it takes me approximately

_____

[9] Dkt. 94-3, ¶ 3.

five hours to drive to Monticello one way,' in paragraph 2.

A.      Approximately.

*  *  *  *

Q.      And who prepared this declaration for you, Exhibit 4?  Did you type it your self?

A.      No.

Q.      Who typed it up for you?

A.      I believe one of the attorneys.

Q.      Okay.  What's the purpose of saying, in paragraph 2, 'From my home, it takes me approximately five hours to drive to Monticello one way'?

A.      Well, the county seat is up here, as opposed to central –or south.  The purpose of it is that it takes time, takes effort, it takes gas money, to travel up here just to cast a vote, if I'm not able to vote.[10]

*  *  *  *

Q.      Well, in the primary election last June, you had the option of voting by mail or in person at Navajo Mountain, correct?

A.      Yes.

Q.      And you obviously knew that, correct?

A.      Yes.[11]

*  *  *  *

Q.      But you testified that you voted in person in Navajo Mountain in June.

---

[10] Whitehat *Deposition*, Dkt.133-1, pp. 24-25.

[11] *Id.* p. 26.

7

A.      In June 2016, yes.[12]

Q.      You voted in person at Navajo Mountain?

A.      Yes, I had.

Q.      You had the option of voting by mail?

A.      Yes.[13]

                    *   *   *   *

**Q.      What was your understanding as to why you were filing this
          declaration?  I don't want to know what your counsel told you.  I
          just want to know why you thought it was being filed.**

**A.      I'm aware that we need to do the preliminary injunction.**[14]

                    *   *   *   *

Q.      In fact, you would almost get the inference that you drove all the way
        to Monticello, from paragraph 2, to vote, wouldn't you?

                    *   *   *   *

A.      No, I did not drive to Monticello to vote.

Q.      But why in the world would you put in that paragraph 2 in your
        declaration?

                    *   *   *   *

A.      Because I wanted to make clear that it is quite a drive if I'm going to
        cast a vote in Monticello, one direction, driving this way.

Q.      But how far did you have to drive to vote in Navajo Mountain?

---

[12] *Id.* p. 28.

[13] *Id.* p. 29.

[14] *Id.* p. 40 (emphasis added).

A.      To where?

Q.      The poll in Navajo Mountain where you voted at in 2016 in June.

A.      A mile and a half.[15]

                        *   *   *   *

Q.      **I believe you testified that the purpose, as your understanding, for this declaration, Exhibit 4, was submitted to the court in support of your and the other plaintiffs' motion for a preliminary injunction**.

A.      **Yes**.

Q.      **And my question to you is, its fair to say when you read paragraph 2, that paragraph is inserted in there to suggest to the court that you had to drive to Monticello–excuse me, Monticello to vote in person**- -

                **MR. MEJIA**: Objection, calls for–

Q.      Correct?

                **MR. MEJIA**: Objection, calls for speculation as to what your reading of that is.  You can answer.

A.      **The location in Monticello is what I've written, and yes**.[16]

That Plaintiffs are attempting to manufacture violations of the *VRA* and/or *Fourteenth Amendment* is shown, too, by the allegations contained in their *Complaint*.

        As noted above, Plaintiffs' *Complaint* focuses solely upon the election procedures used during the 2014 election cycle, which the County Clerk/Auditor modified for the 2016 and

---

[15] *Id.* p. 41.

[16] *Id.* pp. 42-43.(emphasis added).

future election cycles specifically to improve voting convenience for Navajo voters, including providing Navajo-language assistance on election day.  Yet, Plaintiffs choose to ignore those changes, including not amending their *Complaint* to assert challenge to the Clerk/Auditor's current election procedures and their reason for doing so is obvious: the election procedures employed by the Clerk/Auditor far exceed any requirements of the *VRA* and/or the *Fourteenth Amendment*.

**STATEMENT OF ELEMENTS AND UNDISPUTED FACTS**

**A.    Elements**

In order to prevail on their *VRA Claims*, Plaintiffs must show that San Juan Clerk/Auditor's *current* election procedures deny Navajo voters the ability to participate in elections on equal terms with non-Navajo voters, or that the San Juan Clerk/Auditor has failed to provide adequate Navajo-language assistance to voters with limited English proficiency.

In order to prevail on their *Fourteenth Amendment Claims*, Plaintiffs must show that San Juan Clerk/Auditor's *current* election procedures were adopted either with an intention to discriminate against Navajo voters, or that, as implemented by the Clerk/Auditor, the ability of Navajo residents to exercise their right to vote is unreasonably hindered as compared to non-Navajo residents.

**B.    Undisputed Facts**

Set out below are the undisputed facts entitling San Juan County Defendants to

summary judgment:[17]

    **I.**    <u>**Unique Characteristics of San Juan County**</u>:

    The following facts demonstrate that the demographic make-up of San Juan County and its geography present many challenges to the administration of county-wide elections:

    1.    According to the 2010 Census, the County's population was 14,746 people.[18] The 2010 Census also put the County's voting-age population (18 years old and over) at 9,729 or 65% of the total population.[19]

    2.    The voting-age population is almost equally split between Indian and non-Indian voters.  Depending upon how "Indian" is defined for the purpose of analyzing Census data, Indians comprise between 49.40% and 50.23% of the County's voting-age population.[20]

    3.    San Juan County is also immense.   It is one of the largest counties in the United States at approximately 8,103 square miles in size.[21]

---

[17]  Already in the record, is a "book marked" Appendix of Exhibits, Dkt. 109. With two exceptions, that Appendix of Exhibits will provide the evidentiary basis for the undisputed facts entitling San Juan County Defendants to summary judgment.  The two exceptions are the *Third Declaration of John Davd Nielson* (Dkt. 100-1) describing the voting procedures used during the June of  2016 primary election, and the *Declaration of John David Nielson Re: General Election* describing the voting procedures that were used in the November of 2016 general election and will be used for future election cycles.   For the Court's ease of reference, these *Declarations* are attached hereto as, respectively, Exhibits A and B.

[18]  *Brace Dec.*, Appendix of Exhibits, Dkt. 109, Exhibit 8, ¶ 10.

[19]  *Id.* at ¶ 36.

[20]  *Id.*

[21]  *Id.*

4.      Highway 191 is the only road in San Juan County that traverses the County from its northern boundary to its southern boundary.  From Spanish Valley, Utah on San Juan County's northern border to Monument Valley, Utah on the County's southern border is a distance of approximately 183 miles and, in good weather, it takes approximately 3 hours and 26 minutes to drive from Spanish Valley to Monument Valley.[22]

5.      Vast regions of the County are uninhabited and, according to Norman Johnson, the former San Juan County Clerk/Auditor, only about 25% of the County's registered voters have a physical address.  The remainder, both Indian and non-Indians a like, live in rural parts of the County and use a post office box for their address.[23]

**II.      2016 Primary Election Compliance with the Voting Rights Act:**

The following facts demonstrate that the Clerk/Auditor's voting procedures used during the 2016 June primary election did not make voting locations more accessible to non-Indian voters than to Navajo voters or otherwise deny them language assistance:

1.      Pursuant to Utah statute, the San Juan Clerk/Auditor implemented a vote-by-mail election process for the 2014 election cycle, for which ballots were sent by mail to all registered voters with instructions for completing the ballots and returning them by mail.[24]

2.      In addition to the obvious reduction in election administration costs associated

---

[22] *Laws Declaration*, Appendix of Exhibits, Dkt. 109, Exhibit 15, ¶¶ 20-22.

