Jesse C. Trentadue (#4961)
Carl F. Huefner (#1566)
Britton R. Butterfield (#13158)
**SUITTER AXLAND, PLLC**
8 East Broadway, Suite 200
Salt Lake City, UT  84111
Telephone: (801) 532-7300
Facsimile: (801) 532-7355
E-Mail: jesse32@sautah.com
E-Mail: chuefner@sautah.com
E-Mail: bbutterfield@sautah.com

*Attorneys for Defendants*

---

## UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| NAVAJO NATION HUMAN RIGHTS COMMISSION; PEGGY PHILLIPS; MARK MARYBOY; WILFRED JONES; TERRY WHITEHAT; BETTY BILLIE FARLEY; WILLIE SKOW; and MABEL SKOW, | **SAN JUAN COUNTY DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT and PARTIAL SUMMARY JUDGMENT ON COUNTERCLAIM** |
| Plaintiffs, | |
| v. | Case No. 2:16-cv-00154 JNP |
| SAN JUAN COUNTY; JOHN DAVID NIELSON, in his official capacity as San Juan County Clerk; and PHIL LYMAN, BRUCE ADAMS, and REBECCA BENALLY, in their official capacities as San Juan County Commissioners, | Judge Jill N. Parrish |
| | Magistrate Judge Brooke C. Wells |
| Defendants. | **Oral Argument is Requested** |

SAN JUAN COUNTY; JOHN DAVID          :
NIELSON; PHIL LYMAN, BRUCE           :
ADAMS; and REBECCA BENALLY           :
                                     :
      Counterclaim Plaintiffs,          :
                                     :
v.                                   :
                                     :
NAVAJO NATION HUMAN RIGHTS           :
COMMISSION; PEGGY PHILLIPS; MARK     :
MARYBOY; WILFRED JONES; TERRY        :
WHITEHAT; BETTY BILLIE FARLEY;       :
WILLIE SKOW; and MABEL SKOW,         :
                                     :
      Counterclaim Defendants.          :
                                     :

San Juan County, Utah, John David Nielson, Phil Lyman, Bruce Adams, and Rebecca
Benally (collectively "San Juan County" or "Defendant"), by and through counsel of record,
hereby submit their *Reply Memorandum in Support of Motion for Summary Judgment on
Plaintiffs' Claims and Partial Summary Judgment on Counterclaim*.[1]

## OBJECTION TO EVIDENCE SUBMITTED BY PLAINTIFFS

The *Local Rules* provide the procedure for challenging evidence submitted in support of a
*Motion*.  Pursuant to *DUCivR* 7-1(b)(1)(B), evidentiary objections to Plaintiffs' evidence must be
included by Defendants in this *Reply Memorandum*.  Set out below are Defendants' objections to
the "evidence" submitted by Plaintiffs in opposition to Defendants' *Motion for Summary
Judgment* that should not be considered by the Court and/or be stricken in their entirety.  With
respect to the remainder of Plaintiffs' evidence, Defendants will raise objections in response to

---

[1] Dkt. 141.

specific assertions of fact.

The *Affidavits* of Betty Billie Farley,[2] Bonnie B. Charley,[3] Mabel Skow,[4] and Willie Skow,[5] should be stricken in their entirety for lack of foundation.  To begin with, these documents purport to be "Affidavits" but they are not.  An affidavit must be under oath, and also contain the signature of the affiant and an officer authorized to administer oaths.[6]  None of these documents contain the requisite oath and officer's signature, which means that they cannot be considered by the Court as an affidavit.  Neither do they qualify as a 28 U.S.C. § 1746 "Declaration" because of a lack of foundation.

In each of these documents, the affiants state that they are not fluent in and/or speak English.  In each of these documents, the affiants also state that "I declare under penalty of perjury that the foregoing is true and correct, as translated from English to Navajo by Leonard Gorman."  Leonard Gorman, however, is Executive Director of Plaintiff Navajo Human Rights Commission.[7]  The fact that these *Affidavits* all involve translations of a foreign language into English; that Mr. Gorman did the translations and, therefore, had motive to distort the evidence; the fact that there is no evidence of Mr. Gorman's skill as a translator; the fact that there is no

---

[2]  Dkt. 144-11.

[3]  Dkt. 114-13.

[4]  Dkt. 144-16.

[5]  Dkt. 144-17.

[6]  *See Ham Investments, LLC v. United States*, 89 Fed. Cl. 537, 550, fn. 8(2009).

[7]  Dkt. 112-2, ¶ 1.

evidence the person certifying that the translation was accurate and that person actually made it; and the fact that there is no evidence that each of the affiants were actually advised of the contents of their affidavit before signing the document, precludes their consideration by the Court on the basis of a lack of foundation.[8]

On the basis of hearsay, the expert reports of Dr. Dan McCool,[9] Gerald Webster,[10] Dr. Richard Engstrom,[11] and Joanna Manygoats[12] should be stricken and/or not considered by the Court. This is so because an expert report not under oath is inadmissible hearsay.[13] Admittedly, each of these witnesses does submit a sworn *Declaration* along with his or her report. However, in each instance the witness merely states that the report filed with the Court is a true and correct copy.[14] In other words, they establish the foundation for their respective reports but the reports themselves remain unsworn hearsay.

---

[8] *See Beltran v. D. Dexter*, 568 F. Supp.2d 1099, 1105 , fn. 7(C.D. Cal. 2008); *Jack v. Trans World Airlines, Inc.*, 854 F.Supp. 654, 659 (N.D. Cal. 1974); *Cruz v. Aramark Servs., Inc.* 213 Fed. Appx. 329, 334 (5th Cir. 2007); *Miranda v. Sweet Dixie Melon Co.*, 2009 WL 1324847 at *1-2 (M.D. Ga. May 13, 2009); *Sunrider Corporation v. Bountiful Biotech Corp*, 2010 Wl 4599156 at *4(C.D. Cal. Nov. 3, 2010).

[9] Dkt. 94-5

[10] Dkt. 94-2.

[11] Dkt. 94-6.

[12] Dkt. 144-15.

[13] *See Arizona, Dept. Of Civil Rights v. ASARCO, LLC,* 844 F. Supp.2d 957, 966(D. Ariz 2011).

[14] *See* Dkt. 95-5, 95-2, 94-6 and 144-15.

4

**<u>REBUTTAL RESPONSES TO PLAINTIFFS' RESPONSES TO</u>**
**<u>STATEMENT OF ELEMENTS AND UNDISPUTED FACTS</u>**

Reproduced herein below are the facts proffered by Defendants in support of their *Motion for Summary Judgment*, with each fact followed by a summary of Plaintiffs' response and any necessary rebuttal by Defendants.

**I.**     **<u>Unique Characteristics of San Juan County</u>**:

In their *Motion*, Defendants proffered the following facts demonstrate that the demographic make-up of San Juan County and its geography present many challenges to the administration of county-wide elections:

1.      According to the 2010 Census, the County's population was 14,746 people.  The 2010 Census also put the County's voting-age population (18 years old and over) at 9,729 or 65% of the total population.

**Plaintiffs' Response:**  Undisputed.

**Rebuttal:** None necessary.

2.      The voting-age population is almost equally split between Indian and non-Indian voters.  Depending upon how "Indian" is defined for the purpose of analyzing Census data, Indians comprise between 49.40% and 50.23% of the County's voting-age population.

**Plaintiffs' Response:** Undisputed**.**

**Rebuttal:**  None necessary.

3.      San Juan County is also immense.   It is one of the largest counties in the United States at approximately 8,103 square miles in size.

**Plaintiffs' Response:** Undisputed.

**Rebuttal:**  None necessary.

4.      Highway 191 is the only road in San Juan County that traverses the County from its northern boundary to its southern boundary.  From Spanish Valley, Utah on San Juan County's northern border to Monument Valley, Utah on the County's southern border is a distance of approximately 183 miles and, in good weather, it takes approximately 3 hours and 26 minutes to drive from Spanish Valley to Monument Valley.

**Plaintiffs' Response:** Undisputed.

**Rebuttal:**  None necessary.

5.      Vast regions of the County are uninhabited and, according to Norman Johnson, the former San Juan County Clerk/Auditor, only about 25% of the County's registered voters have a physical address.  The remainder, both Indian and non-Indians a like, live in rural parts of the County and use a post office box for their address.

**Plaintiffs' Response:** Undisputed.

**Rebuttal:**  None necessary.

**II.      2016 Primary Election Compliance with the Voting Rights Act**:

In their *Motion*, Defendants proffered the following facts demonstrate that the Clerk/Auditor's voting procedures used during the 2016 June primary election did not make voting locations more accessible to non-Indian voters than to Navajo voters or otherwise deny them language assistance:

1.      Pursuant to Utah statute, the San Juan Clerk/Auditor implemented a vote-by-mail

6

election process for the 2014 election cycle, for which ballots were sent by mail to all registered voters with instructions for completing the ballots and returning them by mail.

**Plaintiffs' Response:**  Undisputed as regarding the implementation of a vote-by-mail election process for the 2014 election cycle, but Plaintiffs dispute the statement that ballots were mailed to all registered voters, and that in 2014 voter turnout in the on-Reservation precincts increased with vote-by-mail .

**Rebuttal:** Plaintiffs are correct about the citation to Mr. Johnson's *Deposition* regarding ballots having been mailed to voters in 2014.  That testimony appears elsewhere in his *Deposition*.[15]  Besides, there is really no dispute about ballots having been sent to voters during the 2014 election cycle.  Nor is there any dispute about ballots having been sent to "active voters" and not to "inactive voters."[16]  In addition, Defendants object to Plaintiffs' assertion that there was no increase in voter turnout following the implementation of vote-by-mail insofar as it is based upon the unsworn "Expert Report" of Dr. Dan McCool, which is hearsay.

2.      In addition to the obvious reduction in election administration costs associated with the Clerk/Auditor having to establish and staff polling locations on election day, the purposes for the adoption of the vote-by-mail process also included: (1)  encouraging greater voter participation in elections by making voting more convenient for all voters;[17] (2) solving the problem of many of the on-Reservation polling places being in Navajo Chapter Houses that were

---

[15]  *Norman Johnson Deposition*, Appendix of Exhibits, Dkt. 109, Exhibit 11, p. 82.

