IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH

| | |
|---|---|
| NAVAJO NATION HUMAN RIGHTS COMMISSION; PEGGY PHILLIPS; MARK MARYBOY; WILFRED JONES; TERRY WHITEHAT; BETTY BILLIE FARLEY; WILLIE SKOW; and MABEL SKOW,<br><br>Plaintiffs,<br>v.<br><br>SAN JUAN COUNTY; JOHN DAVID NELSON; in his official capacity as San Juan County Clerk; and PHIL LYMAN, BRUCE ADAMS, and REBECCA BENALLY, in their official capacities as San Juan County Commissioners,<br><br>Defendants. | **MEMORANDUM DECISION AND ORDER GRANTING PLAINTIFFS' MOTION TO DISMISS AMENDED COUNTERCLAIMS**<br><br>Case No. 2:16-cv-00154-JNP-BCW<br><br>District Judge Jill N. Parrish |

Before the court is a Motion to Dismiss Amended Counterclaims filed by Plaintiffs Navajo Nation Human Rights Commission, Peggy Phillips, Mark Maryboy, Wilfred Jones, Terry Whitehat, Betty Billie Farley, Willie Skow, and Mabel Skow. (Docket No. 93). As explained below, the court GRANTS the Motion.

## BACKGROUND

This lawsuit, filed February 25, 2016, challenges the voting procedures in place in San Juan County, Utah. Prior to 2014, San Juan County conducted elections through nine polling places open on Election Day. Each polling place provided some form of language assistance to Navajo-speaking voters. In 2014, the County transitioned to a predominantly mail-in voting system, leaving a single physical polling location operating at the County Clerk's office in Monticello, Utah. Ballots were distributed to voters through available mailing addresses

approximately one month prior to Election Day. This system was in place for the entire 2014 election cycle.

During 2014 and early in 2015, the Navajo Nation and Plaintiff Navajo Human Rights Commission officially opposed the mail-in system, asserting that the closure of polling locations and switch to mailed ballots burdened rural Navajo voters. The County acknowledged the opposition, but indicated that it would continue to utilize the mail-in system for upcoming elections. After some unfruitful back-and-forth between the County and various civil-liberties organizations opposed to the mail-in ballot system, Plaintiffs filed the complaint underlying this Motion. The complaint alleges that the predominantly mail-in voting system violates Section 2, 52 U.S.C. § 10301, and Section 203, *id.* § 10503, of the Voting Rights Act, as well as the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution, and demands the reopening of closed polling places along with the provision of Navajo language assistance to in-person voters. (Docket No. 2). The complaint names as defendants San Juan County; John David Nielson, in his official capacity as San Juan County Clerk; and Phil Lyman, Bruce Adams, and Rebecca Benally in their official capacities as San Juan County Commissioners (collectively, "County Defendants"). (*See id.*).

County Defendants soon filed their answer, which asserted that the County was making significant changes to its election procedures in anticipation of the June 2016 primary elections. (Docket No. 41 at 3–4). For the June 2016 elections, the County maintained mail-in voting as an option, but also opened three physical polling locations on the Navajo Reservation and provided language assistance to voters through Navajo-speaking translators on Election Day. In addition to their answer, County Defendants filed five counterclaims seeking declaratory relief and alleging that Plaintiffs had violated both federal civil rights statutes and Utah tort law.

(Docket Nos. 40). County Defendants amended their counterclaims on May 30, 2016. (Docket No. 74).

Plaintiffs eventually filed the instant Motion to Dismiss the Amended Counterclaims. (Docket No. 93). Plaintiffs responded, (Docket No. 99), and County Defendants replied, (Docket No. 106). The court heard oral argument on July 26, 2017. (Docket No. 170). The court now considers the arguments of the parties under jurisdiction granted by 28 U.S.C. §§ 1331, 1367.

## **STANDARD**

Plaintiffs bring this motion to dismiss under both FED. R. CIV. P. 12(b)(1), which addresses motions for lack of subject-matter jurisdiction, and FED. R. CIV. P. 12(b)(6), which requires dismissal of claims that fail to state a cognizable or plausible right to relief. The standards for a motion to dismiss under each subsection of the rule are briefly outlined below.

