John Mejia (Bar No. 13965)
Leah Farrell (Bar No. 13696)
American Civil Liberties Union of Utah
355 North 300 West
Salt Lake City, UT 84103
T: (801) 521-9862
jmejia@acluutah.org
lfarrell@acluutah.org

Maya Kane
10 Town Square
Durango, Colorado 81301
T: (970) 946-5419
Mayakanelaw@gmail.com

M. Laughlin McDonald
American Civil Liberties Union Foundation
2700 International Tower
229 Peachtree Street, NE
Atlanta, GA 30303
T: (404) 500-1235
lmcdonald@aclu.org

William A. Rudnick
DLA Piper LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, IL 60601
T: (312) 368-4000
william.rudnick@dlapiper.com

Ezra D. Rosenberg
Arusha Gordon
Lawyers' Committee for Civil Rights Under Law
1401 New York Ave., Suite 400
Washington, D.C. 20005
T: (202) 662-8600
erosenberg@lawyerscommittee.org
agordon@lawyerscommittee.org

Raymond M. Williams
DLA Piper LLP (US)
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, PA 19103
T: (215) 656-3300
Raymond.williams@dlapiper.com

**ATTORNEYS FOR PLAINTIFFS**

# IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| NAVAJO NATION HUMAN RIGHTS COMMISSION; PEGGY PHILLIPS; MARK MARYBOY; WILFRED JONES; TERRY WHITEHAT; BETTY BILLIE FARLEY; WILLIE SKOW; and MABEL SKOW,<br><br>Plaintiffs,<br><br>v.<br><br>SAN JUAN COUNTY; JOHN DAVID NIELSON, in his official capacity as San Juan County Clerk; and PHIL LYMAN, BRUCE ADAMS, and REBECCA BENALLY, in their official capacities as San Juan County Commissioners,<br><br>Defendants. | Case No. 2:16-cv-00154 JNP<br><br><br>**PLAINTIFFS' AMENDED COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br><br>District Judge Jill N. Parrish |

## INTRODUCTION

Plaintiffs file this amended complaint pursuant to this Court's Order granting them leave to amend their complaint to present two claims under the Voting Rights Act regarding San Juan County's 2016 voting procedures: "The first is a claim that the County's early-voting procedures provide unequal opportunity to Navajo voters in violation of Section 2 of the VRA. The second is a claim that the language assistance provided by the County to Navajo-speaking voters is ineffective in violation of Section 203 of the VRA." (ECF No. 173 at 15.)

1.      Currently, voters in San Juan County have four options for voting: (1) they can vote early in-person at the County Clerk's office in Monticello approximately 2-4 weeks ahead of each primary and general election ("early in-person voting") (Utah Code 20A-3-601(2)); (2)

they can vote absentee by mail; (3) they can vote absentee in-person ("absentee in-person voting") (Utah Code 20A-3-306(1)(b) and (2)(a)) and (3); and (4) they can vote on Election Day in person at one of the four polling places in the County ("in-person voting").

2.     The only place for in-person voter registration, early in-person voting, in person voting assistance, and absentee in-person voting during regular business hours on a consistent, regular basis in San Juan County is in the County seat of Monticello.   In order to reach Monticello to take advantage of these voting services, Navajo residents of San Juan County are required to travel, on average, more than twice the distance as compared to white residents of San Juan County.

3.     Further, the distance over which some Navajo residents must travel consists of difficult terrain, including unpaved dirt roads which may close in inclement weather. As a result, the trip to Monticello for some Navajo can take many hours.

4.     The significantly greater average distance and average time required for Navajo residents in San Juan County to reach the county seat of Monticello, in the context of socio-economic factors including disparate rates of poverty and access to reliable public and private transportation, together with the history of racial discrimination and hostility toward Native Americans, place a severe burden upon Navajo residents who wish to take advantage of the in-person voting services offered in Monticello in violation of Section 2 of the Voting Rights Act, 52 U.S.C. § 10301. This burden falls substantially less heavily on white residents of San Juan County.