[23] *Norman Johnson Deposition*, Appendix of Exhibits, Dkt. 109, Exhibit 11, pp, 96-97; *Brace Declaration*, Appendix of Exhibits, Dkt. 109, Exhibit 8, ¶ 16.

[24] *Norman Johnson Deposition*, Appendix of Exhibits, Dkt. 109, Exhibit 11, pp. 67, 69, 71 and 79.

with the Clerk/Auditor having to establish and staff polling locations on election day, the purposes for the adoption of the vote-by-mail process also included: (1) encouraging greater voter participation in elections by making voting more convenient for all voters;[25] (2) solving the problem of many of the on-Reservation polling places being in Navajo Chapter Houses that were not ADA compliant;[26] and (3) reducing the problem that Navajo dialects caused in providing language assistance because, depending where one lived on the Navajo Reservation, people speak a different Navajo dialect whereas with vote-by-mail those persons not proficient in English have time to consult with "family members or trusted friends" who speak the same dialect to help them interpret the ballots.[27]

      3.      For the 2014 elections, the only polling location open on election day was at the San Juan County Clerk/Auditor's office at the county seat in Monticello.[28]

      4.      In developing the 2014 vote-by-mail procedures, the former County Clerk Auditor, Norman Johnson, worked with and received the tacit approval of the Navajo Election Administration.[29]

      5.      Following the 2014 election cycle, as a result of comments from voters about

---

[25] *See id.* at pp. 67-69.

[26] *Id.* at pp. 73-75.

[27] *Id.* at p. 75. Of course, the Clerk/Auditor still provided pre-election language assistance at Chapter Houses and senior centers through Mr. Tapaha, and on election day at the Monticello polling location. *Id.* at pp. 29 and 36-37.

[28] *Declaration of John David Nielson*, Appendix of Exhibits, Dkt. 109, Exhibit 3, ¶ 6.

[29] *First Tapaha Deposition*, Appendix of Exhibits, Dkt. 109, Exhibit 9, pp. 94-95.

the new vote-by-mail process, the County Clerk/Auditor determined in early 2016 before this suit was filed, that for the 2016 election cycle three additional polling locations all on the Navajo Reservation, would be open on election day for both the June 28, 2016 primary and the November 8, 2016 general elections, each of which would be staffed with at least one poll worker who could provide Navajo-language assistance to voters needing such assistance.[30]

6.     In January and February, 2016, and again in June, 2016, prior to the county-wide primary election, the County's Navajo liaison, Ed Tapaha, again repeatedly visited Navajo Chapter Houses to explain the vote-by mail procedures;[31] whereas Plaintiffs' *Complaint* was filed on February 25, 2016,[32] but San Juan County Defendants were not served until March 1, 2016.[33]

7.     The San Juan Clerk/Auditor issued press releases announcing the new polling locations for in-person voting, which were published in the *San Juan Record* and the *Navajo Times* on March 9, 2016.[34]  Those press releases, however, had been prepared by the San Juan

---

[30]  *Declaration of John David Nielson*, Appendix of Exhibits, Dkt. 109, Exhibit 1, ¶¶ 15 and 16.

[31]  *Second Tapaha Deposition*, Appendix of Exhibits, Dkt. 109, Exhibit 12, pp. 9, 24-25. Plaintiffs' *Complaint* was filed on February 25, 2016 (Dkt. 2), but San Juan County Defendants were not served until March 1, 2016 (Dkt. 26 through 30).

[32]  Dkt. 2.

[33]  *See* Dkt. 26 through 30.

[34]  *See First Nielson Declaration*, Appendix of Exhibits, Dkt. 109, Exhibit 1, ¶21.  *See also Navajo Times Article*, Appendix of Exhibits, Dkt. 109, Exhibit 14.

County Attorney approximately a week earlier.[35]

8.      During the 2016 primary election, the San Juan Clerk/Auditor had four polling locations for in-person voting, three of which were on the Navajo Reservation and within an average 15-mile travel distance to the nearest polling location for Navajo voters as compared to an average of 20 miles for non-Indian voters.[36]

9.      During the 2016 primary, the San Juan Clerk/Auditor had a Navajo-language audio recording on its county website, as well as at each polling location on election day, identifying the candidates, their political affiliation and the offices for which they were seeking to be elected.[37]

10.     During the 2016 primary election there were experienced Navajo interpreters, trained by Mr. Edward Tapaha, at each of the polling locations to assist those voters who were not proficient in reading English with help in voting, registering, etc.[38]

11.     Navajo is historically an unwritten language, although efforts have been made in recent decades to develop a written form of the language, which not all Navajo can read the written form of the language.[39]

---

[35] *See First Nielson Declaration*, Appendix of Exhibits, Dkt. 109, Exhibit 1, ¶ 21.

[36] *Third Nielson Declaration*, Exhibit A hereto, ¶¶ 8-10.

[37] *Third Declaration of John David Nielson*, Exhibit A hereto, ¶ 13.

[38] *Second Tapaha Deposition*, Appendix of Exhibits, Dkt. 109, Exhibit 12, pp. 12-13, 51-55 & 91-92.

[39] *Gorman Declaration*, ¶6, Dkt. 94-1.

12.      Younger Navajo are becoming increasingly less fluent and unable to speak Navajo.[40]

13.      For the 2016 county-wide primary election, which was held on Tuesday, June 28, 2016, there were three polling places open on election day, in addition to the County Clerk/Auditor's office in Monticello, to accommodate those voters who wish to cast their ballot in person.[41]

14.      The locations of the three additional polling locations, all of which were located on the Navajo Reservation, are as follows:

> Navajo Mountain Chapter House
> Navajo Route 16, mile marker 36.15
> Navajo Mountain, Utah
>
> Oljato Senior Center
> County Road 422, 15 miles north of
> Gouldings' Store Oljato, Utah
>
> Montezuma Creek Fire Station
> 15 South Texaco Road
> Montezuma Creek, Utah [42]

15.      These three locations were selected so as to ensure that no voter in the County is more than a one-hour drive away from an in-person voting location,[43] and that fact is confirmed

---

[40] *First Tapaha Deposition*, Appendix of Exhibits, Dkt. 109, Exhibit 9, pp. 37-38.

[41] *Third Nielson Declaration*, Exhibit A hereto, ¶ 7.

[42] *Id.* at ¶ 8.