[16] *Id.* at p. 39.

[17] *See id.* at pp. 67-69.

not ADA compliant;[18] and (3) reducing the problem that Navajo dialects caused in providing language assistance because, depending where one lived on the Navajo Reservation, people speak a different Navajo dialect whereas with vote-by-mail those persons not proficient in English have time to consult with "family members or trusted friends" who speak the same dialect to help them interpret the ballots.

**Plaintiffs' Response:**  Undisputed that the former County Clerk asserted the above reasons for his decision to adopt the mail-only system, but disputed as to whether these reasons are valid, especially the increase in voter turnout.

**Rebuttal:** Mr. Johnson gave that testimony under oath.  In addition, Defendants object to this assertion that voter turnout did not increase insofar as it is based upon the unsworn "Expert Report" of Dr. Dan McCool, which is hearsay.

3.      For the 2014 elections, the only polling location open on election day was at the San Juan County Clerk/Auditor's office at the county seat in Monticello.

**Plaintiffs' Response:** Undisputed.

**Rebuttal:** None necessary.

4.      In developing the 2014 vote-by-mail procedures, the former County Clerk Auditor, Norman Johnson, worked with and received the tacit approval of the Navajo Election Administration.

**Plaintiffs' Response:**  Disputed that the Navajo Election Administration gave its tacit approval for the system because  Mr. Johnson's deposition transcript simply describes a

---

[18] *Id.* at pp. 73-75.

conversation with a single individual from the Administration, Mr. Edison Wauneka, who told

Mr. Johnson that he "liked" "by-mail voting."

**Rebuttal:** Mr. Johnson testified that Mr. Wauneka was "Director of Elections" for the

Navajo Nation.[19]

     5.       Following the 2014 election cycle, as a result of comments from voters about

the new vote-by-mail process, the County Clerk/Auditor determined in early 2016 before this suit

was filed, that for the 2016 election cycle three additional polling locations all on the Navajo

Reservation, would be open on election day for both the June 28, 2016 primary and the

November 8, 2016 general elections, each of which would be staffed with at least one poll

worker who could provide Navajo-language assistance to voters needing such assistance.

**Plaintiffs' Response:**  Disputed because Defendants' assertion that the decision to move

away from vote-by-mail only before this lawsuit was filed is only supported by the County

Clerk/Auditor's self-serving statement that "by late January or early February," the "County had

already made the decision" to reopen less than half of the closed polling places.

**Rebuttal:** The San Juan County Attorney, Kendall Laws, also said that following his and

the Clerk/Auditor's meeting with representatives from the United States Department of Justice

("DOJ") in October of 2015, "San Juan County began to consider making changes to improve the

vote-by-mail system by adding three in-person polling locations on the Navajo Reservation . . .

[and  that] [t]he final decisions as to the locations of the three additional polling locations was

---

[19] *Norman Johnson Deposition*, Appendix of Exhibits, Dkt. 109, Exhibit 11, p. 95.

made on or before February 16, 2016."[20]

6.        In January and February, 2016, and again in June, 2016, prior to the county-wide primary election, the County's Navajo liaison, Ed Tapaha,  repeatedly visited Navajo Chapter Houses to explain the vote-by mail procedures; whereas Plaintiffs' *Complaint* was filed on February 25, 2016, but San Juan County Defendants were not served until March 1, 2016.

**Plaintiffs' Response:** Undisputed that Mr. Tapaha visited some of the chapter houses to explain vote-by-mail procedures but Plaintiffs insist that Mr. Tapaha did not discuss in-person voting opportunities, especially given that some of those visits occurred before the decision to reopen polling places was made.

**Rebuttal:** For both the 2016 Primary Election and the 2016 General Election, Mr. Tapaha went to Navajo Chapter Houses to register voters, discuss the vote-by-mail procedures, explain the ballots in upcoming elections, and to generally assist Navajo voters.[21]

7.        The San Juan Clerk/Auditor issued press releases announcing the new polling locations for in-person voting, which were published in the *San Juan Record* and the *Navajo Times* on March 9, 2016.  Those press releases, however, had been prepared by the San Juan County Attorney approximately a week earlier.

**Plaintiffs' Response:** Undisputed that the Navajo Times and the San Juan Record ran articles regarding changes to the County's voting procedures but insist that this occurred after the

---

[20]  *Laws Dec.*, Dkt. 109, ¶¶ 12 and 13.

[21] *First Tapaha Deposition*, Appendix Exhibit 9,  pp.8-9, and  49-84.  *See also Nielson Dec.*, Dkt. 62, ¶ 13; *Third Nielson Dec.*, Dkt 100-1, ¶14; *Nielson Dec.*, Dkt. 141-2, ¶ 12.

Complaint was filed and after publicity regarding the Complaint in these same news outlets.

**Rebuttal:** Plaintiffs admit that the articles were published.

8.     During the 2016 primary election, the San Juan Clerk/Auditor had four polling locations for in-person voting, three of which were on the Navajo Reservation and within an average 15-mile travel distance to the nearest polling location for Navajo voters as compared to an average of 20 miles for non-Indian voters.

**Plaintiffs' Response:**  Undisputed.

**Rebuttal:** None necessary.

9.     During the 2016 primary, the San Juan Clerk/Auditor had a Navajo-language audio recording on its county website, as well as at each polling location on election day, identifying the candidates, their political affiliation and the offices for which they were seeking to be elected.

**Plaintiffs' Response:** Disputed because this fact is based upon the Declaration of Clerk/Auditor Nielson who does not speak Navajo and is therefore not competent to testify on what is or is not translated in the recording.

**Rebuttal:** Objection.  To properly dispute a fact, Plaintiffs must present the Court with evidence,[22] which they have not done.

10.     During the 2016 primary election there were experienced Navajo interpreters, trained by Mr. Edward Tapaha, at each of the polling locations to assist those voters who were not proficient in reading English with help in voting, registering, etc.

---

[22]  *See DUCivR* 56-1(c)(2)(B).

11

**Plaintiffs' Response:**  Disputed because the term "experienced Navajo interpreters" implies that the individuals hired by the County for language assistance had some sort of formal training specific to providing an effective interpretation between English language ballots and Navajo.

**Rebuttal:** The *Voting Rights Act* does not require "formal training to translators."[23]

11.     Navajo is historically an unwritten language, although efforts have been made in recent decades to develop a written form of the language, which not all Navajo can read the written form of the language.

**Plaintiffs' Response:** Undisputed.

**Rebuttal:** None necessary.

12.     Younger Navajo are becoming increasingly less fluent and unable to speak Navajo.

**Plaintiffs' Response:** Undisputed.

**Rebuttal:** None necessary.

13.     For the 2016 county-wide primary election, which was held on Tuesday, June 28, 2016, there were three polling places open on election day, in addition to the County Clerk/Auditor's office in Monticello, to accommodate those voters who wish to cast their ballot in person.

**Plaintiffs' Response:**  Undisputed.

**Rebuttal:** None necessary.

---

[23] *Memorandum Decision and Order*, Dkt. 129, p. 29.

14.    The locations of the three additional polling locations, all of which were located

on the Navajo Reservation, are as follows:

> Navajo Mountain Chapter House
> Navajo Route 16, mile marker 36.15
> Navajo Mountain, Utah
>
> Oljato Senior Center
> County Road 422, 15 miles north of
> Gouldings' Store Oljato, Utah
>
> Montezuma Creek Fire Station
> 15 South Texaco Road
>
> Montezuma Creek, Utah

**Plaintiffs' Response:** Undisputed.

**Rebuttal:** None necessary.

15.    These three locations were selected so as to ensure that no voter in the County is

more than a one-hour drive away from an in-person voting location, and that fact is confirmed by

the *Declaration* of Plaintiffs' "time and travel" expert, Gerald R. Webster.

**Plaintiffs' Response:**  Disputed because it is based upon the Declaration of

Clerk/Auditor John David Nielson who did not do an "analysis on how long it would take to get

to [the] polling locations"; and because Plaintiffs' expert found that the average voter's drive

time to one of the four polling places is an hour, not that "no voter in the County is more than a

one-hour drive away from an in-person voting location."

**Rebuttal:** Although Mr. Nielson, the Clerk/Auditor, and his staff did not do an analysis

of the driving time to the three on-Reservation polling locations, the choice of these locations

was not arbitrary.  According to Mr. Nielson, Ed Tapaha, the County's Navajo liaison, provided

the on-Reservation locations that he believed from his  experience were within an hour's drive for  Navajo voters.[24]  More importantly, Plaintiffs' expert, Gerald Webster, found that the average voter's drive time to one of the four polling locations was an hour.  Also, the longest driving time to a polling location would undoubtedly be for those voters residing in the remote off-Reservation non-Indian community of Halls Crossing, Utah, which is approximately 108 miles from the polling location at Monticello, Utah.[25]

16.     Buried deep within Webster's 53-page report is his assessment of the Navajo and non-Indian travel times with respect to the four polling locations used in the recent 2016 county-wide primary election.

**Plaintiffs' Response:**  Disputed that Plaintiffs' expert "buried" any data in his report.

**Rebuttal:** None necessary.

17.     Webster says that Navajo voters had a mean travel distance to the nearest poll in order to vote in-person of only 15.24 miles while the mean distance to the nearest polling location for non-Indians voters was 20.39 miles.  Thus, even Plaintiffs' expert says that Navajo voters have less distance to travel in order to vote in person than do non-Indian voters.

**Plaintiffs' Response:**  Undisputed as to voting in-person on Election Day but disputed that Navajo voters "have less distance to travel" pertaining to early in-person voting, which is only available in Monticello, Utah.

**Rebuttal:** The "Constitution does not require *any* opportunities for early voting and as

---

[24]  *Nielson Depo*., p. 116.

[25]  *Second Francom Dec*., Dkt. 151-3, ¶ 36.

14

many as thirteen states offer just one day for voting: Election Day."[26]

    18.    Also buried deep within Webster's 53-page report is his assessment of the mean travel distances to the nearest post office for Navajo voters and non-Indian voters who opt to vote by mail.