### I. FED. R. CIV. P. 12(b)(1)

A motion under Fed. R. Civ. P. 12(b)(1) challenges the court's subject matter jurisdiction over the suit. The Tenth Circuit has explained that motions to dismiss under Rule 12(b)(1)

> generally take one of two forms. First, a moving party may make a facial attack on the complaint's allegations as to the existence of subject matter jurisdiction. In reviewing a facial attack, the district court must accept the allegations in the complaint as true. Second, a party may go beyond allegations contained in the complaint and challenge the facts upon which subject matter jurisdiction is based. . . . In reviewing a factual attack, a court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts. In the course of a factual attack under Rule 12(b)(1), a court's reference to evidence outside the pleadings does not convert the motion into a Rule 56 motion [for summary judgment].

*Stuart v. Colo. Interstate Gas Co.*, 271 F.3d 1221, 1225 (10th Cir. 2001) (internal citations and quotations omitted).

## II. FED. R. CIV. P. 12(b)(6)

"To survive a motion to dismiss [under FED. R. CIV. P. 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quotations omitted). In order for a claim to be "plausible on its face," the court must be able "to draw the reasonable inference that the defendant is liable for the misconduct alleged" from the factual allegations in the complaint. *See id.* Although the court must take the factual allegations of the complaint as true, the court is not required to take "mere labels and conclusions," or "formulaic recitation[s] of the elements of a cause of action" as true. *Id.* (quotations and citations omitted). Rather, "a plaintiff must offer specific factual allegations to support each claim." *Id.*

## DISCUSSION

### I. FIRST COUNTERCLAIM: DECLARATORY RELIEF

County Defendants' first counterclaim is a request for declaratory relief pursuant to 28 U.S.C. §§ 2201, 2202. County Defendants "seek a declaration from this [c]ourt that San Juan County's vote-by-mail procedures . . . fully comply with both the Voting Rights Act and the Fourteenth Amendment of the United States Constitution." (Docket No. 74, at 29 (emphases omitted)). Because County Defendants' counterclaims describe different voting systems, there are two ways of interpreting what County Defendants mean by "vote-by-mail procedures." First, they could be referring to the 2014 procedures, which restricted voting options almost entirely to mail-in ballots. But they also could be referring to the vote-by-mail option used in the 2016 elections, which also included options to vote in-person at four polling locations throughout the County. In either event, their claim for declaratory relief fails.

As to the first possibility—that County Defendants are requesting a declaration from this court regarding the legality of the 2014 mail-only procedures—the counterclaim fails because it is moot. A claim for declaratory relief is moot when granting the requested relief will "have no effect in the real world . . . ." *See Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1110 (10th Cir. 2010). The court must "look beyond the initial controversy which may have existed at one time and decide whether the facts alleged show that there is a substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Chihuahuan Grasslands All. v. Kempthorne*, 545 F.3d 884, 891 (10th Cir. 2008) (quoting *Beattie v. United States*, 949 F.2d 1092, 1094 (10th Cir. 1991)). Here, any claims for prospective relief regarding the legality of the 2014 procedures have been mooted by the implementation of the 2016 procedures. County Defendants themselves have argued in briefing before this court that the 2016 procedures (with some periodic modification) will continue to govern elections in San Juan County for the foreseeable future. And no County official has stated any desire or intention to return to the 2014 procedures. Because the 2014 vote-by-mail procedures have been abandoned and substantively different procedures have taken their place, there is no "substantial controversy of sufficient immediacy and reality to warrant the issuance of a declaratory judgment" regarding the 2014 procedures. *See Chihuahuan Grasslands*, 545 F.3d at 891. And because County Defendants' first counterclaim seeks only prospective relief, they "have no legally cognizable interest in the constitutional [or statutory] validity of . . . obsolete" voting procedures. *See Citizens for Responsible Gov't State Political Action Comm. v. Davidson*, 236 F.3d 1174, 1182 (10th Cir. 2000); *Schutz v. Thorne*, 415 F.3d 1128, 1138 (10th Cir. 2005) ("Constitutional mootness exists when the issues presented are no longer live or the parties lack a legally cognizable interest in the outcome." (quotations omitted)). Consequently, there is no

"actual controversy" to adjudicate, *see Mocek v. City of Albuquerque*, 813 F.3d 912, 932 (10th Cir. 2015) (explaining that a district court must "decide whether a case of actual controversy exists" before issuing declaratory relief), and the court must conclude that County Defendants' first counterclaim for declaratory relief, insofar as it targets the 2014 procedures, is now moot and must be dismissed for lack of subject matter jurisdiction. *See Columbian Fin. Corp. v. BancInsure, Inc.*, 650 F.3d 1372, 1385 (10th Cir. 2011) (holding that a district court lacked jurisdiction over a declaratory judgment action where "there was no actual controversy between the parties").