5.     Navajo is a traditionally unwritten language.   The voting system implemented by San Juan County fails to provide adequate oral assistance to limited English proficient Native

American voters, and therefore violates Section 203 of the Voting Rights Act, 52 U.S.C. § 10503.

6.      For these reasons, and as alleged in detail below, Plaintiffs respectfully ask this Court to award declaratory and injunctive relief, costs and reasonable attorneys' fees, and such additional relief as may be appropriate to remedy the ongoing violation of the Voting Rights Act.

## JURISDICTION AND VENUE

7.      This case arises under the Constitution and laws of the United States.  This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343; 52 U.S.C. §§ 10301, 10308(f), and 10503; and 42 U.S.C. § 1983.  This Court has jurisdiction to grant both declaratory and injunctive relief under 28 U.S.C. §§ 2201 and 2202.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred, and are occurring, in this District.

## PARTIES

9.      Plaintiff NAVAJO NATION HUMAN RIGHTS COMMISSION is an Office within the legislative branch of the Navajo Nation and operates as a clearinghouse to administratively address discriminatory actions against citizens of the Navajo Nation.

10.     Plaintiff PEGGY PHILLIPS is an adult citizen, a member of the Navajo Nation and a resident of Oljato, San Juan County, Utah.  Plaintiff PHILLIPS is registered to vote in San Juan County.  She is not comfortable voting in English.  She needs assistance from a translator to vote as there are usually words on the ballot she does not understand.  Because of this, she prefers to vote in person.  Plaintiff PHILLIPS, while she has access to a car, would have to travel

approximately four hours round trip to take advantage of the in-person voting services offered in Monticello.

11.     Plaintiff MARK MARYBOY is an adult citizen, a member of the Navajo Nation and a resident of Montezuma Creek, San Juan County, Utah.  Plaintiff MARYBOY is registered to vote in San Juan County.  He prefers to vote in person as he has for many years.  While he has access to a car, he would have to travel approximately two hours round trip to take advantage of the in-person voting services offered in Monticello.

12.     Plaintiff WILFRED JONES is an adult citizen, a member of the Navajo Nation and a resident of Red Mesa, San Juan County, Utah.  Plaintiff JONES is registered to vote in San Juan County. While he has access to a car, he would have to travel over two hours round trip to take advantage of the in-person voting services offered in Monticello.

13.     Plaintiff TERRY WHITEHAT is an adult citizen, a member of the Navajo Nation and a resident of Navajo Mountain, San Juan County, Utah.  Plaintiff WHITEHAT is registered to vote in San Juan County.  While he has access to a car, he would have to travel approximately ten hours round trip to take advantage of the in-person voting services offered in Monticello.

14.     Plaintiff BETTY BILLIE FARLEY is an adult citizen, a member of the Navajo Nation and a resident of Red Mesa, San Juan County, Utah.  Plaintiff FARLEY is registered to vote in San Juan County.   Ms. Farley or a family member checks the post office box approximately once a month for mail.  She is not comfortable voting in English.  She requires assistance from a translator when voting.  Plaintiff FARLEY prefers voting in person because she is unable to read the mail ballot.  If she was able to find transportation, she would have to

travel over four hours round trip to take advantage of the in-person voting services offered in Monticello.

15.     Plaintiff WILLIE SKOW is an adult citizen, a member of the Navajo Nation and a resident of Mexican Water, San Juan County, Utah.  Plaintiff W. SKOW is registered to vote in San Juan County.  He is not comfortable voting in English.  He requires assistance from a translator when voting.  He relies on his children to transport him where necessary, and he would have to travel over two hours round trip to take advantage of the in-person voting services offered in Monticello.

16.     Plaintiff MABEL SKOW is an adult citizen, a member of the Navajo Nation and a resident of Mexican Water, San Juan County, Utah.  Plaintiff M. SKOW is registered to vote in San Juan County.  She is not comfortable voting in English.  She requires assistance from a translator when voting.  She relies on her children to pick up her mail and transport her where necessary.  She would have to travel over two hours round trip to take advantage of the in-person voting services offered in Monticello.