[43] *Id.* at ¶ 9.

by the *Declaration* of Plaintiffs' "time and travel" expert, Gerald R. Webster.[44]

16.     Buried deep within Webster's 53-page report is his assessment of the Navajo and non-Indian travel times with respect to the four polling locations used in the recent 2016 county-wide primary election.[45]

17.      Webster says that Navajo voters had a mean travel distance to the nearest poll in order to vote in-person of only 15.24 miles while the mean distance to the nearest polling location for non-Indians voters was 20.39 miles.[46]  Thus, even Plaintiffs' expert says that Navajo voters have less distance to travel in order to vote in person than do non-Indian voters.

18.     Also buried deep within Webster's 53-page report is his assessment of the mean travel distances to the nearest post office for Navajo voters and non-Indian voters who opt to vote by mail.[47]

19.     Webster says that Navajo voters live within 14.27 miles of the nearest post office whereas the distance for non-Indian voters is 4.30 miles.[48]  Neither the County nor the Clerk/Auditor  have no control over where Navajo voters choose to live or where the federal government locates Post Offices.  But even if Navajo voters on average have to travel 10 miles farther than non-Navajo voters to receive and return their mail-in ballots, that does not violate the

---

[44] *Id.*

[45] Dkt. 94-2, p. 51.

[46] *Id.*

[47] *See id.*

[48] *Id.*

*VRA*, especially given the one-month window for voting by mail and the fact that undoubtedly most Navajo voters go to the Post Office more than once a month to get their mail.

20.     For the 2016 county-wide primary election, a San Juan County election official able to provide Navajo-language voting assistance was available at each of the four polling locations.[49]

21.     Those persons providing language assistance during the 2016 county-wide primary election were Ella Greyeyes and Maryetta Stevens at the Navajo Mountain polling location; Ed Tapaha at the Montezuma Creek polling location; Edyth Tahe at the Oljato polling location; and Fermina Keith at the Monticello polling location.[50]

22.     In addition, for the 2016 county-wide primary election, the San Juan Clerk/Auditor had a link on the election page of its website by which voters could access a Navajo-language audio translation of the ballot itself, and that audio was also available at each of the four in-person voting locations.[51]

23.     The County's website likewise identifies Ed Tapaha as the County's Navajo Liaison/Elections Coordinator and gives his telephone number and extension.[52]

24.     Furthermore, as in prior election years, before the 2016 county-wide primary election the San Juan Clerk/Auditor had Edward Tapaha attend meetings of each of the Navajo

---

[49]  *Third Nielson Declaration*, Exhibit A hereto, ¶ 11.

[50]  *Id.* at ¶ 12.

[51]  *Id.* at ¶ 13.

[52]  *Id.*

Chapters to explain in the Navajo language the voting system and answer any questions about the election process.[53]

25.     The foregoing procedures, which were in place for the 2016 county-wide primary election,[54] are fully compliant with the requirements of the *VRA*.

26.     The language assistance, as well as the overall voting information-registration assistance, including three on-reservation polling locations, that the San Juan Clerk/Auditor provides to Navajo voters is not available to non-Indian voters.[55]

27.     The election records maintained by the San Juan County Clerk/Auditor's Office show that the 2014 election in which vote-by-mail was implemented resulted in a substantial increase in voter turn out as a result of allowing voters the option of voting by mail, especially among Navajo voters.[56]

28.     In fact, during the 2014 primary election the number of Navajo voting more than doubled compared to previous elections without the vote-by-mail option.[57]

29.     The election records maintained by the San Juan County Clerk/Auditor's Office, for example, show that during the 2014 primary election voter participation in precincts with a heavy concentration of Navajo voters went from 25% during the 2012 election using only in-

---

[53] *Id.* at ¶ 14.

[54] *Id.*

[55] *Francom Declaration*, Appendix of Exhibits, Dkt. 109, Exhibit 16, ¶¶ 5-6.

[56] *First Nielson Declaration,* Appendix of Exhibits, Dkt. 109, Exhibit 1, ¶ 29.

[57] *Id.* at ¶ 30.

person voting at polls to almost 54% with vote-by-mail in 2014.[58]

30.     This significant increase in voter participation occurred despite the fact that the 2014 primary election was not a national election which tends to produce a higher number of voters.[59]

31.     The increased voter participation among Navajo voters was undoubtedly attributable in part to the fact that the mail-in-ballot process allows voters who work away from their homes on the Navajo Reservation, or who are away at college or in the military, to participate in elections without having to appear at a polling place or apply in advance for an absentee ballot.[60]

32.     The increased voter participation among Navajo voters was also undoubtedly attributable to the fact that the mail-in-ballot process allows elderly voters who have no means of transportation to a polling location to vote from their homes by use of the mail-in-ballot.[61]

33.      There are benefits to a vote-by-mail system over an in-person voting system, including, among others: (a) providing voters the opportunity to consider their election decisions over a longer period of time; (b) accommodating the needs of voters who regularly work outside of the immediate area of their residence, are at school or in the military, without their having to apply personally for an absentee ballot which may be particularly of benefit to a significant

---

[58] *Id.* at ¶ 31.

[59] *Id.* at ¶ 32.

[60] *Id.* at ¶ 33.

[61] *Id.* at ¶ 34.

number of Navajo voters who work away from their homes due to the limited availability of jobs

in San Juan County; (c) allowing voters to make their ballot decisions away from candidates'

campaign efforts in close proximity to polling places; and (d) allowing limited-English

proficiency voters to seek assistance from family members or other trusted acquaintances whom

they choose rather than relying on interpreters provided by the Clerk/Auditor.[62]

34.     The large turnout of Navajo voters for the 2014 primary election resulted in the

election of Rebecca Benally over Kenneth Maryboy and Manuel Morgan for the office of County

Commissioner from District Three.[63]

35.     Prior to vote-by-mail, Plaintiff Mark Maryboy, his brother Kenneth Maryboy and

Manual Morgan had always held the Commission seat from District Three.[64]

**III.     2016 General and Future  Election Compliance with the VRA and Equal Protection**:

The following facts demonstrate that the Clerk/Auditor's voting procedures used during

the November 8, 2016 general election did not make voting locations more accessible to non-

Indian voters than to Navajo voters or otherwise deny Navajo voters language assistance and,

more importantly,  that these same procedures will be used to conduct future county-wide

elections.

1.     With respect to the November 8, 2016 general election, an advertisement was

---

[62]  *Id.* at ¶ 35.

[63]  *See First Nielson Declaration*, Appendix of Exhibits, Dkt. 109, Exhibit 1, ¶41.