    **Plaintiffs' Response:** Disputed that Plaintiffs' expert "buried" any data in his report.

    **Rebuttal:** None necessary.

    19.    Webster says that Navajo voters live within 14.27 miles of the nearest post office whereas the distance for non-Indian voters is 4.30 miles.  Neither the County nor the Clerk/Auditor  have no control over where Navajo voters choose to live or where the federal government locates Post Offices.  But even if Navajo voters on average have to travel 10 miles farther than non-Navajo voters to receive and return their mail-in ballots, that does not violate the *VRA*, especially given the one-month window for voting by mail and the fact that undoubtedly most Navajo voters go to the Post Office more than once a month to get their mail.

    **Plaintiffs' Response**: Undisputed as to travel distance to the nearest post office and the fact that neither the County nor the Clerk have control over where Navajo voters choose to live or where post offices are located. But disputed that Navajo voters go to the Post Office more than once a month to get their mail."

    **Rebuttal:** None necessary.  However, the Clerk/Auditor has no control over how often Navajo voters go to the Post Office to obtain their mail.

---

    [26] *Ohio Democratic Party v. Husted*, No. 16-3561, 2016 WL 4437605 at *1 (6th Cir. Aug. 23, 2016).

20.     For the 2016 county-wide primary election, a San Juan County election official able to provide Navajo-language voting assistance was available at each of the four polling locations.

**Plaintiffs' Response:** Disputed because the statement "able to provide Navajo language assistance" is vague and constitutes legal argument insofar as it is meant to convince this Court that this is equivalent to effective language assistance

**Rebuttal:** The test is whether the language assistance provided was reasonably effective,[27] and it clearly was reasonably effective.  During the 2016 General Election, for example, a total of 1,992 people from the on-Reservation precincts of Montezuma Creek, Aneth, Mexican Hat, Oljato, Navajo Mountain and Red Mesa voted, which was a 69.68 % voter turnout.[28]  Furthermore, the San Juan County Clerk/Auditor's Office does far more than the Navajo Nation Election Administration in terms of providing language assistance to voters.  To begin with, ballots in the Navajo Nation's elections are in English.[29]  The Navajo Nation Election Administration's website is also in English and it does not contain any audio recordings in Navajo.[30]  The Navajo Nation allows mail-in or absentee ballots, too, and the application for an absentee ballot is in English.[31]  Consequently, it is not surprising that during the November 8,

---

[27]  28 C.F.R. § 55.20(c).

[28]  *Second Francom Dec.*, Dkt. 151-3, ¶¶ 8 and 9.

[29]  *Whitehat Depo.*, pp. 11-12, Exhibit 1 hereto.

[30]  *See* http://www.navajoelections.navajo-nsn.gov/index.html

[31]  *See id.*

2016 Navajo Nation election, the voter turnout was only 47.21%.[32]

21.     Those persons providing language assistance during the 2016 county-wide primary election were Ella Greyeyes and Maryetta Stevens at the Navajo Mountain polling location; Ed Tapaha at the Montezuma Creek polling location; Edyth Tahe at the Oljato polling location; and Fermina Keith at the Monticello polling location.

**Plaintiffs' Response:** Undisputed that these individuals were hired by the County for the primary election but disputed that any assistance offered was effective given that there was no training provided to any of these individuals regarding how to effectively translate the specific ballots at issue.

**Rebuttal:** Because Navajo is an unwritten language, all that the *Voting Rights Act* requires is that the Clerk/Auditor's Office "furnish oral instructions, assistance, or other information relating to registration and voting."[33]  As the Court has noted, there is no requirement that the interpreters or persons providing the language assistance be trained or certified.[34]

22.     In addition, for the 2016 county-wide primary election, the San Juan Clerk/Auditor had a link on the election page of its website by which voters could access a Navajo-language audio translation of the ballot itself, and that audio was also available at each of the four in-person voting locations.

**Plaintiffs' Response:**  Undisputed that San Juan County provided an audio recording

---

[32] *See id.*

[33]  52 U.S.C.§ 10503(c).

[34]  *Memorandum Decision and Order*, Dkt. 129, p. 29.

with some information about the 2016 primary election on their website, but the recording was never checked or reviewed for accuracy or completeness and it supposedly contained only general information about the primary election.

**Rebuttal:** Objection. Plaintiffs' evidence about the in accuracy or completeness of the translation comes from the *Declaration* of Leonard Gorman, Executive Director of the Plaintiff Navajo Human Rights' Commission who contends that there was no translation of the ballot available for voters during the 2016 primary election,[35] which is not true. At every polling location there were trained translators, fluent in Navajo, available to assist those who needed help. These translators were selected and trained by Mr. Tapaha,[36] and they were experienced having been poll workers or translators in many previous elections.[37] More importantly, Mr. Gorman's so called facts are not based on his personal knowledge but, rather, upon the statements made to him by his unidentified staff,[38] which are hearsay.

23.     The County's website likewise identifies Ed Tapaha as the County's Navajo Liaison/Elections Coordinator and gives his telephone number and extension.

**Plaintiffs' Response:** Undisputed.

**Rebuttal:** None necessary.

24.     Furthermore, as in prior election years, before the 2016 county-wide primary

---

[35] Dkt. 94-1.

[36] *Second Tapaha Deposition*, Appendix Exhibit 12 pp. 51 -55, and 91-92.

[37] *Id.* at pp. 12-13.

[38] *See* Dkt. 94-1, ¶¶ 12 -13.

election the San Juan Clerk/Auditor had Edward Tapaha attend meetings of each of the Navajo

Chapters to explain in the Navajo language the voting system and answer any questions about the

election process.

**Plaintiffs' Response:** Disputed because the Clerk/Auditor testified that he did not know

whether Mr. Tapaha visited each of the chapter houses; that he has no "records of the number of

visits [Mr. Tapaha] [has] made to chapter houses"; and that he never asked Mr. Tapaha if he had

attended meetings at each Navajo Chapter house located in the County.  Plaintiffs also dispute

that Tapaha attended meetings at "each of the Navajo Chapters" as there is no documentation of

this "fact."

**Rebuttal:** *See* response to paragraphs 6 and 22 above.[39]

25.     The foregoing procedures, which were in place for the 2016 county-wide primary

election, are fully compliant with the requirements of the *VRA*.

**Plaintiffs' Response:** Disputed because are attempting to include argument as fact.

**Rebuttal:** None necessary.[40]

26.     The language assistance, as well as the overall voting information-registration

assistance, including three on-Reservation polling locations, that the San Juan Clerk/Auditor

provides to Navajo voters is not available to non-Indian voters.

**Plaintiffs' Response:** Disputed because there is no evidence that the polling locations

---

[39] *See also Memorandum Decision and Order*, Dkt. 129, pp. 32-34.

[40] *See id.* at p. 36.("Because Plaintiffs have failed to demonstrate that their Section 203 rights were violated by the June 2016 procedures, they have failed to demonstrate that their rights will be violated by the use of those same procedures in November 2016").

located on the Navajo reservation were not available to non-Indians, or that non-Indians did not have "overall voting information-registration assistance" available to them.

     **Rebuttal:**  Objection.  To properly dispute a fact, Plaintiffs must present the Court with evidence,[41] which they have not done.

     27.     The election records maintained by the San Juan County Clerk/Auditor's Office show that the 2014 election in which vote-by-mail was implemented resulted in a substantial increase in voter turn out as a result of allowing voters the option of voting by mail, especially among Navajo voters.

     **Plaintiffs' Response:** Disputed because the Clerk/Auditor is not competent to offer this opinion, and neither does the Clerk/Auditor have the necessary technical knowledge to determine the reason for the alleged "substantial increase in voter turn out."

     **Rebuttal:**  Objection.  Defendants object to Plaintiffs' assertion that voter turnout did not increase with mail-in-ballots insofar as it is based upon the unsworn "Expert Report" of Dr. Dan McCool, which is hearsay.

     28.     In fact, during the 2014 primary election the number of Navajo voting more than doubled compared to previous elections without the vote-by-mail option.

     **Plaintiffs' Response:** Disputed. See Pls.' Response to Defs.' 27.

     **Rebuttal:** *See* response to paragraph 27 above.

     29.     The election records maintained by the San Juan County Clerk/Auditor's Office, for example, show that during the 2014 primary election voter participation in precincts with a

---

    [41] *See DUCivR* 56-1(c)(2)(B).

heavy concentration of Navajo voters went from 25% during the 2012 election using only in-person voting at polls to almost 54% with vote-by-mail in 2014.

**Plaintiffs' Response:** Disputed. See Pls.' Response to Defs.' 27.

**Rebuttal:** *See* response to paragraph 27 above.

30.    This significant increase in voter participation occurred despite the fact that the 2014 primary election was not a national election which tends to produce a higher number of voters.

**Plaintiffs' Response:** Disputed. See Pls.' Response to Defs.' 27.

**Rebuttal:**  *See* response to paragraph 27 above.

31.    The increased voter participation among Navajo voters was undoubtedly attributable in part to the fact that the mail-in-ballot process allows voters who work away from their homes on the Navajo Reservation, or who are away at college or in the military, to participate in elections without having to appear at a polling place or apply in advance for an absentee ballot.

**Plaintiffs' Response:** Disputed. See Pls.' Response to Defs.' 27.

**Rebuttal:** *See* response to paragraph 27 above.

32.    The increased voter participation among Navajo voters was also undoubtedly attributable to the fact that the mail-in-ballot process allows elderly voters who have no means of transportation to a polling location to vote from their homes by use of the mail-in-ballot.

**Plaintiffs' Response:**  Disputed. See Pls.' Response to Defs.' 31.

**Rebuttal:** *See* response to paragraph 27 above.

21

33.     There are benefits to a vote-by-mail system over an in-person voting system, including, among others: (a) providing voters the opportunity to consider their election decisions over a longer period of time; (b) accommodating the needs of voters who regularly work outside of the immediate area of their residence, are at school or in the military, without their having to apply personally for an absentee ballot which may be particularly of benefit to a significant number of Navajo voters who work away from their homes due to the limited availability of jobs in San Juan County; (c) allowing voters to make their ballot decisions away from candidates' campaign efforts in close proximity to polling places; and (d) allowing limited-English proficiency voters to seek assistance from family members or other trusted acquaintances whom they choose rather than relying on interpreters provided by the Clerk/Auditor.