As to the second possibility—that County Defendants are requesting a declaration from this court regarding the legality of vote-by-mail procedures as one voting option among several—the counterclaim fails because there is no "actual controversy" requiring adjudication.[1] *See* 28 U.S.C. § 2201. Under this reading of their allegations, County Defendants' first counterclaim is fatally undermined by the defective premise that Plaintiffs "are attempting to do away with San Juan County's vote-by-mail procedures by obtaining an [o]rder from this [c]ourt requiring the County to reopen polling locations for in-person voting." (Docket No. 74, at 29). This allegation makes little internal sense, as an order from this court requiring the reopening of certain in-person polling locations would not require the discontinuation of the vote-by-mail option, as is plainly evinced by the County's own procedures in 2016, which included both vote-by-mail and in-person polling locations.

---

[1] While County Defendants have suggested in briefing that this is the correct reading of their complaint, the court doubts that this counterclaim was originally targeted at the 2016 procedures, since the counterclaim was filed before the 2016 procedures were actually instituted.

Moreover, this allegation is flatly contradicted by the undisputed content of Plaintiffs' underlying complaint, a document that is central to County Defendants' counterclaims.[2] Nothing in that document asks this court do away with mail-in voting as an option for voters. (*See* Docket No. 2, at 20–21 (prayer for relief)). Plaintiffs only challenge mail-in voting insofar as it was the predominant method of voting available to Navajo and rural voters during the 2014 election cycle. They do not make any attacks on mail-in voting in and of itself,[3] nor do they request that the County entirely discontinue the use of mail-in voting. Because it is apparent from the underlying complaint that Plaintiffs do not oppose the continuation of vote-by-mail procedures as one voting option among several, County Defendants' allegation of a controversy arising from Plaintiffs' intent to "do away with San Juan County's vote-by-mail procedures" is not well pled, rendering the claim of an actual controversy between the parties implausible. *See GFF Corp.*, 130 F.3d at 1395 ("[M]ere legal conclusions and factual allegations that contradict [] a properly considered document are not well-pleaded facts the court must accept as true."); *Friedman v. Kennard*, 248 F. App'x 918, 921 (10th Cir. 2007) (unpublished) (holding dismissal for failure to state a claim was proper where plaintiff's "own pleading tend[ed] to defeat his claim"). Thus, even if the court were to interpret County Defendants' first counterclaim to avoid mootness, the claim still fails to state a plausible claim for relief and must be dismissed under Rule 12(b)(6).

---

[2] "Generally, a court considers only the contents of the complaint when ruling on a 12(b)(6) motion[,]" *Berneike v. CityMortgage, Inc.*, 708 F.3d 1141, 1146 (10th Cir. 2013), but where a complaint refers to a document that is "central to the plaintiff's claim" and neither party disputes the document's authenticity, the contents of the document may also be considered, *see GFF Corp. v. Assoc. Wholesale Grocers, Inc.*, 130 F.3d 1381, 1384–85 (10th Cir. 1997). Here, County Defendants' counterclaims make repeated references to allegations and claims in Plaintiffs' underlying complaint. (*See, e.g.*, Docket No. 74, at 17–24). The contents of that document are "central to [County Defendants'] claims" because their counterclaims allege the falsity of the allegations and the maliciousness of the claims contained therein. *See GFF Corp.*, 130 F.3d at 1384–85. Further, the copy of the complaint filed with the court is indisputably authentic. *See id.* Accordingly, the court considers the contents of the underlying complaint as part of this motion to dismiss pursuant to Rule 12(b).

[3] Plaintiffs have characterized the vote-by-mail procedures as inequitable in certain briefing filed with the court, but the court notes that these arguments only attack the vote-by-mail procedures insofar as they are part of the broader voting system that allegedly provides less opportunity to Navajo or rural voters *on the whole*. Moreover, nothing in Plaintiffs' request for declaratory or injunctive relief can be read to require the discontinuation of mail-in voting.