17.     Defendant SAN JUAN COUNTY is a political subdivision created and functioning pursuant to Utah statutes and governing the geographical area known as San Juan County, State of Utah.  It maintains a website for voter services.

18.     Defendant JOHN DAVID NIELSON is the San Juan County Clerk and is sued in his official capacity.  As County Clerk, his duties include, but are not limited to, administering the Utah State election code and ensuring that elections within San Juan County are conducted in a fair and lawful manner.  Because of his duties, he bears responsibility for implementing and maintaining the existing system of elections.

19.     Defendant PHIL LYMAN is a San Juan County Commissioner and is sued in his official capacity.  As County Commissioner, his duties include, but are not limited to, directing and organizing the management of the County; exercising supervisory control over all departments of County government; exercising administrative control over all funds; supervising and directing centralized budgeting and other service functions of the County; and developing systems and procedures, not inconsistent with statute, for planning, programming, budgeting, and accounting for all activities of the County.  Because of his duties, he bears responsibility for maintaining the existing system of elections in the County.

20.     Defendant BRUCE ADAMS is a San Juan County Commissioner and is sued in his official capacity.  As County Commissioner, his duties include, but are not limited to, directing and organizing the management of the County; exercising supervisory control over all departments of County government; exercising administrative control over all funds; supervising and directing centralized budgeting and other service functions of the County; and developing systems and procedures, not inconsistent with statute, for planning, programming, budgeting, and accounting for all activities of the County.  Because of his duties, he bears responsibility for maintaining the existing system of elections in the County.

21.     Defendant REBECCA BENALLY is a San Juan County Commissioner and is sued in her official capacity.  As County Commissioner, her duties include, but are not limited to, directing and organizing the management of the County; exercising supervisory control over all departments of County government; exercising administrative control over all funds; supervising and directing centralized budgeting and other service functions of the County; and developing systems and procedures, not inconsistent with statute, for planning, programming, budgeting, and

accounting for all activities of the County.  Because of her duties, she bears responsibility for maintaining the existing system of elections in the County.

## FACTUAL ALLEGATIONS

### Availability of In-Person Voter Registration, Early In-Person Voting, In-Person Assistance, and Absentee In-Person Voting in San Juan County

22.    More than one-half of the residents of San Juan County are American Indian; the vast majority of American Indians in the County are citizens of the Navajo Nation.  As of the 2010 Census, the total population of San Juan County was 14,746, of which 50 percent were American Indian or Alaska Native (alone) and 45 percent were white (alone).  As of 2010, the voting age population was 9,729, of which 49 percent were American Indian or Alaska Native (alone) and 46 percent were white (alone).

23.    San Juan County is residentially segregated.  The majority of Navajo residents live in the southern portion of the County.  The majority of white residents live in the northern portion of the County.

24.    The County seat, Monticello, is located in the northern portion of the County and is 84 percent white.

25.    San Juan voters can request a ballot and/or cast their ballot early and in person at the County Clerk's office in Monticello during regular business hours for approximately 2-4 weeks before an election.

26.    This opportunity is available only in the majority-white town of Monticello and means that voters in or near Monticello have *nearly a month* to vote in person.

27.     However, the opportunity to cast a ballot in person is available for just *one day* in the southern, majority Navajo part of the County: Election Day.

28.     There is a significant disparity between the average time it takes for white residents of San Juan County to reach the County seat and the average time it takes for Navajo residents to reach the County seat.

29.     On average, it takes Navajo residents over two hours round trip to travel to the County seat, while it takes white residents, on average, under an hour round trip to travel to the County seat.  This means that Navajo residents must travel, on average, more than twice as long as white residents in order to reach the location for voting services offered in Monticello.

30.     The number of miles a Navajo resident must travel to the County seat is, on average, over 120 miles round trip.   The round trip for the average white resident is approximately 50 miles.