[64]  *See id.* ¶¶ 38-41.

placed in the two local papers, the *San Juan Record* and the *Navajo Times*, and ran once a week for one month prior to the general election.[65]

2.      That ad provided election information to voters, such as: date of the general election; what to do if the voter does not receive a ballot in the mail; the location of polls for in-person voting and hours of operation on election day; the ability to register to vote on election day; the availability of interpreters at each polling location; and where voters could go to listen to this same information and a description of the ballot in the Navajo language.[66]

3.      That same ad was also translated into Navajo, including a description of the ballot, and was aired twice a week on the two local Navajo language radio stations, *KTNN* and *KNDN*, for a month prior to the general election.[67]

4.      Furthermore, the Clerk/Auditor established a toll-free telephone number containing the same election information and a description of the ballot, all in the Navajo language, that voters could call:1-888-693-6209.[68]

5.      The County's website likewise contained the same election information and description of the ballot in the Navajo language: www.sanjuancounty.org.[69]

6.      An audio description of the ballot in the Navajo language was delivered to each of

---

[65] *Nielson Declaration*, Exhibit B hereto, ¶ 6.

[66] *Id.* at ¶ 7.

[67] *Id.* at ¶ 8.

[68] *Id.* at ¶ 9.

[69] *Id.* at ¶ 10.

the Navajo Chapter Houses prior to the general election.[70]

7.      As noted in the ad, San Juan County's Election Liaison, Mr. Ed Tapaha, visited Chapter Houses and Senior Centers prior to the general election to answer questions, register voters and explain voting procedures.[71]

8.      For the November 8, 2016 general election, there were, in addition to the County Clerk/Auditor's office in Monticello, the same three additional polling places use in the June primary election open on election day to accommodate those voters who wished to cast their ballot in person.[72]

9.      The locations of the three additional on-reservation polling locations were:

> Navajo Mountain Chapter House
> Navajo Route 16, mile marker 36.15
> Navajo Mountain, Utah
>
> Oljato Senior Center
> County Road 422, 15 miles north of Gouldings' Store
> Oljato, Utah
>
> Montezuma Creek Fire Station
> 15 South Texaco Road
> Montezuma Creek, Utah [73]

10.      As previously explained, these three locations were selected so as to ensure that

---

[70] *Id.* at ¶ 11.

[71] *Id.* at ¶ 12.

[72] *Id.* at ¶ 13.

[73] *Id.* at ¶ 14.

no voter in the County was more than a one-hour drive away from an in-person voting location.[74]

11.     On November 8, 2016, the date of the general election, there were election officials able to provide Navajo-language voting assistance available at each of the polling locations.[75]

12.     On November 8, 2016, the date of the general election, there were election officials present at each of the polling locations to register voters, and to accept mail-in-ballots from those persons who, for whatever reasons, wished to hand-deliver their ballot.[76]

13.     It is the Clerk/Auditor's intention to employ the same basic election procedures described herein above (*i.e.*, radio ads, newspaper ads, audiotapes, three polling locations within the Navajo Reservation for in-person voting, interpreters, etc.) for future county-wide elections.[77]

14.     The Clerk/Auditor, however, is constantly working to improve the vote-by-mail procedures based upon what he learns from each election, and will continued to do so.[78]

15.     Consequently, two changes in election procedures for future elections that the Clerk/Auditor is presently considering are: (a) asking the Navajo Election Administration to review and comment upon the Clerk/Auditor's Navajo language election audiotapes prior to their distribution, and (b) for those years when the Navajo Nation's election day falls on the same day

---

[74] *Id.* at ¶ 15.

[75] *Id.* at ¶ 16.

[76] *Id.* at ¶ 17.

[77] *Id.* at ¶ 20.

[78] *Id.* at ¶ 21.

as a federal, state or other county-wide election, to attempt to work out an arrangement with the Navajo Election Administration whereby the County and Navajo Nation use the same poll locations in Navajo Mountain, Oljato and Montezuma Creek.[79]

16.     Of course, these changes in election procedures that the Clerk/Auditor is currently considering will require the agreement and cooperation of the Navajo Election Administration.[80]

17.     The next county-wide election will perhaps take place in the June 2018, and that will be the primary election.  If there is not a primary election, then the next county-wide election will be in November of 2018.[81]

18.     Meanwhile the County's Navajo liaison, Mr. Ed. Tapaha, will be retiring in August of 2017.  However, it is both the County's and Clerk/Auditor's intention to continue that position.[82]

IV.     **DOJ Tacit Approval of County Election Procedures**:

The following facts demonstrate that the U.S. Department of Justice ("DOJ") tacitly found that the election procedures used in SanJuan County elections comply with the *VRA*, including the language assistance requirements of Section 203, 52 U.S.C. §10503, as well as the *Equal Protection Clause*, having monitored County elections for over 30 years, and specifically having investigated and monitored the 2014 and 2016 elections, respectively, at the request of

---

[79]  *Id.* at ¶ 22.

[80]  *Id.* at ¶ 23.

[81]  *Id.* at ¶ 24.

[82]  *Id.* at ¶ 25.

Plaintiff, Navajo Human Rights Commission:

1.      In 1983, the DOJ sued San Juan County to enforce the requirements of §10503.[83]
That suit resulted in a *Consent Decree* whereby DOJ representatives were present during an
election cycle to monitor the Clerk/Auditor's Navajo voter's language assistance program.

2.      That monitoring continued until 2002.[84]  According to Norman Johnson, who was
the County Clerk/Auditor during most of this monitoring period, the DOJ did not require the
Clerk/Auditor to translate ballots into the Navajo language, "but we had to have judges that were
bilingual enough to present the [ballot] information to the voter if they asked."[85]  Throughout the
period of this monitoring for compliance with the language assistance requirements of §10503,
the DOJ never informed San Juan County that it had violated that law.[86]

3.      In early October of 2015, San Juan County Attorney, Kendall G. Laws, received a
telephone call from Victor Williamson of the United States Department of Justice.  Mr.
Williamson informed Mr. Laws that he was with the DOJ's Voting Rights Section.[87]

4.      At the request of and on the behalf of the Navajo Human Rights Commission, Mr.

---

[83]  *See Complaint*, Dkt. 1, *United States v. San Juan County*, District of Utah Case No.
2:83CV1287; *Norman Johnson Deposition*, Appendix of Exhibits, Dkt. 109, Exhibit 11, pp. 26-29.

[84]  *See id. Order*, Dkt.17; *Norman Johnson Deposition*, Appendix of Exhibits, Dkt. 109,
Exhibit 11, p. 27.

[85]  *Norman Johnson Deposition*, Appendix of Exhibits, Dkt. 109, Exhibit 11, p. 26.

[86]  *See id*., pp.27-28.

[87]  *Laws Declaration*, Appendix of Exhibits, Dkt. 109, Exhibit 15, ¶ 5.