**Plaintiffs' Response:** Disputed because the Clerk/Auditor has no personal knowledge concerning these assertions.

**Rebuttal:** These are the Clerk/Auditor's observations and opinions, which he is competent to give since he does oversee elections and maintains results of elections.

34.     The large turnout of Navajo voters for the 2014 primary election resulted in the election of Rebecca Benally over Kenneth Maryboy and Manuel Morgan for the office of County Commissioner from District Three.

**Plaintiffs' Response:** Disputed on the basis that this statement is speculative, a conclusory opinion and lacks evidentiary support.

**Rebuttal:**  *See* response to paragraph 33 above.

35.     Prior to vote-by-mail, Plaintiff Mark Maryboy, his brother Kenneth Maryboy and

Manual Morgan had always held the Commission seat from District Three.

**Plaintiffs' Response:** Disputed because this statement is immaterial and without evidentiary foundation.

**Rebuttal:** *See* response to paragraph 33 above.

III.     **2016 General and Future  Election Compliance with the VRA and Equal Protection**:

In their *Motion*, Defendants proffered the following facts to demonstrate that the Clerk/Auditor's voting procedures used during the November 8, 2016 general election did not make voting locations more accessible to non-Indian voters than to Navajo voters or otherwise deny Navajo voters language assistance and, more importantly,  that these same procedures will be used to conduct future county-wide elections.

1.       With respect to the November 8, 2016 general election, an advertisement was placed in the two local papers, the *San Juan Record* and the *Navajo Times*, and ran once a week for one month prior to the general election.

**Plaintiffs' Response:** Disputed because Defendants have not provided the ads or any evidence to support their assertion that the ads "ran once a week for one month prior to the general election."

**Rebuttal:**  Defendants have provided the Court with the sworn *Declaration* of the Clerk/Auditor.  Defendants have also produced the ads.[42]

---

[42] *See also* SAN000317-318, which were provided to Plaintiffs' counsel, via e-mail, December 30, 2016.  For the Court's convenience, these documents are also attached as Exhibit 1.

2.      That ad provided election information to voters, such as: date of the general election; what to do if the voter does not receive a ballot in the mail; the location of polls for in-person voting and hours of operation on election day; the ability to register to vote on election day; the availability of interpreters at each polling location; and where voters could go to listen to this same information and a description of the ballot in the Navajo language.

**Plaintiffs' Response:** Disputed. See Pls.' Response to Defs.' 1.

**Rebuttal:** *See* response to paragraph 1 above.

3.      That same ad was also translated into Navajo, including a description of the ballot, and was aired twice a week on the two local Navajo language radio stations, *KTNN* and *KNDN*, for a month prior to the general election.

**Plaintiffs' Response:** Disputed because Defendants have not produced the ads.

**Rebuttal:**  Defendants have provided the Court with the sworn *Declaration* of the Clerk/Auditor.  Defendants have also produced proof that the ads ran the ads.[43]

4.      Furthermore, the Clerk/Auditor established a toll-free telephone number containing the same election information and a description of the ballot, all in the Navajo language, that voters could call:1-888-693-6209.

**Plaintiffs' Response:** Undisputed.

**Rebuttal:** None necessary.

5.      The County's website likewise contained the same election information and

_____

[43]  *See* SAN000318, 321-323, which were provided to Plaintiffs' counsel, via e-mail, December 30, 2016.  For the Court's convenience, these documents are also attached as Exhibit 2.  *See also Teeasytoh Aff.*, Dkt. 144-12, ¶ 5.

description of the ballot in the Navajo language: www.sanjuancounty.org.

**Plaintiffs' Response:**  Disputed because the Clerk/Auditor does not speak Navajo and cannot determine based on personal knowledge what information in Navajo is posted on the website. The recordings are also "long, muddled and confusing."

**Rebuttal:** Objection.  Insofar as Plaintiffs' contention that the website recording was long, muddled and confusing is based upon the unsworn Expert Report of Ms. Manygoats, and is hearsay.

6.      An audio description of the ballot in the Navajo language was delivered to each of the Navajo Chapter Houses prior to the general election.

**Plaintiffs' Response:** Undisputed.

**Rebuttal:** None necessary.

7.      As noted in the ad, San Juan County's Election Liaison, Mr. Ed Tapaha, visited Chapter Houses and Senior Centers prior to the general election to answer questions, register voters and explain voting procedures.

**Plaintiffs' Response:** Undisputed that Mr. Tapaha may have visited some of the chapter houses but disputed that information conveyed was complete or conveyed in an effective manner.

**Rebuttal:** Mr. Tapaha made his Navajo Chapter House presentations in both Navajo and English, alternating between the two, so that chapter members who do not speak Navajo would also receive in English the same information provided in Navajo.[44]

8.      For the November 8, 2016 general election, there were, in addition to the County

---

[44] *Fourth Nielson Dec.,* Dkt. 151-2, ¶ 21.

Clerk/Auditor's office in Monticello, the same three additional polling places use in the June

primary election open on election day to accommodate those voters who wished to cast their

ballot in person.

**Plaintiffs' Response:** Undisputed.

**Rebuttal:** None necessary.

9.       The locations of the three additional on-reservation polling locations were:

>    Navajo Mountain Chapter House
>    Navajo Route 16, mile marker 36.15
>    Navajo Mountain, Utah
>
>    Oljato Senior Center
>    County Road 422, 15 miles north of Gouldings' Store
>    Oljato, Utah
>
>    Montezuma Creek Fire Station
>    15 South Texaco Road
>    Montezuma Creek, Utah

**Plaintiffs' Response:** Undisputed.

**Rebuttal:** No response necessary.

10.      As previously explained, these three locations were selected so as to ensure that

no voter in the County was more than a one-hour drive away from an in-person voting location.

**Plaintiffs' Response:** Disputed.  See Pls.' Response to Defs.' 15 in Section II above.

**Rebuttal:** Plaintiffs' expert, Gerald Webster, confirmed that the average driving time for

a voter to a poll was one hour.[45]

11.      On November 8, 2016, the date of the general election, there were election

---

[45] Dkt. 94-2, p. 51.

officials able to provide Navajo-language voting assistance available at each of the polling locations.

**Plaintiffs' Response:** Disputed because the Clerk/Auditor was not at all polling locations and does not speak Navajo.

**Rebuttal:** These facts are based upon the sworn *Declaration* of the Clerk/Auditor, who was in charge of the election.  Furthermore, Plaintiffs provide no evidence placing this fact in dispute.

12.     On November 8, 2016, the date of the general election, there were election officials present at each of the polling locations to register voters, and to accept mail-in-ballots from those persons who, for whatever reasons, wished to hand-deliver their ballot.

**Plaintiffs' Response:** Undisputed.

**Rebuttal:** None necessary.

13.     It is the Clerk/Auditor's intention to employ the same basic election procedures described herein above (*i.e.*, radio ads, newspaper ads, audiotapes, three polling locations within the Navajo Reservation for in-person voting, interpreters, etc.) for future county-wide elections.

**Plaintiffs' Response:** Disputed because the Clerk/Auditor's "intentions" could change at any moment, especially given that he has asserted that he can make changes to the County's election procedures without approval of the County Commission.

**Rebuttal:** Part of *Defendants' Motion for Summary Judgment* includes a finding by the Court that the 2016 General Election procedures complied with both the *Voting Rights Act* and the *Equal Protection Clause*.  Consequently, the suggestion that the Clerk/Auditor might

27

abandon these election procedures in some future election is speculation.[46]

14.     The Clerk/Auditor, however, is constantly working to improve the vote-by-mail procedures based upon what he learns from each election, and will continued to do so.

**Plaintiffs' Response:** Disputed as immaterial.

**Rebuttal:** It is material because it shows the good faith and conscientious commitment to his duties as the Clerk/Auditor.

15.     Consequently, two changes in election procedures for future elections that the Clerk/Auditor is presently considering are: (a) asking the Navajo Election Administration to review and comment upon the Clerk/Auditor's Navajo language election audiotapes prior to their distribution, and (b) for those years when the Navajo Nation's election day falls on the same day as a federal, state or other county-wide election, to attempt to work out an arrangement with the Navajo Election Administration whereby the County and Navajo Nation use the same poll locations in Navajo Mountain, Oljato and Montezuma Creek.

**Plaintiffs' Response:**  Disputed. This statement is speculative.

**Rebuttal:** The Clerk/Auditor's statements as to changes he is considering implementing for  future election procedures is not speculation.[47]

16.     Of course, these changes in election procedures that the Clerk/Auditor is currently considering will require the agreement and cooperation of the Navajo Election Administration.

---

[46] *See Memorandum Decision and Orde*r, Dkt. 129, pp. 9-10.

[47] *See Moriconi v. Koester*, 2015 WL 328590 * 2(C.D. Ill. January 26, 2015)(speculation is one's subjective belief as to what might be in the future).

**Plaintiffs' Response:** Disputed because the Navajo Nation Election Administration does not have authority over County elections.

**Rebuttal:** None necessary.

17.     The next county-wide election will perhaps take place in the June 2018, and that will be the primary election.  If there is not a primary election, then the next county-wide election will be in November of 2018.

**Plaintiffs' Response:** Disputed because a state or local special election could be called before then pursuant to Utah Code 20A-1-203 and 20A-1-204.

**Rebuttal:** Objection.  Speculation.

18.     Meanwhile the County's Navajo liaison, Mr. Ed. Tapaha, will be retiring in August of 2017.  However, it is both the County's and Clerk/Auditor's intention to continue that position.

**Plaintiffs' Response:** Undisputed that Mr. Tapaha has said he will retire.

**Rebuttal:** None necessary.

**IV.      DOJ Tacit Approval of County Election Procedures**:

In their *Motion*, Defendants proffered the following facts to demonstrate that the U.S. Department of Justice ("DOJ") tacitly found that the election procedures used in San Juan County elections comply with the *VRA*, including the language assistance requirements of Section 203, 52 U.S.C. §10503, as well as the *Equal Protection Clause*, having monitored County elections for over 30 years, and specifically having investigated and monitored the 2014 and 2016 elections, respectively, at the request of Plaintiff, Navajo Human Rights Commission:

1.      In 1983, the DOJ sued San Juan County to enforce the requirements of §10503. That suit resulted in a *Consent Decree* whereby DOJ representatives were present during an election cycle to monitor the Clerk/Auditor's Navajo voter's language assistance program.