In sum, either under principles of mootness or because it fails to state a claim, County Defendants' first counterclaim must be dismissed.

## II.  SECOND COUNTERCLAIM: DECLARATORY RELIEF

County Defendants' second counterclaim is another request for declaratory relief ostensibly pursuant to 28 U.S.C. §§ 2201, 2202. County Defendants "seek a finding by the Court that the Underlying Action is without merit and was not brought in good faith." (Docket No. 74, at 30). As an initial matter, much of this request is practically indistinguishable from the first counterclaim, which the court has already found to be moot. More to the point, this request has no apparent basis in substantive law outside of an attorney's fee provision in UTAH CODE § 78B-5-825. Thus, County Defendants essentially ask this court to declare that they are entitled to attorney's fees. But before the court may award attorney's fees under UTAH CODE § 78B-5-825, there must be a "prevailing party." *See* UTAH CODE § 78B-5-825(1). The court cannot evaluate whether the underlying lawsuit is without merit and/or brought in bad faith until the litigation has concluded and such matters as attorney's fees are properly ripened for adjudication. *See Bennett v. Coors Brewing Co.*, 189 F.3d 1221, 1238 (10th Cir. 1999) (finding a claim for attorney's fees unripe where the merits had not been decided and "there [was] no prevailing party"); *Graham v. Hartford Life & Accident Ins. Co.*, 501 F.3d 1153, 1162 (10th Cir. 2007) ("Courts vacate attorney's fees decisions when the presence of ongoing litigation precludes an informed determination of whether the moving party is in fact entitled to attorney's fees under the relevant law."). Moreover, the court is not convinced that the Declaratory Judgment Act is a proper vehicle for the recovery of attorney's fees. If County Defendants wish to recover attorney's fees, they should state as much in their answer and move for an award of fees at an appropriate time.

Finally, the court notes that this particular provision of the Utah Judicial Code has no apparent applicability to a claim pursuant to federal law brought in federal court. The underlying action at issue here rests solely on federal claims, precluding any recover of attorney's fees under the laws of Utah. *See Wolf v. Petrock*, Civ. No. 08-cv-02749-PAB-KMT, 2010 WL 2232353, at *2 (D. Colo. Jun. 2, 2010) (holding that a Colorado state attorney fee provision had "no applicability to federal claims brought in federal court").[4]

In any event, this counterclaim is not ripe and must be dismissed for lack of subject matter jurisdiction.

### III. THIRD COUNTERCLAIM: CIVIL CONSPIRACY

The third counterclaim, brought solely by Defendant Benally, alleges a civil conspiracy among certain Plaintiffs and seeks punitive damages under Utah law. (Docket No. 74, at 30–32). Plaintiffs argue that this claim is subject to dismissal because Defendant Benally has failed to properly plead either "an object to be accomplished" or "a meeting of the minds on the object or course of action" as required to state a claim for civil conspiracy under Utah law. (Docket No. 93, at 14). Defendant Benally responds that she has properly alleged that Plaintiff Maryboy and members of Plaintiff NHRC conspired to bring this lawsuit and thereby "challenge San Juan County's vote-by-mail system in order to restrict voting to in-person voting." (Docket No. 99, at 17). Indeed, County Defendants repeatedly equate the relief requested by Plaintiffs with the complete elimination of vote-by-mail. (*See*, *e.g.*, *id.* at 17–18). County Defendants allege that the relief requested by Plaintiffs would "essentially requir[e] San Juan County to do away with vote-by-mail" without any elaboration as to why the elimination of vote-by-mail procedures would necessarily follow from Plaintiffs' lawsuit. (*Id.* at 18). As explained, Defendant Benally's

---

[4] While this provision is clearly inapplicable to the federal claims raised by Plaintiffs in the underlying action, it may very well be applicable to the state law counterclaims leveled by County Defendants in this case.

conspiracy claims are likewise premised on an allegation that Plaintiffs brought this lawsuit in order to "restrict[] voting to in-person" procedures. (*See id.* at 25–26). Plaintiffs argue that these characterizations of their motives are unsupported and do not support a plausible claim to relief. The court agrees with Plaintiffs.