31.     Residents of Navajo Mountain who live in the southwest of the County, like Plaintiff WHITEHAT, face a significantly longer than average round trip drive to Monticello, which can take approximately ten hours.

32.     The challenge of getting to Monticello is exacerbated for a significant number of Navajo residents who lack access to reliable transportation and must contend with poor road conditions.

33.     There is no reliable public transportation for Navajo residents in San Juan County to travel to Monticello.  While the Navajo Transit System operates some bus routes, these buses do not travel to Monticello.

34.     According to the 2009-2013 American Community Survey estimates, less than one percent of white households in San Juan County have no vehicle, while one in ten American Indian households are without a vehicle.

35.     Additionally, according to the Census, the poverty rates for American Indians in San Juan County are significantly higher than for the white residents of the County.  While only 11.2 percent of whites in the County live below the poverty level, 42.3 percent of American Indians live below the poverty line.  Nearly one-third of American Indian households in San Juan County live off an annual income of less than $10,000.

36.     The trip to Monticello for Navajo voters is further complicated by the geography and poor road conditions of the County.  For many southern parts of the County, the only way to reach Monticello is on a two-lane road, further increasing drive times.

37.     Offering voter services at the Clerk's Office in San Juan County has numerous substantial benefits, including:  (a) the availability of in-person assistance; (b) the ability to troubleshoot and fix potential problems, including problems with voter registration and identification; (c) the opportunity to get in-person translation; (d) the opportunity to obtain a ballot; (e) the ability to change one's address ahead of the election and to change party affiliation or one's name; (f) offering people who have a preference for in-person voting but may not be able to vote in-person on Election Day due to work, family or other obligations, additional opportunities to vote in person; (g) reducing the likelihood that voters are unable to vote due to long lines, and (h) giving voters the assurance that one's ballot is received and counted.  Early in-person voting is the preferred method for many Navajo voters.

38.     Under the current early voting system, it is easier for white voters to resolve problems during the election process than for Navajo voters.  For instance, it is more convenient on average for a white voter to travel to Monticello to obtain a replacement ballot, more likely that a white voter will receive a replacement ballot in the mail in time to return it, and easier on average for a white voter to provide proof of voter identification in Monticello if required to vote by provisional ballot.

### Failure to Comply with Section 203 Requirements

39.     San Juan County is covered by Section 203 of the Voting Rights Act, 52 U.S.C. § 10503, for the Navajo language based on the most recent determination made in December 2016 by the Census Bureau which is authorized to make this determination consistent with the statutory requirements for coverage.  81 Fed. Reg. 87532, 87538 (Dec. 5, 2016).

40.     Navajo is a traditionally unwritten language.

41.     For purposes of Section 203 determinations, the Bureau of the Census considers citizens who do not speak English very well to be limited-English proficient.

42.     The 2014 general election was conducted almost entirely by mail; the only place to vote in-person in 2014 was in Monticello.

43.     All of the mail-in ballots and accompanying written materials provided for the 2014 election were in English only.

44.     The only Navajo language assistance that San Juan County offered in the 2014 election was to include a phone number for the Navajo liaison for the County Clerk's office on election materials.  However, these materials were in English only.  This is inadequate for providing effective oral assistance in mail-only elections.

45.     The primary means by which San Juan provides language assistance to non-English proficient Navajo speakers is through one part-time County employee whose job title is "Navajo Election Liaison" (the "Liaison").

46.     The part-time Liaison is in charge of translating election materials from English to Navajo, making recordings of ballot translations, recording election information for use on Navajo radio stations in the County, attending meetings of the Navajo Nation chapter houses to inform Navajo speaking voters of election information, and hiring and overseeing people to provide in-person Navajo language assistance at Election Day polling places.

47.     San Juan does not require the Liaison to attend any formal trainings by any governmental or professional entity that centers on effective translation from English to Navajo, either generally or with regard to elections specifically.