Williamson wanted to come to San Juan County and meet with County Officials regarding the vote-by-mail procedures that the Clerk/Auditor had implemented for the 2014 election cycle.[88]

5.      On October 29, 2015, Mr. Laws, John David Nielson, James Francom, Ed Tapaha and Norman Johnson met with Mr. Williamson and his DOJ staff to review the Clerk/Auditor's 2014 election procedures.[89]

6.      John David Nielson is the County Clerk/Auditor, James Francom is the Deputy Clerk/Auditor, Ed Tapaha is the County's liaison with the Navajo Nation, and Norman Johnson is the former Clerk/Auditor.[90]

7.      During that meeting, Mr. Laws learned from Mr. Williamson that he and his staff had earlier met with members of the Navajo Human Rights Commission.[91]

8.      From his conversation with Mr. Williamson and his staff following that meeting with the County officials, both Mr. Laws and Mr. Nielson came to understand that the DOJ did not consider the Clerk/Auditor's vote-by-mail system as implemented for the 2014 elections (and the 2015 municipal elections) to be contrary to law or otherwise failed to meet the

---

[88]   See id. at ¶6; *First Nielson Declaration*, Appendix of Exhibits, Dkt. 109, Exhibit 1, ¶ 17; *DOJ Flyer*, Appendix of Exhibits, Dkt. 109, Exhibit 2.

[89]   *Laws Declaration*, Appendix of Exhibits, Dkt. 109, Exhibit 15, ¶ 7; *First Nielson Declaration*, Appendix of Exhibits, Dkt. 109, Exhibit 1, ¶ 16.

[90]   *Laws Declaration*, Appendix of Exhibits, Dkt. 109, Exhibit 15, ¶ 8.

[91]   *Id.* at ¶ 9.

Clerk/Auditor's obligation to provide bilingual voting assistance to Navajo voters.[92]

9.      Mr. Williamson, however, did inform Mr. Laws that the DOJ would continue watching the way in which the mail-in-voting system affected County residents and particularly its Navajo citizens.[93]

10.      As a consequence of that meeting, the San Juan Clerk/Auditor began to consider making changes to improve the vote-by-mail system to better serve Navajo voters by adding three in-person polling locations on the Navajo Reservation as well as language assistance to Navajo voters.[94]

11.      The final decision as to the locations of the three additional polling places was made on or before February 16, 2016.[95]

12.      Mr. Laws next heard from Mr. Williams when he called Mr. Laws shortly before the June 28, 2016 county-wide primary election.  During that conversation, Mr. Williamson told Mr. Laws that, again at the request of and on behalf of the Navajo Human Rights Commission, the DOJ had been asked to review the changes that the Clerk/Auditor had made to its 2014 vote-by-mail procedures.[96]

---

[92] *Id.* at ¶ 10;  *First Nielson Declaration*, Appendix of Exhibits, Dkt. 109, Exhibit 1, ¶¶ 16 and 18.

[93] *Laws Declaration*, Appendix of Exhibits, Dkt. 109, Exhibit 15, ¶ 11.

[94] *Id.* at ¶ 12.

[95]  *Id.* at ¶ 13.

[96] *Id.* at ¶ 4.

13.     Thereafter, several investigators from the DOJ came to San Juan County to review the new vote-by-mail procedures.  Mr. Laws along with John David Nielson and Kelly Pehrson, San Juan County's Chief Administrative Officer, met with the DOJ investigators on Monday, June 27, 2016, the day before the primary election.[97]

14.     During that meeting, Mr. Laws and the other County representatives explained to the DOJ investigators the procedures that were being used for that primary, including three new on-reservation polling locations and the language assistance that was to be provided at those locations.[98]

15.     Mr. Laws and the other County officials also explained to the DOJ investigators that the County was constantly working to improve its vote-by-mail procedures based upon what it had learned from each election, and would continued to do so.[99]

16.     The DOJ investigators said that they were comfortable with that approach, and also made it clear to Mr. Laws that if they determined that any changes in the vote-by-mail procedures were in violation of the law, they would let the County know.[100]

17.     The County has not received any notification from the DOJ that its vote-by-mail election procedures do not fully comply with the *VRA*.[101]

---

[97] *Id.* at ¶ 15.

[98] *Id.* at ¶ 16.

[99] *Id.* at ¶ 16.

[100]  *Id.* at ¶ 17.

[101]  *Id.* at ¶ 18.

18.     On election day, November 8, 2016, Mr. Williamson and members of his staff were present at the Navajo Mountain, Oljato and Montezuma Creek polling locations to observe the Clerk/Auditor's voting procedures during the general election.[102]

19.     As was the case with respect to the DOJ's October, 2015, visit to San Juan County to review the 2014 election procedures and the DOJ's monitoring of the 2016 primary election, neither Mr. Williamson, nor any of the DOJ election-day observers, has notified the County, either on the day of the election or subsequent thereto, that the Clerk/Auditor's election procedures, including the provision of language assistance to Navajo voters, did not comply with the requirements of the *VRA* and/or the *Equal Protection Clause*.[103]

### ARGUMENT: SAN JUAN COUNTY'S ELECTION PROCEDURES DO NOT DENY NAVAJO RESIDENTS THE ABILITY TO PARTICIPATE IN ELECTIONS ON EQUAL TERMS WITH NON-INDIAN VOTERS

Plaintiffs cannot succeed on their Section 2 claims.  Section 2 of the *VRA* prohibits voting practices or procedures that discriminate against individual voters on the basis of race, color, or membership in a language minority group.[104]  Section 2 is not an affirmative action plan; it requires equal opportunity for all voters, not an unequal opportunity for some voters.[105]  The ultimate goal of Section 2 is "equality of opportunity, not a guarantee of electoral success for

---

[102]  *Nielson Declaration*, Exhibit B hereto, ¶ 18.

[103]  *Id.* at ¶ 19.

[104]  *League of United Latin American Citizens v. Perry*, 548 U.S. 399, 437 (2006).

[105]  See 52 U.S.C. § 10301 ("That nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population.")

minority-preferred candidates of whatever race."[106]  With respect to Section 2, Plaintiffs

essentially claim that this law has been violated because "[t]he closure of the polling places

within or accessible to the Navajo Nation Reservation together with the adoption of mail-only

voting unreasonably hindered the ability of Navajo citizens . . . to participate effectively in the

political process on equal terms with white voters."[107]  Here, the focus of the Court's analysis

should be on whether, based on the totality of the circumstances, the Clerk/Auditor's vote-by-

mail procedures as currently implemented result in Navajo voters having "less opportunity" to

participate in the political process,[108] and they clearly do not.

The United States Supreme Court has repeatedly stated that "voting is of the most

fundamental significance under our constitutional structure."[109]  The Court has further

recognized, however, that "[i]t does not follow . . . that the right to vote in any manner . . . [is]

---

[106] *Johnson v. DeGrandy*, 512 U.S. 997, 1014 n.11 (1994).

[107] *Complaint*, Dkt. 2.

[108] *See* 52 U.S.C. § 10301(b) ("A violation of [Section 2] is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by [Section 2] in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice. The extent to which members of a protected class have been elected to office in the State or political subdivision is one circumstance which may be considered: *Provided*, That nothing in this section establishes a right to have members of a protected class elected in numbers equal to their proportion in the population."). *See also, e.g., Turner v. State of Arkansas,* 784 F .Supp. 553, 573 (E.D. Ark. 1991).