**Plaintiffs' Response:** Undisputed.

**Rebuttal:** None necessary.

2.      That monitoring continued until 2002.  According to Norman Johnson, who was the County Clerk/Auditor during most of this monitoring period, the DOJ did not require the Clerk/Auditor to translate ballots into the Navajo language, "but we had to have judges that were bilingual enough to present the [ballot] information to the voter if they asked."  Throughout the period of this monitoring for compliance with the language assistance requirements of §10503, the DOJ never informed San Juan County that it had violated that law.

**Plaintiffs' Response:** Undisputed, but immaterial.

**Rebuttal:** None necessary.

3.      In early October of 2015, San Juan County Attorney, Kendall G. Laws, received a telephone call from Victor Williamson of the United States Department of Justice.  Mr. Williamson informed Mr. Laws that he was with the DOJ's Voting Rights Section.

**Plaintiffs' Response:** Undisputed, but immaterial.

**Rebuttal:** None necessary.

4.      At the request of and on the behalf of the Navajo Human Rights Commission, Mr. Williamson wanted to come to San Juan County and meet with County Officials regarding the vote-by-mail procedures that the Clerk/Auditor had implemented for the 2014 election cycle.

**Plaintiffs' Response:** Undisputed, but immaterial.

**Rebuttal:** None necessary.

5.      On October 29, 2015, Mr. Laws, John David Nielson, James Francom, Ed Tapaha and Norman Johnson met with Mr. Williamson and his DOJ staff to review the Clerk/Auditor's 2014 election procedures.

**Plaintiffs' Response:** Undisputed, but immaterial.

**Rebuttal:** None necessary.

6.      John David Nielson is the County Clerk/Auditor, James Francom is the Deputy Clerk/Auditor, Ed Tapaha is the County's liaison with the Navajo Nation, and Norman Johnson is the former Clerk/Auditor.

**Plaintiffs' Response:** Undisputed.

**Rebuttal:** None necessary.

7.      During that meeting, Mr. Laws learned from Mr. Williamson that he and his staff had earlier met with members of the Navajo Human Rights Commission.

**Plaintiffs' Response:** Undisputed.

**Rebuttal:** None necessary.

8.      From his conversation with Mr. Williamson and his staff following that meeting with the County officials, both Mr. Laws and Mr. Nielson came to understand that the DOJ did not consider the Clerk/Auditor's vote-by-mail system as implemented for the 2014 elections (and the 2015 municipal elections) to be contrary to law or otherwise failed to meet the Clerk/Auditor's obligation to provide bilingual voting assistance to Navajo voters.

**Plaintiffs' Response:** Disputed as immaterial and inadmissible hearsay.

**Rebuttal:** "Hearsay" is offering the out-of-court statements of a third-party who is not an agent or co-conspirator as proof of the matter asserted in the statement.[48] Mr. Laws and Mr. Nielson's understanding of the results of their meeting with the DOJ officials is not hearsay. Furthermore, those DOJ representatives were acting on behalf of Plaintiff Navajo Human Rights Commission,[49] which means that statements by those DOJ officials are the admissions of an agent.[50]

9.      Mr. Williamson, however, did inform Mr. Laws that the DOJ would continue watching the way in which the mail-in-voting system affected County residents and particularly its Navajo citizens.

Plaintiffs' Response: Disputed as immaterial and inadmissible hearsay.

**Rebuttal:** This is not hearsay. *See* response to paragraph 8 above.

10.     As a consequence of that meeting, the San Juan Clerk/Auditor began to consider making changes to improve the vote-by-mail system to better serve Navajo voters by adding three in-person polling locations on the Navajo Reservation as well as language assistance to Navajo voters.

**Plaintiffs' Response:** Disputed as immaterial and because there is no evidence that Mr. Nielson's decision was communicated in any way to his staff, the County commissioners, or any

---

[48]  *See Fed. R. Evid.* 801(c).

[49]  *Nielson Dec.*, Dkt. 62, ¶ 17.

[50]  *See Fed. R. Evid.* 801(2)(D).

other person until after the Complaint was filed.

**Rebuttal:** The San Juan County Attorney, Kendall Laws, and the Clerk/Auditor, both said that following their meeting with representative of the DOJ in October of 2015, San Juan County began to consider making changes to improve the vote-by-mail system by adding three in-person polling locations on the Navajo Reservation, and that the final decisions as to the locations of the three additional polling locations was made on or before February 16, 2016.[51]

11.     The final decision as to the locations of the three additional polling places was made on or before February 16, 2016.

**Plaintiffs' Response:** Disputed because the County's first public communication about its decision to reopen three polling locations was a press release issued on March 9, 2016.

**Rebuttal:** *See* response to paragraph 10 above.

12.     Mr. Laws next heard from Mr. Williams when he called Mr. Laws shortly before the June 28, 2016 county-wide primary election.  During that conversation, Mr. Williamson told Mr. Laws that, again at the request of and on behalf of the Navajo Human Rights Commission, the DOJ had been asked to review the changes that the Clerk/Auditor had made to its 2014 vote-by-mail procedures.

**Plaintiffs' Response:** Disputed as immaterial and inadmissible hearsay.

**Rebuttal:** This is not hearsay. See response to paragraph 8 above.

13.     Thereafter, several investigators from the DOJ came to San Juan County to review the new vote-by-mail procedures.  Mr. Laws along with John David Nielson and Kelly Pehrson,

---

[51] *Laws Dec.*, Dkt 109, ¶¶ 7 through 13; *Nielson Dec.*, Dkt. 62, ¶¶ 19 through 21.

San Juan County's Chief Administrative Officer, met with the DOJ investigators on Monday, June 27, 2016, the day before the primary election.[52]

> **Plaintiffs' Response:** Disputed as immaterial and inadmissible hearsay.

> **Rebuttal:** This is not hearsay. *See* response to paragraph 8 above.

14.     During that meeting, Mr. Laws and the other County representatives explained to the DOJ investigators the procedures that were being used for that primary, including three new on-reservation polling locations and the language assistance that was to be provided at those locations.

> **Plaintiffs' Response:** Disputed as immaterial and inadmissible hearsay.

> **Rebuttal:** What Mr. Laws and Mr. Nielson said to the DOJ officials is not hearsay. *See* response to paragraph 8 above.

15.     Mr. Laws and the other County officials also explained to the DOJ investigators that the County was constantly working to improve its vote-by-mail procedures based upon what it had learned from each election, and would continued to do so.

> **Plaintiffs' Response:** Disputed as immaterial and inadmissible hearsay.

> **Rebuttal:** What Mr. Laws said to the DOJ officials is not hearsay. *See* response to paragraph 8 above.

16.     The DOJ investigators said that they were comfortable with that approach, and also made it clear to Mr. Laws that if they determined that any changes in the vote-by-mail procedures were in violation of the law, they would let the County know.

---

[52] *Id.* at ¶ 15.

**Plaintiffs' Response:** Disputed as immaterial and inadmissible hearsay.

**Rebuttal:** This is not hearsay. *See* response to paragraph 8 above.

17.　　The County has not received any notification from the DOJ that its vote-by-mail election procedures do not fully comply with the *Voting Rights Act*.

**Plaintiffs' Response:** Disputed as inadmissible, and inadmissible hearsay.

**Rebuttal:**　This is not hearsay. *See* response to paragraph 8 above.

18.　　On election day, November 8, 2016, Mr. Williamson and members of his staff were present at the Navajo Mountain, Oljato and Montezuma Creek polling locations to observe the Clerk/Auditor's voting procedures during the general election.

**Plaintiffs' Response:** Disputed as immaterial and lacking evidentiary support.

**Rebuttal:** The Clerk/Auditor has sworn to these facts,[53] and Plaintiffs proffer no evidence to contradict the Clerk/Auditor's statements.

19.　　As was the case with respect to the DOJ's October, 2015, visit to San Juan County to review the 2014 election procedures and the DOJ's monitoring of the 2016 primary election, neither Mr. Williamson, nor any of the DOJ election-day observers, has notified the County, either on the day of the election or subsequent thereto, that the Clerk/Auditor's election procedures, including the provision of language assistance to Navajo voters, did not comply with the requirements of the *Voting Rights Act* and/or the *Equal Protection Clause*.

**Plaintiffs' Response:** Disputed as immaterial and lacking evidentiary support.

---

[53] *Id.* at ¶ 25.

**Rebuttal:** The Clerk/Auditor has sworn to these facts,[54] and Plaintiffs proffer no evidence to contradict the Clerk/Auditor's statements.

<u>**RESPONSES TO PLAINTIFFS' ADDITIONAL STATEMENT**</u>
<u>**OF ELEMENTS AND FACTS**</u>

Set out below are the additional facts proffered by Plaintiffs in opposition to Defendants' *Motion for Summary Judgment*, with each fact followed by Defendants' response.

1.     In 2014, San Juan County officials closed all polling places, except the County Clerk's office in Monticello, and implemented a vote-by-mail election system.

**Response:** Undisputed.  But irrelevant.

2.     In September, 2015 NNHRC and the Lawyers' Committee for Civil Rights Under Law, in partnership with the American Civil Liberties Union, sent letters opposing the mail-only plan and closure of polling sites to San Juan County.

**Response:** Undisputed.  But irrelevant.

3.     In his September 17, 2015 response to this letter, the County Clerk stated the County would not reconsider opening any polling places for the upcoming elections.

**Response:** Undisputed.  But irrelevant.  Furthermore, as has been previously shown that letter from the Clerk/Auditor was written prior to the October of 2015 meeting between him and representatives from the DOJ, which resulted in the Clerk/Auditor's decision to open three on-Reservation polling locations for future elections.

4.     On February 25, 2016, having received no written commitment from the County

---

[54]  *Nielson Dec.,* Dkt. 141-2, ¶ 19.

to reopen polling places, Plaintiffs filed their Complaint.

**Response:** Undisputed.  But irrelevant.

5.      The Clerk-Auditor testified that he could make decisions regarding changes in election administration without approval of the County Commission.