Once more, the court can find no support for Defendant Benally's characterizations of Plaintiffs' claims in the underlying lawsuit. Plaintiffs' complaint does not ask this court to declare that vote-by-mail procedures in and of themselves are illegal, only that the closing of numerous polling stations in favor of a primarily vote-by-mail system is illegal. Even if the court were to grant all of the relief requested in Plaintiffs' complaint, the County would be required to reopen polling locations, but would not in any way be prohibited from conducting vote-by-mail in tandem with the use of those polling locations. (*See* Docket No. 2, at 20–21 (prayer for relief)). Thus, County Defendants' repeated allegation that this lawsuit is a nefarious effort to entirely do away with vote-by-mail procedures is flatly contradicted by a properly considered document and is not entitled to any deference on a motion to dismiss. *See GFF Corp.*, 130 F.3d at 1395 ("[M]ere legal conclusions and factual allegations that contradict [] a properly considered document are not well-pleaded facts the court must accept as true."). This leaves Defendant Benally's civil conspiracy claim without any well-pled allegation of an "object to be accomplished"—a fundamental requirement for conspiracy under Utah law. *See Pohl, Inc. of Amer. v. Webelhuth*, 201 P.3d 944, 954 (Utah 2008).

In addition to her failure to adequately plead "an object to be accomplished," Defendant Benally has failed to adequately plead an "underlying tort." *See Estrada v. Mendoza*, 275 P.3d 1024, 1029 (Utah Ct. App. 2012). "The claim of civil conspiracy requires, as one of its essential elements, an underlying tort. Thus, in order to sufficiently plead a claim for civil conspiracy, a

plaintiff is obligated to adequately plead the existence of such a tort." *Id.* (quotations, alterations, and citations omitted). The only underlying tort that Defendant Benally appears to allege is abuse of process. As will be explained below, she has failed to adequately allege that cause of action. This provides an independent basis for dismissal of her third counterclaim. *See Puttuck v. Gendron*, 199 P.3d 971, 978 (Utah Ct. App. 2008) ("Where plaintiffs have not adequately pleaded *any* of the basic torts they allege, dismissal of their civil conspiracy claim is appropriate." (alterations and quotations omitted, emphasis in original)).

Accordingly, her claim for civil conspiracy under Utah law must be dismissed for failure to state a claim.

## IV. FOURTH COUNTERCLAIM: CIVIL RIGHTS VIOLATIONS

The fourth counterclaim, again brought solely by Defendant Benally, alleges violations of 42 U.S.C. §§ 1981, 1985(3), and 52 U.S.C. § 10307(b) by Plaintiffs. The harm Defendant Benally alleges is attributable to the initiation of the underlying lawsuit by Plaintiffs and their purported intent to thereby deprive Defendant Benally "and other members of the Navajo Nation who, for any number of reasons are . . . [un]able to vote in-person at a polling location, of the equal protection of the laws and/or equal privileges and immunities under the law." (Docket No. 74, at 33).

Like the civil conspiracy claim disposed of above, each claim of a civil rights violation is founded upon County Defendants' allegation that the underlying lawsuit was filed by Plaintiffs with the express purpose of eliminating vote-by-mail as a voting option, thereby undermining the voting rights of Navajo citizens. (Docket No. 74, at 32–34). As explained above, this characterization of the underlying lawsuit is unfounded and not entitled to any deference on a motion to dismiss. *See GFF Corp.*, 130 F.3d at 1395 ("[M]ere legal conclusions and factual

11

allegations that contradict [] a properly considered document are not well-pleaded facts the court must accept as true."). As explained repeatedly above, none of the relief requested by Plaintiffs in this case would require the elimination of mail-in voting. Without a proper allegation of any act or conspiracy that might undermine the voting rights of the Navajo citizenry, Defendant Benally has failed to plead a deprivation of rights sufficient to support a claim under 42 U.S.C. § 1981, § 1985(3), or 52 U.S.C. § 10307(b).

Indeed, even in the abstract, these claims are an odd choice to counter a lawsuit arising from statutes meant to preserve voting rights and equal access to the polls. In reality, the only alleged risk of "harm" to Defendant Benally's civil rights—that the court might rule in Plaintiffs' favor—is no risk at all. A ruling from this court that the primarily vote-by-mail system or even the newer procedures employed in 2016 are illegal and that the County must do more to equalize voting opportunities for Navajos would, by its very terms, *ensure*, not undermine, the voting rights of Navajos. That is not an unlawful or otherwise harmful result. Plaintiffs cannot, by requesting a correct application of the law, undermine the legal rights of the Navajo residents of San Juan County such that they would be liable under Defendant Benally's counterclaim.[5]

In sum, Defendant Benally's fourth counterclaim fails to state a claim and must be dismissed.