48.     San Juan does not require that the Liaison provide any training to those individuals providing Election Day assistance on how to properly translate the specific ballot in question.

49.     San Juan does not require the Liaison to provide regular, uniform reporting about his visits to chapter houses.

50.     Navajo speaking voters have complained that the Liaison often uses English terms during his meetings with voters at chapter houses, which they cannot understand.

51.     The Liaison's Navajo language recordings around the 2016 elections were not effective, for various reasons, including being too fast, failing to translate certain English terms, and adding terms not found in the English language documents.

52.     In 2016, San Juan re-opened some, but not all of the Election Day polling locations that had been available in 2012 but which it closed in 2014.

53.     Several of the Election Day polling locations that remained closed in 2016 were on the Navajo reservation and had previously provided in-person language assistance to non-English proficient Navajo speaking voters; the closure of the polling places resulted in fewer opportunities for assistance for such voters.

54.     Defendants did not provide any translation training specific to the 2016 ballot to their polling place workers in prior to the 2016 elections.

55.     The polling place workers who worked at the three polling places in the southern part of the County during the 2016 elections did not provide effective language assistance to Navajo speaking voters.

56.     After the 1983 US DOJ Section 203 lawsuit and settlement agreement, and prior to the County's switch to a largely vote-by-mail system, the County provided up to 21 interpreters, three at each of the seven polling locations in the County, during elections.

57.     Untrained poll workers are unable to provide effective language assistance to Navajo, thereby limiting English-limited Navajo voters from being able to fully participate in the political process.

58.     In 2016, the County mailed mail-in ballots to all active registered voters in the County, including Navajo speaking voters not proficient in English.

59.     During the 2016 election, Navajo speaking voters who needed language assistance and wanted to vote in person were confused about what to do with the ballots that had been mailed to them.

### History of Racial Discrimination in San Juan County

60.     In addition to the depressed socio-economic status of American Indians in San Juan County discussed above, there is a long history of systemic and pervasive racial discrimination against American Indians in Utah, including discrimination in voting.

61.     Although the Indian Citizenship Act was passed in 1924 giving full rights of citizenship to American Indians, as late as 1956 Indians living on a reservation were not considered residents of Utah and were not entitled to vote. *See Allen v. Merrell*, 6 Utah 2d 32, 40 (1956).

62.     Although San Juan previously had at-large county commission elections, the current three-district board was created by a 1984 consent decree after the U.S. Department of Justice sued the County.

63.     Since 1984, one of the three County commissioners has been Navajo but Navajo have never been elected to more than one Commission seat.

64.     The District of Utah has found that the San Juan county commission districts are unconstitutional under the equal protection clause. *Navajo Nation v. San Juan Cty.*, 162 F. Supp. 3d 1162, 1183 (D. Utah 2016).

### FIRST CLAIM FOR RELIEF

### (52 U.S.C. § 10301 – Violation of Section 2 of the Voting Rights Act)

### (All Plaintiffs Against All Defendants)

65.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in Paragraphs 1 through 64 above as if set forth fully herein.

66.     Section 2 of the Voting Rights Act, 52 U.S.C. § 10301, protects Plaintiffs from denial or abridgment of the right to vote on account of race, color, or membership in a language minority group.  Section 2 provides, in relevant part:

> (a) No voting qualification or prerequisite to voting or standard, practice, or procedure shall be imposed or applied by any State or political subdivision in a manner which results in a denial or abridgment of the right of any citizen of the United State to vote on account of race or color, or [membership in a language minority group].
> (b) A violation of subsection (a) of this section is established if, based on the totality of circumstances, it is shown that the political processes leading to nomination or election in the State or political subdivision are not equally open to participation by members of a class of citizens protected by subsection (a) of this section in that its members have less opportunity than other members of the electorate to participate in the political process and to elect representatives of their choice.

52 U.S.C. § 10301.

67.     The County's use of only one location offering in-person voter registration, early in-person voting, in-person assistance, and absentee in-person voting in Monticello interacts with social and historical conditions to leave Navajo citizens with less opportunity than white voters to participate in the political process and elect candidates of their choice.