[109] *Burdick v. Takushi*, 504 U.S. 428, 433 (1992) (quoting *Illinois Board of Elections v. Socialist Workers Party,* 440 U.S. 173, 184 (1979)).

absolute."[110] "Election law will invariably impose some burden upon individual voters,"[111] but this burden does not mean that the election law violates Section 2.[112]

Section 2 "encompasses two types of claims: a 'vote-dilution' claim, which alleges that a districting practice denies minorities an equal opportunity 'to elect representatives of their choice,' and a 'vote-denial' claim, which alleges the denial of opportunity to 'participate in the political process.'"[113]  Plaintiffs allege that the "County's use of mail-only elections creates burdens to voting that bear substantially more heavily on Navajo voters than upon white voters."[114]  Hence, their right to vote allegedly has been denied or abridged by the Clerk/Auditor's vote-by-mail procedures.  Courts have analyzed a vote-denial claim with a two-step test.[115]  The first element of a Section 2 vote-denial claim "requires proof that the challenged standard or practice causally contributes to the alleged discriminatory impact by affording protected group members less opportunity to participate in the political process."[116]  However, it

---

[110] *Id.*

[111] *Id.*

[112] *Ohio Democratic Party v. Husted*, No. 16-3561, 2016 WL 4437605, at *7 (6th Cir. Aug. 23, 2016).  The Sixth Circuit further held that the "Equal Protection Clause . . . simply cannot be reasonably understood as demanding recognition and accommodation of such variable personal preferences, even if the preferences are shown to be shared in higher numbers by members of certain identifiable segments of the voting public." *Id.*

[113] *Id.*

[114] *Complaint*, Dkt. 2, ¶ 78.

[115] *Ohio Democratic Party,* No. 16-3561, 2016 WL 4437605, at *13.

[116] *Id.* ("The first step essentially reiterates Section 2's textual requirement that a voting standard or practice, to be actionable, must result in an adverse disparate impact on protected

is only after this first element is met should that the Court analyze the "Senate Factors," as discussed in *Thornburg v. Gingles*.[117]   In this second step, the Court analyzes whether "a disparate impact in the opportunity to vote is shown to result not only from operation of the law, but from the interaction of the law *and* social and historical conditions that have produced discrimination."[118]

Plaintiffs cannot meet the first step of the two-part test.  They have no evidence  that the Clerk/Auditor's vote-by-mail procedures at issue or the voting procedures as a whole afforded them less opportunity to participate in the political process.  Furthermore, without proof of a discriminatory impact, and there is no such proof in this case, Plaintiffs cannot invoke the "Senate Factors."  But even if they could, they cannot successfully argue that the Clerk/Auditor's voting procedures "interacts with social and historical conditions . . . causing racial inequality in the opportunity to vote."[119]  The Clerk/Auditor has established three new polling locations, all on the Navajo Nation Reservation and, as a consequence, Navajo voters only have a 15-mile mean travel distance to the nearest polling location compared to 20 miles for non-Indian voters.  This Court has already noted that Plaintiffs have "failed to establish as cognizable disparate impact as

---

class members' opportunity to participate in the political process. But this formulation cannot be construed as suggesting that the existence of a disparate impact, in and of itself, is sufficient to establish the sort of injury that is cognizable and remediable under Section 2. We know this is true because 'a showing of disproportionate racial impact alone does not establish a per se violation" of Section 2.'").

[117]  478 U.S. 30 (1986).

[118] *Ohio Democratic Party,* No. 16-3561, 2016 WL 4437605, at *13.

[119] *Id.*

Section 2 requires" in light of the San Juan Clerk/Auditor's use of four in-person polling locations.[120]

## ARGUMENT: SAN JUAN COUNTY'S LANGUAGE ASSISTANCE FOR NAVAJO VOTERS WITH LIMITED ENGLISH PROFICIENCY SATISFIES THE VOTING RIGHTS ACT'S LANGUAGE ASSISTANCE REQUIREMENTS

The San Juan County Clerk/Auditor's current voting procedures satisfy Section 203's minority language requirement.  Section 203 states that "[w]henever any State or political subdivision . . . provides any registration or voting notices, forms, instructions, assistance, or other materials or information relating to the election process, including ballots, it shall provide them in the language of the applicable minority group as well as in the English language." Because Navajo "is historically unwritten, the [Clerk/Auditor] is only required to furnish oral instructions, assistance, or other information relating to registration and voting."[121]

The San Juan Clerk/Auditor has provided oral instructions, assistance, and other information relating to registration and voting in the Navajo language.  In addition to assistance at the polling locations, the Clerk/Auditor has included a Navajo reading of the ballots on its website, and sent Edward Tapaha, the County's Navajo Liaison and Elections Coordinator, to speak to the Navajo community.  These resources were available for the June of 2016 primary election as well as for  the November 8, 2016 general election, and they will be used for future elections.  More importantly, these procedures have already been repeatedly scrutinized by the

---

[120] *Memorandum Decision and Order*, Dkt. 129, p. 15 fn. 4 (also applying the same conclusion to Plaintiffs' failure to link assertions of socioeconomic burdens to creating a voting access disadvantage in comparison to non-Navajo voters).

[121] 52 U.S.C.§ 10503.

DOJ and tacitly approved.  Thus, the questions before the Court are: (1) Whether the Clerk/Auditor's pre-election publicity efforts for the 2016 and future election cycles were effective in informing Navajo voters of "voting connected activities"; and (2) Whether the language assistance provided to Navajo voters by the Clerk/Auditor was effective.[122]  In light of the undisputed facts in this case, the answer to both questions is "Yes."

Indeed, this Court, after extensively reviewing the San Juan Clerk/Auditor's language assistance procedures employed in the 2016 primary election, determined that Plaintiffs failed to adduce any evidence that the procedures were ineffective, and that alternatives proposed by Plaintiffs offered less consistency and accuracy than those used by the Clerk/Auditor.[123] The San Juan Clerk/Auditor used the same procedures for the 2016 general election and has indicated that it will continue to provide the same assistance in the future.  As such, San Juan County Defendants are  entitled to summary judgment on Plaintiffs' claims under the *VRA* Section 203's language-assistance requirements.

## ARGUMENT: SAN JUAN COUNTY'S VOTING PROCEDURES DO NOT VIOLATE THE EQUAL PROTECTION CLAUSE

As most recently articulated by the Tenth Circuit Court of Appeals in the context of the right to vote, the Equal Protection Clause of the Fourteenth Amendment ensures that "citizens enjoy 'a constitutionally protected right to participate in elections on an equal basis with other

---

[122] *Memorandum Decision and Order*, Dkt. 129, pp. 29-30.