**Response:** Undisputed.

6.      Utah Election Code provides that "[a]n individual who is registered to vote may vote before the election date" and that the "voting period shall [ ] begin on the date that is 14 days before the date of the election." Utah Code § 20A-3-601(1)-(2). Voting is conducted for a "minimum of four days during each week" for local special elections and primary and general municipal elections; for all other elections, voters can cast their ballots early any weekday.

**Response:** Disputed.  Counties conducting elections with mail-in-ballots are not required to have any polls open for early voting.[55]  In addition, mail-in-ballots afforded all voters, both Navajo and non-Indians, almost a month in which to vote early.  In fact, the Clerk/Auditor's Office considers vote-by-mail to be early voting.[56]

7.      Utah Election Code § 20A-3-603 further requires election officers to "designate one or more polling places for early voting."

**Response:** Disputed.  *See* response to paragraph 6 above.

8.      San Juan County provides early in-person voting only in the county clerk's office in Monticello.

---

[55]  *See* UCA §20A-3-605(3).

[56]  *Francom Depo*., p. 14, Dkt. 109.

**Response:**  Disputed.  *See* response to paragraph 6 above.

9.      In addition to having extra days to cast a ballot in-person, the location of in-person voting in Monticello provides a number of other benefits including the ability to request a ballot or help troubleshooting a problem.

**Response:** Undisputed.  However, as has been previously shown, Ed Tapaha, San Juan County's liaison with the Navajo Nation, provides the same service during his routine visits to Navajo Nation Chapter Houses.

10.      The Office Manager for San Juan County has explained "the advantage of having a polling location in our office is that we were able to resolve any of those [voting related] issues in our office."

**Response:** Undisputed.

11.      Navajo citizens in San Juan County must travel, on average, three times the distance and three times the time that white citizens must travel to reach the Monticello location to vote early in-person, or to get assistance.

**Response:** Disputed.  *See* response to paragraphs 6 and 9 above.  Defendants also object to this asserted fact insofar as it is based upon the unsworn "Expert Report" of Gerald R. Webster, which is hearsay.

12.       This means that Navajo citizens must travel, on average, over two hours longer round-trip, and 94 miles farther round-trip than white citizens to take advantage of in-person early vote opportunities or to get assistance.

**Response:**  Disputed.  See response to paragraphs 6 and 9 above.  Defendants also object

to this asserted fact insofar as it is based upon the unsworn "Expert Report" of Gerald R. Webster, which is hearsay.

13.     This past general election, Mr. Whitehat, who has a preference for voting in-person, had just a small window during which he could vote, because his father had an operation in Flagstaff, Arizona scheduled on Election Day and because the only satellite office offering in-person early voting is approximately five hours away in Monticello.

**Response:** Disputed.  Mr. Whitehat has historically voted by absentee ballot, which is a mail-in-ballot.[57]  Mr. Whitehat's preference for in-person voting, even if true, is irrelevant.

14.     San Juan County is a covered jurisdiction under Section 203 of the VRA for the Navajo language.

**Response:** Undisputed.

15.     In their Answer and other filings, the County promised to provide radio announcements on Navajo language radio stations regarding the election for the 2016 election cycle.

**Response:** Undisputed.

16.     The County failed to provide radio announcements regarding voting procedures on Navajo language radio stations in advance of the 2016 primary.

**Response:** Undisputed.

17.     The Defendants have stated that the failure to provide radio announcements regarding the primary election was due to a "communication" problem within the San Juan

---

[57] *Francom Depo.*, p. 14, Dkt 109.

County Clerk's office.

      **Response:** Undisputed.

      18.    Some Navajo residents of San Juan County who do not speak or read English did not recognize their ballot, or mistook their mail-in ballot for junk mail and failed to vote.

      **Response:** Objection, irrelevant.  In addition, Defendants object to this asserted fact insofar as it is based upon the unsworn "Expert Report" of Dr. Dan McCool, which is hearsay.

      19.    A state or political subdivision covered by Section 203 of the *Voting Rights Act* is responsible for providing the appropriate language assistance and "furnish[ing] oral instructions, assistance, or other information relating to registration and voting," in the case of unwritten languages.

      **Response:** Undisputed.

      20.    In 2014, when the County moved to a vote-by-mail system, Mr. Johnson, the former County Clerk, acknowledged that the County "relied a lot on families to help people out" by "[e]xplaining the ballot, explaining what was on the ballot, what offices were being voted for."

      **Response:** Undisputed.  Furthermore, that is apparently what happened.[58]  More importantly, as the Court has noted this is consistent with the regulations implementing the *Voting Rights Act*, which recognizes "**the ability of a voter to be assisted by a person of his or her own choice**" as a factor to be considered in evaluating the effectiveness of language

---

[58] *See, e.g., Charley Aff.*, ¶ 5, Dkt. 144-13(Voted by mail-in-ballot with the assistance of her son); *Farley Aff.*, ¶ 13, Dkt. 144-11(Voted by mail-in-ballot with assistance of her son).

assistance.[59]

21.     Mr. Johnson, the former County Clerk, acknowledged that these tasks were "something [his] office would have taken care of in the past," but that "after [the County] went to mail in ballots that was something you expected the family to do."

**Response:** Undisputed. *See also* response to paragraph 20 above.

22.     Ed Tapaha, the Navajo liaison for the County Clerk's office, has stated that young Navajos, who are more likely to speak English and less likely to speak Navajo, would have difficulty translating election materials.

**Response:** Undisputed.

23.     Tapaha has also explained that translating election materials is quite challenging.

**Response:** Disputed.  Mr. Tapaha said that translating legal terms into Navajo can be challenging.

24.     Mr. Jimmy Charley, a member of the Navajo Nation and resident of San Juan County, attempted to translate the 2016 general election ballot for his mother who does not speak English, but struggled to explain some of the provisions on the ballot.

**Response:** Objection, irrelevant.  In addition to Mr. Tapaha's visits to the Navajo Chapter Houses where he explained the ballot, there was an audio recording of the ballot on the County's website and at each Navajo Chapter House, and interpreters at all four polling locations.

25.     At least one Navajo voter who required language assistance to vote was uncomfortable asking for and getting the assistance she needed, as the only interpreter was

---

[59]  *See* 28 C.F.R. §55.20(c).(emphasis added).

preoccupied.

**Response:** Objection, irrelevant.  This particular voter was Jenny Crank, who states under oath that "I am proficient in English. . . "; but "didn't recognize the ballot when I received it in the mail and thought it was junk mail"; and prefer "to vote in person because I want to make sure that my ballot is counted."[60]

26.     Mr. Tapaha provides translation services for the County, but his translations are not reviewed by a trained translator or anyone employed by the County.

**Response:** Undisputed, but irrelevant.  The reasonably effective standard by which Section 203 language assistance is to be judged "does not demand perfection, but only" something akin to "substantial compliance".[61]  In short, as the Court noted, compliance with Section 203(c) "is best measured by results,"[62]

27.     Plaintiffs Mabel and Willie Skow do not speak English and requested language assistance when they voted in person during the 2016 general election.

**Response:** Undisputed for purposes of this *Motion*.

28.     The language assistance the Skows received did not help them understand what was on the ballot.

**Response:** Objection, conclusory.  Mr. and Mrs. Skow's *Affidavits* are also among those

---

[60]  *Crank Aff.*, Dkt 144-9, ¶ ¶ 4-6.

[61]  *See Memorandum Decision*, Dkt. 129, p. 28(quoting *U.S. v. Sandoval City, N.M.*, 797 F. Supp. 2d 1249,1253-54(D.N.M. 2011).

[62]  *See id.* at p. 34.(quoting 28 C.F.R. § 55.16).

that Defendants have asked to be stricken and not considered by the Court for lack of foundation. More importantly, however, of the 1992 people who voted during the 2016 General Election from the on-Reservation precincts, Plaintiffs have only presented the Court with *Affidavits* from four people who complain about language assistance, three of whom are Plaintiffs,[63] including Mr. Jones who is obviously proficient in English but "feels more comfortable voting in Navajo."[64]

29.    Because Mr. Skow did not understand the ballot, he did not cast votes for most of the positions on the ballot for the 2016 general election.

**Response:** Objection.  Mr. Skow's *Affidavit* is among those that Defendants have asked to be stricken and not considered by the Court for lack of foundation.

30.    Plaintiff Wilfred Jones requested language assistance when he went to vote in the 2016 general election as Navajo is his first language.

**Response:** Undisputed for purposes of this *Motion*. However, Mr. Jones is one of the Plaintiffs which makes his "*Affidavit*" highly suspect, especially given the fact that he purports to not have known that voting was taking place at Montezuma Creek on the day of the 2016 General Election; that he claims that Navajo is his first language and therefore prefers to vote in Navajo which is not only a unwritten language but Mr. Jones' *Affidavit* is entirely in English and

---

[63]   *See Aff.* Willie Skow, Dkt. 144-17; *Aff.* Mabel Skow, Dkt. 144-16; *Aff.* Wilfred Jones, Dkt. 144-5; *Aff.* Jenny Crank, Dkt. 144-9.

[64]   *Aff. Jones*, Dkt. 144-5,

signed by him;[65] and that he is apparently confusing the 2016 General Election with the Navajo

Nation's election that took place that same day.[66]  It is likewise noteworthy that as Plaintiffs Mr.

Jones, Mr. Skow and Ms. Skow would have known that there was an audio recording on the

County's website, at each of the Navajo Chapter Houses and at the poll, yet they do not ask to

listen to any of those recordings.

      31.     The interpreter at the Montezuma Creek polling place who assisted Mr. Jones did

not interpret the entire ballot for him, could not explain to Mr. Jones which were the County and

which were the State elections and propositions on the ballot, and told Mr. Jones to "turn in [his]

ballot as is" if he did not "know about a particular portion of the ballot."

      **Response:**  *See* response to paragraph 30 above.

      32.     Because the interpreter could not answer Mr. Jones' questions or provide a full

translation, Mr. Jones did not vote for the propositions on the ballot and did not vote for officials

because he could not identify which race was for a County or State position.