V. **FIFTH COUNTERCLAIM: ABUSE OF PROCESS**

The final counterclaim, again brought solely by Defendant Benally and pursuant to Utah law, alleges an abuse of process by Plaintiffs against Defendant Benally. Specifically, Defendant

---

[5] Additionally, the court notes that Defendant Benally's claims of racial animus appear equally misplaced. In fact, Defendant Benally does not actually allege any legally cognizable animus under these civil rights statutes—her counterclaim is based entirely on alleged animus against Navajos who 1) cannot make it to a polling place and/or 2) are supporters of Defendant Benally. The court is not convinced that these classifications truly constitute a "racial or otherwise class-based discriminatory animus," as required for claims under 42 U.S.C. § 1985(3). *See Dixon v. City of Lawton*, 898 F.2d 1443, 1447 (10th Cir. 1990).

Benally alleges that the underlying lawsuit is "an abuse of process in that [it] was commenced and is being continued for the improper, unlawful, and ulterior purpose of allowing [Plaintiff] Maryboy" and others to suppress the vote of Defendant Benally's supporters by restricting mail-in voting. (*See* Docket No. 74, at 34).

Plaintiffs assert that this counterclaim is subject to dismissal because Defendant Benally has failed to plead any "willful act in the use of the process not proper in the regular conduct of the proceedings." *Rusakiewicz v. Lowe*, 556 F.3d 1095, 1103 (10th Cir. 2009) (interpreting Utah law). As Plaintiffs argue, in order to state a claim for abuse of process under Utah law a party must not only plead an improper purpose, but "must [also] point to conduct independent of legal process itself that corroborates the alleged improper purpose." *Hatch v. Davis*, 147 P.3d 383, 389 (Utah 2006). In response to this challenge, Defendant Benally simply reemphasizes how groundless she believes Plaintiffs' lawsuit to be. This is patently insufficient to support a claim for abuse of process under Utah law. *See id.*

Defendant Benally's allusion to her otherwise distinct allegations that Plaintiff Maryboy and his associates have "intimidated and coerced Navajo voters" into voting for him and his associates in past elections is equally unpersuasive. (*See* Docket No. 99, at 23). The court first notes that these actions are not directly alleged to be a part of Defendant Benally's fifth counterclaim in her complaint. Moreover, these alleged actions were not made "in the use of process," *see Hatch*, 147 P.3d at 389, but nearly a year-and-a-half prior to the initiation of the lawsuit Defendant Benally claims is abusive and long before the implementation of the voting procedures at issue. Finally, these alleged actions do not in any way "corroborate the alleged improper purpose" of the underlying lawsuit. *See id.* at 390. At best, they indicate that Plaintiff Maryboy and Defendant Benally were or are political rivals and that she believes that he, at some

13

point or another prior to this lawsuit, behaved improperly during a campaign. They have no connection to the underlying lawsuit except perhaps to tangentially indicate "spite, ill-will, or any of the other less agreeable human emotions that frequently attach themselves to court papers." *See id.* at 389–90. In other words, they do not satisfy the "willful act" requirement outlined by Utah courts for claims of abuse of process. *See id.*

In sum, Defendant Benally has failed to state a claim for abuse of process under Utah law and her claim must be dismissed.

## **CONCLUSION**

Based on the foregoing, Plaintiffs' Motion to Dismiss Amended Counterclaims (Docket No. 93) is hereby **GRANTED**.

1) County Defendants' First Counterclaim for Declaratory Relief is **DISMISSED** for lack of subject matter jurisdiction.

2) County Defendants' Second Counterclaim for Declaratory Relief is **DISMISSED** for lack of subject matter jurisdiction.

3) County Defendants' Third Counterclaim for Civil Conspiracy under Utah law is **DISMISSED** for failure to state a claim.

4) County Defendants' Fourth Counterclaim for federal civil rights violations is **DISMISSED** for failure to state a claim.

5) County Defendants' Fifth Counterclaim for abuse of process under Utah law is **DISMISSED** for failure to state a claim.

IT IS SO ORDERED.

Signed September 7, 2017.

BY THE COURT

_____

Jill N. Parrish
United States District Court Judge