68.     The use of only one location for these voting services in Monticello, in the context of the differences in accessibility and socioeconomic conditions, leave Navajo residents with less opportunity to vote than white residents.

69.     Based upon the totality of the circumstances, the acts and/or omissions of Defendants have resulted in the denial or abridgment and will continue to result in the denial or abridgment, of the rights of the Plaintiffs to have an equal opportunity to participate in the electoral process and elect representatives of their choice in violation of Section 2 of the Voting Rights Act.

70.     Plaintiffs will continue to suffer the violation of their rights as alleged in the Complaint absent relief granted by the Court.

## SECOND CLAIM FOR RELIEF

**(52 U.S.C. § 10503 – Violation of Section 203 of the Voting Rights Act)**

**(By Plaintiffs PHILLIPS, FARLEY, W. SKOW and M. SKOW against all Defendants)**

71.     Plaintiffs re-allege and incorporate by reference each and every allegation contained in Paragraphs 1 through 70 above as if set forth fully herein.

72.     Section 203 of the Voting Rights Act, 52 U.S.C. § 10503, provides, in relevant part, that if a covered state or political subdivision "provides [ ] registration or voting notices, forms, instructions, assistance, or other materials or information relating to the electoral process, including ballots" that it provide them in the language of the applicable minority group as well as in the English language: "*Provided*, [t]hat where the language of the applicable minority group is oral or unwritten or in the case of Alaskan natives and American Indians, if the predominant language is historically unwritten, the State or political subdivision is only required to furnish oral instructions, assistance, or other information relating to registration and voting." 52 U.S.C.A. § 10503(c).

73.     The fact that Navajo is an unwritten language does not alleviate San Juan of its obligations under Section 203.   Rather, Section 203 requires jurisdictions with unwritten languages to furnish oral instructions, assistance, or other information relating to registration and voting in the relevant language.   52 U.S.C.A. § 10503.   According to Department of Justice guidelines, states and political subdivisions covered by Section 203 of the Voting Rights Act, 52 U.S.C. § 10503, must ensure that the language assistance offered is given "to the extent needed

to enable members of the applicable language minority group to *participate effectively* in the electoral process." 28 C.F.R. § 55.20 (emphasis added).

74.     Defendants' failure to provide limited-English proficient Navajo speaking voters in San Juan County with effective language election assistance and information, as described above, constitutes a violation of Section 203 of the Voting Rights Act.

75.     Unless enjoined and monitored by this Court, Defendants will continue to violate Section 203 of the Voting Rights Act by failing to provide the limited-English proficient Navajo speaking voters in San Juan County with the language election information and assistance necessary for their effective participation in the electoral process.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs respectfully pray that the Court:

1.     Enter judgment in favor of Plaintiffs and against Defendants on the claims for relief as alleged in this Complaint;

2.     Enter judgment declaring that Defendants' ineffective provision of language assistance to Navajo speaking voters and their early voting procedures in San Juan County (1) violates Section 203 of the Voting Rights Act, 52 U.S.C. § 10503; and (2) violates Section 2 of the Voting Rights Act, 52 U.S.C. § 10301.

3.     Grant Plaintiffs preliminary and/or permanent injunctive relief by ordering that Defendants:

    a.   Provide three satellite voting sites offering in-person voter registration, an opportunity to cast a ballot early in-person, an opportunity to cast an absentee ballot in-person, and in-person assistance with the voting process in the southern

portion of the County, as is offered in Monticello, for all primary, general and special elections, such that

    i.   The offices equalize travel distance and time for residents wishing to take advantage of these services;

    ii.   The offices provide these services for the same days and hours as these services are offered in Monticello; and

    iii.   The offices are staffed full time during this period by one or more registration assistants or outreach coordinators who are fully bilingual in English and Navajo.