[123] *Id.*, pp. 34-36 (explicitly noting that Plaintiffs had failed to show that the procedures "had any specific detrimental effect on the ability of Navajo voters 'to be effectively informed of and participate effectively in voting-related activities'" (quoting 28 C.F.R. § 55.2(b)(1)).

citizens in the jurisdiction.'"[124] The Tenth Circuit has also held that "restrictions that are generally applicable, even-handed, politically neutral, and which protect the reliability and integrity of the election process are generally not considered severe restrictions and are upheld."[125]

Despite the fact that the San Juan Clerk/Auditor's voting procedures are generally applicable to all voters, Plaintiffs assert that those procedures, including the use of mail-in ballots and a limited number of in-person polling places, discriminates against Navajo residents.[126] As such, if Plaintiffs had alleged facts or present evidence sufficient to show that the procedures in fact impose a greater burden on Navajo residents ability to vote, the procedures would be subject to the strict scrutiny standard, for which the Clerk/Auditor would be required to demonstrate a compelling interest to justify the different burden, and whether the means chosen are narrowly tailored to advance that interest.[127]

However, the allegations/evidence purporting to support this claim are that (1) Navajo voters are, on average, would be required to travel farther to vote in-person than non-Navajo

---

[124] *Citizen Center v. Gessler*, 770 F.3d 900, 918 (10th Cir. 2014)(quoting *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972).

[125] *The ACLU of New Mexico v. Santillanos*, 546 F.3d 1313, 1322 (10th Cir. 2008)(quoting *Gonzales v. Arizona*, 485 F.3d 1041, 1049 (9th Cir. 2007)(internal quotation marks omitted).

[126] *Complaint*, Dkt. 2, ¶¶ 2 & 85.

[127] *See generally Riddle v. Hickenlooper*, 742 F.3d 922, 927-928 (10th Cir. 2014) (discussing the level of scrutiny in cases involving candidate access to the ballot under a First Amendment analysis).

voters;[128] (2) disadvantaged socioeconomic conditions of Navajo voters increase the burden of travel;[129] (3) the U.S. Mail service is unreliable on the reservation;[130] and (4) certain individual Plaintiffs prefer to vote in-person without having to travel to Monticello and the Navajo Nation opposed the vote-by-mail system.[131]   But, as discussed above, the Plaintiffs' own expert established that showed that first allegation is contrary to the facts, and that under the 2016 procedures Navajo voters, on average, would have to travel less far to vote in person than non-Navajos,[132] which also eviscerates the second alleged burden.  As to the third alleged burden, Plaintiffs have adduced no evidence that supports the implication that U.S. Mail service is any less reliable on the Navajo Reservation than it may be in other rural and remote parts of the County which have predominantly non-Navajo residents.  Finally, personal preferences of

---

[128] *Complaint*, Dkt. 2, at ¶¶ 7 & 28-32.

[129] *Id.* at ¶7. While Plaintiffs make allegation that there is a history of discrimination against Navajos in San Juan County, *id.* at ¶¶ 7 & 67-69, they have not, and cannot, establish any basis for linking San Juan County's election procedures to this alleged prior discrimination, or that the Clerk/Auditor intentionally sought to discriminate against Navajo residents through its election administration procedures.  The San Juan Clerk/Auditor adopted its vote-by-mail procedures and in the interest of *facilitating* voting by all County residents, including Navajos who may live in particularly remote areas of the County. Moreover, by implementing new procedures for the 2016 election cycle to open additional in-person polling places and only on the Navajo Reservation, the Clerk/Auditor sought to provide *greater* accommodation to Navajo voters than is provided to non-Navajo voters.

[130] *Id*. at ¶¶ 6 & 48-56.

[131] *Id*. at ¶¶ 14-20 & 57-65.

[132] The problem with Plaintiffs' allegations stems, in part, from the fact that their *Complaint* was drawn on the assumption that the 2014 election procedures would remain in effect in 2016, even though that San Juan Clerk/Auditor had already determined to revise the procedures to provide easier voting access for Navajos living on the reservation.

individual voters do not require governments to establish or maintain procedures that conform to those preferences.[133] As such, Plaintiffs' claims related to racial discrimination under the *Equal Protection Clause* fail for the same reasons that their claims under the *VRA* fail, and San Juan County Defendants are  entitled to summary judgment with respect to such claims.

To the extent that Plaintiffs' allegations may be read to assert a claim that the San Juan County Clerk/Auditor's current election procedures violate the *Equal Protection* interests of all voters who live in rural areas or prefer to vote in-person rather than by mail because the procedures are different from those used in the past, such a claim also fails.  The Tenth Circuit has held that "the appropriate test when addressing an Equal Protection challenge to a law affecting a person's right to vote is to 'weigh the asserted injury to the right to vote against the precise interests put forward by the State as justification for the burden imposed by its rule.'"[134] Further, unless a statute or other governmental procedure **jeopardizes** the exercise of a fundamental right or categorizes on the basis of a suspect classification (such as race), the statute

---

[133]  *Ohio Democratic Party v. Husted*, No. 16-3561, 2016 WL 4437605, at *7 (6th Cir. Aug. 23, 2016).  *See generally Griffin v. Roupas*, 385 F.3d 1128, 1130 (7th Cir. 2004), *cert. denied*, 544 U.S. 923 (2005), in which Judge Posner wrote:

> Because [the Constitution, art. I, §4, cl. 1, confers broad authority to regulate the conduct of elections] and because balancing the competing interests involved in the regulation of elections is difficult . . . state legislatures may without transgressing the Constitution impose extensive restrictions on voting.  Any such restriction is going to exclude, either de jure or de facto, some people from voting; the constitutional question is whether the restriction and resulting exclusion are reasonable given the interest the restriction serves.

[134]  *The ACLU of New Mexico*, *supra*, 546 F.3d at 1320 (quoting *Crawford v. Marion County Election Bd.*, 533 U.S. 181, 190 (2008)).

or procedure is "presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a state purpose.[135]

## ARGUMENT: AS A MATTER OF LAW PLAINTIFFS ARE NOT ENTITLED TO THE INJUNCTIVE RELIEF THAT THEY ARE SEEKING

In their *Complaint*, Plaintiffs attack the vote-by-mail procedures used by the Clerk/Auditor for the 2014 election cycle alleging that "in 2014, San Juan County closed all polling places and switched to a mail-only voting system.  The only way for a voter either to vote in person on Election Day or to vote by absentee ballot was, and currently is, to go to the County Clerk's office in Monticello."[136]  But none of the allegations in Plaintiffs' *Complaint* are true or even relevant since they are focused upon the 2014 procedures and not those currently in use by the Clerk/Auditor.  For the Clerk/Auditor's alleged violations of the *VRA*, Plaintiffs are asking the Court to order San Juan County Defendants: (1) to reopen polling sites equally accessible to

---

[135] *See id.*, at 1319 (quoting *Coalition for Equal Rights, Inc. v. Ritter*, 517 F.3d 1195, 1199 (10th Cir. 2008)(internal quotations omitted); *see also Griffin v. Roupas*, 385 F.3d 1128, 1131, 1132  (7th Cir. 2004), *cert. denied*, 544 U.S. 923 (2005)(noting that the balancing of conflicting interests in establishing election procedures is "quintessentially a legislative judgment with which . . . judges should not interfere unless strongly convinced that the legislative judgment is grossly awry" and that "unavoidable inequalities in treatment, even if intended in the sense of being known to follow ineluctably from a deliberate policy do not violate equal protection").  Significantly, the *Griffin* case involved a challenge by "working mothers" to restrictions on what voters could use absentee (or mail-in) ballots.  Judge Posner's opinion expressly notes the advocacy for all-absentee mail-in ballot election procedures, differing approaches among the states, including the adoption of an all-mail system by Oregon which was upheld by the Ninth Circuit against a challenge under federal legislation regulating federal elections.  385 F.3d at 1130-32 (citing *Voting Integrity Project, Inc. v. Keisling*, 259 F.3d 1169 (9th Cir. 2001), upholding Oregon's mail-only voting system).