      **Response:** *See* response to paragraph 30 above.

      33.     Plaintiffs' Navajo language expert identified various deficiencies in the County's

posted sample ballot translation and the County's general election information found on their

website. These problems varied from relatively small, like a confusing translation of the word

"computer," to entirely problematic, like not being able to understand the general election

translation.

---

[65] *Jones Aff.*, Dkt 144-5, ¶ 7.

[66] *Fourth Nielson Dec.*, Dkt. 151-2,¶ 17.

**Response:** Objection.  Defendants object to this asserted fact insofar as it is based upon the unsworn "Expert Report" of Ms. Manygoats, which is hearsay.

34.     Many residents of San Juan County are unable to get their mail on a regular basis.

**Response:** Objection. Defendants object to this asserted fact isofar as it is based upon the unsworn "Expert Reports" of Dr. Dan McCool, which are hearsay.  It is likewise irrelevant because, even if true, it would apply equally to Navajo as well as non-Indians living in remote sections of San Juan County.

35.     Many mail-in ballots are returned due to a high percentage of undeliverable addresses in the County.

**Response:** Undisputed, but irrelevant.  People move and do not notify the Clerk/Auditor's Office of their new addresses.  Besides, this is true for both Navajo and non-Indian residents of San Juan County.

36.     In order to travel in the remote parts of the County, a person must often use dirt tracks and unpaved roads that may be impassible in inclement weather, especially for the general election in the fall.

**Response:** Undisputed.  It is further noteworthy that this is true for both Indian and non-Indian voters, the majority of whom live in remote-rural portions of the County.

37.     Some voters never received their ballot in the mail for the 2016 election, and other people have received their ballots after an election was over.

**Response:** Objection, irrelevant. Dr. McCool's *Report*, upon which this fact is based, was

45

prepared on August 18, 2015,[67] which was over a year PRIOR to the 2016 General Election!

However, even if true, both Indians and non-Indians would not have received ballots in the mail

for any number of reasons, including having moved and not notified the Clerk/Auditor's Office

of their change of address or mistakenly thinking the ballots were junk mail, like Ms. Crank.[68]  In

addition, Defendants object to this asserted fact insofar as it is based upon the unsworn "Expert

Report" of Dr. Dan McCool, which is hearsay.

38.    Some mail routes through San Juan County have multiple stops, meaning it may

take several days for a ballot from a remote part of the County to reach the point in the mail

system where it is actually postmarked.

**Response:** *See* response to paragraph 37 above.

39.    Some of the ballots the County rejected from the 2016 primary had postmarks

from Phoenix, Arizona, and Albuquerque, New Mexico.

**Response:** Undisputed, but irrelevant.

40.    On November 8, 2016, the Oljato Senior Center ran out of paper ballots by 10:00

AM.

**Response:** Undisputed.  However, the ballot shortage was due to the extraordinary voter

turnout, which was almost 70% for the on-Reservation precincts.[69]  More importantly, however,

---

[67] *See* Dkt. 94-5, ¶ 3.

[68] *See Crank Aff.*, ¶ 4, Dkt. 144-9.

[69] *See Second Francom Dec.*, Dkt. 151-3, ¶ 9.

voting continued via electronic means.[70]

41.     On November 8, 2016, voters experienced long lines at the Oljato Senior Center.

**Response:**  Undisputed.  It is also noteworthy that voters would not have encountered this problem if they had opted to vote-by-mail rather than in-person.  Lines at the polls, even long lines, are not only common but, in the instant case, they show how successful the Clerk/Auditor's Office was in educating-assisting Navajo voters with respect to the 2016 General Election.  For example, in the November 8, 2016 General Election, the voter turn-out for the Navajo Nation electionsand the nationwide turnout for the 2016 Presidential Election was 55.4%;[71] whereas the 2016 General Election voter turn-out for the San Juan County on-Reservation precincts was 69.68%.[72]

42.     Almost 54% of the County's registered voters do not have a street address and many residents therefore rely on post office boxes to receive their mail.

**Response:** Undisputed.  But again, these residents without street addresses include both Navajo and non-Indians.

43.     There is a shortage of post office boxes in Oljato and Monument Valley, meaning some residents without a home mailing address are also unable to get a post office box in San Juan County.

---

[70] *See Fourth Nielson Dec.*, Dkt. 151-2, ¶¶ 7-9.

[71] http://www.cnn.com/2016/11/11/politics/popular-vote-turnout-2016/

[72] *Second Francom Dec.*, Dkt.151-3, ¶ 9.

**Response:** Undisputed.

44.      Some residents in the remote areas of San Juan County may have to drive 30 or 40 miles – and cross state lines – just to get their mail.

**RESPONSE:** Defendants object to this asserted fact insofar as it is based upon the unsworn "Expert Reports" of Dr. Dan McCool, which are hearsay.  In addition, it is irrelevant that both Navajo and non-Indian residents of San Juan County receive their mail at Post Offices located in an adjoining state or have to drive 40 miles to that Post Office.

45.      Navajo residents live, on average, more than twice as far from the nearest post office than white voters.

**Response:** Defendants object to this asserted fact insofar as it is based upon the "Expert Report" of Gerald Webster, which is hearsay.

## ARGUMENT: THE 2014 ELECTION PROCEDURES ARE NO LONGER RELEVANT

Despite the fact that they never amended their claims to take into account the procedures put into place in 2016, Plaintiffs concoct an attenuated argument asserting that the County's 2014 procedures are properly before this Court.   These assertions, however, fly directly in the face of the undisputed facts, as well as this Court's analysis in denying Plaintiff's *Motion for Preliminary Injunction*.

The relief sought in this case is entirely prospective injunctive relief.  Plaintiffs have not controverted the County Clerk's declaration that, while the County continually reviews its election procedures to improve the election process, the 2016 procedures are the current election procedures for the County, and indicating no intention to return to the 2014 procedures.  This

Court's memorandum supporting its denial of Plaintiffs' preliminary injunction motion acknowledged the focus on the 2016 procedures.[73]

Nevertheless, without any evidence to support the assertion, Plaintiffs tie their case to a presumption that the County could return to the 2014 procedures.  However, by making such an assertion, Plaintiffs ask this Court to decide a hypothetical issue that is NOT a justiciable case or controversy.[74]   This Court should reject Plaintiffs' invitation to entertain such a claim.[75]

## ARGUMENT: THE 2016 ELECTION PROCEDURES DO NOT VIOLATE SECTION 2 OF THE *VOTING RIGHTS ACT*

Plaintiffs' oppose the County's 2016 election procedures by focusing entirely on an the lack of early voting locations other than at the County Clerk's Office in Monticello, which they contend  is not as proximate or convenient to Navajo voters *on average*.  In doing so, however, Plaintiffs ignore the fact that there is no constitutional right to early voting,[76] or to voting in-person.[77]  In fact, courts have consistently held that there is no constitutional right to any

---

[73] *Memorandum Decision and Order*, Dkt. 129, p. 10.

[74] U.S. Constitution, Article III, Sec. 2, cl. 1.  *See generally Lujan v. Defenders of Wildlife*, 504 U.S. 555, 573-74 (1992)(noting that, as an element of standing, "a plaintiff claiming only a generally available grievance about government, unconnected with a threatened concrete interest . . . does not state an Article III case or controversy"); *Los Angeles v. Lyons*, 461 U.S. 95, 101-102 (1988)(noting, in the context of standing, there must be an actual injury or threat of an injury that is both "real and immediate" and not "'conjectural" or "hypothetical").

[75] The changes implemented for 2016 were expressly undertaken to improve access to in-person voting on the Navajo Reservation, notwithstanding the fact that the DOJ expressly reviewed the 2014 procedures and never notified the County of any concerns or problems noted.

[76] *Ohio Democratic Party,* 2016 WL 4437605 at *1 (6th Cir. Aug. 23, 2016).

[77]*Indiana Democratic Party v. Rokita*, 458 F. Supp. 2d 775, 813 & n.56 (S.D. Ind. 2006).

particular method of voting, so long as the right to vote is not denied or fundamentally abridged.[78]  Plaintiffs also ignore the fact that counties conducting elections with mail-in-ballots are not required to have any polls open for early voting.[79]  In addition, mail-in-ballots afforded all voters, both Navajo and non-Indians, almost a month in which to vote early.  And while it is true that having the Clerk/Auditor's Office available for early in-person voting  provides a number of benefits including the ability to request a ballot or help trouble shooting a problem, Ed Tapaha, San Juan County's liaison with  the Navajo Nation, provides the same service during his routine visits to Navajo Nation Chapter Houses.

Furthermore, a challenge to election procedures is not properly analyzed by such a focus on any isolated aspect of the election process.   Rather, Section 2 explicitly provides that the question of whether a jurisdiction's election process disparately burdens a protected group and thereby provides them less opportunity to vote must be made by considering the "totality of the circumstances,"[80] which means that particular aspects of the election process, such as the availability of in-person early voting locations must be considered in the context of  "the entire voting and registration system."[81]  Thus, the consideration of the "totality of the circumstances"

---

[78]  *See The ACLU of New Mexico v. Santillanos*, 546 F.3d 1313, 1319 (10th Cir. 2008)*; Ohio Democratic Party v. Husted*, No. 16-3561, 2016 WL 4437605, at *7 (6th Cir. Aug. 23, 2016).  *See generally Griffin v. Roupas*, 385 F.3d 1128, 1130 (7th Cir. 2004), *cert. denied*, 544 U.S. 923 (2005).

[79]  *See* UCA §20A-3-605(3).

[80]  52 U.S.C. 10301(b).

[81]  *See Frank v. Walker*, 768 F.3d 744, 751-55 (7th Cir. 2014).

must take into account whether an arguably disparate impact of a particular aspect of the system is overcome through the interaction of different aspects of the election procedures as a whole.

San Juan County's election procedures, and particularly the opportunity to vote by mail, rather than in person, together with the opening of in-person polling locations solely on the Reservation, afford at least equal, if not greater, opportunity for Navajo voters to participate in the election process, notwithstanding the lack of multiple early voting locations or even a greater distance or more difficult travel conditions.  The opportunity to vote by mail overcomes these potential burdens by giving voters the opportunity to (1) to consider and cast their ballots over a longer period of time of an individual voter's choosing; (2) investigate the issues and candidates, and seek guidance about questions either from the County or through other individuals of the voter's own choice, over a longer period of time; (3) eliminate the need to personally travel to a polling location, or even to personally travel to a post office to return a ballot by mail; and (4) for those who may not be English-proficient, to seek language assistance, either from the County resources (including the availability of an interpreter by telephone before and during the voting period) and/or friends and family.