b.  Fully comply with their obligations under Section 203 of the Voting Rights Act, 52 U.S.C. § 10503, to provide full translation, interpretation and assistance services to Navajo speaking voters for all voting-related practices and procedures in future elections such that they can effectively participate in the political process by instructing Defendants to:

    i.   Provide mandatory training for all individuals designated to provide language assistance at polling places and satellite offices, including training on how to fully and accurately translate voter registration forms and the ballot;

    ii.   Employ a Navajo Liaison, who is a court-certified translator or who completes a court-certified translation training program within a year of being hired to work, at a minimum, 40 hours per week to oversee the County's efforts to ensure equal access to Navajo voters, educate Navajo

voters about voting-related issues, and provide effective Navajo language assistance to Navajo voters;

iii.   Hire, at a minimum, two bilingual interpreters and one bilingual polling official for every polling location located in whole or in part on the Navajo Nation for all primary, general and special elections;

iv.   Translate all election-related materials from English to Navajo and make translations available in audio form on the website for the San Juan County Clerk and send to every chapter house and poll worker in advance of the election;

v.   Ensure that information regarding registration deadlines, notification of the establishment of all satellite registration offices and polling locations, and all other relevant election-related deadlines, including candidate filing deadlines, and all relevant election procedures information is broadcast in Navajo a minimum of four times a day during the two-week period preceding each election registration deadline and each Election Day on KTNN, KNDN, KRTZ, and other Navajo language radio stations; and

vi.   Ensure that information regarding registration deadlines, notification of the establishment of all satellite registration offices and polling locations, and all other relevant election-related deadlines, including candidate filing deadlines, and all relevant election procedures information is published, in English at least twice prior to each election-related deadline in the Navajo Times.

4.      Retain jurisdiction over Defendants for such period of time as may be appropriate to ensure Defendants' compliance with relief ordered by this Court;

5.      Award Plaintiffs their reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988 and 52 U.S.C. § 10310(e); and

6.      Grant Plaintiffs such other and further relief as may be just and equitable.

Dated this 2nd day of November, 2017.

**RESPECTFULLY SUBMITTED,**


/s/ John Mejia_____
John Mejia (Bar No. 13965)
Leah Farrell (Bar No. 13696)
American Civil Liberties Union of Utah
355 North 300 West
Salt Lake City, UT 84103
T: (801) 521-9862
jmejia@acluutah.org
lfarrell@acluutah.org

M. Laughlin McDonald
American Civil Liberties Union Foundation
2700 International Tower
229 Peachtree Street, NE
Atlanta, GA 30303
T: (404) 500-1235
lmcdonald@aclu.org

Ezra D. Rosenberg
Arusha Gordon
Lawyers' Committee for Civil Rights Under Law
1401 New York Ave., Suite 400
Washington, D.C. 20005
T: (202) 662-8600
erosenberg@lawyerscommittee.org
agordon@lawyerscommittee.org

Maya Kane
10 Town Square, #52
Durango, Colorado 81301
T: (970) 946-5419
mayakanelaw@gmail.com

William A. Rudnick
DLA Piper LLP (US)
203 North LaSalle Street, Suite 1900
Chicago, IL 60601
T: (312) 368-4000
william.rudnick@dlapiper.com

Raymond M. Williams
DLA Piper LLP (US)
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, PA 19103
T: (215) 656-3300
raymond.williams@dlapiper.com

***Attorneys for Plaintiffs***

### CERTIFICATE OF SERVICE

I hereby certify that on the 2nd day of November, 2017, I electronically filed the foregoing document with the U.S. District Court for the District of Utah.   Notice will automatically by electronically mailed to the following individual(s) who are registered with the U.S. District Court CM/ECF System:

Jesse C. Trentadue (#4961)
Carl F. Huefner (#1566)
Britton R. Butterfield (#13158)
**SUITTER AXLAND, PLLC**
8 East Broadway, Suite 200
Salt Lake City, UT 84111
Telephone: (801) 532-7300

*Attorneys for Defendants*

/s/ John Mejia