[136] *Complaint*, Dkt. 2, p. 10.  Plaintiffs choose to ignore the fact that the Clerk/Auditor's mail-in-ballot is an absentee ballot.  *Francom Deposition*, Appendix of Exhibit 13, p. 14.

Navajo voters as to non-Indian voters, which was done; and (2) to fully comply with the *VRA* by providing language assistance to Navajo voters, which also was done.[137]

Plaintiffs are also asking that the Court order San Juan County Defendants to "provide audio translations in Navajo of the voter services website, the voter registration form, the ballot, and other voter information."[138] But as the Court has noted, the Clerk/Auditor is "only required to furnish oral instructions, assistance or other information relating to registration and voting,"[139] and that the Clerk/Auditor clearly did. Furthermore, although the Clerk/Auditor was not required to provide scripts, recorded audio translations, or even formal training to translators working the polls, he did. In a nutshell, either because of their lack of an irreparable injury or mootness, the injunctive relief sought by Plaintiffs is not available under these circumstances since the Clerk/Auditor's election procedures provide more and far better relief than Plaintiffs have asked for in their *Complaint*,[140] which procedures were adopted by the Clerk/Auditor prior to Plaintiffs

---

[137]  *Complaint,* Dkt. 2, p. 21, ¶¶ 1-4.

[138]  *Id.*

[139]  *Memorandum Decision and Order*, Dkt. 129, p. 30 (quoting 52 U.S.C. § 10503(c)).

[140]  With respect to Plaintiffs' request for an injunction, they are confined to the allegations of their *Complaint*. *See First Health Grp. Corp. v. Nat'l Prescription Adm'rs, Inc.*, 155 F. Supp. 2d 194, 233 n.10 (M.D. Pa. 2001); *see also Lee v. Lindsay,* 2007 WL 1120562, at *1 (M.D. Pa. Apr.13, 2007) ("[I]t is well established that a court may not grant a preliminary injunction when the issues raised in the motion for a preliminary injunction are entirely different from those raised in the complaint." (citing *Stewart v. United States Immigration and Naturalization Service,* 762 F.2d 193, 198–199 (2d Cir.1985))). Further, when a challenged practice has been discontinued, a claim for injunctive relief will be moot. *Owner-Operator Independent Drivers Assoc., Inc.*, 508 F. Supp. 2d 972, 985 (D. Utah 2007). *See also Citizen Center v. Gessler*, 770 F.3d 900, 907-908 (10th Cir. 2014)(discussing mootness attributable to changed or repealed regulations or practices). A court may grant a permanent injunction only if

having commenced this lawsuit.

### CONCLUSION

San Juan County Defendants are entitled to summary judgment on all of the claims alleged by Plaintiffs in their *Complaint*. In addition, San Juan County Defendants are also entitled to summary judgment on *First Counterclaim* which seeks a declaration that the Clerk/Auditor's 2016 vote-by-mail procedures do not violate either the *Constitution* or the *VRA* and, therefore, can be used by the Clerk/Auditor in conducting future elections.[141]

DATED this 20th day of February, 2017.

SUITTER AXLAND, PLLC

 /s/ jesse c. trentadue
Jesse C. Trentadue
Carl F. Huefner
Britton R. Butterfield
*Attorneys for Defendants*

---

a four-factor test is satisfied: (1) that the plaintiff has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction. *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006). Plaintiffs' claim fails the first prong of this test because the injunctive remedy they seek is already in place.

[141] *Amended Counterclaim,* Dkt. 74, ¶¶ 126-135.

**CERTIFICATE OF SERVICE**

I hereby certify that on the 20th day of February, 2017, I electronically filed the foregoing document with the U.S. District Court for the District of Utah.  Notice will automatically be electronically mailed to the following individual(s) who are registered with the U.S. District Court CM/ECF System:

| | |
|---|---|
| John Mejia (Bar No. 13965)<br>Leah Farrell (Bar No. 13696)<br>American Civil Liberties Union of Utah<br>355 North 300 West<br>Salt Lake City, UT 84103<br>T: (801) 521-9862<br>jmejia@acluutah.org<br>lfarrell@acluutah.org<br>*Attorneys for Plaintiffs* | Ezra D. Rosenberg<br>M. Eileen O'Connor<br>Arusha Gordon*<br>Lawyers' Committee for Civil Rights Under Law<br>1401 New York Ave., Suite 400<br>Washington, D.C. 20005<br>T: (202) 662-8600<br>erosenberg@lawyerscommittee.org<br>eoconnor@lawyerscommitee.org<br>agordon@lawyerscommittee.org<br>*Attorneys for Plaintiffs* |
| M. Laughlin McDonald<br>American Civil Liberties Union Foundation<br>2700 International Tower<br>229 Peachtree Street, NE<br>Atlanta, GA 30303<br>T: (404) 500-1235<br>lmcdonald@aclu.org<br>*Attorneys for Plaintiffs* | Maya Kane<br>10 Town Square, #52<br>Durango, Colorado 81301<br>T: (970) 946-5419<br>mayakanelaw@gmail.com<br>*Attorneys for Plaintiffs* |
| William A. Rudnick<br>DLA Piper LLP (US)<br>203 North LaSalle Street, Suite 1900<br>Chicago, IL 60601<br>T: (312) 368-4000<br>william.rudnick@dlapiper.com<br>*Attorneys for Plaintiffs* | Raymond M. Williams<br>Lauren M. Wilchek<br>DLA Piper LLP (US)<br>One Liberty Place<br>1650 Market Street, Suite 4900<br>Philadelphia, PA 19103<br>T: (215) 656-3300<br>raymond.williams@dlapiper.com<br>lauren.wilchek@dlapiper.com<br>*Attorneys for Plaintiffs* |

| Patrick Castaneda<br>DLA Piper, LLC<br>One Liberty Place<br>1650 Market Street, Suite 4900<br>Philadelphia, PA 19103-7300<br>Telephone: 215-656-3378<br>patrick.castaneda@dlapiper.com | |

      /s/ jesse c. trentadue

*T:\7000\7788\I\SAN JUAN COUNTY MOT FOR SUMMARY JUDGMENT.draft.wpd*