### ARGUMENT: THE COUNTY PROVIDES EFFECTIVE LANGUAGE ASSISTANCE

Plaintiffs' argument that the County has violated the requirement to provide language assistance to Navajo voters with limited English proficiency under Section 203 of the *Voting Rights Act* [82] is based on statements from a small number of Navajo voters.  More fundamentally, however, those statements do not establish that the County's language assistance efforts were not

---

[82] 52 U.S.C. § 10503(c).

reasonably effective, especially in light of the 69.68% voter turnout from the on-Reservation precincts during the 2016 General Election.   Those statements, even if true, also fail to establish any systemic problem with the language assistance efforts of the County, which this Court has already noted go beyond the statute's requirements for a traditionally unwritten language.[83] Moreover, the complaints leveled at the County's assistance efforts in many cases reflect more a lack of voter preparation for participate in the process than a defect in the language assistance availability and process.

Since the filing of this lawsuit, Plaintiffs have engaged in a process of ever-shifting, but always increasing, demands for adjustments to conform to someone's latest concept of an ideal voting and language-assistance system.   Moreover, these demands are made without the issue of alleged ineffectiveness of the language assistance ever having been raised with the County before the filing of this suit, and are made without any indication of a desire to work with the County to develop a system that might better meet the needs of Navajo voters with limited English proficiency.

All of this flies in the face of the fact that the standard for compliance with Section 203 of the *Voting Rights Act* is actual reasonable effectiveness, not perfection or proximity to someone's perception of what an ideal system of language assistance can or ought to be.[84]   The County has consistently provided translations of the ballot, both with audio recordings and by having Navajo

---

[83] *Memorandum Decision and Order*, Dkt. 129, pp. 29-32.

[84] *See U.S. v. Sandoval Cty.*, 797 F. Sup. 2d 1249, 1253-54 (D.N.M. 2011). Significantly, Plaintiffs' assertions about the supposed ineffectiveness of the County's language assistance is devoid of any citation of legal authority.

interpreters available at polling places, as well as reaching out to Navajo voters through print and radio announcements, as well as sending the County's Navajo liaison, Mr. Ed Tapaha, to chapter meetings to register voters, and to explain the election process, including the vote-by-mail system.  This Court has acknowledged that these efforts go beyond those required by the statute.[85]

**ARGUMENT: THE COUNTY'S ELECTION SYSTEM DOES NOT VIOLATE THE EQUAL PROTECTION CLAUSE**

Plaintiffs' argument that San Juan County's election process violates the *Equal Protection Clause* is curious indeed.   They argue against a vote-by-mail process on the grounds that mail service on the Navajo Reservation is unreliable, but without a shred of evidence that it is more unreliable than in any other rural area of San Juan County.  They also assert "concern" about a high number of mailed ballots returned as undeliverable, but without establishing that this impedes the ability of eligible voters to participate in County elections.   Such claims are particularly attenuated when considered in the context of a system that provides in-person voting opportunities for all voters who may choice not to vote by mail.  Plaintiffs claim that, due to the asserted problems and delay related to mail delivery, "rural residents" are provided less time to vote, despite the fact that the mail-in ballot system provides more time for all voters than is provided under an in-person voting system, even if multiple early voting locations were to be provided.

Surprisingly, Plaintiffs argue that the County has failed to provide any evidence that its

---

[85] *Memorandum Decision and Order*, Dkt. 129, pp. 29-32.

election process does not unduly burden rural residents' right to vote.  However, it is Plaintiffs

who bear the burden of establishing that such a burden actually exists.  Perhaps the most

puzzling portion of Plaintiffs' opposition "facts" is their assertion that long lines and delays,

either to vote or to receive language assistance, at polling places during the 2016 election

demonstrate some kind of impermissible burden on Navajo voters' right to vote.  However, such

problems were extensive throughout the country on November 8, 2016.   Morever, Plaintiffs have

provided no evidence that the County intentionally denied any voter the opportunity to cast a

ballot if they wished to do so.

The fact that some voters may have decided not to wait in those lines is not a problem

created by the County's system, but a personal decision not to take advantage of the opportunity

to vote.  Significantly, the existence of the long lines, ballot shortages, and other election-day

problems at polling places on the Navajo Reservation demonstrate that Navajo voters were both

well aware of the County's new election procedures, including the availability of in-person

voting locations on the Navajo Reservation and took advantage of them.[86]

## ARGUMENT: PLAINTIFFS ARE NOT ENTITLED TO ANY INJUNCTIVE RELIEF, WHICH IS ALL THAT THEY SEEK IN THEIR COMPLAINT

The final section of Plaintiffs' *Opposition Memorandum* sets forth an argument as to why

they are entitled to injunctive relief in this case and that is: someday, the Clerk/Auditor may

return to the 2014 election procedures.  Such an argument, however, not only does not meet the

---

[86]  It should also be noted that the ability to use the mail-in ballot option provides all voters in the County the opportunity to avoid any waiting in lines at polling places on election day.  Moreover, a person's decision not to vote by mail does not establish that the County burdened their right to vote.

requirement of imminent certain injury, but it has already been rejected by the Court.[87]

Plaintiffs are also asking that the Court order San Juan County Defendants to "provide audio translations in Navajo of the voter services website, the voter registration form, the ballot, and other voter information."[88]  But as the Court has noted, the Clerk/Auditor is "only required to furnish oral instructions, assistance or other information relating to registration and voting,"[89] and that the Clerk/Auditor clearly did.  Furthermore, although the Clerk/Auditor was not required to provide scripts, recorded audio translations, or even formal training to translators working the polls, he did.  In a nutshell, either because of their lack of an irreparable injury or mootness, the injunctive relief sought by Plaintiffs is not available under these circumstances since the Clerk/Auditor's election procedures provide more and far better relief than Plaintiffs have asked for in their *Complaint*,[90]  which procedures were adopted by the Clerk/Auditor prior to Plaintiffs having commenced this lawsuit.

## CONCLUSION

San Juan County Defendants are entitled to summary judgment on all of the claims alleged by Plaintiffs in their *Complaint*.  In addition, San Juan County Defendants are also

---

[87]  *See Memorandum Decision and Order*, Dkt. 129, p. 10.

[88]  *Id.*

[89]  *Memorandum Decision and Order*, Dkt. 129, p. 30 (quoting 52 U.S.C. § 10503(c)).

[90]  With respect to Plaintiffs' request for an injunction, they are confined to the allegations of their *Complaint*. *See First Health Grp. Corp. v. Nat'l Prescription Adm'rs, Inc.*, 155 F. Supp. 2d 194, 233 n.10 (M.D. Pa. 2001).  Further, when a challenged practice has been discontinued, a claim for injunctive relief will be moot.

entitled to summary judgment on the *First Counterclaim* which seeks a declaration that the

Clerk/Auditor's 2016 vote-by-mail procedures do not violate either the *Constitution* or the *Voting*

*Rights Act* and, therefore, can be used by the Clerk/Auditor in conducting future elections.[91]

DATED this 3rd day of April, 2017.

SUITTER AXLAND, PLLC

 /s/ jesse c. trentadue
Jesse C. Trentadue
Carl F. Huefner
Britton R. Butterfield
*Attorneys for Defendants*

---

[91] *Amended Counterclaim,* Dkt. 74, ¶¶ 126-135.

56

**CERTIFICATE OF SERVICE**

I hereby certify that on the 3rd day of April, 2017, I electronically filed the foregoing

document with the U.S. District Court for the District of Utah.  Notice will automatically be

electronically mailed to the following individual(s) who are registered with the U.S. District

Court CM/ECF System:

| | |
|---|---|
| John Mejia (Bar No. 13965)<br>Leah Farrell (Bar No. 13696)<br>American Civil Liberties Union of Utah<br>355 North 300 West<br>Salt Lake City, UT 84103<br>T: (801) 521-9862<br>jmejia@acluutah.org<br>lfarrell@acluutah.org<br>*Attorneys for Plaintiffs* | Ezra D. Rosenberg<br>M. Eileen O'Connor<br>Arusha Gordon*<br>Lawyers' Committee for Civil Rights Under Law<br>l401 New York Ave., Suite 400<br>Washington, D.C. 20005<br>T: (202) 662-8600<br>erosenberg@lawyerscommittee.org<br>eoconnor@lawyerscommitee.org<br>agordon@lawyerscommittee.org<br>*Attorneys for Plaintiffs* |
| M. Laughlin McDonald<br>American Civil Liberties Union<br>Foundation<br>2700 International Tower<br>229 Peachtree Street, NE<br>Atlanta, GA 30303<br>T: (404) 500-1235<br>lmcdonald@aclu.org<br>*Attorneys for Plaintiffs* | Maya Kane<br>10 Town Square, #52<br>Durango, Colorado 81301<br>T: (970) 946-5419<br>mayakanelaw@gmail.com<br>*Attorneys for Plaintiffs* |
| William A. Rudnick<br>DLA Piper LLP (US)<br>203 North LaSalle Street, Suite 1900<br>Chicago, IL 60601<br>T: (312) 368-4000<br>william.rudnick@dlapiper.com<br>*Attorneys for Plaintiffs* | Raymond M. Williams<br>Lauren M. Wilchek<br>DLA Piper LLP (US)<br>One Liberty Place<br>1650 Market Street, Suite 4900<br>Philadelphia, PA 19103<br>T: (215) 656-3300<br>raymond.williams@dlapiper.com<br>lauren.wilchek@dlapiper.com<br>*Attorneys for Plaintiffs* |

| Patrick Castaneda<br>DLA Piper, LLC<br>One Liberty Place<br>1650 Market Street, Suite 4900<br>Philadelphia, PA 19103-7300<br>Telephone: 215-656-3378<br>patrick.castaneda@dlapiper.com | |

       /s/ jesse c. trentadue

*T:\7000\7788\1\SAN JUAN COUNTY REPLY MEMO MOT FOR SUMMARY JUDGMENT.draft.wpd*